IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                           Criminal Action No.: 5:14-cr-00244
                                             (Hon. Irene Berger, District Judge)

DONALD L. BLANKENSHIP,

        Defendant.

**MOTION OF THE WALL STREET JOURNAL, THE ASSOCIATED PRESS,
CHARLESTON GAZETTE, NATIONAL PUBLIC RADIO, INC., AND THE FRIENDS
OF WEST VIRGINIA PUBLIC BROADCASTING, INC., TO INTERVENE
FOR THE LIMITED PURPOSE OF MOVING THE COURT TO RECONSIDER AND
VACATE THE NOVEMBER 14, 2014 GAG AND SEALING ORDER**

        Dow Jones & Company, Inc. d/b/a *The Wall Street Journal*, The Associated Press, Charleston Newspapers d/b/a *The Charleston Gazette*, National Public Radio, Inc., and the Friends of West Virginia Public Broadcasting, Inc. (collectively "the News Media Interveners") pursuant to the First Amendment to the *United States Constitution*, the common law and other well-recognized legal grounds, move to intervene in this action for the limited purpose of challenging the Court's November 14, 2014 Order (the "gag and sealing order"), to reconsider and vacate that order, and in support thereof say:

1.         Dow Jones & Company, Inc., is a global provider of news and business information, and is the publisher of *The Wall Street Journal, Barron's, MarketWatch*, Dow Jones Newswires, and other publications. Dow Jones has produced unrivaled quality content for 125 years, and today has one of the world's largest news-gathering operations with nearly 2,000 journalists in more than 75 bureaus in more than fifty countries publishing

news in several different languages. Dow Jones also provides information services, including Dow Jones Factiva, Dow Jones Risk & Compliance, and Dow Jones VentureSource. Dow Jones is a News Corporation company.

2. The Associated Press is a not-for-profit news cooperative that has its principal place of business in New York, New York, and maintains a bureau in Charleston, West Virginia. AP is the essential global news network, delivering fast, unbiased news from every corner of the world to all media platforms and formats. Founded in 1846, AP today is the most trusted source of independent news and information. On any given day, more than half the world's population sees news from AP.

3. *The Charleston Gazette* is a newspaper of daily circulation published statewide in the State of West Virginia by Charleston Newspapers. It also operates an on-line website for the dissemination of news to the public. The Charleston Gazette is a long established member of the news media.

4. National Public Radio, Inc. is a privately and publicly funded non-profit membership media organization that serves as a national syndicator to a network of 900 public radio stations in the United States. NPR produces and distributes news and cultural programming, both over the radio and online.

5. The Friends of West Virginia Public Broadcasting, Inc., is a charitable 501(c)(3) organization, and is chartered to support West Virginia Public Radio and West Virginia PBS, including but not limited to helping to get access to newsworthy information. Its interest is in assisting West Virginia Public Radio and West Virginia PBS to get access to news.

6. On November 13, 2014 the United States filed a four count indictment against defendant Donald L. Blankenship ("Blankenship" or "Defendant") alleging criminal conspiracy and SEC fraud charges. Blankenship is a well-known public figure in West Virginia who voluntarily and frequently has injected himself into politics and public debates.

7. This criminal action is newsworthy. The criminal charges against Blankenship relate to the Upper Big Branch mining tragedy. That tragedy resulted in the deaths of 29 coal miners at a coal mine operated by companies under Blankenship's control. While the Upper Big Branch tragedy occurred over four years ago, over the course of time it has received much public attention and scrutiny, including no less than four governmental investigations (including a Congressional inquiry). Blankenship himself has financed the production and distribution of a movie concerning these events.

8. On November 14, 2014, the day after the indictment against Blankenship was made public, this Court *sua sponte* entered a two page gag and sealing order prohibiting, "parties, counsel, other representatives or members of their staffs, potential witnesses, including actual and alleged victims, investigators, family members of actual and alleged victims as well as of the Defendant, [and] court personnel [from] mak[ing] any statements of any nature, in any form, or releas[ing] any documents to the media or any other entity regarding the facts or substance of this case." The gag and sealing order further seals the court file by restricting the availability of all documents in the Court file, now and hereafter, including all pleadings and orders, to only the "case participants and court personnel" regardless of the content of the document. *Id.* The Court directed, however, that "docket entries" be publically available. *Id.*

9. The stated basis for the Court's gag and sealing order is the Court's well-founded observation that both the Defendant and the matters referenced in the indictment "have been the subject of publicity." *Id.* Based on that observation of pre-indictment publicity, the Court found, "it necessary to take precautions to insure that the Government and the Defendant can seat jurors who can be fair and impartial and whose verdict is based only upon the evidence presented during trial." *Id.*

10. The Court's gag and sealing order does not cite support for the conclusion that the potential jury pool would not be fair and impartial if the gag and sealing order was not entered, nor does the gag and sealing order address why it will not be possible for Defendant to obtain a fair and impartial jury if the case eventually goes to trial.

11. Intervention is proper because the News Media Interveners have standing and are entitled to notice and an opportunity to be heard before a court may enter an order restricting access to judicial records or prohibiting extrajudicial comments to the media. *See, In re Knight Publ'g Co.*, 743 F.2d 231, 234 (4th Cir. 1984); *United States v. Ellis*, 90 F.3d 447, 449 (11th Cir. 1996); *Newman v. Graddick*, 696 F.2d 796, 800 (11th Cir. 1983); *CBS, Inc. v. Young*, 522 F.2d 234, 237-238 (6th Cir. 1975).

12. A gag order restricting extrajudicial comments may be entered only when necessary to ensure a fair trial, and must be tailored narrowly to preclude only extrajudicial comments that are substantially likely to materially prejudice the trial – the specific speech to be restrained must pose a certain, direct and imminent threat to a fair trial right or other constitutional interest. *Young, supra*, 522 F.2d at 238 (the speech "must pose a clear and present dangerous threat to a protected competing interest"); *Chase v. Robinson*, 435 F.2d

1059, 1061 (7th Cir. 1970) (speech must pose "'a serious and imminent threat to the administration of justice'") (citation omitted). Particularly given that the gag and sealing order is not limited to parties and counsel, but would extend to the family members not just of parties, but of "victims and alleged victims," the First Amendment rights of such non-parties can be abridged "only when absolutely necessary to" preserve a fundamental right. *United States v. Gotti*, 2004 WL 2757625, at *2-3 at n.13 (S.D.N.Y. 2004).

13. The gag and sealing order in the case at bar presumptively is an invalid restraint on speech, and it is subject to the strictest constitutional scrutiny – the entry of a gag order requires not only judicial findings that no adequate alternative measures can mitigate the effects of pretrial speech, *United States v. Salameh*, 992 F.2d 445, 447 (2d Cir. 1993), *In re N.Y. Times Co.*, 878 F.2d 67, 68 (2d Cir. 1989), but also that the injunction effectively prevents a demonstrated harm. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 562 (1976) (to be valid, a prior restrain must "effectively . . . prevent the threatened danger").

14. An order sealing court filings also is subject to First Amendment scrutiny, and, "a court must assess whether sealing documents is, '"necessitated by a compelling government interest, and ... narrowly tailored to serve that interest."' *Washington Post*, F.2d 383, 390 (4th Cir. 1986) (quoting *Press–Enterprise I*, 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984)). In making this assessment, a district court must follow the procedures established in *In re Charlotte Observer*, 882 F.2d 850, 853 (4th Cir. 1989). That is, the court must (1) provide public notice that the sealing of documents may be ordered, (2) provide interested persons an opportunity to object before sealing is ordered, (3) state the reasons, supported with specific findings, for its decision if it decides to seal

documents, and (4) state why it rejected alternatives to sealing. *Id. In re Time Inc.*, 182 F.3d 270, 271 (4th Cir. 1999).[1]

15. Newsgathering is protected by the First Amendment of the *United States Constitution*. A reporter's First Amendment right to publish is meaningless if it is prevented from gathering news in the first instance. In this case, the Court's gag and sealing order prevents the News Media Interveners and other members of the press and public from obtaining meaningful information regarding this newsworthy case from court records and from those most knowledgeable about it, the participants and those affected by the underlying events. The public interest in access is especially strong in the case at bar because such access promotes trustworthiness in the judicial process, better understanding of the judicial system, and ultimately, fairness. "Public access serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness." *Littlejohn v. Bic Corp.*, 851 F.2d 673, 682 (3d Cir.1988). The gag and sealing order interferes with the News Media Interveners' constitutionally protected right to gather and disseminate the news.

---

[1] As held in *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000), "before a district court may seal any court documents, we held that it must (1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives. *See Knight*, 743 F.2d at 235–36; *see also Stone* [*v. Univ. of Maryland Med. Syst. Corp.*,] 855 F.2d [178,] at 181 (4th Cir. 1988). These procedures "must be followed when a district court seals judicial records or documents." *Stone*, 855 F.2d at 179–80, 182." *See also United States v. Ledingham*, 2010 WL 428913, at *1 (W.D. Va. 2010).

WHEREFORE, the News Media Interveners respectfully request the Court allow them to intervene in the instant case for the limited purpose of challenging Court's November 14, 2014 gag and sealing order, to vacate that Order, and any other relief the Court deems just and proper.

          THE WALL STREET JOURNAL, THE ASSOCIATED PRESS, THE CHARLESTON GAZETTE, NATIONAL PUBLIC RADIO, INC., AND THE FRIENDS OF WEST VIRGINIA PUBLIC BROADCASTING, INC, Interveners,

*By Counsel*

_____
Sean P. McGinley   (WV Bar No. 5887)
Di TRAPANO, BARRETT DiPIERO
McGINLEY & SIMMONS, PLLC
604 Virginia St., E.
Charleston, WV 25301
(304) 342-0133 Telephone
304) 342-4605 (fax)

## CERTIFICATE OF SERVICE

I, Sean P. McGinley, hereby certify that on this 1st day of December, 2014, I served this **MOTION OF THE WALL STREET JOURNAL, THE ASSOCIATED PRESS, CHARLESTON GAZETTE, NATIONAL PUBLIC RADIO, INC., AND THE FRIENDS OF WEST VIRGINIA PUBLIC BROADCASTING, INC., TO INTERVENE FOR THE LIMITED PURPOSE OF MOVING THE COURT TO RECONSIDER AND VACATE THE NOVEMBER 14, 2014 GAG AND SEALING ORDER** by facsimile[2] on the following counsel of record:

R. Booth Goodwin, II, Esq.
Steve R. Ruby, Esq.
United States Attorney
P.O. Box 1713
Charleston, WV 25301
Fax: 304-347-5104

John H. Tinney, Jr. Esq.
The Tinney Law Firm, PLLC
P.O. Box 3752
Charleston, WV 25311
Fax: 304-720-3315

William W. Taylor, III, Esq.
Miles Clark, Esq.
Eric R. Delinsky, Esq.
Steven Herman, Esq.
Zuckerman Spaeder, LLP
1800 M Street, N.W., Suite 1000
Washington, DC 20036-5807
Fax: 202-822-8106

_____
Sean P. McGinley, Esquire (WV Bar #5836)

---

[2] In light of the November 14, 2014 Order, undersigned counsel inquired about the possibility of electronic filing with the Clerk's office and was instructed to file the instant motion and memoranda as hard copies with the Clerk. Counsel of record thus have been served by facsimile.