IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

UNITED STATES OF AMERICA,

    Plaintiff,

v.                              Criminal Action No.: 5:14-cr-00244
                              (Hon. Irene Berger, District Judge)

DONALD L. BLANKENSHIP,

    Defendant.

**MEMORANDUM IN SUPPORT OF THE MOTION OF THE WALL STREET JOURNAL, THE ASSOCIATED PRESS, CHARLESTON GAZETTE, NATIONAL PUBLIC RADIO, INC., AND THE FRIENDS OF WEST VIRGINIA PUBLIC BROADCASTING, INC., TO INTERVENE FOR THE LIMITED PURPOSE OF MOVING THE COURT TO RECONSIDER AND VACATE THE NOVEMBER 14, 2014 GAG AND SEALING ORDER**

At the inception of this case, without evidence, factual findings or even notice permitting the parties, the public or the press an opportunity to be heard, the Court sealed all prior and future filings and prohibited certain members of the public most knowledgeable about this case – the actual and alleged victims, their relatives and others – as well as trial participants and counsel, from saying anything or, "releas[ing] any documents" "regarding the facts or substance of this case." As the Sixth Circuit noted when reversing a similarly restrictive order, "[a] more restrictive ban upon freedom of expression in the trial context would be difficult if not impossible to find." *CBS, Inc. v. Young*, 522 F.2d 234, 239 (6th Cir. 1975).

On many occasions, courts have been asked to entertain orders limiting information that may be released to the public concerning judicial matters and restricting what participants in judicial proceedings may say to the public. Gag orders and "umbrella protective orders are disfavored,"

-1-

*United States v. Carriles*, 654 F. Supp. 2d 557, 565 (W.D. Tex. 2009), and are presumptively unconstitutional. Before a court may enter such an order, it must conduct an exacting inquiry into the circumstances. Courts must identify specifically the factors that threaten the administration of justice and weigh all reasonable alternatives to mitigate the perceived threats. Only then, after development of a full record on these issues (and allowing the press an opportunity to participate), may a court fashion a narrow remedy that accommodates the constitutional First Amendment rights of the press and the public's interest alongside that of the judicial system.

Courts cannot order documents to be sealed or remain under seal, "without reviewing them and complying with the procedures specified in *In re Charlotte Observer*." *In re Time Inc.*, 182 F.2d 270, 271-72 (4th Cir. 1999). An umbrella sealing order is constitutionally infirm – sealing of court filings must be considered on a case-by-case basis[3] – and courts, "must consider alternatives to sealing the documents which may include giving the public access to some of the documents or releasing a redacted version of the documents that are the subject of the government's motion to seal." *In re Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 294 (4th Cir. 2013).[4]

---

[3] "[A] mandatory rule, requiring no particularized determinations in individual cases, is unconstitutional." *Globe Newspaper Co. v. Superior Court for Norfolk Cnty.*, 457 U.S. 596, 611 at n.27 (1982). A court's use of a case-by-case approach to closure, "ensures that the constitutional right of the press and public to gain access to criminal trials will not be restricted except where necessary to protect the State's interest." *Id.*, 457 U.S. at 609.

[4] The gag and sealing order does not purport to exclude the public and the press from court proceedings in this case. Before considering issuing such and order, the Court must "give interested parties prior notice and an opportunity to be heard before deciding the issue, and to support any decision to close with reasons and findings of record, including why no less drastic alternatives to closure are feasible." *In re State-Record Co., Inc.*, 917 F.2d 124, 128 (4th Cir. 1990) (quoting *In re Charlotte Observer*, 882 F.2d 850, 853 (4th Cir. 1989)). See also *In re Washington Post*, 807 F.2d 383, 391 (4th Cir. 1986) ("if the district court decides to close a hearing or seal documents, 'it must state its reasons on the record, supported by specific findings.'") (quoting *In re Knight Publ'g Co.*, 743 F.2d 231, 234 (4th Cir. 1984)).

The broad gag and sealing order entered by the Court on parties, counsel, other representatives or members of their staffs, potential witnesses, including actual and alleged victims, investigators, family members of actual and alleged victims as well as the of the Defendant, from making any statements of any nature, in any form, or release any documents to the media or any other entity regarding the facts or substance of the case prevents the News Media Interveners from obtaining important information regarding this newsworthy case from those involved (including "family members of actual or alleged victims," which broadly includes those who may not be involved in any way other than by blood or marriage relationship) and adversely implicates the News Media Interveners' constitutionally protected rights to gather and disseminate the news.

"If a court order burdens constitutional rights and the action proscribed by the order presents no clear and imminent danger to the administration of justice, the order is constitutionally impermissible." *Young, supra,* 522 F.2d at 240. An order that impinges on the "journalistic right to gather news" must therefore be "narrowly tailored to prevent a substantial threat to the administration of justice." *In re Express-News Corp.*, 695 F.2d at 810; *CBS Inc. v. Smith*, 681 F. Supp. 794, 803 (S.D. Fla. 1988). A "[F]irst [A]mendment right of access can be denied only by proof of a 'compelling government interest' and proof that the denial is 'narrowly tailored to serve that interest.'" *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989) (citing *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606-07 (1982)); *see also Stone v. Univ. of Maryland Med. Syst. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988) (same); *Press Enterprise Co. v. Superior Court* 464 U.S. 501, 510 (1984) (same). The exacting standard required to deny the News Media Interveners First Amendment rights of access has not been met here.

# I. THE NEWS MEDIA INTERVENERS HAVE STANDING TO INTERVENE TO CHALLENGE THE GAG AND SEALING ORDER

Newsgathering is, of course, protected by the First Amendment of the *United States Constitution*. See *United States v. Sherman*, 581 F.2d 1358, 1361 (9th Cir. 1978) ("The Supreme Court has recognized that newsgathering is an activity protected by the First Amendment."); *Young, supra*, 522 F.2d at 237-38 (newsgathering "qualifies for First Amendment protections"); *CBS Inc. v. Smith*, 681 F. Supp. 794, 803 (S.D. Fla. 1988) ("[s]imply put, newsgathering is a basic right protected by the Fist Amendment"). Moreover,

> "The first amendment's broad shield for freedom of speech and of the press is not limited to the right to talk and print. The value of these rights would be circumscribed were those who wish to disseminate information denied access to it, for freedom to speak is of little value if there is nothing to say."

*In re The Express-News Corp.*, 695 F.2d 807, 808 (5th Cir. 1982). The First Amendment right of access applies to a criminal trial, including documents submitted at trial, and pretrial proceedings and filings. *In re Time Inc.*, 182 F.3d 270, 271 (4th Cir. 1999). There exists also a common law right of access to court records as recognized by the United States Supreme Court in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978). Both the First Amendment and common law rights of the News Media Interveners are placed in issue here.

Importantly also, it is well recognized that reporting by newspapers and other media on trials and cases pending before the courts serves to protect litigants' rights to fair and impartial adjudications of their claims. As described by the United States Supreme Court:

> "Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs.
> \*\*\*

> A responsible press has always been regarded as the handmaiden of effective judicial administration . . . . Its function in this regard is documented by an impressive record of service over several centuries. The press does not simply publish information about trials but guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism."

*Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 838-39 (1978). These important public purposes clearly will be served here in a case involving the serious kinds of charges brought against Defendant.

News Media Interveners have standing to intervene to challenge the Court's gag and sealing order. Intervention is proper because News Media Interveners are entitled to notice and an opportunity to be heard before a court may enter an order restricting access to judicial records or prohibiting extrajudicial comments. *See In re Knight Publ'g Co.*, 743 F.2d 231, 234 (4th Cir. 1984); *United States v. Ellis*, 90 F.3d 447, 449 (11th Cir. 1996); *Newman v. Graddick*, 696 F.2d 796, 800 (11th Cir. 1983); *Young, supra*, 522 F.2d at 237-238. News Media Interveners have a constitutional right to receive information about this case from willing speakers. As explained in *Stephens v. Cnty. Of Albemarle, VA*, 524 F.3d 485, 491-92 (4th Cir. 2008):

> "To be sure, "[i]t is now well established that the Constitution protects the right to receive information and ideas" from a willing speaker. *Stanley v. Georgia*, 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); see also *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 756, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976) (explaining that where a willing speaker exists, "the protection afforded [by the First Amendment] is to the communication, to its source and to its recipients both"). *7FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 838–39 (3d Cir.1996) (holding that plaintiffs with an interest in a lawsuit had standing to challenge gag order constraining the speech of parties to a widely publicized adoption case because one party to the case had spoken publicly before the gag order, supporting the inference that it would be willing to do so again); *In re Application of Dow Jones & Co.*, 842 F.2d 603, 606–08 (2d Cir.1988)

> (holding that news agencies had standing to challenge gag order constraining speech of trial participants because extensive pretrial publicity showed that the trial participants were willing speakers and that the news agencies were in fact potential receivers of the restrained speech); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 787 n. 12 (1st Cir.1988) (holding that third-party public interest group had standing to challenge protective order in court case because the plaintiffs clearly indicated that they would disseminate the information if permitted to do so, meaning that modification of the order would, as a practical matter, guarantee the group access to documents)."

Courts have recognized that the "protected right to publish the news would be of little value in the absence of sources from which to obtain it." *Young, supra*, 522 F.2d at 238. The United States Supreme Court has opined that "[w]ithout some protection for seeking out the news, freedom of the press could be eviscerated." *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972).

The Court of Appeals for the Fourth Circuit recognizes the press has a clear right to intervene in cases such as this because the press has an interest that satisfies the constitutional standing requirements of injury, causation, and redressability in sealed judicial documents and materials:

> "This Court has previously permitted news organizations to intervene in actions in which they were not otherwise parties to challenge a district court's sealing order. ... In those cases, the news organizations had an interest in the sealed judicial documents and materials sufficient to satisfy the constitutional standing requirements of injury, causation, and redressability. They were bound by the district court's sealing orders, and insofar as they were denied access to judicial documents that they claimed a right to obtain, they were aggrieved by the district court's sealing determination. [ . . . ] In sum, it was the news organizations' failure to obtain information—information, which in their view, they had a right to access under the common law or the Constitution—that supplied the case or controversy necessary for the intervenors to secure appellate review of a district court's sealing orders."

*Doe v. Pub. Citizen*, 749 F.3d 246, 262-63 (4th Cir. 2014).

Here, there exist willing speakers whose speech to the News Media Interveners, other press and the public is restricted by the gag and sealing order. Over the four-plus year period between the

time of Upper Big Branch tragedy and through the entry of the gag and sealing order, family members of victims and potential witnesses have been willing to speak to the news media about the tragedy, and about Massey Energy's policies and history in regard to mine safety laws.[5] The

---

[5] The gag and sealing Order prevents those most affected by the tragedy and the alleged misconduct at issue in the prosecution from sharing their thoughts and reactions with the press and the public. That there are willing speakers is shown by the willingness of family members of victims to speak to the press about this tragedy in the past. *E.g.*, Kris Maher, "Dead Miners' Kin Wrestle With Choice to Settle or Sue," The Wall Street Journal (Dec. 7, 2010), *at* http://online.wsj.com/articles/SB10001424052748704243904575630712613602920; Kris Maher, "Mine Called a Disaster Waiting to Happen," The Wall Street Journal (May 25, 2010), *at* http://online.wsj.com/articles/SB10001424052748704113504575264250958163886; Kris Maher, "Feds Blame Owner of West Virginia Mine," The Wall Street Journal (Dec. 7, 2011), *at* http://online.wsj.com/articles/SB10001424052970204770404577082341518182150; Kris Maher, "Mine Probe Faults Massey," The Wall Street Journal (May 20, 2011), *at* http://online.wsj.com/articles/SB10001424052748704904604576333102249563620; Kris Maher, "Mine Report Could Add to Massey's Legal Woes," The Wall Street Journal (May 19, 2011), *at* http://online.wsj.com/articles/SB10001424052748704083904576333740627697976; Kris Maher, "Mine-Blast Victims Honored; Probe Continues," The Wall Street Journal (Apr 5, 2011), *at* http://online.wsj.com/articles/SB10001424052748704587004576243171981966648; Kris Maher, "Ex-CEO of Massey Energy Indicted in Case of 2010 Mine Blast," The Wall Street Journal (Nov. 13, 2014), *at* http://online.wsj.com/articles/ex-ceo-of-massey-energy-indicted-in-case-of-2010-mine-blast-1415913977 . Indeed, relatives of victims have publically complained about the gag and sealing order. http://www.huffingtonpost.com/2014/11/20/don-blankenship-mine-accident_n_6194180.html ; November 20, 2014 *Charleston Gazette* story (the day of Defendant's arraignment) discussing that some families of victims did talk, but were worried about doing so and more hesitant, because of gag and sealing order *at* http://www.wvgazette.com/article/20141120/GZ01/141129947/1254; November 13, 2014 *Charleston Gazette stories* quoting victims' family members discussing Defendant's indictment, http://www.wvgazette.com/article/20141113/GZ01/141119607/1419; November 13, 2014 *Charleston Gazette* story about the indictment where Defendant's counsel speaks, *at* http://www.wvgazette.com/article/20141113/GZ01/141119629/1254; February 28, 2013 *Charleston Gazette* story where Defendant's counsel spoke to the news media when Defendant's name was discussed in plea hearing of Dave Hughart, *at* http://www.wvgazette.com/News/201302280018; March 26, 2011 *Charleston Gazette* story about a woman who worked at UBB who fell in love with one of victims, *at* http://www.wvgazette.com/News/201103260685; September 10, 2013 *Charleston Gazette* story quoting a family member of a victim discussing the Dave Hughart sentencing, *at* http://www.wvgazette.com/News/201309100025; January 17, 2013 *Charleston Gazette* story quoting one of the UBB investigators and a victim's family member, *at*

Defendant produced and financed a movie conveying his position on how the Upper Big Branch tragedy occurred that continues to be available for viewing on the internet.[6] Counsel for the parties have been willing speakers – the United States Attorney issued a prepared statement to the press at the time the indictment was released, and Defendant's counsel spoke to the news media shortly thereafter via a press release the evening the indictment was issued. Because there are willing speakers, the News Media Interveners have standing to intervene and challenge the gag order.

## II     THE GAG AND SEALING ORDER IS OVERBROAD AND INFRINGES ON INTERVENERS' FIRST AMENDMENT RIGHTS

The gag order is a prior restraint on the speech of those identified, and the sealing order has a blanket impact, thereby depriving the press and public of access to all past and future court records in this case. As such, the gag and sealing order is subject to strict constitutional scrutiny. The gag and sealing order restrains the speech not just of trial participants but extends far beyond the parties and counsel to restrain the speech or release of documents by "actual and alleged victims,

---

http://www.wvgazette.com/News/201301170059; April 2, 2014 *Charleston Gazette* story about victims' families protesting Defendant's movie about the tragedy, *at* http://www.wvgazette.com/article/20140402/GZ01/140409856; April 6, 2010 *Charleston Gazette* story published the week of the explosion about the Davis family, which lost 3 people at UBB, *at* http://www.wvgazette.com/News/201004060815 ; November 20, 2014 *Charleston Gazette* story congressional field hearing in Beckley, where victims' families testified, *at* http://www.wvgazette.com/News/201005240276 (a transcript of that hearing is online, *at* http://www.gpo.gov/fdsys/pkg/CHRG-111hhrg56355/pdf/CHRG-111hhrg56355.pdf. Defendant has given interviews about the UBB tragedy to National Public Radio that are available online, *at* http://www.npr.org/2010/11/20/131465631/massey-head-points-fingers-as-he-details-explosion; and http://www.npr.org/2011/01/21/133105496/Mine-Explosion-Fractures-Dean-Jones-Family. Defendant also has a "blog," *at* http://www.donblankenship.com/, with a sublink, *at* http://www.donblankenship.com/category/mine-safety/, containing numerous posts about the Upper Big Branch tragedy.

      [6]       See *http://www.ubbneveragain.com* .

investigators, family members of actual and alleged victims as well as of the Defendant," despite the fact that the rights of such non-parties may be abridged "only when absolutely necessary to" preserve a fundamental right.

To restrict speech, there must be a showing that the speech restrained poses a certain, direct and imminent threat to a fair trial right or other constitutional interest. *Young, supra*, 522 F.2d at 238 (the speech "must pose a clear and present dangerous threat to a protected competing interest"); *Chase v. Robinson*, 435 F.2d 1059, 1061 (7th Cir. 1970) (speech must pose "'a serious and imminent threat to the administration of justice'")(citation omitted). Particularly given that the gag and sealing order is not limited to parties and counsel, but would extend to the family members not just of parties, but of "victims and alleged victims," the First Amendment rights of such non-parties can be abridged "only when absolutely necessary to" preserve a fundamental right. *United States v. Gotti*, 2004 WL 2757625, at *2-3 at n.13 (S.D.N.Y. 2004).[7]

The entry of a gag order requires not only judicial findings that no adequate alternative measures can mitigate the effects of pretrial speech, *United States v. Salameh*, 992 F.2d 445, 447 (2d Cir. 1993), *In re N.Y. Times Co.*, 878 F.2d 67, 68 (2d Cir. 1989), but also that the injunction effectively prevents the demonstrated harm. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 562 (1976) (to be valid, a prior restraint must "effectively . . . prevent the threatened danger").[8]

---

[7] The standard to restrict speech here is even *higher* because the gag and sealing order extends beyond trial participants to members of the public, including family members of victims and alleged victims who are not trial participants. The gag and sealing order fails to satisfy any level of scrutiny, even assuming *arguendo* that a relatively less stringent standard should apply to the restrictions on the speech of trial participants.

[8] "In the Fourth Circuit, district courts may restrict extrajudicial statements by parties and counsel only if those comments present a 'reasonable likelihood' of prejudicing a fair trial." *United States ex rel. Davis v. Prince*, 753 F. Supp. 2d 561 (E.D. Va. 2010) (quoting *In re*

Like the strict constitutional standard that must be met before an entry of a gag order is permissible, the standard for sealing court records is subject to strict constitutional scrutiny. There must be a showing that without the restriction there is a substantial probability that a compelling interest will be prejudiced. In criminal proceedings, there is a "presumption in favor of openness," *In re State-Record Co., Inc.*, 917 F.2d 124, 127 (4th Cir. 1990) (citing *Richmond Newspapers, Inc. v. Va.*, 448 U.S. 555 (1980)[9]), which may be overcome only, "on the basis of specific judicial findings that (1) there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity; (2) there is a substantial probability that closure would prevent that prejudice; and (3) reasonable alternatives to closure cannot adequately protect the defendant's fair

---

*Russell*, 726 F.2d 1007, 1010 (4th Cir. 1984)). Content-based restrictions on speech are permissible only when they are no greater than necessary to protect the accused's right to a fair trial or an impartial jury, and they are narrowly tailored to prohibit only the statements that are likely to threaten the right to a fair trial or impartial jury. The restrictions must be aimed at the evils that threaten the integrity of the judicial system. *In re Morrissey*, 168 F.3d 134, 140 (4th Cir. 1999) (reaffirming *Hirschkop v. Snead*, 594 F.2d 356 (4th Cir. 1979), and holding that the "reasonable likelihood" standard is consistent with the First Amendment).

In West Virginia, both the *West Virginia Constitution* (Article III, Section 17) and statutes (W. Va. Code § 51-4-2) provide presumptive right of the Public to access court records. *See State ex rel. Garden State Newspapers, Inc. v. Hoke*, 205 W. Va. 611, 616, 520 S.E.2d 186, 191 (W. Va. 1999); *Daily Gazette Co. v. Committee on Legal Ethics of the W. Va. State Bar*, 174 W. Va. 359, 364, 326 S.E.2d 705, 710 (W. Va. 1984) *State ex rel. Herald Mail Co. v. Hamilton*, 165 W.Va. 103, 267 S.E.2d 544, 547-49 (W. Va. 1980).

[9] As noted above, it is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n. 17 (1980); *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978); *Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 428 (4th Cir.2005).

trial rights." *In re State-Record Co., Inc.*, 917 F.2d 124, 127 (4th Cir. 1990)[10] (quoting *In re Charlotte Observer*, 882 F.2d 850, 853 (4th Cir. 1989)).

"The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir.2004). Under the First Amendment, "access may be restricted only if closure is "necessitated by a compelling government interest" and the denial of access is "narrowly tailored to serve that interest,"" *Doe v. Pub. Citizen*, 749 F.3d 246, 266 (4th Cir. 2014). "The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that "countervailing interests heavily outweigh the public interests in access."" *Id.*, 749 F.3d at 265-66. "[The Court of Appeals for the Fourth Circuit] has never permitted wholesale sealing of documents based upon unsubstantiated or speculative claims of harm[.]" *Id.*, 749 F.3d at 270.

Any restriction on access must be tailored narrowly. *Shelton v. Tucker*, 364 U.S. 479, 488 (1960). Additionally, any restriction on access must be effective in protecting the threatened interest for which the limitation is imposed – thus, where, as here, information sought to be confidential already has been given sufficient public exposure, the restriction on access can not stand. *In re The*

---

[10] As held in *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000), "before a district court may seal any court documents, we held that it must (1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives. *See Knight*, 743 F.2d at 235–36; *see also Stone*, 855 F.2d at 181. These procedures "must be followed when a district court seals judicial records or documents." *Stone*, 855 F.2d at 179–80, 182." *See United States v. Ledingham*, 2010 WL 428913, at *1 (W.D. Va. 2010).

*Herald Co.*, 734 F.2d at 101.[11] The consideration of these concerns must be on the record and occur in the context of a case-by-case examination of the competing interests at stake. *See Waller*, 467 U.S. at 48, 104 S.Ct. 2210; *Press–Enterprise II*, 478 U.S. at 13–14, 106 S.Ct. 2735; *In re Knight Publ'g Co.*, 743 F.2d at 234–35.

### III  THERE HAS BEEN NO SHOWING THAT ALL SPEECH ABOUT "THE FACTS OR SUBSTANCE OF THE CASE," OR THAT ALL COURT FILINGS, POSE A SUFFICIENT THREAT OF HARM TO A FAIR TRIAL INTEREST THAT JUSTIFY THE GAG AND SEALING ORDER

Pretrial publicity in newsworthy cases such as the instant one is inevitable. *See Rolling v. State*, 695 So. 2d 278, 285 (Fla. 1997). Yet, "pretrial publicity, even pervasive, adverse publicity does not inevitably lead to an unfair trial." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 554 (1976). The tone and extent of the publicity are key factors. *Id.* at 554-55. The Court of Appeals

---

[11]  As recently explained by Judge Kessler of the District Court for the District of Columbia in *Dhiab v. Obama*, 2014 WL 4954458, at *7 (D.D.C. Oct. 3, 2014):

> "it is our responsibility, as judges, as part of our obligation under the Constitution, to ensure that any efforts to limit our First Amendment protections are scrutinized with the greatest of care. That responsibility can not be ignored or abdicated.
>
> Therefore, when the sealed facts are already public, maintaining documents under seal is only appropriate when, despite what the public already knows, the documents' release would *still* give rise to a substantial probability of harm. *See Robinson*, 935 F.2d at 291–92 (unsealing a plea agreement because Government's concerns that "release of a plea agreement may threaten an ongoing criminal investigation, or the safety of the defendant and his family" were unfounded when "the fact that the plea agreement was entered into in exchange for McWilliams' cooperation was already within the public knowledge."); *see also In re The Herald Co.*, 73.4 F.2d 93, 101 (2d Cir.1984) ("Though the basis for apprehending harm to the defendant is apparent, the record raises a question as to whether the information sought to be kept confidential has already been given sufficient public exposure to preclude a closure order on this account.")."

for the Fourth Circuit has held that even when there has been "pervasive," "sensational," and "inflammatory" publicity surrounding a trial, a closure order may be impermissible. *In re Charlotte Observer*, 882 F.2d 850, 854 (4th Cir. 1989). News media attention alone never has been found a sufficient basis for closing off newsgathering. *See, e.g., Provenzano v. State*, 497 So. 2d 1177, 1182 (Fla. 1986) (nature of coverage – and not merely amount of coverage – determines whether articles are inflammatory), *cert. denied*, 481 U.S. 1024 (1987).

Indeed, the Supreme Court of the United States in *Skilling v. United States*, 561 U.S. 358, 380 (2010) held that juror exposure to news accounts of a prominent crime does not presumptively deprive a Defendant of due process, produce prejudice or partiality in a juror pool:

> "our decisions, however, "cannot be made to stand for the proposition that juror exposure to ... news accounts of the crime ... alone presumptively deprives the defendant of due process." *Murphy v. Florida*, 421 U.S. 794, 798–799 (1975). See also, *e.g., Patton v. Yount*, 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984). Prominence does not necessarily produce prejudice, and juror *impartiality,* we have reiterated, does not require *ignorance. Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) (Jurors are not required to be "totally ignorant of the facts and issues involved"; "scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case."); *Reynolds v. United States,* 98 U.S. 145, 155–156, 25 L.Ed. 244 (1879) ("[E]very case of public interest is almost, as a matter of necessity, brought to the attention of all the intelligent people in the vicinity, and scarcely any one can be found among those best fitted for jurors who has not read or heard of it, and who has not some impression or some opinion in respect to its merits."). A presumption of prejudice, our decisions indicate, attends only the extreme case."

As an example of an unconstitutional gag order in a comparable case, in the highly publicized civil damages case by the students injured at Kent State University in 1970 by National Guardsmen who fired into a crowd, the trial judge issued a gag order similar to the gag and sealing order entered here. That gag order read:

> "For good cause appearing, it is
>
> ORDERED that in addition to all counsel and Court personnel, all parties concerned with this litigation, whether plaintiffs or defendants, their relatives, close friends, and associates are hereby ORDERED to refrain from discussing in any manner whatsoever these cases with members of the news media or the public."

*CBS v. Young*, 522 F.2d at 236. The Sixth Circuit in *Young* held, "A more restrictive ban upon freedom of expression in the trial context would be difficult if not impossible to find." *Id.* at 239. "According to its literal terms no discussions whatever about the case are permitted by the persons upon whom the ban is placed whether prejudicial or innocuous, whether subjective or objective, whether reportorial or interpretive." *Id.* at 239. Despite the nationwide publicity about the Kent State shootings and the newspaper articles attached to the court's gag order, the Sixth Circuit held that there was no substantial evidence that there was a clear and imminent danger to the administration of justice. *Id.* at 240. Therefore, the gag order was reversed. *Id.* at 241.

Likewise, when a court seals documents that have no potential to prejudice the proceeding, or restricts speech of litigants that could not prejudice the proceeding, "[s]uch overbreadth violates one of the cardinal rules that closure orders must be tailored as narrowly as possible. Overbreadth is also obvious from the fact that motions and documents filed in the Clerk's Office prior to the date of the gag order have been sealed, although their content and substance were made public at the time of filing." *In re State-Record Co., Inc.*, 917 F.2d 124, 129 (4th Cir. 1990). Here, for example, even though the indictment was made public at the time it was issued by the grand jury, and is available elsewhere on the internet, it is sealed in the Court file by virtue of the gag and sealing order.

Importantly, any gag and/or sealing order must be effective in protecting the Defendant's right to a fair trial without being broader than necessary. See *Young, supra*, 522 F.2d at 238; *Doe*

*v. Pub. Citizen, supra*, 749 F.3d at 272. There is no evidence here that the gag and sealing order would be effective to protect Defendant's right to a fair trial. Because of the publically available information about the case, as well as other news reports and governmental investigations including those noted above, there is no basis for finding that the gag and sealing order would be effective at mitigating the perceived harm, reason alone to warrant its vacatur. "Where closure is wholly inefficacious to prevent a perceived harm, that alone suffices to make it constitutionally impermissible." *In re Charlotte Observer, supra* at 855 (citing *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609-10 (1982)).[12]

In this case there has been no showing that pretrial publicity will prejudice the administration of justice sufficient to justify a gag and sealing order. The gag and sealing order "seals the lips" of parties, counsel and witnesses, as well as family members of actual and alleged victims, from discussing the case with anyone, including the media, "whether prejudicial or innocuous, whether subjective or objective, whether reportorial or interpretive." *Young, supra*, 522 F.2d at 239. See also *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1058 (1991) (reversing attorney's discipline under bar rule prohibiting prejudicial speech and holding that "in some circumstances press comment is necessary to protect the rights of the client and prevent abuse of the courts.").

## IV  ALTERNATIVES TO THE GAG AND SEALING ORDER

Even if the Court were to find this case is one of those "relatively rare" cases in which there is sufficient proof of a prejudicial effect to a fair trial caused by news accounts, *Nebraska Press*, 427

---

[12] "The court's apprehension over the ramifications of disclosing the facts germane to this case cannot be squared with the principles of public discourse that underlie the First Amendment. As the Supreme Court long ago recognized, "erroneous statement is inevitable in free debate, and ... it must be protected if the freedoms of expression are to ... survive."" *Doe v. Pub. Citizen, supra*, 749 F.3d at 271.

U.S. at 554, before mandating secrecy regarding this case the Court must consider alternatives, including even a change of venue, that would protect the Defendant's right to a fair trial without infringing on the News Media Interveners constitutional and common law rights of access. *Nebraska Press*, 427 U.S. at 563-64. This Court could protect the Defendant's right to a fair trial by less restrictive means than the gag and sealing order. Careful measures in jury selection, including individualized *voir dire*, regularly are used to avoid potentially prejudicial effects of even pervasive adverse publicity. See *Nebraska Press*, 427 U.S. at 548, 563-64. Instructions to the jury as to their sworn duty to decide the issues based only upon the evidence, sequestration of the jurors, and selection from a large panel are all traditional alternatives. *Nebraska Press*, 427 U.S. at 563-64.

In most cases, "[v]oir dire is of course the preferred safeguard against this particular threat to fair trial rights . . . ." *In re Charlotte Observer*, 882 F.2d 850, 855 (4th Cir. 1989). The Fourth Circuit observed that in high-profile cases involving the Watergate defendants, Abscam defendants, and John DeLorean (which all received "massive pretrial media reportage and commentary"), *voir dire* adequately eliminated any prejudicial effect of publicity. *Id.* The Court of Appeals identified a trend of relying on *voir dire* as a "reliable protection against juror bias however induced." *Id.* at 856. Likewise here, *voir dire*, instructions to the jury, sequestration, use of a large panel of potential jurors and even a change of venue all are alternatives that could be used to accomplish a fair trial that would not infringe on the New Media Interveners First Amendment and common law rights.

## V  THE GAG AND SEALING ORDER IS NOT TAILORED NARROWLY

The Court's gag and sealing order was entered quickly, within 24 hours of the issuance of the indictment. The gag order applies like a blanket covering all statements and documents that may have anything to do with the facts or substance of the case, and is not tailored to apply only to

statements or documents specifically identified as being sufficiently prejudicial to Defendant's right to a fair trial. Likewise, the sealing order applies like a blanket shielding all filings regardless of their content, and regardless of whether the public access to a particular document, pleading or order is sufficiently prejudicial to Defendant's right to a fair trial. Additionally, in its application, the gag and sealing order is vague and applies to unspecified individuals – by designating all "family members of victims" or "alleged victims," there is no way of knowing precisely to whom it applies (or why) – for example, does a family member include a first or second cousin? And the order does not identify who qualifies as an "alleged victim" – it could be read to include both the victims of the Upper Big Branch tragedy who suffered death or physical injuries as well as alleged victims of the conduct related to the SEC charges, which may include all owners of Massey common stock.

The gag and sealing order in this case prevents not just parties and counsel from talking about the case at all, including information already in the public record, but also actual and alleged victims and family members of actual and alleged victims. Thus, the gag and sealing order is not narrowly tailored to ensure a fair trial while at the same time protecting the News Media Interveners substantial First Amendment interests. See *United States v. Salameh*, 992 F.2d 445, 446-47 (2d Cir. 1993); *CBS v. Young*, 522 F.2d at 240-41. The gag and sealing order makes no provision for its termination, nor does it give any procedure to petition the Court for relief from its dictates. All of the foregoing are reasons supporting reconsideration and vacatur of the order.

## VI  IT IS IN THE PUBLIC INTEREST TO VACATE THE GAG AND SEALING ORDER AND DEFENDANT'S RIGHT TO A FAIR TRIAL WILL NOT BE PREJUDICED

Perhaps most importantly, not only does the deprivation of First Amendment rights for even a minimal period of time constitute irreparable harm, but it also could have the contrary effect than

what the Court intended, by hindering a fair trial instead of enhancing it. As the United States Supreme Court has noted, with a gag order in place, rumors and gossip will circulate throughout a community. *Nebraska Press*, 427 U.S. at 567. "One can only speculate on the accuracy of such reports, given the generative propensities of rumors; they could well be more damaging than reasonably accurate news accounts." *Id.* Thus, even with the gag and sealing order in place, the press will continue to follow the investigation and prosecution, but the gag and sealing order will leave only second-hand sources free to talk with the press.

Keeping the public informed of this case also is in the public's interest because it, "contribute[s] to the public understanding of the rule of law and to comprehension of the functioning of the entire [judicial] system." *Nebraska Press*, 427 U.S. at 587 (Powell, J., concurring). In this regard, the media acts as the surrogate for the public. "Instead of acquiring information about trials by firsthand observation or by word of mouth from those who attended, people now acquire it chiefly through the print and electronic media." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572-73 (1980). By imposing the gag and sealing order, counsel, parties, witnesses, victims and family members of victims involved, who should be the most knowledgeable and reliable sources, are prohibited from sharing their perspectives with the News Media Interveners and other members of the press. The gag order acts not only act as a restraint upon the News Media Interveners' ability to gather and disseminate the news, but also erects a barrier to the public's full understanding of these newsworthy proceedings.

Last, it is important to recognize the caution Court of Appeals for the Fourth Circuit recently directed to district judges in *Doe v. Pub. Citizen*, 749 F.3d 246, 266 (4th Cir. 2014) regarding the importance of public access to the judicial process:

"We have cautioned district courts that the right of public access, whether arising under the First Amendment or the common law, "may be abrogated only in unusual circumstances." *Stone*, 855 F.2d at 182. [P]ublic access promotes not only the public's interest in monitoring the functioning of the courts but also the integrity of the judiciary. See *Columbus–Am. Discovery Grp.*, 203 F.3d at 303. "Public access serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness." *Littlejohn v. Bic Corp.*, 851 F.2d 673, 682 (3d Cir.1988). As Judge Easterbrook, writing for the Seventh Circuit, stated: "The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like a fiat and requires rigorous justification." *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir.2006)."

## CONCLUSION

For the foregoing reasons, the News Media Interveners request this Court enter an appropriate order granting their motion to intervene, and to reconsider and vacate the November 14, 2014 gag and sealing order.

THE WALL STREET JOURNAL, THE ASSOCIATED PRESS, THE CHARLESTON GAZETTE, NATIONAL PUBLIC RADIO, INC., AND THE FRIENDS OF WEST VIRGINIA PUBLIC BROADCASTING, INC., Interveners,
*By Counsel*

_____
Sean P. McGinley    (WV Bar No. 5837)
DiTRAPANO, BARRETT DiPIERO
McGINLEY & SIMMONS, PLLC
604 Virginia St., E.
Charleston, WV 25301
(304) 342-0133 Telephone
304) 342-4605 (fax)
http://www.dbdlawfirm.com

# CERTIFICATE OF SERVICE

I, Sean P. McGinley, hereby certify that on this 1st day of December, 2014, I served this **MEMORANDUM IN SUPPORT OF MOTION OF THE WALL STREET JOURNAL, THE ASSOCIATED PRESS, CHARLESTON GAZETTE, NATIONAL PUBLIC RADIO, INC., AND THE FRIENDS OF WEST VIRGINIA PUBLIC BROADCASTING, INC., TO INTERVENE FOR THE LIMITED PURPOSE OF MOVING THE COURT TO RECONSIDER AND VACATE THE NOVEMBER 14, 2014 GAG AND SEALING ORDER** by facsimile[13] on the following counsel of record:

R. Booth Goodwin, II, Esq.
Steve R. Ruby, Esq.
United States Attorney
P.O. Box 1713
Charleston, WV 25301
Fax: 304-347-5104

John H. Tinney, Jr. Esq.
The Tinney Law Firm, PLLC
P.O. Box 3752
Charleston, WV 25311
Fax: 304-720-3315

William W. Taylor, III, Esq.
Miles Clark, Esq.
Eric R. Delinsky, Esq.
Steven Herman, Esq.
Zuckerman Spaeder, LLP
1800 M Street, N.W., Suite 1000
Washington, DC 20036-5807
Fax: 202-822-8106

_____
Sean P. McGinley, Esquire (WV Bar #5836)

---

[13] In light of the November 14, 2014 Order, undersigned counsel inquired about the possibility of electronic filing with the Clerk's office and was instructed to file the instant motion and memoranda as hard copies with the Clerk. Counsel of record thus have been served by facsimile.