# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# BECKLEY DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 5:14-cr-00244 |
| DONALD L. BLANKENSHIP | ) ) ) | |

**REPLY IN SUPPORT OF DEFENSE MOTION NO. 4,
MOTION TO DISMISS INDICTMENT FOR
<u>SELECTIVE AND VINDICTIVE PROSECUTION</u>**

Despite having more than four years to bring charges, the government indicted Mr. Blankenship, and Mr. Blankenship alone, only after he exercised his First Amendment right to free speech by releasing a controversial documentary disputing the government's theories about UBB and criticizing federal regulators. Stunningly, the government's opposition does not dispute the core facts that demonstrate the indictment was not a coincidence and that the government in fact brought this prosecution against Mr. Blankenship, vindictively and selectively, in retaliation for his free speech. Indeed, the main feature of the government's response is what, through its silence, it concedes. It establishes a record of undisputed facts that further require dismissal of the indictment or, at the bare minimum, discovery.

> **A. The Government Does Not Dispute the Central Facts That Prove the Vindictive and Selective Nature of the Indictment.**

The government does not dispute – and therefore concedes – the central facts which establish that the charges in this case were brought in retaliation for Mr. Blankenship's documentary.

First, the government does not dispute that, prior to the release of the documentary, it repeatedly told Mr. Blankenship's counsel that Mr. Blankenship was not a target of the investigation, including in April 2013.

Second, the government does not dispute that, in the months prior to the release of the documentary, its investigation had gone nearly dormant.

Third, the government does not dispute that, after the publication of Mr. Blankenship's documentary in April 2014, the prosecution ramped up its investigation and then indicted Mr. Blankenship.

Fourth, the government does not dispute that, after the release of the documentary, it breached its previous assurance to defense counsel that it would provide notice if Mr. Blankenship's status in the investigation changed, giving the defense no notice that Mr. Blankenship had become a target and no pre-indictment opportunity to present its positions.

Fifth, and as unmistakably suggested by the above facts, the government does not dispute that it was offended by the documentary and that, as it later submitted in writing to the Court, it viewed the documentary as an "extreme and unorthodox" attempt to "obtain influence" sufficient to render Mr. Blankenship a danger to the community. ECF No. 40, at 5.

Sixth, the government does not dispute that, after the release of the documentary, it engaged in communication with Senator Manchin about Mr. Blankenship, at the same time that Senator Manchin was pledging publicly to use "every legal recourse" against the film's producer and demanding that it "cease distribution of [the documentary]" and "remove the documentary from any websites where you posted it." Mem. in Supp. of Mot. No. 4 at Exs. G, H.

Seventh, the government does not dispute that it has charged Mr. Blankenship with a vast conspiracy to violate mine safety laws at UBB, based on 835 alleged safety violations, but that it

has not charged a single other co-conspirator with this offense – not any of the miners who allegedly committed the violations, not the mine president or any mine-level superintendent, and not any of the corporate executives who stood between Mr. Blankenship and the mine. The government also does not dispute that it has charged Mr. Blankenship with false statements made by the company, but that it has not charged a single one of the executives or lawyers who wrote, edited, or signed the statements and who allegedly "aided and abetted" the offense. Indictment ¶¶ 106, 108. The government does not dispute that, while these offenses allege concerted conduct involving many other individuals, it has charged only the individual who released the documentary.

And eighth, the government does not dispute that Massey's competitors ran mines with safety violations comparable in number to and even greater than UBB, but that the United States has never charged any of the executives of these companies with conspiracy to violate safety standards, as it has charged Mr. Blankenship here. Nor does it dispute that such companies routinely made comparable public statements about their safety efforts, notwithstanding the number of violations for which each was cited, but that the United States never has charged any of the executives of these companies with false statements, as it has charged Mr. Blankenship here. It does not dispute that, industry-wide, the United States has charged with these offenses only the executive who released the documentary

These facts more than demonstrate that the government has singled out and indicted Mr. Blankenship in retaliation for his documentary and free speech. And the record now is clear that these facts are undisputed.

Underscoring the need for dismissal, the government not only leaves these facts undisputed, it declines to offer – much less substantiate – an alternative explanation for them.

3

For instance, it offers no alternative explanation for why Mr. Blankenship suddenly was indicted following the release of the documentary, when more than four years had already passed, the evidence had not changed, and Mr. Blankenship – by the government's own representations to counsel – was previously not even a target. Likewise, it offers no alternative explanation for why these charges single out Mr. Blankenship for prosecution – not only from the other Massey employees who the indictment alleges also were culpable, but also from all of the other executives in the industry. The inescapable conclusion – and the only explanation in the record for what changed after April 2013 – is that the government decided to prosecute Mr. Blankenship because of his documentary.

### B. The Government's Arguments Lack Merit.

Rather than dispute or provide an alternate explanation for this evidence, the government offers a series of strained arguments that miss the mark and are designed to distract attention from the undisputed facts addressed above.

**Prosecutorial Discretion:** The government makes much of the "broad discretion" that it possesses with regard to its charging decisions. Opp'n at 2-3. But it is well-established that the Constitution – here, both the First Amendment and the Due Process Clause – constrains that discretion when a prosecution has an improper motive. *United States v. Batchelder*, 442 U.S. 114, 125 n.9 (1979). "The First Amendment bars a criminal prosecution where the proceeding is motivated by the improper purpose of interfering with the defendant's constitutionally protected speech." *United States v. P.H.E., Inc.*, 965 F.2d 848, 849 (10th Cir. 1992) (citations omitted). Such a prosecution "must be enjoined or dismissed, irrespective of whether the challenged action could possibly be found to be unlawful." *Id.* at 853 (citations omitted); *see also Hunt v. Tucker*, 875 F. Supp. 1487, 1501 (N.D. Ala. 1995), *aff'd*, 93 F.3d 735 (11th Cir. 1996) (citing *Arcara v.*

*Cloud Books, Inc*., 478 U.S. 697, 707 n.4 (1986)) ("A prosecutor may not select an individual for prosecution solely because of the exercise of rights under the First Amendment."). The Due Process Clause also serves as a bar on prosecutions brought in retaliation for the exercise of First Amendment rights. For example, in *United States v. Rosenthal*, the court dismissed charges against a defendant where the evidence suggested that the prosecution had brought the charges to retaliate against the defendant for engaging in protected speech and publicly complaining about the fairness of his trial. No. CR 02-0053 CRB, 2007 WL 801647, at *4-5 (N.D. Cal. Mar. 14, 2007). Similarly, in *United States v. Falk*, the Seventh Circuit vacated the conviction of a defendant where the evidence suggested that he had been prosecuted for not possessing a selective service registration card in order to punish him for exercising his First Amendment rights to oppose the draft and the war in Vietnam. 479 F.2d 616, 620-24 (7th Cir. 1973).

**Other Massey Prosecutions:** The government lists prosecutions of other individuals and entities from Massey in an effort to create the impression that Mr. Blankenship is not being singled out. This is mere distraction. The inquiry here does not turn on other charges at other times. It turns on the charges in the indictment. This is where the government's vindictiveness and selectivity becomes clear.

As to Count One, the government does not dispute that not a single other person ever has been charged with the alleged UBB conspiracy, notwithstanding its breadth and its allegations of other coconspirators. Nor does the government dispute that, even outside of the company, no executive has ever been charged – as Mr. Blankenship is in Count One – with violations of the Mine Act that he was not personally and directly involved in (much less with 835 such violations).

5

As to Count Two, no person at Massey like Mr. Blankenship – who did not work at the mine, who was not present for the execution of the scheme, and who is not alleged in the indictment to ever even have been in the mine – has ever been charged for such an offense. Nor, as the government also concedes, has any such executive at any other mine company across the country.[1]

And Counts Three and Four are unprecedented in their attempt to hold Mr. Blankenship, and Mr. Blankenship *only*, liable for non-actionable statements in two public documents that were not authored, edited, or signed by him. In this regard, none of the individuals at Massey who allegedly "aided and abetted" these alleged offenses have been charged. Indictment ¶¶ 106, 108. Nor has the United States ever initiated a prosecution against any of the executives of the other companies in the industry that have regularly made comparable statements in the face of comparable numbers of safety violations. *See* Mem. in Supp. of Mot. No. 4 at 19-20.[2]

There is no merit whatsoever to the contention that the indictment does not single out Mr. Blankenship. It plainly does.

---

[1] While Gary May voluntarily pled guilty to an information charging a similar conspiracy, Mr. May – as that information makes clear – was present at the mine. Mem. in Supp. of Mot. No. 4 at Ex. M. While David Hughart also pled guilty to a similar conspiracy, it was at an altogether different mine. Moreover, Mr. Hughart, a mine-level official, also was present at the mine. Elbert Stover, who was not even charged with a like conspiracy but was charged with lying to investigators about the alleged practice underlying it, also was present at the mine. By contrast, no one like Mr. Blankenship – who was <u>not</u> present at the mine – has ever before been charged.

[2] The government attempts to minimize this by suggesting that it lacks evidence of any such conduct by others in this district. Opp'n at 19. But the opening brief provided such evidence. It cited evidence of other companies – including but not limited to Massey's successor, Alpha – making comparable public statements in the face of comparable numbers of violations. *See* Mem. in Supp. of Mot. No. 4 at 19-20; *see also id.* at 17 n.6. Yet no other executive at any of the companies cited in the opening brief, in the industry, in this district, or in any other district has been prosecuted for securities fraud as Mr. Blankenship is here. Mr. Blankenship therefore is being treated disparately from other executives, not only in this district, but also in other districts. In this regard, any suggestion that it is not relevant that Mr. Blankenship is being singled out nationwide is without basis.

**Singular Prosecutorial Profile:** The government contends that it prosecuted Mr. Blankenship not because of the documentary, but rather because "substantial evidence of Defendant's crimes was developed and a 'singular prosecutorial profile' emerged." Opp'n at 7 (citation omitted); *see also id.* at 19-20 (alleging that Mr. Blankenship "micromanaged his mines to an unusual degree" and thus "situated himself differently than most other executives"); *id.* at 22 ("the United States is not aware of another coal CEO under whose management there has been such a proven record of willful misconduct").

The facts prove the government is not being candid. In 2013, after three years of investigation, Mr. Blankenship was not even an investigative target. It strains credulity to suggest that, all of the sudden, in 2014, a "singular prosecutorial profile" emerged that the government did not know about in 2013 when it did not deem Mr. Blankenship to be a target. Indeed, the government offers no explanation whatsoever for how a "singular prosecutorial profile," which did not exist in 2013 after three years of investigation, possibly could have materialized in 2014 when the government indicted Mr. Blankenship. It does not even suggest that new evidence against Mr. Blankenship emerged in the interim. And for good reason: to our knowledge, none did.[3]

The only new fact that emerged between 2013 and the November 2014 indictment to change Mr. Blankenship's "profile" was the release of his documentary.

**Review of the Documentary by the United States Attorney's Office:** The government contends that Assistant United States Attorney Ruby and United States Attorney Goodwin have not viewed the documentary and, therefore, the prosecution cannot be related to the

---

[3] Indeed, even apart from the United States Attorney's own investigation, the "profile" alleged in the indictment was described in a series of government reports issued in 2011 and early 2012, including in a report issued by MSHA. *See* Mem. in Supp. of Mot. No. 3 at 32-38 & accompanying exhibits. Yet Mr. Blankenship remained not even a target of the investigation for years afterward.

7

documentary. Opp'n at 17. It offers no declaration or other proof of this. Regardless, it is immaterial. Whether or not the prosecutors have personally viewed the documentary and have "a general idea of its subject matter" or a more detailed understanding, they already made their position on the documentary clear. *Id.* They have stated in writing to this Court that they view the documentary as an "extreme and unorthodox" attempt to "obtain influence" sufficient to render Mr. Blankenship a danger to the community. ECF No. 40, at 5.

If the prosecutors indeed made this statement to the Court, and secured conditions of release on the basis of it, without ever even viewing the documentary, then this uninformed and brazen use of the documentary to restrict Mr. Blankenship's liberties would only further prove their animus toward Mr. Blankenship.[4]

**Notice of Target Status:** The government claims that Mr. Blankenship was not "entitled to advance notice of the impending Indictment" and therefore that the government's failure to provide Mr. Blankenship with such notice is not evidence of animus. Opp'n at 12-13. However, the dispositive point – which the government concedes – is that prior to the documentary, the government did not deem Mr. Blankenship to be a target and communicated that to his counsel. Then, after the documentary, the government changed its mind.

Secondarily, the government's conduct in concealing from defense counsel this change in Mr. Blankenship's status was itself vindictive in nature. The government argues that the defense was not legally "entitled" to such notice. Regardless of whether the defense was legally entitled to it or not, the government *promised* to provide it. The government broke its promise. The

---

[4] Underscoring its animus based on Mr. Blankenship's documentary and other speech, the government criticizes Mr. Blankenship in its brief for not taking down his website. The government writes that "Defendant has made little attempt to comply with the [gag] order, in that his blog, www.donblankenship.com, and his videos remain publicly available on the internet" – even though Mr. Blankenship has engaged in absolutely no speech prohibited by the order since his indictment and has added nothing prohibited to this website or to www.ubbneveragain.com. Opp'n at 18.

8

government does not dispute that it made this promise, nor that it broke it. Nor does it dispute that the United States Attorneys' Manual "encourage[s]" prosecutors to provide such notice. U.S. Attorney's Manual § 9-11.153; *see also United States v. Fieger*, No. 07-CR-20414, 2008 WL 205244, at *15 (E.D. Mich. Feb. 1, 2008) ("find[ing] that 'some evidence' of vindictive prosecution is present here where the local U.S. Attorney's office failed to follow the DOJ Manual" by not consulting with the Department of Justice's Public Integrity Section).

The government attempts to explain this by arguing that it "concluded here that the risks of prior notification outweighed any possible benefit to the case." Opp'n at 13. That is absurd. Moreover, this statement only begs the question of what changed after April 2013 when the United States Attorney's Office assured defense counsel that such notification would be provided. The only plausible answer – particularly given the government's inability to provide any other explanation – is the release of Mr. Blankenship's documentary.

**The Animus of Others:** The government contends that animus or bad faith of others (such as Senator Manchin, UMWA President Cecil Roberts, MSHA, and MSHA officials) should not be imputed to the prosecutors in this case. Again, the government misses the point. The focus here is on the government's own animus, not that of others. In that regard, this motion presents direct evidence that the prosecution itself has animus based on Mr. Blankenship's documentary, including without limitation: (1) its own statements that before the documentary Mr. Blankenship was not even a target, and its indictment of Mr. Blankenship only after the documentary; (2) its own comments that the documentary was "an extreme and unorthodox" attempt to "obtain influence" and its use of the documentary to justify restrictions on Mr. Blankenship's conditions of release and thus his liberties; and (3) the degree to which the charged conspiracy to violate safety standards and the charged false statements single out Mr.

9

Blankenship for prosecution, notwithstanding that they allege concerted action involving many other individuals.

While the defense indeed has presented proof regarding the animus of Senator Manchin and others toward Mr. Blankenship, it has made plain that such proof is relevant because of these individuals' connections to the prosecutors and/or their influence over the prosecutors – especially U.S. Attorney Goodwin. *Cf. United States v. Adams*, 870 F.2d 1140, 1146 (6th Cir. 1989) (granting discovery into whether the Department of Justice had prosecuted defendant because of defendant's discrimination suit against the EEOC and noting that "if the EEOC was able to prevail upon the Department of Justice to institute a prosecution that would not have been undertaken but for Ms. Adams' exercise of her statutory right to sue, it does not seem to us that EEOC's motivation is irrelevant."). The government has not disputed that U.S. Attorney Goodwin was in contact with Senator Manchin in the wake of the documentary (during the time when Senator Manchin was making public statements excoriating the documentary and demanding that it be taken offline). Nor does it dispute that the Goodwin law firm was among the biggest donors to Senator Manchin and that the Goodwin family was so close to Senator Manchin that he hired Carte Goodwin as his chief counsel and then appointed him to a United States Senate seat. Accordingly, given the likelihood that Senator Manchin was able "to prevail upon" U.S. Attorney Goodwin to institute this prosecution, the animus that Senator Manchin – and others in the West Virginia Democratic establishment – feels toward Mr. Blankenship is decidedly relevant. *Id.*

**Timing of the Indictment:** Finally, the government asserts that the timing of the indictment is not evidence of vindictiveness, but fails to provide *any explanation whatsoever* for its timing. In April 2013, the prosecutors assured undersigned counsel that Mr. Blankenship was

10

not a target.  By the spring of 2014, the government's investigation had essentially gone dormant.  Then, Mr. Blankenship released his documentary, the investigation suddenly sprang back to life, and, six months later, in November 2014, Mr. Blankenship was indicted (with no notice) based on conduct that the government was aware of in at least 2011.  This timing leads inescapably to the conclusion that something changed between April 2013 and November 2014.  It was not the discovery of any new evidence.  What changed was the release of Mr. Blankenship's documentary.

Other cases have consistently held that the timing of a prosecution provides evidence of improper motive.  *See, e.g.*, *Falk*, 479 F.2d at 622 ("The particular circumstances of this case which overcome the initial presumption of legal regularity in enforcement of penal laws also includes the lengthy delay in bringing the indictment."); *United States v. Tobin*, 598 F. Supp. 2d 125, 129 (D. Me. 2009) (dismissing the indictment where the government could not explain its decision to file more severe charges against defendant following defendant's appeal and stating "the government has not identified any newly discovered evidence that might justify its charging decisions. . . .  It possesses the same evidence today as four years ago. . . .").  The same is true here.

### C. At A Minimum, Mr. Blankenship Is Entitled to Discovery.

While this motion seeks dismissal first, the government opposes even discovery on vindictiveness and selectivity.  In so doing, it makes the remarkable suggestion, based on *Touhy* regulations, that it "may not" produce the discovery even if ordered to by this Court.  Opp'n at 7; *see also id.* at 6-7 (arguing that "no Department attorney responding to the demand is permitted to make any representation that implies the Department would, in fact, comply with the demand if directed to do so by a court.").  That extreme argument creates a compelling inference that the

government possesses relevant documents that it is willing to go to great lengths to avoid producing.

Of course, the government's argument is without basis. As far as the defense can tell, in all of the cases addressing discovery into selective or vindictive prosecution claims, the question of compliance with *Touhy* regulations has never come up. That is because, under such circumstances, the court, and not the executive, decides whether evidence should be produced. Indeed,

> in the criminal field, [] it has been held that the Government can invoke its evidentiary privileges only at the price of letting the defendant go free. The rationale of the criminal cases is that, since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense.

*United States v. Reynolds*, 345 U.S. 1, 12 (1953) (citation omitted). In other words, "[j]udicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *Id.* at 9-10. This is particularly true in cases alleging prosecutorial misconduct.[5]

To obtain discovery here, Mr. Blankenship need only offer "some evidence" of the elements of his claim. *United States v. Hastings*, 126 F.3d 310, 313 (4th Cir. 1997) (citation omitted). "[T]he 'some evidence' standard is not a significant hurdle." *Fieger*, 2008 WL 205244, at *6, *15 (granting discovery in a vindictive prosecution case where the "the local U.S.

---

[5] Furthermore, the government appears to misread its own *Touhy* regulations. Contrary to the government's assertion that the "regulations require an applicant to make a formal request for testimony *or for the production of documents*," Opp'n at 6 (emphasis added), in fact, the regulations require a formal request only *for oral testimony*. 28 C.F.R. § 16.23(c) ("If *oral testimony* is sought by a demand in a case or matter in which the United States is a party. . . ." (emphasis added)). Furthermore, far from "prohibit[ing]" the testimony or production of information "absent departmental authorization," Opp'n 6, the Department of Justice regulations state that "[e]very attorney in the Department of Justice in charge of any case or matter in which the United States is a party *is authorized*, after consultation . . . , to reveal and furnish" any documents or information "as such attorney shall deem necessary or desirable to the discharge of the attorney's official duties." 28 C.F.R. § 16.23(a) (emphasis added).

12

Attorney's office failed to follow the DOJ Manual" and did not consult with the Department of Justice's Public Integrity Section prior to bringing case). "Obviously, a defendant need not prove his case in order to justify discovery on an issue." *United States v. Jones*, 159 F.3d 969, 978 (6th Cir. 1998) (granting discovery on selective prosecution claim where defendant presented evidence that law enforcement referred only him and his co-defendant for a federal prosecution involving crack cocaine, but failed to refer for federal prosecution eight non-African-Americans).

As set forth above, Mr. Blankenship has amassed more than "some evidence" about the vindictive and selective nature of this prosecution, and the vast majority of that evidence is undisputed by the government. At the bare minimum, the defense is entitled to discovery on the issues raised by this motion. *Accord Adams*, 870 F.2d at 1146 ("It is hard to see, indeed, how the defendants could have gone much farther than they did without the benefit of discovery on the process through which this prosecution was initiated. It may well be that no fire will be discovered under all the smoke, but there is enough smoke here, in our view, to warrant the unusual step of letting the defendants find out how this unusual prosecution came about.").

## CONCLUSION

For the foregoing reasons, Mr. Blankenship respectfully requests that the indictment be dismissed with prejudice.

Dated: February 27, 2015

Respectfully submitted,

*/s/ William W. Taylor, III*
William W. Taylor, III
Blair G. Brown
Eric R. Delinsky
R. Miles Clark
Steven N. Herman
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Washington, DC 20036
202-778-1800 (phone)
202-822-8106 (fax)
wtaylor@zuckerman.com
bbrown@zuckerman.com
edelinsky@zuckerman.com
mclark@zuckerman.com
sherman@zuckerman.com

*/s/ James A. Walls*
James A. Walls (WVSB #5175)
SPILMAN THOMAS & BATTLE, PLLC
48 Donley Street, Suite 800
P.O. Box 615
Morgantown, WV 26501
304-291-7947 (phone)
304-291-7979 (fax)
jwalls@spilmanlaw.com

*Counsel for Donald L. Blankenship*

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing has been electronically filed and service has been made by virtue of such electronic filing this 27th day of February 2015 on:

R. Booth Goodwin, II
Steven R. Ruby
United States Attorney's Office
P.O. Box 1713
Charleston, WV 25326-1713

                                           */s/ Eric R. Delinsky*
                                           Eric R. Delinsky