# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    CRIMINAL ACTION NO. 5:14-cr-00244

DONALD L. BLANKENSHIP,

        Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed *Defense Motion No. 1, Motion to Disqualify this Court and All the Judges of the United States District Court for the Southern District of West Virginia* (Document 78), the *Memorandum in Support* (Document 79), the *United States' Response to Defendant's Motion No. 1, Motion to Disqualify this Court and All the Judges of the United States District Court for the Southern District of West Virginia* (Document 126), the *Reply in Support of Defense Motion No. 1, Motion to Disqualify this Court and all the Judges of the United States District Court for the Southern District of West Virginia* (Document 143), as well as all exhibits and attachments filed therewith. After careful consideration of the parties' submissions and the applicable law, the Court finds the Defendant's motion should be denied.

## FACTUAL AND PROCEDURAL HISTORY

A grand jury meeting in Charleston, West Virginia, returned a four count Indictment (Document 1) against the Defendant on November 13, 2014. Count One charged Donald L. Blankenship with conspiracy to willfully violate mandatory mine safety and health standards

under the Mine Act, Count Two alleged a conspiracy to defraud the United States by impeding the Mine Health Safety Administration (MSHA) in the administration and enforcement of mine safety and health laws, while Counts Three and Four alleged securities law violations. The Defendant made his initial appearance at an arraignment and bail hearing on November 20, 2014, and was released the same day after posting bail and agreeing to abide by the terms of an order setting forth the conditions of release. (*See* Documents 13-19.) On March 10, 2015, the Charleston Grand Jury returned a three count Superseding Indictment (Document 169) against Donald L. Blankenship. The substance of the charges remains the same. However, Counts One and Two of the original indictment were merged into superseding Count One. The original Count Three is now Count Two, and Count Four of the original indictment is Count Three in the superseding indictment.

The *Defendant's Motion to Exclude Time Under the Speedy Trial Act, Re-Set Motions Deadline, Vacate Trial Date, and Set Scheduling Conference* (Document 29) was filed on December 2, 2014, and a hearing was held on December 17, 2014. After hearing the parties' arguments, the Court orally granted the Defendant's motion to continue the trial date, with a written order to follow.

On January 5, 2015, the Court entered a *Criminal Scheduling Order* (Document 61) that set several pertinent dates. Specifically, the order required that all motions to dismiss, suppress, and any motions *in limine* "be filed no later than February 6, 2015." The order also specified February 6, 2015, as the filing deadline for additional pretrial motions, and scheduled a pretrial motions hearing for March 3, 2015.[1] The *Defendant's Motion for Extension of Time to File*

---

1 The Court notes that the March 3, 2015 pretrial motions hearing was "continued generally" by the Magistrate Judge's February 26, 2015 *Order* (Document 142).

*Motion to Transfer this Case to Another District for Trial* (Document 71) was filed on January 28, 2015, and the Court granted said motion in its February 4, 2015 *Order* (Document 76), extending the filing deadline for a motion to change venue to February 20, 2015.

On February 6, 2015, prior to the return of the superseding indictment, the Defendant filed nineteen (19) pretrial motions including the instant one. The *United States' Motion for Extension of Time to Respond to Pretrial Motions* (Document 115) was filed on February 10, 2015. On February 12, 2015, the Court entered an *Order* (Document 116) granting the motion in part, setting Friday, February 20, 2015 as the "deadline for the filing of the United States' responses to the Defendant's pretrial motions."

The Defendant filed his *Defense Motion No. 1, Motion to Disqualify this Court and All the Judges of the United States District Court for the Southern District of West Virginia* on February 6, 2015. The United States filed its Response on February 20, 2015, and the Defendant's Reply was filed on February 26, 2015. The matter is ripe for ruling.

## APPLICABLE LAW

28 U.S.C. § 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. 455(a).[2] In *United States v. Cherry*, 330 F.3d 658 (4th Cir. 2003), the Fourth Circuit stated the standard to be applied when a presiding district judge's disqualification is at issue under Section 455(a) is as follows:

> A federal judge is obliged to recuse himself if a person with knowledge of the relevant facts might reasonably question his impartiality. 28 U.S.C. § 455(a). The test is an objective one: as we have previously observed, a judge must disqualify

---

2 Canon 3(C)(1)(d)(ii) of the Code of Conduct for United States Judges requires disqualification under the same circumstance.

himself whenever his 'impartiality might reasonably be questioned.' In re Beard, 811 F.2d 818, 827 (4th Cir. 1987)(quoting 28 U.S.C. § 455(a)). In other words, '[d]isqualification is required if a reasonable factual basis exists for doubting the judge's impartiality. The inquiry is whether a reasonable person would have a reasonable basis for questioning the judge's impartiality, not whether the judge is in fact impartial.' In re Beard, 811 F.2d at 827 (citation omitted). A presiding judge is not, however, required to recuse himself simply because of 'unsupported, irrational or highly tenuous speculation.' United States v. DeTemple, 162 F.3d 279, 287 (4th Cir. 1998)(internal quotation marks omitted). Put simply, '[t]he proper test to be applied is whether another with knowledge of all of the circumstances might reasonably question the judge's impartiality.' *Beard*, 811 F.2d at 827.

*Cherry*, 330 F.3d at 665.

Moreover, "[a] presiding judge need not recuse himself simply because he possesses some tangential relationship to the proceedings." (*Id.*) The Fourth Circuit has declared that "[a]pplication of the objective standard requires a nuanced approach. On the one hand, we must keep in mind that the hypothetical reasonable observer is not a judge himself or a judicial colleague but a person outside the judicial system." *DeTemple*, 162 F.3d at 287. Yet, "[o]n the other hand, a reasonable outside observer is not a person unduly suspicious or concerned about trivial risk that a judge may be biased." (*Id.*) Finally the Court noted that "[t]here is always some risk of bias; to constitute grounds for disqualification, the probability that a judge will decide a case on the basis of other than the merits must be more than 'trivial'" (*Id.*), (citing *In the Matter of Mason*, 916 F.2d 384, 386 (7th Cir. 1990)). Generally, disqualifying partiality or its appearance "must derive from an extra-judicial source" and "[t]he nature of the judge's bias must be personal and not judicial." *In re Beard*, 811 F.2d 818, 827 (4th Cir. 1987)(citation omitted.)

## DISCUSSION

The Defendant argues that no district judge sitting within the Southern District of West Virginia can preside in this matter in view of the fact that Booth Goodwin, United States Attorney

4

for the Southern District of West Virginia, is the son of the Honorable Joseph R. Goodwin, United States District Judge, presiding within the same district. The Defendant points to the fact that he has filed a Motion to Dismiss for Selective and Vindictive Prosecution (Document 81) and a Motion to Dismiss for Improper and Misleading Conduct before the Grand Jury (Document 83) alleging misconduct by the United States Attorney, in obtaining the indictment, and other motions challenging the United States' prosecution of this matter. Specifically, the Defendant argues, in view of the relationship between Judge Goodwin and the United States Attorney, and considering the allegations of misconduct brought in the Defendant's motions, the impartiality of any District Judge sitting within the District might reasonably be questioned. The Defendant states that "[a] reasonable person would assume that no colleague of Judge Goodwin would want to be the instrument of his disappointment, and therefore would doubt the ability of any of the judges in this district to be impartial in these circumstances . . . ." (Document 79 at 2- 3.)

The Defendant cites two cases, *In re Bulger*, 710 F.3d 42 (1st Cir. 2013), and *United States v. Gordon*, 354 F.Supp.2d 524 (D.Del. 2005), as "strikingly instructive" and having "circumstances remarkably similar to the ones present[ed] here." (Document 79 at 7.) In the first of these cases, Mr. Bulger was charged with several offenses, including violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act. The defendant was described as "a leader of a criminal organization in Boston from 1972 to 1999." *Bulger*, 710 F.3d at 43. His case was randomly assigned to District Judge Richard G. Stearns who, earlier in his career, had held the positions of First Assistant United States Attorney, Chief of the General Crimes Unit, Chief of the Criminal Division and Senior Litigation Counsel, in the U.S. Attorney's Office within the district. Importantly, he had held one or more of these positions during the period of time covered in

5

Bulger's indictment.

Claiming that he had been granted immunity against federal prosecution, Bulger moved to recuse Judge Stearns under 28 U.S.C. § 455(a), alleging that a reasonable person would question whether the Judge could be impartial given the defendant's immunity defense and the Judge having held positions of high responsibility in the U.S. Attorney's Office during part of the relevant period. He further alleged that Judge Stearns likely would have had personal relationships with numerous witnesses and that the Judge would be a material witness requiring disqualification under §455(b), as well. (*Id*. at 44 - 45.) Judge Stearns denied the recusal motion and Bulger filed a petition for a writ of mandamus seeking his removal. The First Circuit Court of Appeals granted Bulger's petition.

Supreme Court Justice Souter, sitting by designation and writing the Court's decision in the case, framed the issue as being "is it clear that a reasonable person might question Judge Stearns' ability to remain impartial in hearing the case?" (*Id*. at 46.) He further stated:

> The point under § 455(a) is not his actual state of mind at a particular time, but the existence of facts that would prompt a reasonable question in the mind of a well-informed person about the judge's capacity for impartiality in the course of the trial and its preliminaries.

(*Id*.) He then concluded:

> Given the institutional ties described here, the reasonable person might well question whether a judge who bore supervisory responsibility for prosecutorial activities during some of the time at issue could suppress his inevitable feelings and remain impartial when asked to determine how far to delve into the relationship between defendant and Government, and to preside over whatever enquiry may ultimately be conducted. On this record, that question could not reasonably be avoided.

(*Id.* at 48-49.) Relying upon this language, the Defendant argues:

> As in *Bulger*, Mr. Blankenship asserts claims concerning the conduct of federal

6

prosecutors in charge of his prosecution. As in *Bulger*, Mr. Blankenship's claims will, if successful, require dismissal of the indictment. And, as in *Bulger*, Mr. Blankenship's claims, if accepted, will cause significant harm to the public standing of an office closely affiliated with this Court. Indeed, the appearance of bias would be far more direct here than it was in *Bulger*. The relationship that creates the appearance of bias is current and continuing, not thirty years old. To decide Mr. Blankenship's claims, even to decide how much inquiry they require, the presiding judge will have to evaluate the professional conduct of the son of a colleague on this very court. (Document 79 at 8.)

In *Gordon*, two defendants charged with conspiracy, racketeering, wire fraud and mail fraud moved for the recusal of the presiding District Judge Jordan, under Section 455(a), alleging that another district judge of the same court, Judge Farnan, possessed important evidence in their case. Specifically, they alleged this colleague of Judge Jordan had business and personal connections with the defendants and they intended to seek documents by asking Judge Jordan to issue subpoenas to Judge Farnan and businesses owned or controlled by him. Because Judge Jordan perceived that Judge Farnan would view the defendants' efforts to involve him in the matter as an attack upon his "reputational interest" and resist them, Judge Jordan stated that "the 'threat' the Defendants have made to litigate over a subpoena for Judge Farnan's records will involve deciding matters that I cannot properly decide because of reasonable questions that would arise about my impartiality." (*Id.* at 529-30.)

Based upon *Gordon*, the Defendant asserts that given the serious allegations of misconduct, raised in his motions, by United States Attorney Booth Goodwin, Judge Goodwin's son, and the close collegial and personal relationship of the district judges, a reasonable person would question the impartiality of any district judge sitting here who is required to consider and rule upon those allegations. (Document 79 at 9.)

Next, the Defendant contends that he "is a major figure in West Virginia politics, industry,

7

and culture. He is one of the most outspoken, recognizable, and controversial figures in the state." (*Id.* at 10) He cites editorial comments in national and local news publications and the comments of West Virginia's United States Senators lauding his indictment, and points out how closely news organizations have covered and are covering this and other related matters. The Defendant states that his

> "status as a public figure makes these proceedings, and the alleged misconduct by the U.S. Attorney's Office, with the personal involvement of the son of an active judge in this district, politically significant. Fairness and the appearance of fairness are essential to due process in every criminal prosecution. When the defendant is as controversial and despised as Mr. Blankenship is to substantial groups of West Virginians, it is even more important that there be no doubts about the impartiality of the judge presiding over the case."

(*Id.*) The Defendant asserts that no "judge who the public reasonably perceives is a friend of the Goodwin family" should delve into such politically charged matters. (*Id*. at 11.)

Finally, the Defendant claims that the circumstances which are the basis of his Motion to Dismiss for Vindictive and Selective Prosecution of Defendant for Exercising his First Amendment Rights and Motion to Dismiss for Improper and Misleading Conduct before the Grand Jury are "serious" and have "a substantial factual basis." The Defendant states, specifically, the "substantial factual basis" underlying the allegations of United States Attorney Goodwin's misconduct contained in each motion (*Id.* at 11–12), and urges that the allegations contained in Count Four of the Indictment charging securities fraud are so clearly insufficient that they exemplify that "[t]he selectivity and vindictiveness are palpable." (*Id.* at 13.) Further, he mentions that he has moved for discovery of, among other things, communications between United States Attorney Goodwin and others, including United States Senator Joe Manchin, and potentially, members of the Goodwin family, about his documentary.

8

Contending that rulings on issues raised in his motions will impact United States Attorney Goodwin's professional reputation and the reputation of his office, the Defendant states that "[a] reasonable member of the public will doubt whether a judge sitting on the same court as the U.S. Attorney's father could maintain impartiality while ruling on matters so consequential for the son of his or her associate and – as a reasonable observer from outside the judicial system might reasonably assume – his or her friend." (*Id*. at 14.) In conclusion, the Defendant argues

> "[c]onsider the feeling any judge on this bench would have if he or she found Booth Goodwin's office guilty of grand jury abuse or vindictive prosecution – or merely dismissed a count of the indictment for legal insufficiency – and then faced his father in the hallway the very next day as the decisions were being reported in the media. A reasonable observer from outside the judicial system might reasonably question the impartiality of any judge in this district based on this human concern. That very prospect demonstrates why a judge that has no relationship to any of the Goodwins must make the decision in this case.

(*Id.* at 15.)

In its Response, the United States asserts that disqualification of all of the District Judges in this District, because they might become the instrument of Judge Goodwin's disappointment, is unprecedented. It argues that "[t]he conflicts of interest of one judge are not imputed to other judges. When one judge has a conflict that prevents her from handling a given case, the case is assigned to a different judge on the same court . . .." (Document 126 at 3–4.) The United States contends that if disqualification is required when a presiding judge's ruling in his or her assigned case might cause a fellow judge to be disappointed, "then no judge could ever participate in a case that might be speculated to result in disappointment for another judge on the same court – whatever that may mean." (*Id*. at 5.) The United States argues that such a standard is unworkable because taken to its logical conclusion, "Defendant's principle thus would impute the disqualification list of each judge on a court to every other judge on the court." (*Id*. at 5-8)

9

The United States asserts that whether a presiding district judge will become an instrument of disappointment to a fellow district judge is not a basis for disqualification because a reasonable observer understands that "Article III judges enjoy unique safeguards of their independence, including lifetime tenure and guaranteed salary, precisely to foster the sort of independence that allows them to 'disappoint' their judicial colleagues, if that is what the law requires." (*Id.* at 8.) It cites *United States v. DeTemple*, 162 F.3d 279, 287 (4th Cir. 1998), *cert. denied*, 562 U.S. 1137, 119 S.Ct. 1793, 143 L.Ed.2d 1020 (1999), for the proposition that the more common the fact proposed as a basis for disqualification, the less likely the fact will cause a reasonable observer to question the presiding judge's impartiality. The United States stresses that a reasonable observer would not question the impartiality of a district judge of this district presiding in this case because the district judges have frequently presided over criminal cases in which United States Attorney Goodwin and attorneys in his office have represented the United States. (*Id.* at 9.)

Next, the United States disputes the Defendant's contention that this matter is unique because of United States Attorney Goodwin's alleged misconduct and because this is a "high profile" case. It asserts that

> "[e]very case is important to the lawyers and parties involved in it, whether or not it is what Defendant would call 'high profile.' Every lawyer or party who loses a key ruling or case experiences 'disappointment,' even if the ruling has nothing to do with allegations of misconduct. Misconduct allegations, in any event, are so regrettably common in modern litigation that their existence is not much of a limiting principle."

(*Id.* at 10.)

The United States also disputes Defendant's claim that disqualification is appropriate because of Defendant's "visibility and presence in the media" and because his prosecution is "politically significant." (*Id.* at 12.) It asserts that "[s]uch grounds . . . are not appropriate

10

considerations for disqualification." (*Id.*) Finally, the United States argues that *Bulger* and *Gordon* are not as instructive as Defendant claims (*Id.* at 13-14), and in conclusion, argues as follows:

> Returning to the standard for disqualification, the relevant factual circumstances asserted in the disqualification motion are U.S. Attorney Goodwin's status as the son of Southern District Judge Goodwin, Judge Goodwin's status as a colleague of the other Southern District judges, the Defendant's allegations of misconduct on the part of the government, and Defendant's visibility. Taking these circumstances into account alongside the settled principle of refusing to impute one judge's conflict to others and the almost daily occurrence of U.S. Attorney Goodwin's office representing the government (including oftentimes defending the government's actions) before the Southern District Judges, save Judge Goodwin, an objective reasonable person could not reasonably question the court's impartiality.

(*Id*. at 15.)

The Defendant replies that the United States has not disputed, and has therefore conceded, that disqualification is required under Section 455(a). (Document 143 at 2.) He argues that the United States, misunderstanding the law and misconstruing Defendant's position, "offers a series of flawed arguments regarding the consequences of disqualification in this case and the relationship between this case and others." (*Id.* at 2.) The Defendant claims that he has "never suggested that Judge Goodwin's conflict of interest . . . should be 'imputed' to the other judges in the district." (*Id*. at 3.) Instead, he argues that he "applied the traditional § 455(a) standard, demonstrating that a reasonable member of the public might question whether any judge in this district could remain impartial when adjudicating matters so consequential for the family of a close colleague on this bench." (*Id*.) The Defendant, again, cites to *Gordon* and also cites to *United States v. Sigillito*, 759 F.3d 913, 928 (8th Cir. 2014), and *Egervary v. Young*, 366 F.3d 238, 243 (3d Cir. 2004), as support for his argument that the circumstances require disqualification of all district

11

judges in this district under Section 455(a).[3] (*Id.* at 3–4.)

The Defendant then disputes the United States' claim that the circumstances of this case are not unique, reiterating that "three factors make this case singular: (1) the serious misconduct allegations that have been raised against U.S. Attorney Goodwin and his office; (2) Mr. Goodwin's uniquely personal investment in this litigation; and (3) Mr. Blankenship's status as a public figure in West Virginia." (*Id.* at 5.) The Defendant discusses how, in his opinion, each one of these factors weighs in favor of disqualification. (*Id.* at 5–8.) Finally, the Defendant contends that the United States has failed to distinguish *Bulger* and *Gordon* which "make so clear that disqualification is necessary here." (*Id.* at 8.) The Defendant states that

> "[i]f . . . it was error for the district judge in *Bulger* not to disqualify himself due to his tenuous relationship thirty years before with another government office, then, surely, this Court must also disqualify itself and the other judges of this district due to their current, ongoing, and close relationship with the father of the prosecutor who is accused of serious misconduct in these proceedings and who has an unmistakable personal investment in the outcome of this case."

(*Id*. at 9.)

With respect to *Gordon*, the Defendant refers to the United States' observation that a District Judge in the District of Delaware was "directly involved" in the matter as "a distinction without a difference." (*Id*.) He states that "Judge Goodwin is still intimately involved in these proceedings by virtue of his son – a fact he himself has recognized by disqualifying himself from all proceedings involving the U.S. Attorney's Office – and there will still be an appearance of

---

[3] Disqualification under Section 455(a) was not at issue in *Sigillito*. The court simply mentioned in passing that "the judges of the Eastern District of Missouri recused themselves for an entirely different, more problematic conflict – Sigillito's wife was a law clerk for a judge of the Eastern District of Missouri." *United States v. Sigillito*, 759 F.3d at 928. Likewise, disqualification was not at issue in *Egervary*. The court mentions, without more, that in *Egervary* all the judges of the Middle District of Pennsylvania recused themselves when it became evident that a colleague on that bench might be called as a witness. 366 F.3d at 243.

partiality if one of his colleagues presides over them." (*Id.*) The Defendant proffers that he is attempting to obtain an order requiring United States Attorney Goodwin to produce all communications which he has had about this matter with others, including his father, and states that "[n]o judge on this court should decide whether to force Mr. Goodwin to disclose communications with his father, if they exist." (*Id*. at 9 –10.)

The Court next analyzes the propriety of recusal in light of the parties' submissions and the applicable case law. The question presented under Section 455(a) is whether a reasonable outside observer, aware of all the facts and circumstances and having all relevant information, would conclude that a factual basis exists for questioning the impartiality of the district judges in this district. *DeTemple,* 162 F.3d at 287. "[J]udges are not to recuse themselves lightly under § 455(a)." *United States v. Snyder*, 235 F. 3d 42, 45 (1st Cir. 2000), cert denied, 532 U.S. 1057, 121 S.Ct. 2205 (2001) (citations omitted). "[T]he unnecessary transfer of a case from one judge to another is inherently inefficient and delays the administration of justice…[t]hus, under § 455(a) a judge has a duty to recuse himself if his impartiality can be reasonably questioned; but otherwise he has a duty to sit." (*Id*. at 46.)

The First Circuit Court of Appeals has stated that "[t]ypically cases implicating section 455(a) are fact-specific, and thus *sui generis*. Comparison, therefore, is an inexact science." *In re United States*, 158 F.3d 26, 31 (1st Cir. 1998). Nonetheless, a rough continuum emerges from a study of the case law. The Court of Appeals also noted "[a]t one end are situations... so compelling that the judge has no real choice but to recuse herself…[a]t the other end are situations… so tenuous that the judge has no real choice but to sit" and that "[b]etween these two polar extremes lies a zone in which the district judge's discretion holds sway." (*Id.*) (citations

omitted.) Some judges have found guidance in determining whether circumstances, alleged as grounds for their disqualification fall in the continuum specified in Section 455(b) requiring mandatory disqualification. *In re Hatcher*, 150 F.3d 631, 637 (7th Cir. 1998).

Section 455(b)(5)(ii) requires disqualification when a judge "or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person (ii) is acting as a lawyer in the proceeding." 28 U.S.C. §28(B)(5)(ii). Section 455(b)(5)(ii) is a clear indication that disqualification on the basis of familial or marital relationship is based upon each judge's personal circumstances. Notably, none of the District Judges in the Southern District of West Virginia are related in any way by blood or marriage to Judge Goodwin or his son. Clearly, then, this provision does not apply to the facts of this case. Moreover, this Court does not construe the Defendant's motion as imputing Judge Goodwin's disqualification, based on his relationship with the United States Attorney, to the other Judges of this District, but views the motion as one based upon the other District Judges' relationship with Judge Goodwin, himself, and their desire not to "disappoint" him by dismissing an indictment filed by his son's office based on allegations of misconduct in a case involving a "high profile" defendant. For the reasons that follow, the Court finds the Defendant's argument unpersuasive.

At no point, during Booth Goodwin's tenure as United States Attorney, did his relationship with Judge Goodwin create an appearance of partiality which prevented any of the Judges of this District from presiding in criminal or civil matters in which he and/or other attorneys in his office represented the United States. Indeed, all of the Judges in this District, except Judge Goodwin, regularly preside in many such matters. The conduct, and thus, the reputation of the United States Attorney and his staff are always impliedly, if not expressly, at issue in these cases. Frequently,

14

the District Judges must make and have made decisions regarding (1) dismissals of complaints or indictments filed by the United States Attorney, (2) whether to suppress evidence proffered by that office, (3) whether to accept plea agreements proposed by the United States, and/or (4) whether to follow its recommendations with respect to sentencing. These are but a few examples of the decisions that the Judges within the Southern District regularly make which potentially impact the reputation of the United States Attorney and his office.

The Judges within this District have made these determinations, confident that a reasonable observer, informed of all of the circumstances, would also be aware of the reputation for independent decision making of federal judges. Judicial independence originates in the United States Constitution, which gives every Article III federal judge life tenure, insulating their decision making from political pressure. This enables the judges to preside in difficult, controversial, politically charged and high profile civil and criminal cases without concern for extrinsic pressures or regard for any professional or personal consequences. See *In re Mason*, 916 F.2d 384, 386-387 (7th Cir. 1990),("Reasonably, well-informed observers of the federal judiciary understand that judges with political friends or supporters regularly cast partisan interests aside and resolve cases on the facts and law.") See also *United States ex rel. S. Prawer & Co. v. Fleet Bank of Maine,* 1996 WL 173121 at *3-4 (D.Me. 1996). Importantly, well informed citizens know and understand that judges are often required to make difficult decisions in cases involving individuals with political and controversial reputations where stakes may be high and which might result in the disappointment of some.

Clearly, *Bulge*r and *Gordon*, which the Defendant contends are "strikingly instructive," are, in fact, instructive, but given how distinguishable the facts in those cases are from the instant facts,

15

those cases "instruct" against disqualification here. In those cases, extrajudicial circumstances of the presiding judges ultimately required disqualification. In *Bulger*, the judge was previously involved, as a prosecutor, in the investigation of racketeering activities of the defendant, during the relevant period described in the indictment pending before the judge. Additionally, it was alleged that the judge knew and had relationships with potential witnesses who could be called to establish a prior grant of immunity for the very charges pending before the judge. These circumstances required recusal under the applicable standard. In *Gordon*, the threat of a request for a subpoena for the business records of a colleague of the presiding judge and his business dealings with the defendants made the colleague a potential witness and, therefore, dictated the presiding judge's disqualification.[4] No such circumstances exist in this case.

The Court has considered the Defendant's motion with respect to the allegations of United States Attorney Goodwin's misconduct in bringing the indictment and the Defendant's public reputation coupled with the "high profile" nature of this case in connection with the Defendant's argument that none of the judges of this District should preside in this case because of their relationship with Judge Goodwin. However, to this point, the Court has not considered these matters as separate grounds for disqualification.

Turning to the question of whether the alleged prosecutorial misconduct or the Defendant's "high profile" persona separately dictate disqualification (in the event the Defendant intended to argue the same), the Court finds that these circumstances are not extrajudicial. The motions containing the allegations of misconduct and other motions to which the Defendant refers and

---

[4] *Sigillito* and *Egervary* do not compel a different conclusion. Each involved extrajudicial circumstances. No similar circumstances exist in this case. No employee of this Court has any direct or indirect involvement with any party to or participant in this case, and no Judge of this Court or family member is a potential witness.

16

Defendant's public reputation and the "high profile" nature of this case are matters for the Court's consideration solely because of the indictment. Importantly, they were not matters of personal or other concern for any of the Judges of this District prior to the initiation of this criminal proceeding. Because these issues are not extrajudicial, when considered separately and outside the realm of the District Judges' relationship with their colleague, they are not matters which a reasonable observer should be held to consider under the objective standard.

In sum, the Court acknowledges a dearth of case law with facts similar to those presented here. However, applying the applicable standard, the Court finds that a reasonable outside observer, not unduly suspicious but aware of all the facts and circumstances, alleged by the Defendant, and having all relevant information, would not question the impartiality of the District Judges of the Southern District of West Virginia to preside in this matter, with the exception, of course, of the Honorable Joseph R Goodwin.

## CONCLUSION

Wherefore, after careful consideration and consistent with the findings herein, the Court **ORDERS** that *Defense Motion No.1, Motion to Disqualify this Court and All the Judges of the United States District Court for the Southern District of West Virginia* (Document 78) be **DENIED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: April 8, 2015

*Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA