# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# BECKLEY DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                       CRIMINAL ACTION NO. 5:14-cr-00244

DONALD L. BLANKENSHIP,

        Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed *Defense Motion No. 4, Motion to Dismiss for Selective and Vindictive Prosecution* (Document 81), the *Memorandum in Support* (Document 82), the *United States' Response to Defendant's Motion No. 4, Motion to Dismiss for Selective and Vindictive Prosecution* (Document 128), the Defendant's *Reply in Support of Defense Motion No. 4, Motion to Dismiss Indictment for Selective and Vindictive Prosecution* (Document 145), as well as all exhibits and attachments filed therewith. The Court has also reviewed *Defense Motion No. 4A, Motion to Dismiss the Superseding Indictment for Selective and Vindictive Prosecution* (Document 189) and the attached exhibits. For the reasons stated herein, the Court finds that the Defendant's motions should be denied.

## FACTUAL AND PROCEDURAL HISTORY

A Grand Jury meeting in Charleston, West Virginia, returned a four count Indictment (Document 1) against the Defendant on November 13, 2014. Count One charged Donald L.

Blankenship with conspiracy to willfully violate mandatory mine safety and health standards under the Mine Act, Count Two alleged a conspiracy to defraud the United States by impeding the Mine Health Safety Administration (MSHA) in the administration and enforcement of mine safety and health laws, while Counts Three and Four alleged securities law violations. The Defendant made his initial appearance at an arraignment and bail hearing on November 20, 2014, and was released the same day after posting bail and agreeing to abide by the terms of an order setting forth the conditions of release. (*See* Documents 13-19.) On March 10, 2015, the Charleston Grand Jury returned a three count Superseding Indictment (Document 169) against Donald L. Blankenship. The substance of the charges remains the same. However, Counts One and Two of the original indictment were merged into superseding Count One. The original Count Three is now Count Two, and Count Four of the original indictment is Count Three in the superseding indictment.

The *Defendant's Motion to Exclude Time Under the Speedy Trial Act, Re-Set Motions Deadline, Vacate Trial Date, and Set Scheduling Conference* (Document 29) was filed on December 2, 2014, and a hearing was held on December 17, 2014. After hearing the parties' arguments, the Court orally granted the Defendant's motion to continue the trial date, with a written order to follow.

On January 5, 2015, the Court entered a *Criminal Scheduling Order* (Document 61) that set several pertinent dates. Specifically, the order required that all motions to dismiss, suppress, and any motions *in limine* "be filed no later than February 6, 2015." The order also specified February 6, 2015, as the filing deadline for additional pretrial motions, and scheduled a pretrial

2

motions hearing for March 3, 2015.[1] The *Defendant's Motion for Extension of Time to File Motion to Transfer this Case to Another District for Trial* (Document 71) was filed on January 28, 2015, and the Court granted said motion in its February 4, 2015 *Order* (Document 76), extending the filing deadline for a motion to change venue to February 20, 2015.

On February 6, 2015, prior to the return of the superseding indictment, the Defendant filed nineteen (19) pretrial motions including the instant one. The *United States' Motion for Extension of Time to Respond to Pretrial Motions* (Document 115) was filed on February 10, 2015. On February 12, 2015, the Court issued an *Order* (Document 116) granting the motion in part, setting Friday, February 20, 2015, as the "deadline for the filing of the United States' responses to the Defendant's pretrial motions."

The Defendant filed his *Motion No. 4, Motion to Dismiss for Selective and Vindictive Prosecution* on February 6, 2015. The United States filed its Response on February 20, 2015, and the Defendant's Reply was filed on February 27, 2015. *Defense Motion No. 4A, Motion to Dismiss the Superseding Indictment for Selective and Vindictive Prosecution* was filed on April 7, 2015. The matter is ripe for ruling.

**APPLICABLE LAW**

"A criminal defendant bears a heavy burden in proving that he has been selected for prosecution in contravention of his constitutional rights. A defendant must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *United States v. Hastings*, 126 F.3d 310, 313 (4th Cir. 1997)(quotations

---

[1] The Court notes that the March 3, 2015 pretrial motions hearing was "continued generally" by the Magistrate Judge's February 26, 2015 Order (Document 142).

and citation omitted); *see also United States v. Venable*, 666 F.3d 893, 900 (4th Cir. 2012), ("The burden on a party seeking to dismiss an indictment on the basis of selective prosecution is high.").

## DISCUSSION

The Defendant argues that "the government has charged him and singled him out for prosecution in retaliation for his release of a documentary film entitled "Upper Big Branch – Never Again." (Document 82 at 1.) In other words, the Defendant claims that he is being prosecuted for exercising his First Amendment right to freedom of speech. He states that the Upper Big Branch (UBB) explosion happened on April 5, 2010, and complains that afterwards the government "repeatedly told Mr. Blankenship's counsel . . . that Mr. Blankenship was not a target." (*Id.* at 2-3.) The Defendant claims that the United States only sought his indictment after he released the documentary on March 31, 2014, and further, did not inform his counsel that he was being indicted "as it promised it would." (*Id.* at 3.)

The Defendant claims that the documentary inflamed the "West Virginia Democratic Establishment," including local union leaders and political operatives. (*Id.* at 10-11.) He stresses that the indictment only materialized after Senator Joe Manchin complained to the Office of the United States Attorney about how the documentary depicted him, and threatened to use "every legal recourse" available against the producer of the documentary. (*Id.* at 11-15.) The Defendant points to the indictment itself, including the nature of the charges, as proof of the Government's animus toward the Defendant and argues that it underscores the selectivity of the prosecution. He stresses that the Government has selected him out of a field of "tens if not hundreds" of other corporate mining executives "in the industry whose mines have [a] similar safety record." (*Id.* at 15-19.)

The Defendant argues that the Government's alleged improper conduct in front of the grand jury supports the vindictive nature of the prosecution, and notes the "long standing hatred for Mr. Blankenship" and his extensive history of political activism as other theories purportedly supporting a finding of selective and vindictive prosecution. (*Id.* at 20-24.) The Defendant also devotes substantial time to the theory that Senator Manchin, through Carte Goodwin,[2] brought about the instant prosecution due to "intense antagonism" and "political pressure." (*Id.* at 25, 29.)

He argues that the "circumstances of [his] indictment give rise to a presumption of vindictiveness." (*Id.* at 27) (citation omitted.) He stresses that "if such a presumption is not applied, the undisputed facts detailed here demonstrate that the prosecutors acted with actual animus and indicted Mr. Blankenship because of that animus." (*Id.* at 28.) The Defendant cites *United States v. Wilson*, 262 F.3d 305 (4th Cir. 2001), in support of his vindictive prosecution claim.

To buttress his claim of *selective* prosecution, the Defendant, again, notes that he was only indicted after his release of the documentary, and argues he is the only one of the alleged co-conspirators who has been prosecuted. (*Id.* at 30-31) ("The government did not charge any of the miners . . . or the mine president who had more day-to-day responsibility over the mine . . . or any of the other company executives who stood between Mr. Blankenship and UBB and who had greater involvement than him.") In the alternative, the Defendant asks for discovery related to the decision to indict him if this Court "is not now prepared to dismiss the indictment for vindictiveness and selectivity," stressing "[t]he facts here make out far more than 'some evidence'

---

2 The Court notes that Carte Goodwin is the cousin of Booth Goodwin, United States Attorney for the Southern District of West Virginia. Carte Goodwin served as chief counsel for then Governor Manchin, and was later appointed by Governor Manchin to temporarily fill the Senate seat of the late Senator Robert C. Byrd.

5

that Mr. Blankenship was singled out for indictment as a result of exercising his First Amendment rights in releasing the documentary." (*Id.* at 32.)

The United States responds in opposition that "the prosecution was not brought in retaliation for Defendant exercising any legal right. Rather, it was brought based on conclusive evidence of his crimes." (Document 128 at 1.) It trumpets the "broad discretion" vested in prosecutors and notes that "prosecutorial decisions are particularly ill-suited for judicial review." (*Id.* at 2.) The United States argues that "[t]he indictment in this case results from a long and considered investigation through which substantial evidence of Defendant's crimes was developed and a 'singular prosecutorial profile' emerged." (*Id.* at 7) (quoting *United States v. Hendrick*, No. 1:96CF87, Slip. Op. (W.D.N.C. May 19, 1997) (citing *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996))). It stresses that the "Defendant has failed to overcome the presumption of regularity and establish by clear and objective evidence that the Indictment in his case was brought with improper animus . . . It is clear that the indictment stems from a lengthy and progressive investigation that led to the top of the Massey organization." (*Id.* at 22-23.)

The United States argues that the "evidence developed through the investigation and prosecutions led inexorably to Defendant and the charges set forth in the Indictment," and details several prosecutions both of individuals at Massey and its subsidiaries and affiliates that preceded the instant one. (*Id.* at 8-10.) The United States stresses that there is not one case "in which the presumption of vindictiveness has been applied in such a pre-trial setting," and even if the presumption were applicable, the objective evidence does not support a finding of actual animus. (*Id.* at 10.) The United States notes that a defendant is not entitled to advance warning of an indictment, and notes that it did not provide early warning to defense counsel after consulting

6

Section 9-11.153 of the United States Attorney's Manual (USAM). (*Id.* at 12.) It maintains that the indictment is valid on its face and fairly apprises the Defendant of the charges against him. (*Id.* at 14.)

Further, the United States argues that the alleged animus of others, including Senator Manchin, cannot be imputed to prosecutors because "none of these individuals or entities, real or imagined, was responsible for the charging decisions in this case." It cites *United States v. Hastings*, 126 F.3d 310 (4th Cir. 1997) and *United States v. Ford*, 835 F. Supp. 2d 137 (S.D.W. Va. Dec. 12, 2011) (Copenhaver, J.) for support. (*Id.* at 15.) The United States maintains that the release of the "YouTube video" "Upper Big Branch—Never Again" was unrelated to its decision to prosecute, and argues the "Defendant has proffered no clear or objective evidence that the timing of the Indictment was connected to the release of the video, and no such evidence exists." (*Id.* at 18.)

In response to the allegation that it singled out the Defendant for prosecution among other coal executives with companies that have accrued similar mining violations, the United States argues that it has no evidence of behavior by "other executives that parallels that of the Defendant." (*Id.* at 19.) Specifically, the United States claims that the Defendant "micromanaged his mines to an unusual degree, demanding to personally review constant, sometimes half-hourly, production reports and personally supervising even the most obscure and minute details of mining operations. Through this process, Defendant inserted himself deeply into what would normally be considered the day-to-day responsibilities of the lower-level managers." (*Id.*) In doing so, the "Defendant situated himself differently than most other executives . . .[and] in this case the evidence led to the top of the organization and to the charges set

forth in the Indictment." (*Id.* at 19-20.) The United States claims that the arguments made by the Defendant here are nearly identical to those made by the defendant in *Hendrick*. In summation, it argues that the Defendant "is a high profile citizen involved in high profile activities in the Southern District of West Virginia," which directly led to a "singular prosecutorial profile" demanding prosecution. (*Id.* at 22) (internal quotations and citation omitted.)

The Defendant replies that the conduct of the United States Attorney's Office combined with the timing of the indictment establish that the charges were only brought in retaliation for exercising his First Amendment right of speech. (Document 145 at 1-2, 10-11.) He asserts that the United States conceded points when it failed to rebut them in its response in opposition. (*Id.* at 2-4.) He claims that prosecutorial discretion does not support the decision to indict here, and distinguishes other Massey prosecutions from the charges in this indictment. (*Id.* at 4-7.) The Defendant focuses on the fact that an Assistant United States Attorney promised to update him on whether he was a target or not, and because he did not, the only conclusion is animus. (*Id.* at 8-9.)

Regarding animus of others imputed to the prosecutors, the Defendant claims that it is likely that Senator Manchin—and others in the "West Virginia Democratic establishment"—prevailed upon the U.S. Attorney to indict. (*Id.* at 9-10.) The Defendant further argues that the facts entitle him to discovery on the underlying decision(s) to prosecute, and argues that the United States' opposition to discovery "creates a compelling inference that the government possesses relevant documents that it is willing to go to great lengths to avoid producing." He argues that to obtain discovery, he need only offer "some evidence" of the elements that support his selective or vindictive prosecution claims. (*Id.* at 12-13.)

A. *Vindictive Prosecution*

"To establish prosecutorial vindictiveness, a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *Ford*, 835 F.Supp.2d at 143. "If the defendant is unable to prove an improper motive with direct evidence, he may still present evidence of circumstances from which an improper vindictive motive may be presumed," or circumstances that "pose a realistic likelihood of vindictiveness." (*Id.*) (citation and quotations omitted). "The government ordinarily has wide latitude in deciding whether to prosecute." *United States v. Venable*, 666 F.3d 893, 900 (4th Cir. 2012). "As a result, the presumption of regularity supports their prosecutorial decisions, and in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quotation and citation omitted).

### 1. *First and Fifth Amendment*

The First Amendment provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend I. "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). The Court finds that the Defendant's documentary, setting forth his version of events surrounding the tragedy at UBB, is indeed speech protected by the First Amendment. "It is now well established that a prosecutor violates the Due Process Clause of the Fifth Amendment by exacting a price for a defendant's exercise of a clearly established right or by punishing the defendant for doing what the law plainly entitles him to do." *Wilson*, 262 F.3d at 314.

In *United States v. Wilson*, the district court dismissed an indictment after finding that the United States Attorney for the Eastern District of North Carolina "prosecuted Wilson on the request of the U.S. Attorney for the District of South Carolina solely in furtherance of personal animus against Wilson based on Wilson's successful appeal of an unrelated conviction obtained by the South Carolina U.S. Attorney." 262 F.3d at 309. Wiley Gene Wilson successfully appealed "his conviction for firearm possession . . . because the firearm was obtained pursuant to an unconstitutional automobile stop." (*Id.* at 310.) Prior to this successful appeal, Mr. Wilson had allegedly tried to escape.[3] (*Id.* at 309-10.) After the successful appeal (and unsuccessful escape), "efforts to have Wilson prosecuted for escape were stepped up when [a marshal's memorandum] was faxed to the U.S. Attorney in South Carolina," and after reading it, the U.S. Attorney for the District of South Carolina "sent an email message to the U.S. Attorney for the Eastern District of North Carolina, requesting that Wilson be prosecuted for escape." (*Id.* at 310.)

After reviewing the memoranda between the two United States Attorneys, the district court "concluded that Wilson had proved, by clear and convincing evidence, that the prosecution of Wiley Wilson was vindictive." (*Id.* at 312) (quotations omitted). The district court assigned importance to the temporal proximity of (1) the successful appeal, (2) the memorandum between the two United States attorneys, and (3) the time of indictment, including the fact that the indictment came "one plus years after the escape and some few days after the vacation by the 4th Circuit of the underlying conviction."

---

3 Mr. Wilson was transported to Nevada to face theft charges, but "Nevada authorities released him into the community because of a mix-up in paperwork resulting from Nevada's prosecution of Wilson under an alias. Instead of notifying Nevada authorities of the mix-up or calling the Federal Bureau of Prisons, as he had agreed to do, Wilson fled to El Monte, California" where he was eventually apprehended at his sister's home. (*Id.* at 309.)

In reversing, the Fourth Circuit Court of Appeals noted that the facts and circumstances did not support a charge of actual vindictiveness because "a deputy marshal in the Eastern District of North Carolina had already opened a file shortly after the escape, revealing that district's preexisting interest in the prosecution," and also noted that the "delay in prosecuting Wilson's escape was attributed to confusion with the District of Nevada over venue." (*Id.* at 316-17.) The Fourth Circuit concluded that there was "no evidence that the North Carolina U.S. Attorney or her assistants acted with any purpose of punishing Wilson's victory in the firearm-possession case or of vindicating any personal interest of the U.S. Attorney in South Carolina to punish Wilson for exercising his right to appeal the South Carolina conviction," and further,

> [i]n the face of strong probable cause that Wilson committed the crime of escape, judicial intervention should not deny the community the benefit of prosecution unless Wilson can show that he would not have been prosecuted for escape *but for* the vindictive motive of prosecutors to punish him for successfully exercising his right to appeal.

*(Id.* at 317) (emphasis in original).

The Fourth Circuit stressed that "[t]he Supreme Court has noted that each of the decisions in which it has recognized a presumption of vindictiveness reflects the Court's awareness 'of the institutional bias inherent in the judicial system against the retrial of issues that have already been decided.'" (*Id.* at 318) (quoting *Goodwin*, 457 U.S. at 376.) In rejecting the presumption of vindictiveness, The Fourth Circuit found that "[b]ecause both of these prerequisites to the creation of a presumption of vindictiveness—that the escape charge had once been prosecuted and that the prosecutor of the escape charge had a personal stake in self-vindication—are similarly absent from the charging decision made in this case, we conclude that the circumstances do not warrant a generally applicable presumption of vindictiveness..." (*Id.* at 319.) "As was the *Goodwin* Court,

we are loathe to invade the zone of prosecutorial discretion without a demonstration of circumstances that clearly justify the presumption of a vindictive motive." (*Id.*)

The Court finds that the Defendant has failed to present any direct, objective evidence that the United States acted with genuine animus when it sought to indict the Defendant. Moreover, even assuming that the United States was purposely misleading the Defendant regarding his status in relation to an active investigation—as he alleges in the instant motion—the Court finds that this conduct does not rise to the level of genuine animus.[4] Critically, as in *Wilson*, here the Government had already opened an investigation into the UBB explosion prior to the Defendant's (1) release of the documentary or (2) indictment, revealing a preexisting interest in the prosecution. Furthermore, any delay between the events and ultimate indictment is more likely attributable to the investigation process and not genuine animus towards the Defendant for releasing a documentary. Additionally, the Defendant has failed to present *objective* evidence that he would not have been indicted *but for* any claimed animus. In other words, the Defendant's argument also fails on "causation" grounds. The assertion that the Defendant was not under investigation until after he released the documentary, and therefore was indicted due to the documentary is, at best, conjecture and speculation.

Even when the Court questions whether the Defendant has presented circumstantial evidence that would support a presumption of an improper vindictive motive, he falls short. Simply put, the Defendant has not offered circumstantial evidence that, individually or in combination, poses a *realistic likelihood* of vindictiveness by the United States.

---

4 The Court notes that the Defendant has failed to present any case holding that a Defendant has a right to notice before a U.S. Attorney seeks an indictment. Likewise, the Court was unable to find any case law after conducting research on the specific issue.

In sum, with respect to his claim of vindictive prosecution, this Court has considered all of the "evidence" argued by the Defendant and finds the Defendant has failed to demonstrate actual vindictiveness and, further, has failed to point to any circumstances surrounding the indictment which indicate a realistic likelihood of vindictiveness. Facts threaded with speculation will not meet the "rigorous standard" or overcome the presumption of prosecutorial regularity.

*B. Selective Prosecution*

"The requirements for a selective-prosecution claim draw on ordinary equal protection standards." (*Id.* at 465.) In order to prove selective prosecution, "a defendant must 'establish both (1) that similarly situated individuals [ ] were not prosecuted, and (2) that the decision to prosecute was invidious or in bad faith.'" *Venable*, 666 F.3d at 900 (brackets added) (quoting *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996)). "Defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." (*Id.* at 900-01.)

The inquiry is fact-specific, and examples of factors that play a legitimate role in prosecutorial decisions include:

> (1) a prosecutor's decision to offer immunity to an equally culpable defendant because that defendant may choose to cooperate and expose more criminal activity;
>
> (2) the strength of the evidence against a particular defendant;
>
> (3) the defendant's role in the crime;
>
> (4) whether the defendant is being prosecuted by state authorities;

13

(5) the defendant's candor and willingness to plead guilty;

(6) the amount of resources required to convict a defendant;

(7) the extent of prosecutorial resources;

(8) the potential impact of a prosecution on related investigations and prosecutions; and

(9) prosecutorial priorities for addressing specific types of illegal conduct.

*Id.* at 901 (citing Olvis, 97 F.3d at 744.) The Fourth Circuit has consistently "rejected a narrow approach to relevant factors to be considered when deciding whether persons are similarly situated for prosecutorial decisions." *Venable*, 666 at 901. (quotation and citation omitted.)

The Court finds that the Defendant has failed to present clear evidence that he was (1) similarly situated to other (i) co-conspirators or (ii) coal owner/operators who were not indicted, or that he was (2) indicted for invidious reasons or in bad faith. The Defendant gives little weight to the alleged fact that his was the only company in 2010 that had the deadliest United States mine disaster in the past 40 years, resulting in the deaths of 29 miners. The Court notes that the United States has secured convictions against three other individuals regarding the subject matter of the indictment who were also involved with Massey Energy Company and/or its affiliates. While the Defendant claims that these individuals were in some way more culpable than him and otherwise tries to distinguish their cases from the present allegations, the argument is not persuasive.

Specifically, the United States secured convictions against (1) Gary May[5] on January 18, 2013, for *conspiracy to defraud the United States*, in violation of 18 U.S.C. § 371 (*See Case* No.

---

5 Gary May was named as a mine foreman at UBB in February 2008, and was then promoted to mine superintendent, a position he held through April 5, 2010.

5:12-cr-50, Document 40), (2) David Hughart[6] on January 17, 2013, for *conspiracy to defraud the United States*, in violation of 18 U.S.C. § 371, and *conspiracy concerning mandatory mine health and safety standards*, in violation of 18 U.S.C. § 371 and 30 U.S.C. § 820(c) (*See Case* No. 5:12-cr-220, Document 35), and (3) Hughie Stover[7] for *knowingly and willfully making a materially false, fictitious, or fraudulent statement*, in violation of 18 U.S.C. § 1001, as well as *knowingly and willfully causing the concealment, cover up, mutilation or destruction of documents with the intent to impede, obstruct or influence an investigation*, in violation of 18 U.S.C. §§ 2(b) and 1519 (*See Case* No. 5:11-cr-38, Document 188). These cases centered on criminal activity that forms the backbone of the allegations contained in the indictment against the Defendant, and the United States argues that testimony gathered during those investigations aided them in bringing the instant indictment.

The indictment paints a picture of the Defendant's alleged role in the crimes as that of a hands-on, micro-managing chairman and chief executive officer who personally orchestrated multiple willful conspiracies. There may be incentive for the United States Attorney's Office to proceed up the rungs of a corporate ladder during the course of a criminal investigation, and this Court is "loathe to invade the zone of prosecutorial discretion" in light of facts that do not make a clear showing of vindictive motive.

Regarding other coal owner/operators, the Defendant fails to offer any meaningful similarities between the facts and circumstances relative to his position at Massey Energy in April of 2010 and those of other coal owner/operators. The indictment references several memoranda

---

6 David C. Hughart was President of Massey's Green Valley Resource Group from 2000 until March 2010. Green Valley Resource Group was an organizational unit of Massey that controlled the White Buck Mines. He also served as a director of White Buck mines from 2003 through at least 2010.
7 Hughie Elbert Stover was the Chief of Security for several Massey mines, including the UBB and Edwight mines.

and letters allegedly authored by the Defendant and sent directly from him to his subordinates. Likewise, while the Defendant attempts to parry his potential place at Massey and in the coal producing world and name other coal operators as having been actually engaged in a pattern of violations, he again fails to point to one other company where the chief executive officer is alleged to have exercised near complete control of his company on a day-to-day basis in an effort to orchestrate multiple conspiracies against the United States, as alleged here. In other words, the Defendant has failed to present evidence that coal owner/operators were similarly situated to cast doubt on or counter the "singular prosecutorial profile" that the United States Attorney argues arose as a result of its investigation.

Succinctly, the Defendant has failed to offer evidence that he was similarly situated to any of the other co-conspirators or coal producers in the United States during the applicable period of time, and has failed to counter the legitimate prosecutorial factors that may justifiably influence the U.S. Attorney's decision making. The argument that the Defendant was only indicted because of the documentary based on the timeline and the referenced political relationships is unpersuasive and does not constitute clear evidence.

Further, even if the record before the Court included some clear evidence establishing that similarly situated individuals were not prosecuted, the Defendant has still failed to present credible evidence establishing that the decision to prosecute him was invidious or in bad faith. To clear this hurdle, the evidence must indicate that "the government must be more than aware that a federal prosecutorial policy may result in the prosecution of one [individual] more than another" as "discriminatory intent implies that the government selected or reaffirmed a particular course of action at least in part because of, not merely in spite of its adverse effects upon an [individual]."

16

*Venable*, 666 F.3d at 903 (quotations and citation omitted). Here, the Defendant has offered no such evidence.

*C. In the Alternative, Discovery*

"[B]efore a court allows a defendant to have discovery on the government's prosecutorial decisions, the defendant must overcome a significant barrier by advancing objective evidence tending to show the existence of prosecutorial misconduct. The standard is a rigorous one." *Wilson*, 262 F.3d at 315 (quotation and citation omitted). The standard is the same for permitting discovery on a vindictive prosecution and selective prosecution claim. *See Wilson*, 262 F.3d at 315-16 (collecting cases). As explained above, the Defendant has failed to present *objective* evidence that tends to show the existence of prosecutorial misconduct. The standard for permitting discovery for a selective or vindictive prosecution claim is arduous, and one must overcome a "significant barrier." The Court finds that discovery is inappropriate in light of the evidence and arguments presented. In the end, the Defendant "has offered nothing beyond speculation to support the view that the decision-maker here, the [United States Attorney], was motivated by anything other than defendant's alleged violation of the federal criminal code." *Ford*, 835 F.Supp.2d at 142. For that reason, and those cited herein, the Defendant's motion must be denied.

## CONCLUSION

Wherefore, after careful consideration and consistent with the findings herein, the Court **ORDERS** that *Defense Motion No. 4, Motion to Dismiss for Selective and Vindictive Prosecution* (Document 81) and *Defense Motion No. 4A, Motion to Dismiss the Superseding Indictment for Selective and Vindictive Prosecution* (Document 189) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: April 8, 2015

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA