# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    CRIMINAL ACTION NO. 5:14-cr-00244

DONALD L. BLANKENSHIP,

        Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed *Defendant Donald L. Blankenship's Motion for De Novo Review Before the District Court of His Conditions of Pretrial Release* (Document 68), the *United States' Response to Defendant's Motion for De Novo Review of Pretrial Release Conditions* (Document 72), and *Donald L. Blankenship's Reply in Support of Motion for De Novo Review Before the District Court of His Conditions of Pretrial Release (Document 119).* After careful review of the parties' submissions, the Court finds that the Defendant's motion should be denied.

## FACTUAL AND PROCEDURAL HISTORY

The Defendant filed this motion nearly three (3) months after his arraignment and detention hearing where the terms of his release were promulgated. (*See* Documents 13, 14, 15, 16, 18, & 19.) Specifically, on November 20, 2014, Magistrate Judge VanDervort issued an *Order Setting Conditions of Release* (Document 15), as well as a *Statement of Reasons for Imposing Terms and Conditions of Release on Bond and Order* (Document 16). On December 2, 2014, *Donald L. Blankenship's Motion to Amend Conditions of Release* (Document 32) was filed,

and *Defendant Donald L. Blankenship's Motion for Permission to Travel Home for Christmas and New Year's* (Document 42) was filed on December 11, 2014.

On December 17, 2014, the Magistrate Judge issued his *Memorandum Opinion and Order* (Document 50) denying the Defendant's motion to amend conditions of release as they pertained to the "no contact" provision in paragraph 7(g). On that same day, the Magistrate Judge entered an *Order* (Document 52) denying the Defendant's motion to travel home for the Christmas and New Year's holidays. *Defendant's Emergency Motion for Review by the District Court of Order Denying Request to Travel Home for the Holidays* (Document 54) was filed on December 18, 2014. On December 22, 2014, this Court entered an *Order* (Document 60) denying the Defendant's emergency motion.

The Defendant filed his *Motion for De Novo Review Before the District Court of His Conditions of Pretrial Release* on January 22, 2015. The United States filed its Response on January 29, 2015, and the Defendant's Reply was filed on February 17, 2015.

**APPLICABLE LAW**

18 U.S.C. § 3142 provides, in relevant part, that if a judicial officer determines that release on a personal recognizance bond will not "reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," the judicial officer must order the pretrial release of the Defendant:

> (B) subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include the condition that the person—
> . . .

> (iv) abide by specified restrictions on personal associations, place of abode, or travel;
>
> (v) avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense;
>
> . . .
>
> (xiv) satisfy any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community.

18 U.S.C. §§ 3142(c)(1)(B)(iv)-(v), (xiv).

18 U.S.C. 3145(a) governs review of a release order, and mandates "[i]f a person is ordered released by a magistrate judge" then said individual "may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release." 18 U.S.C. 3145(a)(2). "When the district court acts on a motion to revoke or amend a magistrate judge's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release." *United States v. Stewart*, 19 Fed.Appx. 46, 48 (4th Cir. 2001) (citation omitted); *United States v. Clark*, 865 F.2d 1433, 1437 (4th Cir. 1989). "In doing so, the reviewing court makes an independent determination as to whether the release order was correct based on the court's review of the evidence considered." *United States v. Taylor*, 2014 WL 7187842 *4, (S.D. W.Va. 2014) (Copenhaver, J.) (reference omitted).

Factors that courts consider when determining whether to detain or release a defendant pre-trial are found in 18 U.S.C. § 3142(g) and include:

> (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including family ties, the person's character, ties to the community, and criminal history; and (4) the

3

> nature and seriousness of the danger to any person or the community
> that would be posed by the person's release.

*(Id.)*

## DISCUSSION

In the months since the Defendant's arraignment and detention hearing, he has brought several challenges to the order setting conditions of release. The instant motion is the Defendant's most recent effort to seek review of the order.

The Defendant strives to amend the conditions of his pretrial release—through *de novo* review by this Court—but only with respect to paragraph seven (7) of the *Order Setting Conditions of Release* (Document 15). (Document 68 at 1.) He contends that the conditions restricting: (1) residency to the Southern District of West Virginia, (2) travel, and (3) contact with family, friends and business associates "are not justified by either of the purposes of section 3142(c) and should be vacated or dramatically modified," because they are "not the least restrictive means of reasonably assuring [his] appearance." (Document 68 at 2-3.) He argues that the restriction contained in paragraph 7(g) prohibiting contact with victims or witnesses impinges on his "constitutional rights to speak and associate." (*Id.* at 5.)

The United States responds in opposition that the goal of 18 U.S.C. § 3142 is to "impose pretrial-release conditions that will 'reasonably assure' Defendant's appearance and the safety of the community," and notes that "[a]ssurance is a high bar." (Document 72 at 1-2) (quoting 18 U.S.C. 3142(c)(B)). It stresses that in order "to reasonably assure Defendant's appearance, his travel must be restricted to a geographic area that is constrained and where he can be monitored," while "direct communication between Defendant and possible witnesses poses an inherent risk of

undue influence." (*Id.* at 3-4.) The United States argues that the Defendant "has few confirmed ties" to Las Vegas, Nevada, and is a "peripatetic mogul."

As an initial matter, the Court finds that it "need not hold a second detention hearing." *United States v. Moore*, 2010 WL 1006205 *1 (S.D. W.Va. 2010)(Chambers, J.) (citing *United States v. Toler*, 684 F.Supp. 436, 437 (S.D. W.Va. 1988) (Haden, J.). Thus, the Defendant's request for a hearing contained in his instant motion is **DENIED**.

Second, waiver may very well be at issue because the Defendant initially accepted and consented to the conditions of pretrial release, even invoked language in the pretrial release order (Paragraph 7(f)) to (1) request travel (*See* Document 42), and when denied, (2) appealed the Magistrate Judge's determination that travel to Las Vegas, Nevada, was inappropriate for Christmas and New Year's. (*See* Document 54.)

Further, the Court finds that the challenge and requested review of the Magistrate Judge's November 20, 2014 order appear untimely under Rule 59(a) of the Federal Rules of Criminal Procedure. Federal Rule of Criminal Procedure 59 governs non-dispositive matters, and states:

> A district judge may refer to a magistrate judge for determination any matter that does not dispose of a charge or defense. The magistrate judge must promptly conduct the required proceedings and, when appropriate, enter on the record an oral or written order stating the determination. A party may serve and file objections to the order within 14 days after being served with a copy of the written order . . . Failure to object in accordance with this rule waives a party's right to review.

Fed. R. Crim. P. 59(a).

Construing the Defendant's motion as an objection to the Magistrate Judge's order, it was not filed within 14 days of the Magistrate Judge's entry of the November 20, 2014 order, even when accounting for the Thanksgiving holiday. However, the Court notes that footnote one of the

5

Defendant's motion indicates that his understanding was that the prior motion to amend the conditions of pretrial order (Document 32), as it pertains to the no-contact restriction, "was going to be reviewed *de novo* by this Court," and not the Magistrate Judge. (Document 68 fn 1.) Thus, taking into consideration the fact that the prior motion to amend was filed on December 2, 2014, the requested review would fall within the 14 days prescribed by Rule 59(a).

Assuming the requested review has not been waived and is not untimely, the Court analyzes the merits of the motion. First, the Court notes that there is a dearth of case law from this District or the Fourth Circuit Court of Appeals addressing a defendant's motion to review an order setting conditions of release. The parties' submissions reflect this reality. Typically, the United States appeals the determination that a defendant should be released, or a defendant appeals an order finding that detention is warranted. Almost all of the case law centers on the rebuttable presumption—not at issue here—that no condition or set of conditions will reasonably assure the appearance of a defendant accused of committing one of the crimes enumerated in 18 U.S.C. § 3142(e)(3)(A)-(E).

Following *de novo* review, however, the Court concludes that the Magistrate Judge's decision to release the Defendant pursuant to 18 U.S.C. § 3142(a)(2) was proper in light of the evidence, and further finds that the order setting conditions of release, including paragraphs 7(f), 7(g), and 7(s), was appropriate when viewed against the record and the applicable statutory text. Paragraph 7 of the order setting conditions of release provides, in pertinent part, that the Defendant shall:

> (f) abide by the following restrictions on personal association, residence, or travel: Travel is restricted to the Southern District of West Virginia, Pike County Kentucky and for the specific purpose of meeting with counsel to the District of Columbia and other travel

> as pre-approved by the Court. Defendant is not to travel outside of the Continental United States.
>
> (g) avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including: Specifically, the Defendant shall have no direct or indirect contact with any person who was any officer, director, or employee of Massey Energy Co., or of any entity that provided contract services for Massey Energy Co. during the period of Jan 1, 2008 through April 9, 2010, except through counsel. The Defendant shall have no direct or indirect contact with any person who participated in any investigation of events at Massey Energy Company or the Upper Big Brach mine during the period from January 1, 2008 through April 9, 2010, except through counsel.
>
> (s) Report as directed by the Court and the United States Probation Office . . . The Defendant shall reside at Residence #1.

(Document 15 at 2-3.) Mindful of its obligation to undertake *de novo* review, the Court next analyzes the propriety of the Magistrate Judge's order in light of the factors found in 18 U.S.C. § 3142(g).

### A. *Nature and Circumstances of the Offense(s)*

The indictment alleges that the Defendant conspired to violate mandatory mine safety and health standards, in violation of 30 U.S.C. § 820(d), conspired to defraud the United States, in violation of 18 U.S.C. §371, made false and fraudulent statements and representations, in violation of 18 U.S.C. § 1001(a)(2) and (3) and 18 U.S.C. § 2, and made untrue statements of material fact in connection with the sale and purchase of securities, in violation of 15 U.S.C. § 78(ff), 7 C.F.R. 240, 10b-5, and 18 U.S.C. § 2. (Transcript of Initial Appearance and Bond Hearing, Document 35 at 1.) These are serious charges. Some allege a conspiracy against the United States spanning dozens of months. If convicted on all counts, the Defendant could be exposed to a potential sentence of imprisonment up to thirty (30) years, as well as a substantial fine and restitution.

*B. Weight of the Evidence*

An Indictment (Document 1) was returned by a Grand Jury on November 13, 2014, after they concluded that probable cause existed to charge the Defendant with the above mentioned criminal offenses. At the November 20, 2014 bond hearing, Counsel for the Defendant indicated that the allegations would "not withstand either legal or factual scrutiny." (*Id.* at 11.) The United States argued that "the weight of the evidence is strong. A Grand Jury . . . returned a particularized indictment." (*Id.* at 13.) The record before the Court indicates that this case involves hundreds of thousands of documents which contain several million pages, including FBI files, and the indictment references both a "Known UBB Executive" and "Known Massey Executive" that are (ostensibly) cooperating with the United States.[1] The indictment also details statements contained in emails and memos allegedly authored directly by the Defendant, as well as multiple investigations and findings conducted by federal agencies.

*C. History and Characteristics of the Defendant*

The Defendant is a 64 year old man who claims to have ties to both Las Vegas, Nevada, and the Southern District of West Virginia. He was born in Pike County, Kentucky, which borders Mingo County, West Virginia. The Defendant's three half-siblings live in either Kentucky or West Virginia. He "is connected to six different business entities that are classified as active status in good standing" in Kentucky. (Pretrial Services Report at pg. 3.) As the Probation Office concluded in its pretrial services report, the Defendant's local ties are substantial. "The Defendant has strong family and financial ties to the Southern District of West Virginia where he has lived the majority of his life." (*Id.* at 7.) On the other hand, since at least 2012, the

---

1 The Court notes that it is unclear from the indictment whether the "Known UBB Executive" and "Known Massey Executive" are the same individual, or are, instead, distinct persons.

Defendant claims to have lived in Nevada, where he purportedly files his tax returns.[2] The probation office ultimately concluded that "[h]owever, the Defendant has no financial (business ties or other), family, or community ties to [Nevada]."

According to the Pretrial Services Report, the Defendant does not have a criminal record, but does have a speeding ticket from 2005. (*Id.* at 6.) He has substantial assets on hand and extensive financial resources. His personal wealth is conservatively valued in the tens of millions of dollars. The Defendant's "reported assets include a foreign bank account in China," but it must also be noted that the Probation Officer determined that the Defendant "was reluctant to provide financial information" and only provided "verbal estimates." (*Id.* at 7.) The Defendant reportedly spends "between $10,000 and $20,000 on travel each month," and has traveled extensively throughout the world, including repeated trips to the People's Republic of China, where he "has foreign ties," and "where the family of the defendant's girlfriend resides." (*Id.*)

The Defendant does not suffer from any physical ailments, and reported no history of mental health treatment or substance abuse. (*Id.* at 6.) He did admit a history of gambling, including playing blackjack and Texas hold-em poker.

### D. Nature and Seriousness of Danger to Others

There are no facts to indicate that the Defendant poses a threat of danger or harm to others. While he did report owning multiple firearms to the Probation Office, the Court is proceeding under the assumption that he has surrendered those to another individual or to the Probation Office, and that they are no longer under his control.

---

2 The Court also notes that Nevada does not have a state income tax, and while the Defendant claims his driver's license was issued in Nevada, the present record also reflects that a Tennessee license was issued to the Defendant.

Following *de novo* review, the Court finds that the contested conditions of release are appropriate and amply supported by the record. The Court finds that the five million cash bond is not enough, in and of itself, to reasonably assure the Defendant's appearance at future proceedings. The Court finds that paragraph 7, including subsections (f), (g), and (s), are the least restrictive combination of conditions that will reasonably assure the Defendant's appearance in light of the (1) charges leveled against him, (2) weight of the evidence supporting those charges, (3) history and characteristics of the Defendant, and (4) seriousness of danger to any person or the community posed by the Defendant's release.

18 U.S.C. § 3142(c)(B)(iv) authorizes the judicial officer to impose certain conditions on the Defendant in light of the § 3142(g) factors. These conditions can include the requirement that the Defendant "abide by specified restrictions on personal associations, place of abode, and travel." The Court finds, based on the record, that the Defendant's (1) lack of ties to Las Vegas, Nevada, (2) history of extensive international travel, including trips to China where he has ties, and (3) wealth, including a Chinese bank account, support the restrictions on travel and place of abode found in Paragraph 7(f) and 7(s). Specifically, the Court determines that they are necessary to reasonably assure his continued appearance throughout the proceedings. Moreover, paragraph 7(f) is reasonable and tailored to the Defendant's particular circumstances because it permits "other travel as pre-approved by the Court."

18 U.S.C. § 3142(c)(B)(v) authorizes the judicial officer to require that the Defendant "avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense." The Court finds from the record that the Defendant's (1) history of employment as an executive and employer in several large coal companies, including his

continued presence in the region's coal industry, (2) resources and contacts, (3) history of supervisory disdain for the laws of the United States, and (4) motive to assert undue influence over potential witness or victim testimony, support the condition that he avoid all contact with alleged victims and potential witnesses, including any person who was an officer, director, or employee of Massey Energy Company, or of any entity that provided contract services for Massey Energy Company during the period of January 1, 2008 through April 9, 2010. The Court finds that the conditions are necessary and the least restrictive means to reasonably *assure* the safety of other persons and/or the community.

While the Defendant asserts that the only reason the Magistrate Judge imposed the conditions found in Paragraph 7(g) "is that they are standard in this District" (Document 68 at 2-3)(quoting Document 16 at 4), this contention is belied by the text. Specifically, that text reveals that the Magistrate Judge "imposed other terms and conditions of release on bond as are standard in this District <u>and special in view of the facts and circumstances presented in the Pretrial Service Report and discussed at the November 20, 2014 hearing</u>." (Document 16 at 4) (emphasis added.) The direct text of the order supporting imposition of the conditions directly contradicts his argument, and further illuminates additional sources of information that the Magistrate Judge and this Court reviewed when arriving at the appropriately tailored conditions of release.

Paragraph 7(g) is reasonable and tailored to be the least restrictive condition because it still allows contact with any alleged victim or potential witness, and any Massey officer, director, or employee, as long as it is "through counsel." In other words, while the Defendant may not unilaterally speak with or contact an alleged victim or potential witness, his attorneys may. Indeed, it cannot be said that the no-contact provision "imposes an unacceptable burden on the

11

preparation of Mr. Blankenship's defense," because here, it does not "prevent[] him even from introducing his lawyers to persons who may have information about the charges alleged in the indictment." (Document 68 at 8.)

The Defendant's argument that paragraph 7(g) "impinges severely on [his] constitutional rights to speak and associate" (Document 68 at 5) is without merit and was previously the subject of the Magistrate Judge's December 17, 2014 *Order* (Document 50). While the Defendant certainly has an important constitutional right to speech and association, after indictment and awaiting trial, the Government's interests in witness safety and preserving the sanctity of court proceedings substantially outweighs the Defendant's right to association or speech with alleged victims or potential witnesses.

The Court has reviewed the entirety of the record, including but not limited to the indictment, pretrial services report, statement of reasons for imposing terms and conditions, transcript of the arraignment and bail hearing conducted on November 20, 2014, and the parties' submissions in this matter. After an exhaustive review, the Court concludes that pretrial release under 18 U.S.C. § 3142(a)(2) is appropriate. The Court further finds that the record supports the pertinent restrictions regarding travel, associations, place of abode, and contact with any alleged victim or potential witness, as well as any officer, director, or employee of Massey during the period of January 1, 2008 through April 9, 2010.

Succinctly, the record reveals that (i) the offenses for which the Defendant has been charged are serious and potentially subject him to a significant term of imprisonment, fine, and/or order of restitution, (ii) the evidence against him has been represented as "strong" at this juncture of the proceedings, (iii) the Defendant's extensive capacity to flee and history of international

travel, including holding a Chinese bank account, and (iv) the potential for undue influence and/or intimidation over any victim or witness, support the conditions found in the order. The Court concludes that the respective combination of conditions are the least restrictive means to accomplish the goals of 18 U.S.C. § 3142, or to reasonably assure the appearance of the Defendant as well as the safety of other persons and the community.

## CONCLUSION

Wherefore, after careful consideration and consistent with the findings herein, the Court ORDERS that *Defendant Donald L. Blankenship's Motion for De Novo Review Before the District Court of His Conditions of Pretrial Release* (Document 68) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: April 8, 2015

*(signature)*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA