**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**BECKLEY DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **v.** | ) | **Criminal No. 5:14-cr-00244** |
| **DONALD L. BLANKENSHIP** | ) | |

**DEFENDANT'S SUPPLEMENT TO MOTION TO CONTINUE THE TRIAL DATE AND MODIFY THE SCHEDULING ORDER AND TO MOTION FOR SCHEDULING CONFERENCE BEFORE THE DISTRICT JUDGE**

Counsel for Defendant Donald L. Blankenship have filed a motion requesting that the Court postpone the trial date and the trial-related filing deadlines, ECF Nos. 117 and 161, and an unopposed motion to convene a scheduling conference to address the trial date and other scheduling issues. ECF No. 180. This supplement addresses a recent set of disclosures by the government, made earlier this week, that provide further good cause for a postponement of the trial date and the other dates in the scheduling order.

On April 6, 2015, at 4:30 p.m., the government revealed for the first time that it intends to call two purported expert witnesses at trial and to seek to admit at trial extensive Rule 404(b) evidence. *See* S. Ruby Letter to W. Taylor, attached as Exhibit 1. One of these witnesses, Tracy L. Stumbo, represented to be an expert in coal mine safety, is proffered by the government to opine broadly on an array of issues, including the most significant allegations and conclusions in the indictment:

> It is Mr. Stumbo's opinion that during at least January 1, 2008, through April 9, 2010 (the "Indictment Period"), there was a practice of routinely violating fundamental, mandatory federal mine safety and health standards at UBB. The vast majority of the violations committed as part of that practice were readily preventable through basic mine safety practices that are well

> understood throughout the coal mining industry. The fact that the vast majority of these violations were preventable, as well as the means of preventing them, would have been obvious to any experienced mine official. Officials with control and supervision over UBB furthered the practice. The practice of routine safety law violations at UBB allowed the mine, in the short term, to produce more coal at less expense than would have been possible had reasonable efforts been made to follow the law. The extent and severity of the practice of safety law violations at UBB required a mutual understanding among many individuals that mine safety laws would routinely be violated.

Ex. 1 at 3-4.

Another expert, Frank C. Torchio, represented to be an expert in securities markets and economic financial analysis, is proffered by the government to opine on issues the government claims are relevant to essential elements of Counts Two and Three of the superseding indictment:

> Mr. Torchio's opinions in connection with this case include the following: the statement, made in Massey's April 8, 2010 statement to shareholders and an April 9, 2010 Massey press release, that Massey did not condone any violation of Mine Safety and Health Administration ("MSHA") regulations and strived to be in compliance with all regulations at all times, was material to investors. Assuming, moreover, that the allegations in the Superseding Indictment are true, then Massey, in making the April 8 and 9, 2010 statements, omitted to state facts about its violations of MSHA regulations, and related conduct, that would have been material to investors. For similar reasons, these statements were material to a matter within the jurisdiction of the SEC, since, among other reasons, part of the SEC's jurisdiction includes enforcing prohibitions of false and misleading statements that would be material to a reasonable investor.

Ex. 1 at 2.

The defense requested disclosure of expert testimony under Federal Rule of Criminal Procedure 16(a)(1)(G) on November 20, 2014, at arraignment on the initial indictment. ECF No. 13 at 4. At no time prior to April 6, 2015, despite numerous opportunities to do so, did the government indicate any intention to call an expert witness. In fact, the government stated just the opposite. In the government's discovery responses, filed with the Court, it stated that it did

not intend to offer expert testimony. ECF No. 33 at 3. In the government's responses to the defense motions regarding the trial date, the government repeatedly stated that it had provided discovery and emphasized its contention that the case against Mr. Blankenship was “straightforward.” ECF No. 39 at 3-4; ECF No. 139 at 8-9. In none of those filings, nor in any of its communications about discovery issues with defense counsel, did the government even hint at the possibility of calling an expert witness.

Having now learned of the proffered experts, the defense must investigate the backgrounds and qualifications of these individuals. The defense must seek clarification and supplementation of the government’s expert disclosures. It is likely that it will be necessary for the defense to prepare and file motions to exclude or limit the purported experts’ testimony; indeed, among other issues, the proffered testimony may not even qualify as expert. Further, it will be necessary for the defense to consult with potential experts of similar qualifications, familiarize those experts with the extensive facts of this case, determine whether to offer defense expert witnesses on the subjects identified in the government’s disclosures, and, if so, prepare disclosures and prepare the experts to testify at trial. These tasks must be undertaken as part of effective representation of any defendant and require substantial time.

The government’s Rule 404(b) disclosures likewise were unexpected. Just as with the experts, the defense requested disclosure of Rule 404(b) evidence at the November arraignment (ECF No. 13 at 4). In the government’s discovery responses, filed with the Court, it stated that it did not intend to offer Rule 404(b) evidence. ECF No. 33 at 3. The government never modified that representation, either in its formal filings with the Court or in correspondence with defense counsel, until its abrupt disclosure earlier this week.

The government’s proposed Rule 404(b) evidence includes, among other things:

(1) a memorandum from 2005, well more than two years before the start of the indictment period;

(2) "Massey subsidiaries' guilty pleas to willful violations of mandatory federal mine safety and health standards; these subsidiaries include White Buck Coal and Aracoma Coal," both of which involved alleged conduct from before the indictment period and which involved mines other than UBB;

(3) unspecified testimony by Mr. Blankenship "in past Massey civil litigation";

(4) "the effect on Massey's financial performance and on investors of past willful violations of mandatory federal mine safety and health standards, including violations at Aracoma Coal that substantially affected Massey's financial performance";

(5) unspecified "civil litigation against Defendant arising from the UBB explosion";

(6) "public statements by Defendant after the UBB explosion, including statements on the subject of whether there were willful or intentionally allowed violations of safety standards at UBB or Massey, or on whether Massey prioritized profits over safety";

(7) "an SEC staff comment letter sent to Massey on or about July 2, 2010" and "Massey's response to it", both outside the indictment period;

(8) "Massey's upward revision of its previously reported non-fatal days lost rates in a September 2010 document titled 'Letter to Stakeholders,'" which also is outside the indictment period.

This evidence is extensive. It not only would introduce new conduct in the case, not encompassed in the indictment, but also it would expand the indictment period by years and would expand the evidence beyond the UBB mine. In addition, some categories of proposed evidence – such as unspecified testimony of Mr. Blankenship and unspecified civil litigation

against him – require much more specific information from the government, and, if necessary, a motion to compel greater specificity. The defense must investigate and develop responses to the proposed Rule 404(b) evidence, which, by definition, is not evidence encompassed by the facts alleged in the superseding indictment. The defense must consider and potentially prepare motions to exclude or limit the admissibility of the Rule 404(b) evidence. Further, the defense must locate and interview witnesses, find or subpoena documents, and use the information and documents in trial preparation and presentation, whether for cross-examination, exhibits, or defense witnesses.

The government's disclosure earlier this week of this expert testimony and Rule 404(b) evidence, standing alone, would require a continuance of the trial date and the trial-related deadlines. There are many additional reasons, which are set forth in the defense motion for a continuance and the unopposed motion for a scheduling conference, why the defense cannot proceed to trial on April 20, 2015, or for many months thereafter:

- the defense has had insufficient time to review, process, and incorporate into trial preparation the ***four million pages*** of documents produced in discovery – a problem made more acute by the Court's decision yesterday to deny relief under *Brady* as premature until the defense has reviewed this extensive material (ECF No. 222) and thereby to make Mr. Blankenship's *Brady* rights contingent on his ability complete this review;

- the defense has had insufficient time to review, process and incorporate into trial preparation several hundred memoranda of witness interviews, almost 500 transcripts of interviews conducted by MSHA, and grand jury transcripts and to conduct defense interviews of scores of potential witnesses;

- the defense has had insufficient time to review for trial the dozens upon dozens of hours of audio recordings that the government has designated as Rule 16 material;
- the charges are extremely broad, encompassing an alleged conspiracy of more than two years and approximately 835 citations issued by MSHA for alleged violations of health and safety standards at UBB;
- the trial is set to begin shortly after the fifth anniversary of the tragic explosion at the Upper Big Branch mine, which was expected to produce (and did produce) inflammatory prejudicial publicity;[1] and,
- the government filed a superseding indictment on March 10, 2015, requiring the defense to investigate new allegations contained in the indictment and prepare and file pretrial motions addressed to the superseding indictment.

The conclusion to the reply brief in support of the defense motion for a continuance bears repeating and supplementation based on the government's recent disclosures: The government's opposition to providing the defense a reasonable period of time to prepare for trial is tactical. It understands that its best chance of convicting Mr. Blankenship is to deny the defense the opportunities to review Rule 16 discovery and to address recently disclosed experts and Rule 404(b) evidence. There are documents and pieces of information scattered among the four million pages of discovery that are *Brady* material – because they are highly exculpatory, will impeach government witnesses, or otherwise will help Mr. Blankenship's defense. There are witnesses among the hundreds interviewed in the government's investigation, as well as individuals who the government elected not to interview, who will provide a narrative quite different from the one the government will tell at trial. There are experts and other evidence that

[1] *See, e.g., Remembering "industrial homicide,"* THE CHARLESTON GAZETTE (Apr. 4, 2015), *available at* http://www.wvgazette.com/article/20150404/ARTICLE/150409701/1103.

may discredit and contradict the government's proposed expert testimony and Rule 404(b) evidence.

Limiting defense counsel's time to prepare for trial ensures that documents, information, and witnesses will not be found or will not be used at trial effectively. Of relevance to this supplement, it unduly interferes with the defense's ability to address the government's proposed expert testimony and Rule 404(b) evidence. None of those tactical objectives and none of the government's arguments in opposition to the motion for a continuance have anything to do with good cause, fairness, or the legal standards of 18 U.S.C. § 3161(h)(7). The Court should grant Mr. Blankenship's motion to continue because he has shown good cause, because it is in the interest of justice to grant it, and because Mr. Blankenship will be denied his constitutional rights to a fair trial and the effective assistance of counsel if his motion is denied.

Dated: April 9, 2015

Respectfully submitted,

*/s/ Blair G. Brown*

William W. Taylor, III
Blair G. Brown
Eric R. Delinsky
R. Miles Clark
Steven N. Herman
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
202-778-1800 (phone)
202-822-8106 (fax)
wtaylor@zuckerman.com
bbrown@zuckerman.com
edelinsky@zuckerman.com
mclark@zuckerman.com
sherman@zuckerman.com

*/s/ James A. Walls*
James A. Walls (WVSB #5175)
SPILMAN THOMAS & BATTLE, PLLC
48 Donley Street, Suite 800
P.O. Box 615
Morgantown, WV 26501
304-291-7947 (phone)
304-291-7979 (fax)
jwalls@spilmanlaw.com

*Counsel for Donald L. Blankenship*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been electronically filed and service has been made by virtue of such electronic filing this 9th day of April 2015 on:

R. Booth Goodwin, II
Steven R. Ruby
U.S. Attorney's Office
P.O. Box 1713
Charleston, WV 25326-1713

*/s/ Blair G. Brown*
Blair G. Brown