# EXHIBIT 1



**United States Department of Justice**

United States Attorney
Southern District of West Virginia

Robert C. Byrd United States Courthouse
300 Virginia Street, East
Suite 4000
Charleston, WV 25301
1-800-659-8726

Mailing Address
Post Office Box 1713
Charleston, WV 25326
304-345-2200
FAX: 304-347-5104

April 6, 2015

By e-mail and overnight delivery

William W. Taylor, III
Zuckerman Spaeder LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036

Re: *United States v. Blankenship*, 5:14-cr-00244 (S.D. W. Va.)

Dear Counsel:

The United States provides this letter to inform you of certain matters pertinent to the upcoming trial in this case.

### Possible expert testimony

Pursuant to Rule 16(a)(1) of the Federal Rules of Criminal Procedure, the United States below summarizes the qualifications, opinions, and bases and reasons for the opinions of witnesses who may testify pursuant to Rule 702 of the Federal Rules of Evidence.

The United States may offer testimony from Frank C. Torchio. Mr. Torchio is an expert in securities markets and economic and financial analysis. Since 1989, he has been the president of Forensic Economics, Inc., where he provides consulting services in financial valuations and financial and economic analysis. Since 1997, Mr. Torchio has been a member of the faculty at the University of Rochester's Simon School of Business, where he teaches courses on finance and economics. He has published scholarly papers in financial valuation and securities analysis in publications including *The Journal of Business Valuation and Economic Loss Analysis*, *The Journal of Corporation Law*, and *Law and Contemporary Problems*. Mr. Torchio has provided expert analysis or testimony in numerous securities-related legal disputes. From 1982 through 1989, Mr. Torchio worked as a financial analyst, economist, and subsidiary vice-president for Rochester Gas and Electric Corporation. He holds a bachelor of arts

William W. Taylor, III, Esq.
*United States v. Blankenship*
Page 2

degree in mathematics from Niagara University and a master of business administration degree in economics and finance from the University of Rochester, and is a Certified Financial Analyst.

The bases of Mr. Torchio's opinions in connection with this case include records of prices for Massey Energy Company ("Massey") common stock, Massey's filings with the Securities and Exchange Commission ("SEC"), records concerning changes in various stock indexes, news reports concerning Massey, transcripts of Massey conference calls with investment analysts, and investment analyst reports concerning Massey.

Mr. Torchio's opinions in connection with this case include the following: the statement, made in Massey's April 8, 2010 statement to shareholders and an April 9, 2010 Massey press release, that Massey did not condone any violation of Mine Safety and Health Administration ("MSHA") regulations and strived to be in compliance with all regulations at all times, was material to investors. Assuming, moreover, that the allegations in the Superseding Indictment are true, then Massey, in making the April 8 and 9, 2010 statements, omitted to state facts about its violations of MSHA regulations, and related conduct, that would have been material to investors. For similar reasons, these statements were material to a matter within the jurisdiction of the SEC, since, among other reasons, part of the SEC's jurisdiction includes enforcing prohibitions of false and misleading statements that would be material to a reasonable investor.

The reasons for these opinions include Mr. Torchio's knowledge that it ordinarily is material to investors whether a company or its senior officials have engaged in intentional law-breaking, especially when that law-breaking is connected to a significant negative event or could lead to significant liability or criminal prosecution. The reasons for these opinions also include Mr. Torchio's event-study analysis of market responses to Massey's statements and Massey-related news in the period following the explosion at the Upper Big Branch mine ("UBB"). Other reasons for these opinions include Mr. Torchio's knowledge of the regulation of securities markets and the function of the SEC.

Mr. Torchio also may offer background information regarding securities markets, the regulation of securities markets, and norms and standards for companies traded in those markets.

The United States also may offer testimony from Tracy L. Stumbo. Mr. Stumbo is an expert on coal mine safety. He served 18 years as Chief Accident Investigator for the Kentucky Division of Mine Safety. In that capacity, he led investigations of the deaths of approximately 132 coal miners and serious injuries to dozens of others. Mr. Stumbo conducted investigations of fatalities and serious injuries resulting from, among other things, explosions, fires, roof

William W. Taylor, III, Esq.
*United States v. Blankenship*
Page 3

falls, coal outbursts caused by geologic pressure, and unsafe use of mine equipment. Prior to serving as Chief Accident Investigator, Mr. Stumbo served approximately 11 years as a mine safety analyst and then mine safety inspector with the Kentucky Division of Mine Safety. Before that, he worked in the coal industry for approximately 12 years: six years in various coal production and processing positions, including operating production equipment in underground coal mines, followed by six years as an underground coal mine foreman. In total, Mr. Stumbo worked as a coal miner and coal mine safety official for more than 40 years. During the course of his career, he worked in, inspected, or conducted investigations in at least 300 coal mines and spent tens of thousands of hours underground.

Mr. Stumbo is certified as a mine inspector, mine rescuer, mine safety instructor, mine foreman, mine safety analyst, mine emergency technician, hoisting engineer, electrician, and shot firer, and is also certified in solid blasting and gas detection in coal mines. He is trained in mine accident investigation, mine ventilation, mine roof control, mine haulage, mine dust control, mine noise control, and crime scene investigation. Mr. Stumbo's specific areas of expertise include principles of coal mine safety, legal standards and requirements governing safety in coal mines, and the identification of practices of non-compliance with such standards and requirements. He has testified in numerous adjudicative proceedings conducted to determine liability for violations of mine safety standards as well as coroners' inquests conducted to establish the causes of coal mining fatalities.

The bases of Mr. Stumbo's opinions in connection with this case include citations issued for violations of mandatory federal mine safety and health standards at UBB, maps and other background records regarding UBB, information provided by individuals who witnessed safety-related practices and conditions at UBB, information uncovered by investigations conducted after the explosion at UBB, memoranda and similar documents concerning UBB and Massey's other operations, UBB production reports, and documents concerning staffing at UBB.

It is Mr. Stumbo's opinion that during at least January 1, 2008, through April 9, 2010 (the "Indictment Period"), there was a practice of routinely violating fundamental, mandatory federal mine safety and health standards at UBB. The vast majority of the violations committed as part of that practice were readily preventable through basic mine safety practices that are well understood throughout the coal mining industry. The fact that the vast majority of these violations were preventable, as well as the means of preventing them, would have been obvious to any experienced mine official. Officials with control and supervision over UBB furthered the practice. The

William W. Taylor, III, Esq.
*United States v. Blankenship*
Page 4

practice of routine safety law violations at UBB allowed the mine, in the short term, to produce more coal at less expense than would have been possible had reasonable efforts been made to follow the law. The extent and severity of the practice of safety law violations at UBB required a mutual understanding among many individuals that mine safety laws would routinely be violated.

Reasons for these opinions include Mr. Stumbo's assessment, in light of his extensive experience and training in mining and in investigating the causes of mine safety violations, of factors including the following: whether specific safety violations at UBB were preventable; what practices could have prevented those violations; the chronic and repeated nature of preventable safety violations at UBB; the amount and kind of information provided to senior Massey officials, including Defendant, about the nature, type, and frequency of safety violations at UBB; evidence from eyewitnesses at UBB concerning the causes of chronic safety violations there; and the level of knowledge in the mining industry of how to prevent particular types of safety violations that were committed chronically at UBB. Reasons for Mr. Stumbo's opinions also include his knowledge of how decisions by those with control over a mine can prevent practices of chronic safety violations of various types, or, conversely, cause such practices; and his knowledge that widespread, chronic, preventable safety violations at a large mine controlled by a large mining company cannot occur without the conscious participation of many individuals.

Mr. Stumbo may also offer background testimony regarding principles of coal mining, principles of mine safety, and mine safety standards, which is necessary to an understanding of his testimony and of other testimony that may be offered.

### Notice for avoidance of dispute regarding Rule 404(b)

The United States may offer evidence relating to:

- a memorandum dated on or about October 17, 2005, sent by Defendant, the subject of which was "Running Coal";
- Massey subsidiaries' guilty pleas to willful violations of mandatory federal mine safety and health standards; these subsidiaries include White Buck Coal and Aracoma Coal; on this subject, please see the plea agreements enclosed with this letter, along with Massey's 10-K for 2008 (especially page 92, concerning Aracoma's criminal guilty plea), and board minutes discussing White Buck's criminal guilty plea (EY-ME-WP-07-000246, particularly page 4);

William W. Taylor, III, Esq.
*United States v. Blankenship*
Page 5

- testimony by Defendant in past Massey civil litigation;
- the effect on Massey's financial performance and on investors of past willful violations of mandatory federal mine safety and health standards, including violations at Aracoma Coal that substantially affected Massey's financial performance;
- civil litigation against Defendant arising from the UBB explosion;
- public statements by Defendant after the UBB explosion, including statements on the subject of whether there were willful or intentionally allowed violations of safety standards at UBB or Massey, or on whether Massey prioritized profits over safety;
- an SEC staff comment letter sent to Massey on or about July 2, 2010 (PCC-DOJ-03244514) and Massey's response to it; and
- Massey's upward revision of its previously reported non-fatal days lost rates in a September 2010 document titled "Letter to Stakeholders" (PCC-DOJ-03022258).

None of this evidence necessarily is subject to Rule 404(b) of the Federal Rules of Evidence, but notice is being given to avoid dispute.

## Judicial notice

The United States may ask the Court to take judicial notice of matters including provisions of Title 30, United States Code, Chapter 22; and Title 30, Code of Federal Regulations, Chapter I; the content of documents that Massey submitted to the SEC and that are publicly available via the SEC's EDGAR computer system, along with the fact of the submission of those documents; and the fact that Montcoal, West Virginia, and Julian, West Virginia, are within the Southern District of West Virginia.

## Other matters

Also enclosed is a small set of additional documents. The United States has, to date, received no reciprocal discovery from Defendant; the United States reminds Defendant of his obligation in that regard.

Sincerely,
R. BOOTH GOODWIN II
United States Attorney

By: *[signature]*

STEVEN R. RUBY
Assistant United States Attorney

Enclosure