**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**BECKLEY DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>DONALD L. BLANKENSHIP )<br>) | Criminal No. 5:14-cr-00244 |

### DEFENSE MOTION TO COMPEL THE GOVERNMENT TO IDENTIFY IN ITS PRODUCTION *BRADY* AND RULE 16(a)(1) MATERIAL

Mr. Blankenship, through counsel, hereby requests an order compelling the government to identify by bates numbers within its document production: (1) all *Brady* material; (2) the documents that the government intends to use in its case-in-chief, including documents that will be referred to or relied upon by government witnesses; (3) all of Mr. Blankenship's written statements encompassed by Federal Rule of Criminal Procedure 16(a)(1)(B); and (4) the relevant portions of the extensive audio recordings the government has produced and the portions of these recordings that the government intends to use in its case-in-chief, including those that will be referred to or relied upon by government witnesses.

As set forth below, given the government's massive and overbroad document production in this case, this relief is required under *Brady v. Maryland*, Federal Rule of Criminal Procedure 16, and the cases interpreting them. Such relief is particularly necessary here given the trial schedule. Undersigned counsel previously advised the Court that they cannot complete even an initial review of the discovery provided by the government before early fall. But the Court has set the trial for July 13, with jury selection to begin July 9. Mr. Blankenship therefore will not have the opportunity by the time of trial to complete a review of the government's discovery,

much less to put it to use. The resulting prejudice will be heightened further if the government does not provide the specification required by *Brady* and Rule 16 that is requested herein.

## ARGUMENT

The government has produced more than *four million pages* of documents – an enormous amount of data by any measure. In addition to being mammoth in scope, the production is overbroad. As the government has represented to the Court, "the United States has elected to produce a set of documents substantially broader than required." ECF No. 39 at 3; *see also* ECF No. 62 at 39-40. While it may appear that the government has made a generous production so as to ensure compliance with its discovery obligations, in reality, its voluminous and overbroad production makes the defense burden more onerous. *Accord United States v. Modi*, 197 F. Supp. 2d 525, 530 (W.D. Va. 2002) ("[T]he volume of discovery in a complex case may itself impede rather than assist the defense in its understanding of the government's case. Merely to be shown thousands of documents without any direction as to the significance of the various pieces of paper may not comport with fairness."). This is compounded by the fact that the production is unorganized, and deficiencies in the electronic characteristics of the documents limit the defense's ability to effectively "de-dupe" or date-sort the documents. *See* ECF No. 161, at 3-4. This kind of a production does not satisfy the government's obligations under Federal Rule of Criminal Procedure 16 and under *Brady v. Maryland*, 373 U.S. 83 (1963). The government's failure to comply with its Rule 16 and *Brady* obligations should not be tolerated in any case, but it is acutely prejudicial to Mr. Blankenship here given the impending trial date, to which the defense has objected.

Accordingly, to ensure meaningful compliance with the requirements of *Brady v. Maryland* and Federal Rule of Criminal Procedure 16, and to afford Mr. Blankenship a fair

opportunity to prepare for trial, the defense hereby requests that the Court order the government to identify by bates number within its production (1) all *Brady* material; (2) all documents that the government intends to use in its case-in-chief, including documents that will be referred to or relied upon by government witnesses; (3) all of Mr. Blankenship's written statements encompassed by Federal Rule of Criminal Procedure 16(a)(1)(B); and (4) the portions of the extensive audio recordings the government has produced that are relevant and the portions of these recordings that the government intends to use in its case-in-chief, including those that will be referred to or relied upon by government witnesses.

## I. Identification of *Brady* Material

The government claims that it has fulfilled its *Brady* obligations because somewhere buried in the four million pages of documents produced to the defense lies the exculpatory material to which Mr. Blankenship is constitutionally entitled. But the government does not satisfy its *Brady* obligations by "hid[ing] *Brady* material as an exculpatory needle in a haystack of discovery materials." *United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013); *see also United States v. Hsia*, 24 F. Supp. 2d 14, 29-30 (D.D.C. 1998), *rev'd in part on other grounds*, 176 F.3d 517 (D.C. Cir. 1999) ("The Government cannot meet its *Brady* obligations by providing [the defendant] with access to 600,000 documents and then claiming that she should have been able to find the exculpatory information in the haystack."). Yet, here, the government has done just that.

Under the best of circumstances, a massive, undifferentiated production such as this would be prejudicial to the defendant. Given the current trial schedule, however, the government's actions will deprive Mr. Blankenship of his constitutional rights to exculpatory evidence. As one court observed, "at some point, 'disclosure,' in order to be meaningful,

requires 'identification' as well." *United States v. Salyer*, Cr. No. S-10-0061 LLK (GGH), 2010 WL 3036444, at *6 (E.D. Cal. Aug. 2, 2010); *see also Hsia*, 24 F. Supp. 2d at 29-30 ("To the extent that the government knows of any documents or statements that constitute *Brady* material, it must identify that material to [the defendant]."). Particularly given the voluminous document production and the impending trial date in this case, *Brady* requires that the government identify the exculpatory material rather than bury it within hundreds of thousands of documents.

The constitutional prejudice here – and the concomitant need for the government to identify the *Brady* material embedded in its massive production – is compounded by the Court's ruling on the defense's *Brady* motion. *See* ECF No. 222. In that ruling, the Court denied as premature the defense request for an order compelling the government to produce enumerated categories of favorable documents. *Id.* The Court denied this relief on the ground that the defense has not yet had the opportunity to review the entire production. *Id.* But the schedule does not provide time for such a review. Thus, if the instant motion is not granted, the defense not only will be unable to locate all of the *Brady* material before trial, but it also will be limited in its ability ascertain whether categories of *Brady* have not been produced and to seek relief from the Court. The constitutional harm created by these circumstances is extreme.

An order requiring the government to identify *Brady* material should not pose a significant burden for the government. Indeed, as the government well knows, it has a constitutional affirmative obligation to scour its own records – including those of its subordinate agencies in the investigation resulting in the criminal case – to determine which materials would be considered *Brady* materials. *See, e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *United States v. Naegele*, 468 F. Supp. 2d 150, 153-54 (D.D.C. 2007). Thus, assuming that the

government has undertaken those searches, identifying the Brady material should not be difficult.[1]

## II. Identification of Case-in-Chief Documents

The defense also requests that the Court order the government to identify all documents that the government intends to use in its case-in-chief, including documents that will be referred to or relied upon by government witnesses. The government is obligated to disclose this category of material under the plain terms of Rule 16(a)(1)(E)(ii), and courts have routinely held that the government has not lived up to its obligations under this provision of Rule 16 simply by dumping voluminous productions on the defendant and instead must identify the materials that it intends to rely upon, as well as any documents to be referred to or relied upon by its witnesses. *See, e.g.*, *United States v. Anderson*, 416 F. Supp. 2d 110, 114 (D.D.C. 2006) (granting motion to compel government to identify materials that it planned to use in case-in-chief on the grounds that "requiring defendant's counsel to peruse each page of the materials at issue here . . . would materially impede defendant's counsel's ability to prepare an adequate defense"); *United States v. Locascio*, Crim. No. 4:05-476-RBH, 2006 WL 2796320, at *7-8 (D.S.C. Sept. 27, 2006) (defense should not be put to the expense of reviewing thousands of files while hoping to "stumble across" the ones government would use at trial, and "basic fairness, an opportunity for adequate preparation for trial, avoidance of surprise or unfair advantage, as well as the elimination of possible mid-trial recesses" required pretrial identification of government exhibits); *United States v. Upton*, 856 F. Supp. 727, 746-47 (E.D.N.Y. 1994) (ordering

---

[1] Indeed, were the government to argue that the burden of identifying *Brady* material was significant, it would prove Mr. Blankenship's point. "If the government professes [an] inability to identify the required information after five *years* of pre-indictment investigation, its argument that the defense can easily identify the materials buried within the mass of documents within *months* of post-indictment activity is meritless." *Salyer*, 2010 WL 3036444, at *5 (internal quotation marks omitted) (emphasis in original).

5

government to identify documents that it would rely on at trial as well as list all documents to be referred to or relied upon by government witnesses); *United States v. Poindexter*, 727 F. Supp. 1470, 1484 (D.D.C. 1989) (same); *United States v. Turkish*, 458 F. Supp. 874, 882 (S.D.N.Y. 1978).

Moreover, in other cases involving document productions far less voluminous than the one in this case, the U.S. Attorney's Office for the Southern District of West Virginia has made such identifications willingly. For instance, in the prosecution of executives of Freedom Industries relating to the chemical spill, the government provided the defense "a separate, marked digital folder that contains the exhibits that the government intends to introduce in its case-in-chief" in light of the government's voluminous production. *See United States v. Farrell, et al.*, Resp. of the United States to Defendant Dennis P. Farrell's Mot. For Continuance, Case No. 2:14-cr-00264, ECF No. 108, at 2-3.[2] Indeed, the Discovery Policy in the U.S. Attorney's Office for the Southern District of West Virginia encourages the identification of "documents that are certain to be introduced as exhibits in the government's case-in-chief." Discovery Policy, United States Attorney's Office, Southern District of West Virginia (Oct. 20, 2010), at 16, *available at* https://www.documentcloud.org/documents/1503065-sdwv-discovery-policy.html.

### III. Rule 16(a)(1)(B) Written Statements

Similarly buried somewhere within the four million pages of documents produced by the government lie Mr. Blankenship's written statements covered by Federal Rule of Criminal Procedure 16(a)(1)(B). For the reasons already described, the defense stands no chance of locating all of that material prior to the trial date. Accordingly, here too, the government has

---

[2] As noted previously, the volume of material in that case is less than one-half the volume here. *See* ECF No. 118 at 13.

failed to satisfy its obligations under Rule 16. The defense requests that the Court order the government to identify the Rule 16(a)(1)(B) material from within its overbroad production. These statements are critical to formulating Mr. Blankenship's defense and are foundational to any trial strategy. Furthermore, because many of Mr. Blankenship's statements are contained in hand-written notes, it is impossible for the defense to search the government's document production for these documents. Without the identification of Mr. Blankenship's Rule 16(a)(1)(B) statements, the defense will be unable to locate all of these statements prior to trial – causing severe prejudice to Mr. Blankenship's Sixth Amendment rights.

### IV.     Rule 16(a)(1)(B) Recorded Statements

Finally, as part of the government's voluminous production, the government produced *en masse*, by our estimate, well more than 100 hours of Mr. Blankenship's recorded conversations, without identifying which conversations are relevant to the case. Under Rule 16(1)(B)(i), however, the government must disclose the "relevant" portions of these conversations. Thus, the government's production of these recordings does not comply with Rule 16 and, especially given the trial date and document-dump style production, relief is necessary. The defense therefore requests under Rule 16 that the government be compelled to identify which recordings or portions of recordings are relevant and which it intends to use in its case-in-chief, including recordings or portions of recordings that will be referred to or relied upon by government witnesses.

### CONCLUSION

As it stands, the government has failed to comply with its obligations under *Brady* and under Rule 16. This failure has been compounded by the extraordinary volume of documents dumped on the defense, the nature of the document production, and the impending trial date.

Accordingly, the defense requests an order from the Court requiring the government to make the identifications specified in this motion.

Dated: April 28, 2015                                    Respectfully submitted,

>  */s/ William W. Taylor, III*
> William W. Taylor, III
> Blair G. Brown
> Eric R. Delinsky
> R. Miles Clark
> Steven N. Herman
> ZUCKERMAN SPAEDER LLP
> 1800 M Street, NW, Suite 1000
> Washington, DC 20036
> 202-778-1800 (phone)
> 202-822-8106 (fax)
> wtaylor@zuckerman.com
> bbrown@zuckerman.com
> edelinsky@zuckerman.com
> mclark@zuckerman.com
> sherman@zuckerman.com
>
>  */s/ James A. Walls*
> James A. Walls (WVSB #5175)
> SPILMAN THOMAS & BATTLE, PLLC
> 48 Donley Street, Suite 800
> P.O. Box 615
> Morgantown, WV 26501
> 304-291-7947 (phone)
> 304-291-7979 (fax)
> jwalls@spilmanlaw.com
>
> *Counsel for Donald L. Blankenship*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been electronically filed and service has been made by virtue of such electronic filing this 28th day of April 2015 on:

R. Booth Goodwin, II
Steven R. Ruby
U.S. Attorney's Office
P.O. Box 1713
Charleston, WV 25326-1713

                                       */s/ Eric R. Delinsky*
                                       Eric R. Delinsky