# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    CRIMINAL ACTION NO. 5:14-cr-00244

DONALD L. BLANKENSHIP,

        Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed *Defense Motion No. 28, Motion to Dismiss Count One of the Superseding Indictment for Failure to State a Conspiracy to Defraud the United States of Money or Property* (Document 211), the *Memorandum in Support* (Document 212), the *United States' Response to Defense Motions on Superseding Indictment* (Document 215), and the *Reply in Support of Defense Motion No. 28, Motion to Dismiss Count One of the Superseding Indictment for Failure to State a Conspiracy to Defraud the United States of Money or Property* (Document 241).

Additionally, because it is related, the Court has reviewed *Defense Motion No. 12A: Motion to Dismiss Count One of the Superseding Indictment for Charging Conspiracy to Defraud the United States of Intangible Rights* (Document 192), and all exhibits and attachments filed therewith. For the reasons stated more fully herein, the Court finds that the Defendant's motions should be denied.

**FACTUAL AND PROCEDURAL HISTORY**

A Grand Jury meeting in Charleston, West Virginia, returned a four count Indictment (Document 1) against the Defendant on November 13, 2014. Count One charged Donald L. Blankenship with conspiracy to willfully violate mandatory mine safety and health standards under the Mine Act, Count Two alleged a conspiracy to defraud the United States by impeding the Mine Health Safety Administration (MSHA) in the administration and enforcement of mine safety and health laws, while Counts Three and Four alleged securities law violations. The Defendant made his initial appearance at an arraignment and bail hearing on November 20, 2014, and was released the same day after posting bail and agreeing to abide by the terms of an order setting forth the conditions of release. (*See* Documents 13-19.) On March 10, 2015, the Charleston Grand Jury returned a three count Superseding Indictment (Document 169) against Donald L. Blankenship. The substance of the charges remains the same. However, Counts One and Two of the original indictment were merged into superseding Count One. The original Count Three is now Count Two, and Count Four of the original indictment is Count Three in the superseding indictment.

The *Defendant's Motion to Exclude Time Under the Speedy Trial Act, Re-Set Motions Deadline, Vacate Trial Date, and Set Scheduling Conference* (Document 29) was filed on December 2, 2014, and a hearing was held on December 17, 2014. After hearing the parties' arguments, the Court orally granted the Defendant's motion to continue the trial, with a written order to follow.

On January 5, 2015, the Court entered a *Criminal Scheduling Order* (Document 61) that set several pertinent dates. Specifically, the order required that all motions to dismiss, suppress, and

any motions *in limine* "be filed no later than February 6, 2015." The order also specified February 6, 2015, as the filing deadline for additional pretrial motions, and scheduled the pretrial motions hearing for March 3, 2015. The *Defendant's Motion for Extension of Time to File Motion to Transfer this Case to Another District for Trial* (Document 71) was filed on January 28, 2015, and the Court granted said motion in its February 4, 2015 *Order* (Document 76), extending the filing deadline for a motion to change venue to February 20, 2015.

On February 6, 2015, prior to the return of the superseding indictment, the Defendant filed nineteen (19) pretrial motions. The *United States' Motion for Extension of Time to Respond to Pretrial Motions* (Document 115) was filed on February 10, 2015. On February 12, 2015, the Court entered an *Order* (Document 116) granting the motion in part, setting Friday, February 20, 2015, as the "deadline for the filing of the United States' responses to the Defendant's pretrial motions."

The Defendant was arraigned on the superseding indictment on the 24th day of March, 2015. At that time, the presiding magistrate judge granted leave to the Defendant to file motions relative to the superseding indictment within two weeks of arraignment.

*Defense Motion No. 12A: Motion to Dismiss Count One of the Superseding Indictment for Charging Conspiracy to Defraud the United States of Intangible Rights* and *Defense Motion No. 28, Motion to Dismiss Count One of the Superseding Indictment for Failure to State a Conspiracy to Defraud the United States of Money or Property* were filed on April 7, 2015. The United States' Response was filed on April 8, 2015, and the Defendant's Reply was filed on April 15, 2015. The matter is ripe for ruling.

**APPLICABLE LAW**

"[T]o survive a motion to dismiss sought pursuant to Rule 12 [of the Federal Rules of Criminal Procedure], an indictment must allege facts that, if proven true, would sustain a violation of the offense charged." *United States v. Hasan*, 747 F.Supp2d 599, 602 (E.D. Va. 2010). "An indictment is sufficient if it: 1) alleges the essential elements of the offense charged and provides the defendant with notice of the crime with which he is charged; and 2) enables the defendant to plead double jeopardy in any future prosecution for the same offense." *United States v. Lang*, 766 F.Supp. 389, 395 (D.Md. 1991). "A 12(b) motion is permissible only when it involves a question of law rather than fact." *United States v. Shabbir*, 64 F.Supp.2d 479, 481 (D.Md. 1999) (citation omitted). A Court cannot grant the motion to dismiss under Rule 12 if a Defendant's "legal contentions are inextricably bound up with the facts of the case." (*Id.*)

**DISCUSSION**

The Defendant argues that Count One of the superseding indictment is defective because it impermissibly alleges that the United States was defrauded and deprived of (1) "the lawful and legitimate functions of [the Department of Labor] and its agency, MSHA, in the administration and enforcement of mine safety and health laws" and (2) "money that it otherwise would have received." (Document 212 at 1.) The Defendant contends that both "are invalid as a matter of law." (*Id.*) The Court addresses each contention below.

*A. Impairing, Obstructing, or Defeating Lawful Function*

The Defendant first argues[1] that "[18 U.S.C.] § 371's defraud clause cannot properly be read to encompass the alleged impairment of intangible rights." (Document 98 at 1.) He avers

---

1  The Court notes that the Defendant directed this line of attack to Count Two of the original indictment, and later

that even if proper, *Skilling v. United States*, 561 U.S. 358 (2010), limits and prevents the application of this theory to the case at bar on vagueness grounds. (*Id.*) He cites cases from other Circuits and the United States Supreme Court involving mail fraud statutes, including *Skilling* and *McNally v. United States*, 483 U.S. 350 (1987). He argues a tortured history of relevant case law, and after acknowledging that *Skilling* involved a different statute, declares that § 371 is "limited to conduct involving bribery or kickbacks, and because [Count One] does not allege any such conduct," it must be dismissed. (*Id.* at 3-8.)

The United States responds in opposition that the Defendant is asking the Court "to overturn a 105 year old Supreme Court decision" expressly upholding § 371. (Document 129 at 20.) It notes that those cases are still good law and this Court lacks the authority to overturn the Supreme Court even if it disagrees. (*Id.* at 21-22.)

The Defendant replies that the United States has offered "no reason to conclude that the intangible rights theory could be valid in the context of a conspiracy to defraud the United States when it is not valid, absent bribery or kickbacks, in the context of mail or wire fraud." (Document 153 at 1.) He claims the Supreme Court cases carry no precedential value because one was not factually on point and the other employed dicta. He further argues that because bribery allegations are lacking, the United States' position on the suitability of charging a conspiracy to defraud under § 371 fails when viewed against the allegations of the indictment. (*Id.* at 2-3.)

*B. Money or Property*

The Defendant next argues that the allegations in the superseding indictment "do not state a valid 'money or property' fraud theory." (Document 212 at 3.) Although finding no criminal case on point, the Defendant points to cases employing the False Claims Act, and holdings

---

re-alleged the same against Count One of the superseding indictment.

essentially standing for the proposition that "the United States must demonstrate that it was owed a specific legal obligation . . ." and that "[t]he obligation cannot be merely a potential liability." (*Id.* at 5) (quoting *United States v. Q Int'l Courier, Inc.*, 131 F.3d 770, 773 (8th Cir. 1997)). The Defendant argues that because he did not have a fixed duty to pay a fine that existed prior to the complained-of act here, he cannot now be said to have defrauded the government or any of its agencies of money or property. (*Id.*) He stresses that "[m]ine safety enforcement proceedings that did not occur and did not result in the imposition of penalties do not give rise to debts." (*Id.* at 6.)

He argues, "[t]o the extent there is any doubt, the rule of lenity precludes prosecution . . . using the expansive interpretation of section 371 advanced by the government," and cites *Cleveland v. United States*, 531 U.S. 12 (2000), to bolster this argument. "As in *Cleveland*, adopting the government's expansive interpretation of 'money or property' in this case to include hypothetical penalties would be inconsistent with the meaning of the term 'to defraud' . . . and would violate the rule of lenity." (*Id.* at 7.) He also argues that allowing the government's position "would deprive [him] of fair notice required by the Due Process Clause of the Constitution." He contends that because one of the objects of Count One is invalid, the entire count must be dismissed. "Even if the other two objects of the charged conspiracy are legally valid . . . proceeding to trial on those theories would require the Court to impermissibly guess at whether the grand jury would have indicted on them alone." (*Id.*)

The United States (again) responds that the Defendant seeks to have this Court overturn Supreme Court precedent, and notes that "he cites no authority related to § 371, but [instead] rests his argument on precedent interpreting an amendment to the False Claims Act," concluding that "his argument merits no serious consideration." (Document 215 at 10-11.)

6

The Defendant replies that the False Claims Act cases are informative, and stresses that "penalties that have not been assessed are not debts (obligations) owed to the United States, and so—to the extent that a debt *owed* to a party is equivalent to money or property actually *held by* the party—assessed penalties cannot qualify as money or property of the United States." (Document 241 at 1-3) (emphasis in original.) He concludes, "[t]he intangible rights theory of the original indictment is invalid and indefensible, and the penalty-avoidance theory in the superseding indictment fares no better." (*Id.* at 3.)

The Court finds that the Defendant's motions should be denied based on clear Supreme Court precedent, namely *Haas v. Henkel*, 216 U.S. 462 (1910) and *Hammerschmidt v. United States*, 265 U.S. 182 (1924), cases which the Defendant cites, but attempts to distinguish on one ground or another. Together, these two cases squarely address—and refute—the Defendant's position. *Haas* involved an alleged conspiracy between several defendants "to defraud the United States by secretly obtaining information . . . as to the probable contents of certain official cotton crop reports in advance of the time when these reports were to be promulgated according to law." 216 U.S. 462, 477. There, the Supreme Court addressed the predecessor to § 371, a conspiracy to defraud under § 5440, and had to determine whether the alleged crimes, which did "not expressly charge that the conspiracy included any direct pecuniary loss to the United States" were nonetheless validly charged by the government.

Answering in the affirmative, the Supreme Court reasoned, "it is not essential that such a conspiracy shall contemplate a financial loss [to the government] or that one shall result. The statute is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government." 216 U.S. at 479.

7

The Supreme Court went on to stress, "[t]hat it is not essential to charge or prove an actual financial or property loss to make a case under the statute has been more than once ruled." 216 U.S. at 480. The *Haas* court cited *Hyde v. Shine*, and the pronouncement there that "the unsoundness [or requiring a showing of pecuniary loss] needs no demonstration. The [S]tates have a right to punish a violation of a statute enacted as part of their public policy, notwithstanding they may have suffered no pecuniary damage therefrom. The same argument applies to the United States . . .." 199 U.S. 62, 81 (1905) (brackets added).

Roughly fifteen years later, the Supreme Court again visited this issue in *Hammerschmidt v. United States*. There, several defendants were charged with "willfully and unlawfully conspir[ing] to defraud the United States by impairing, obstructing, and defeating a lawful function of its government . . . by advis[ing] and procur[ing] persons subject to the Selective Act to refuse to obey it." 265 U.S. 182, 185 (1924). The government in *Hammerschmidt* relied on Mr. Justice Lutton's language in *Haas v. Henkel*, specifically that "[t]he statute is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department or government." 265 U.S. at 185-86 (quoting *Haas*, 216 U.S. at 479). Even though the Supreme Court in *Hammerschmidt* concluded that the "demurrer to the indictment . . . should have been sustained and the indictment quashed," it noted, with apparent approval, the notion:

> To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane,

8

> or the overreaching of those charged with carrying out the governmental intention.

265 U.S. at 188 (1924).

If there were any questions about the applicability of case law cited above or the propriety of the instant indictment, the Supreme Court has more recently approached the matter, albeit through dicta, in *United States v. Johnson*. There, a United States Congressman was indicted and convicted on seven counts of violating the federal conflict of interest statute, 18 U.S.C. § 281 (1964 ed.), and on one count of conspiring to defraud the United States, 18 U.S.C. §371 (1964 ed.). 383 U.S. 169, 170-71 (1966).

Although the Supreme Court ultimately affirmed the Fourth Circuit's opinion throwing out the conspiracy conviction on grounds unrelated to those presented here, and while not necessary to the ultimate determination, the Supreme Court reiterated that "18 U.S.C. § 371 has long been held to encompass not only conspiracies that might involve loss of government funds, but also 'any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government.'" *Johnson*, 383 U.S. at 172 (quoting *Haas*, 216 U.S. at 479) (emphasis added). Indeed, before *certiorari* was granted, the Fourth Circuit in *Johnson* declared that "[i]t was not necessary to allege that the Government had been defrauded out of money or property. Section 371 has consistently been interpreted to support an indictment charging that a lawful function of the Government has been interfered with or obstructed. *Hammerschmidt v. United States*, 265 U.S. 182 (1924). 337 F.2d 180, 185 (4th Cir. 1964).

Finally, the Defendant's reliance on *Skilling* and *McNally* is unavailing. There, the declaration of vagueness rested on an entirely different statutory footing: mail or wire fraud. There are no allegations of mail or wire fraud in the instant indictment, and no reference is made to

9

18 U.S.C. § 1346.  Additionally, as declared in *Skilling*, challenges to vagueness require the Supreme Court, if it can, to "construe, not condemn, Congress' enactments."  561 U.S. at 403.  In that vein, the Supreme Court favors "[t]he strong presumptive validity that attaches to an Act of Congress."  *Id.* (citing *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32 (1963)).  Likewise, *McNally* involved allegations of mail fraud under 18 U.S.C. § 1341 to deprive citizens and the government of Kentucky of "honest services," which the Supreme Court found did not qualify as mail fraud.  483 U.S. at 353, 360.  Simply put, these cases are distinguishable from the instant matter, and certainly do not provide this Court the opportunity to redefine a conspiracy to defraud under 18 U.S.C. § 371, when Congress, the Supreme Court, and the Fourth Circuit have spoken.

A careful reading of the instant allegations, in view of the discussions in *Haas, Hammerschmidt* and *Johnson,* reveals that the superseding indictment, charging interference with the lawful functions of the DOL or MSHA, is appropriate and not fatally flawed.  Further, although the Defendant argues that the procedure for citation, hearing and fine outlined in the Mine Act indicates that he may never have had to pay a fine, and consequently, that there is no financial or property loss, the Court finds this argument unpersuasive given the totality of the allegations contained in the superseding indictment.  This Court cannot ignore Supreme Court precedent.  Nor can it ignore guidance from the Fourth Circuit which has looked at the very same case law approvingly, albeit by way of *dicta*.  The Defendant's motions must be denied.

## CONCLUSION

Wherefore, after careful consideration and for the reasons stated herein, the Court **ORDERS** that *Defense Motion No. 12A: Motion to Dismiss Count One of the Superseding Indictment for Charging Conspiracy to Defraud the United States of Intangible Rights* (Document 192) and *Defense Motion No. 28, Motion to Dismiss Count One of the Superseding Indictment for Failure to State a Conspiracy to Defraud the United States of Money or Property* (Document 211) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: June 3, 2015

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA