# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### BECKLEY DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                    CRIMINAL ACTION NO. 5:14-cr-00244

DONALD L. BLANKENSHIP,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defense Motion to Compel the Government to Identify in Its Production Brady and Rule 16(a)(1) Material* (Document 245), the *United States' Response to Defense Motion to Compel Concerning Brady and Rule 16* (Document 246), and the *Reply in Support of Defense Motion to Compel the Government to Identify in Its Production Brady and Rule 16(a)(1) Material* (Document 249), as well as all exhibits attached in support of the parties' pleadings.

The Court has also reviewed the Defendant's *Motion to Compel Production of Witness Interview Notes and Records of Attorney Proffers Containing Brady Information* (Document 248), the *United States' Response to Defendant's Motion to Compel Production of Witness Interview Notes and Records of Attorney Proffers Containing Brady Information* (Document 251), and the *Reply in Support of Motion to Compel Production of Witness Interview Notes and Records of Attorney Proffers Containing Brady Information* (Document 258), as well as all exhibits attached therewith.

For the reasons stated herein, the Court finds that the Defendant's motions should be granted in part and denied in part.

**FACTUAL AND PROCEDURAL HISTORY**

A Grand Jury meeting in Charleston, West Virginia, returned a four count Indictment (Document 1) against the Defendant on November 13, 2014. Count One charged Donald L. Blankenship with conspiracy to willfully violate mandatory mine safety and health standards under the Mine Act, Count Two alleged a conspiracy to defraud the United States by impeding the Mine Health Safety Administration (MSHA) in the administration and enforcement of mine safety and health laws, while Counts Three and Four alleged securities law violations. The Defendant made his initial appearance at an arraignment and bail hearing on November 20, 2014, and was released the same day after posting bail and agreeing to abide by the terms of an order setting forth the conditions of release. (*See* Documents 13-19.) On March 10, 2015, the Charleston Grand Jury returned a three count Superseding Indictment (Document 169) against Donald L. Blankenship. The substance of the charges remains the same. However, Counts One and Two of the original indictment were merged into superseding Count One. The original Count Three is now Count Two, and Count Four of the original indictment is Count Three in the superseding indictment.

The *Defendant's Motion to Exclude Time Under the Speedy Trial Act, Re-Set Motions Deadline, Vacate Trial Date, and Set Scheduling Conference* (Document 29) was filed on December 2, 2014, and a hearing was held on December 17, 2014. After hearing the parties' arguments, the Court orally granted the Defendant's motion to continue the trial, with a written order to follow.

On January 5, 2015, the Court entered a *Criminal Scheduling Order* (Document 61) that set several pertinent dates. Specifically, the order required that all motions to dismiss, suppress, and

any motions *in limine* "be filed no later than February 6, 2015." The order also specified February 6, 2015, as the filing deadline for additional pretrial motions, and scheduled the pretrial motions hearing for March 3, 2015. The *Defendant's Motion for Extension of Time to File Motion to Transfer this Case to Another District for Trial* (Document 71) was filed on January 28, 2015, and the Court granted said motion in its February 4, 2015 *Order* (Document 76), extending the filing deadline for a motion to change venue to February 20, 2015.

On February 6, 2015, prior to the return of the superseding indictment, the Defendant filed nineteen (19) pretrial motions, including *Defense Motion No. 19, Motion to Enforce the Government's Brady Obligations* (Document 111) and the accompanying *Memorandum in Support* (Document 112). The *United States' Motion for Extension of Time to Respond to Pretrial Motions* (Document 115) was filed on February 10, 2015. On February 12, 2015, the Court entered an *Order* (Document 116) granting the motion in part, setting Friday, February 20, 2015, as the "deadline for the filing of the United States' responses to the Defendant's pretrial motions." The *United States' Response to Defendant's Motion No. 19, Motion to Enforce the Government's Brady Obligations* (Document 133) was filed on February 20, 2015, and the Defendant's *Reply in Support of Defense Motion No. 19, Motion to Enforce the Government's Brady Obligations* (Document 159) was filed on February 27, 2015. On April 8, 2015, the Court entered an *Order* (Document 222) finding "at [that] juncture, the Defendant's motion should be denied" because he "has not reviewed all of the Rule 16 discovery received to date, including material that the United States indicates is covered under *Brady*." (Document 222 at 5.)

The Defendant was arraigned on the superseding indictment on the 24th day of March, 2015. At that time, the presiding magistrate judge granted leave to the Defendant to file motions relative to the superseding indictment within two weeks of arraignment.

The *Defense Motion to Compel the Government to Identify in Its Production Brady and Rule 16(a)(1) Material* was filed on April 28, 2015. The United States filed its response on May 5, 2015, and the Defendant's reply was filed on May 11, 2015. The Defendant's *Motion to Compel Production of Witness Interview Notes and Records of Attorney Proffers Containing Brady Information* was filed on May 6, 2015. The United States filed its response on May 14, 2015, and the Defendant's reply was filed on May 19, 2015.

## APPLICABLE LAW

*A. Brady*

"In *Brady*, the Supreme Court announced that the Due Process Clause requires the government to disclose 'evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment.'" *United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). "To secure relief under *Brady*, a defendant must: (1) identify the existence of evidence favorable to the accused; (2) show that the government suppressed the evidence; and (3) demonstrate that the suppression was material." *United States v. King*, 628 F.3d 693, 701 (4th Cir. 2011) (internal citation omitted).

Importantly, "[e]vidence is 'favorable' if it is exculpatory or if it could be used to impeach prosecution witnesses." *United States v. Leigh*, 61 Fed.Appx. 854, 856 (4th Cir. 2003) (unpublished) (citation omitted). "Evidence is 'material' under Brady if 'there exists a reasonable

4

probability that had the evidence been disclosed the result at trial would have been different.'" (*Id.*) (citing *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995)).

"The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-110 (1976). "The burden of proof rests with the defendant." *King*, 628 F.3d at 701-702 (internal citation omitted).

*B. Rule 16*

Rule 16 of the Federal Rules of Criminal Procedure "governs discovery in criminal cases." *United States v. Armstrong*, 517 U.S. 456, 461 (1996). "Under Rule 16[(a)(1)], a defendant may examine documents material to his defense, but under Rule 16(a)(2), he may not examine Government work product in connection with his case." (*Id.* at 463.) "Rule 16(a)(1)(A) requires the Government to disclose to the defendant 'any relevant written . . . statements made by the defendant' within the possession of the Government and known to the prosecutor, and the substance of any oral statement given in response to interrogation by a Government agent . . ." if it will be used at trial. *United States v. Jett*, 18 Fed.Appx. 224, 236-37 (4th Cir. 2001) (unreported).

**DISCUSSION**

*A. First Motion to Compel*

The Defendant asserts that this Court should compel the United States to identify in its discovery production:

> (1) all *Brady* material;
>
> (2) the documents that the government intends to use in its case-in-chief, including documents that will be referred to or relied upon by government witnesses;

5

> (3) all of Mr. Blankenship's written statements encompassed by Federal Rule of Criminal Procedure 16(a)(1)(B); and
>
> (4) the relevant portions of the extensive audio recordings the government has produced and the portions of these recordings that the government intends to use in its case-in-chief, including those that will be referred to or relied upon by government witnesses.

(Document 245 at 1.) The Defendant contends that the above relief is "required" due to the "government's massive and overbroad document production," and is "particularly necessary here given the trial schedule." (*Id.*) He points to the size of the discovery disseminated, as well as its scope, and argues that this reality "makes the defense burden more onerous." (*Id.* at 2.) He stresses that the discovery production is "unorganized, and deficiencies in the electronic characteristics of the documents limit the defense's ability to effectively . . . de-sort the documents." (*Id.*)

The Defendant accuses the United States of hiding any exculpatory *Brady* material in the four million pages of discovery, claiming this does not conform to *Brady's* requirements. (*Id.* at 3.) He maintains that this Court's earlier ruling regarding his *Brady* request and the United States' massive and allegedly unorganized production results in constitutional prejudice because the Court's "schedule does not provide time for . . . review." (*Id.* at 4.) Regarding identification of material the United States intends to use in its case-in-chief, the Defendant argues that the United States "has not lived up to its obligations under [Rule 16(a)(1)(E)(ii)] simply by dumping voluminous productions on the defendant and instead must identify the material that it intends to rely upon, as well as any documents to be referred to or relied upon by its witnesses." (*Id.* at 5.) He argues that the United States "has made such identifications willingly" in other, unrelated cases "involving document productions far less voluminous." (*Id.* at 6.)

6

The Defendant argues that any Rule 16(a)(1)(B) written statements are purportedly buried in the four million plus pages of discovery and he will not be able to locate or decipher them, in an effective manner, before trial. (*Id.* at 6-7.)  He claims these "statements are critical to formulating [his] defense and are foundational to any trial strategy," and furthermore, they are "contained in hand-written notes," and thus, it is impossible to electronically search the discovery production. (*Id.* at 7.)   He complains that the well over 100 hours of recorded conversations and statements were promulgated by the United States "without identifying which conversations are relevant to the case."  He asserts that the production therefore does not comply with Rule 16. (*Id.*)

The United States responds in opposition that the "Defendant's motion is unsupported by law" because *Brady* "and its progeny do not require the United States to do the job traditionally performed by defense counsel . . .."  (Document 246 at 1.)  The United States argues that it "has fulfilled its obligations under *Brady* and Rule 16 and done so in a fashion exceptionally useful to the defense, furnishing a searchable, indexed, digital database of documents."  (*Id.*)  It argues that, instead, the Defendant is requesting "special treatment" not due to any perceived *Brady* or Rule 16 shortcoming, but because of the Court's trial date and criminal scheduling order.  (*Id.* at 1-2.)  The United States claims that its discovery production is not akin to a document dump because it has provided a database capable of electronic search and is "rich with metadata and indexed by a variety of different characteristics that allow Defendant to search, sort, and categorize them however he pleases."   (*Id.* at 5.)

It further contends that this "cutting-edge system for document review is particularly powerful in the Defendant's hands" because "he enjoys access to virtually unlimited legal resources," and "he is in a far better position than the United States to locate and identify

7

documents that might be exculpatory." (*Id.* at 6.) The United States notes that there are fewer documents in this case than in *United States v. Skilling*, 554 F.3d 529 (5th Cir. 2009) — a case where the appellate court "found no *Brady* violation where prosecutors produced . . . *hundreds of millions* of pages of documents." (*Id.* at 6-7) (emphasis in original.)

It notes that the "Defendant does not contend that the United States has provided extensive discovery in bad faith, in order to hide favorable evidence. Defendant is simply faced with a large number of documents to review — a scenario that does not enhance the United States' obligations under *Brady*." (*Id.* at 7.) As to Rule 16, the United States argues that "[t]his Court should reject Defendant's contentions that the United States must create subcategories of its discovery production . . . to comply with Rule 16(a)(1)(E)" as it is not required under Fourth Circuit case law. (*Id.* at 8-9.) It argues there is no requirement that it "identify specific documents that contain Defendant's written statements, or reduce the recorded conversations to excerpts that may be relevant at trial," and notes that the "Defendant's motion contains no authority or support" for his request. (*Id.* at 9.)

The Defendant replies that he is not asking for special treatment, but "only for a fair trial and for relief commanded by the Federal Rules of Criminal Procedure and the U.S. Constitution." (Document 249 at 1.) He argues that "[w]ithout an order compelling the identification of *Brady* [material], the government's document dump will render *Brady* a dead letter in this case," and "[g]iven the trial date, the defense will be forced to go to trial without discovering the exculpatory evidence that exists . . . .." (*Id.* at 2.) He argues that the government in *Skilling* actually afforded "*precisely* the kind of relief that the defense seeks here." (*Id.* at 3) (emphasis in original.) The

8

Defendant focuses on the fact that the United States has already admitted that *Brady* material is located in the production. (*Id.* at 3-4.)

He continues to stress that the Rule 16 material should be sorted "given the massive and unorganized document production and the impending trial date." (*Id.* at 5.) The Defendant asserts that the United States is ignoring controlling precedent and its own discovery policy "that encourages the identification of documents that are certain to be introduced as exhibits in the government's case in chief . . .." (*Id.* at 5-6.) He presents argument on why a case relied on by the United States actually supports his contentions, and notes that the United States has had several years to review the documents, while he has only had five months. He further explains why some of the discovery does not contain metadata, and that a large portion of the discovery is not easily searchable and is, instead, jumbled. (*Id.* at 6-8.) In summation, the Defendant argues that in light of "the trial schedule, [he] will stand trial without having had the opportunity to complete even an initial review of the documents produced by the government. There will be exculpatory documents, relevant documents, and statements of his own that the defense will not have the time to locate." (*Id.* at 8.)

    *B. Second Motion to Compel*

During the pendency of the above briefing, the Defendant filed another motion seeking to compel certain information allegedly covered under *Brady*. Specifically, the Defendant requests an order directing the United States to produce:

> (1) all handwritten and typewritten notes of witness interviews, made by government attorneys and agents, that contain *Brady* material, and
>
> (2) statements from any attorney proffers made to the government by counsel for any witness that contain *Brady* material (whether in

handwritten or typewritten notes, memoranda, emails, oral statements or in no record at all.)

(Document 248 at 1.) The Defendant contends that "[a]lthough the government had produced sanitized interview memoranda containing *Brady*, it had not produced underlying notes of the interviews." (*Id.* at 1-2.) He contends that this motion is ripe—although defense counsel has not finished review of discovery—because "the government has taken the position that it is not required to produce the requested *Brady* material." (*Id.* at 2.) The Defendant argues that the law clearly requires production of any attorney proffers and/or notes of interviews that contain *Brady* material. (*Id.* at 2-4.) He states that he "has been unable to locate in the government's production any records of any statements made to the government in any attorney proffer." (*Id.* at 5.)

The United States responds that it does not object to the production of materials that contain exculpatory material evidence, and understands its "continuing duty to disclose material evidence." (Document 251 at 1.) It "is aware of its ongoing *Brady* obligations, and understands that material exculpatory evidence in any form must be turned over to the Defendant," but that "[t]his obligations does not require unrestricted access to handwritten notes taken by agents in witness interviews, especially when the typewritten equivalent has been produced." (*Id*. at 2.) The United States further contends that *Brady* "does not require the unfettered disclosure of all documents in the government's possession." (*Id.* at 3.) It also argues, "Defendant has the same capacity to review documents as the United States," and "Defendant is in a better position than the United States to search the database for records that pertain to his defenses." (*Id.*)

In reply, the Defendant notes that while the United States concedes it is obligated to turn over notes from witness interviews and attorney proffers that contain *Brady* material, "the

government leaves entirely ambiguous its answer to the central question of how [and when] it will comply with its duty to disclose the *Brady* material at issue." (Document 258 at 1.) The Defendant then takes issue with the United States' confidence "that it need only turn over exculpatory evidence that it deems 'material to guilt or punishment.'" (*Id.* at 2) (quoting Document 251 at 3.) "In short, the government finally recognizes that it must disclose [*Brady* material]," but because it "refuses to state when it will actually turn over such material, or even if it exists at all," an order compelling the United States to produce the information is proper and required. (*Id.* at 4.)

The Court finds that the United States should specifically designate any known *Brady* material as such and disclose the same to defense counsel. In other words, without more, the United States does not comply with the requirement of *Brady* by merely including all known *Brady* material within the four million plus pages of discovery. Both parties have cited *Skilling* to support their opposing positions on this issue. In that Fifth Circuit case, although the Defendant made arguments very similar to those made here, the Court found the Government had not violated *Brady* with its production of a voluminous open file. However, that decision turned largely on additional steps taken by the Government. The Court stated

> "In the present case, the government did much more than drop several hundred million pages on Skilling's doorstep. The open file was electronic and searchable. The government produced a set of "hot documents" that it thought were important to its case or were potentially relevant to Skilling's defense. The government created indices to these and other documents. The government also provided Skilling with access to various databases concerning prior Enron litigation…" (554 F.3d.529, 577).

Given the constitutional nature of the Government's *Brady* obligation, and the circumstances presented in this case, the Court finds designation, to the extent it can be given, is

appropriate. Although the Defendant no longer suffers under the trial time restraints of which he complained, the Court observes that the United States, having determined the nature of the charges and having knowledge of the evidence and witnesses it intends to produce to prove those charges, is in a far better position than the Defendant to know what evidence might be exculpatory and/or impeachment material under *Brady*. Further, the Government's burden of production with respect to *Brady* material is separate and distinct from its obligations under Rule 16 of the Federal Rules of Criminal Procedure.

This task does not charge the Government with determining "what might matter to [the] Defendant" at trial, but instead, simply conforms to the clear and continuing requirements of *Brady*. "The *Brady* rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur." *United States v. Bagley*, 473 U.S. 667, 675 (1985). To be sure, "the prosecutor's role transcends that of an adversary: he 'is the representative not of an ordinary party to a controversy, but of a sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done.'" *Id.* at n. 6 (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).

To the extent the Defendant has separately requested handwritten notes and attorney proffers which fall under *Brady,* the Court finds that the *substance* of the same should, of course, be produced. The Government, however, is not required to produce its work product. To the extent the Government is aware of existing evidence of this nature, it should be produced, and designated as such, in keeping with this Court's ruling. Counsel for the Government has

acknowledged its continuing obligation to produce the material and should also designate any future *Brady* disclosures.

The Court finds, however, that the request for the identification and grouping of specific information under Rule 16 is unsupported by both the rule and pertinent case law. The Defendant appears to concede as much in his reply, where he states, "[e]ven if the text of the Rule does not mandate the relief sought, the government does not—and cannot—dispute that the Court has the discretion to afford the relief sought." (Document 249 at n. 6.) "Generally, criminal defendants do not have a constitutional right to discovery, absent a statute, rule or criminal procedure, or some other entitlement." *United States v. Palacios*, 677 F.3d 234, 246 (4th Cir. 2012) (quoting *United States v. Uzenski*, 434 F.3d 690, 709 (4th Cir. 2006)). Apart from acknowledging that the text of Rule 16 does not afford grouping and identification of the Government's disclosures, the Defendant has cited no statute or case law from the Southern District of West Virginia or Fourth Circuit Court of Appeals supporting his instant request. The Court finds that Rule 16 does not require identification of which of the three categories listed above applies to each piece of discovery.

## CONCLUSION

Wherefore, after careful consideration and for the reasons stated herein, the Court **ORDERS** that the *Defense Motion to Compel the Government to Identify in Its Production Brady and Rule 16(a)(1) Material* (Document 245) and *Motion to Compel Production of Witness Interview Notes and Records of Attorney Proffers Containing Brady Information* (Document 248) be **GRANTED in part** and **DENIED in part**.

Specifically, the Court **ORDERS** that the Defendant's motions seeking *Brady* material be **GRANTED,** and further, **DIRECTS** the United States to designate and disclose to defense counsel any and all *Brady* material **by the close of business on June 22, 2015**. The Court **ORDERS** that the motions seeking precise identification and production of specific subclasses of Rule 16 information be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: June 12, 2015

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA