IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.           ) | Criminal No. 5:14-cr-00244 |
| ) | |
| DONALD L. BLANKENSHIP ) | |

### REPLY IN SUPPORT OF MOTION TO COMPEL
### COMPLIANCE WITH *BRADY* ORDER AND
### FOR OTHER APPROPRIATE RELIEF

In response to Mr. Blankenship's motion, the government does not deny the possibility that it has failed to produce exculpatory material. It asserts positions as if the Court did not grant relief on the specific subject of interview notes. It does not even attempt to explain why it neglected to designate the obviously exculpatory items identified in Mr. Blankenship motion. Nor does it attempt to explain why it has designated no impeachment material.

Instead, the government devotes much of its brief to matters not at issue in the motion – issues pertaining to reciprocal discovery, the schedule, and even the give-and-take of negotiations among counsel. These issues have no bearing on the motion and provide no basis to deny relief.

This Reply first addresses the government's responses to the specific items of relief sought in the motion. The final section then briefly addresses certain of the irrelevant (and misleading) side issues raised by the government. The defense addresses the government's reciprocal discovery motion in a separate opposition.

### A.     Ex Parte Hearing

As explained in the motion, confidential investigation has revealed that the government has failed to provide to the defense in any form – and has failed to include in any of its productions – certain exculpatory information. The defense has requested an opportunity to present this confidential information to the Court, *ex parte* and *in camera*.

In response, the government does not deny the possibility that exculpatory information remains undisclosed.  *See* ECF No. 284 at 9.  Rather, relying on the Fourth Circuit's decision in *United States v. McDonnell*, ___ F.3d ___, No. 15-4019, 2015 WL 4153640 (4th Cir. July 10, 2015), it contends that the issue of undisclosed material cannot be handled *ex parte*.  In other words, the government contends that the defense must reveal privileged information in order to obtain the full benefit of a constitutional right.

This is incorrect.  In *McDonnell* itself, the Fourth Circuit stated expressly that *ex parte* "proceedings and communications may be permissible in limited circumstances."  *Id.* at *10. *Brady* is such a circumstance.  It is well-settled in this circuit that district courts may consider information submitted *ex parte* in deciding *Brady* issues.  *See United States v. Sekandary*, No. 90–5510, 944 F.2d 903, at *2 (4th Cir. Sept. 25, 1991) (affirming propriety of district court's *ex parte* consideration of potential *Brady* documents submitted by government); *United States v. Ebersole*, No. 1:03cr112, 2007 WL 219969, at *3 (E.D. Va. Jan. 25, 2007) (noting that government made *ex parte* submission to enable court to determine if material constituted *Brady* and that court denied defendant's challenge to the *ex parte* submission); *United States v. Lindh*, No. CRIM.02-37, 2002 WL 1974284 (E.D. Va. June 17, 2002) (considering *ex parte* submission of both documents and briefing by government on whether certain items constitute *Brady* and entering order denying defendant access to the *ex parte* submissions); *see also Pennsylvania v.*

*Ritchie*, 480 U.S. 39, 60 (1987) (holding that proper procedure for ensuring compliance with *Brady* was *in camera* review of the files at issue, while acknowledging that "this rule denies [the defendant] the benefits of an 'advocate's eye'").

If, under this authority, the government may routinely make *ex parte* submissions concerning *Brady,* then surely the defense can – especially when as here, such a procedure is necessary to protect privileged information concerning defense investigation, defense strategy and other protected matters. It cannot be that a defendant must disclose to the prosecutor privileged information about his defense in order to obtain the full benefit of a constitutional right and a court order enforcing that right.

In *McDonnell*, the issue of an *ex parte* submission arose in the context of a motion to sever defendants. In contrast, the relief sought here is a discovery order to ensure that the government is providing Mr. Blankenship with exculpatory material that the government itself possesses or has access to. Relying on an *ex parte* submission to put the government to the burden of conducting separate trials is qualitatively different from using such a submission in the context of discovery, to inform the Court on whether a broader *Brady* order is needed.

Finally, the government asserts that an *ex parte* hearing is unnecessary because, if the defense were to prevail and the Court were to issue an order compelling production of certain items, the substance of the *ex parte* presentation would be revealed. *See* ECF No. 284 at 9. This is not the case. The specific order requested by the defense – an order requiring (i) the production of all notes of interviews and attorney proffers, (ii) the production or identification of all exculpatory information from MSHA's files, and (iii) a supplemental designation, based on the proper application of *Brady*, of exculpatory material from within the government's

3

production – does not reveal any privileged information and should capture the items identified in any *ex parte* presentation.

### B. Notes of Witness Interviews

The defense also seeks the government's notes of witness interviews – one of the subjects of the Court's *Brady* Order. *See* ECF No. 279. The government produced no information from any such notes in response to the order – not a single excerpt. In its opposition brief, the government contends that it is in compliance with the order nonetheless because it previously produced sanitized memoranda of hundreds of interviews and because its notes constitute work product. *See* ECF No. 284 at 8. This position is a circumvention of the order and is meritless.

First, the defense already filed a motion to compel the production of interview notes containing exculpatory information, ***and this Court granted it***. *See* ECF Nos. 248 & 279 at 12, 14 (ruling that the substance of notes of interviews should "of course" be produced and ordering that "the Defendant's motions seeking *Brady* material be **GRANTED**"). In doing so, the Court specifically considered the fact that the government previously produced final interview memoranda. *See* ECF No. 279 at 10. Indeed, it considered briefing on this very issue. *See* ECF No. 248 at 3-4. Thus, the government is making an argument (*i.e.*, that it is not required make disclosures from its underlying notes if it already has produced final interview memoranda) that this Court already rejected.

Second, to justify its position in the face of the Court's order, the government distorts the work product protection, attempting to stretch it beyond "opinion" work product. In granting Mr. Blankenship's motion on interview notes, the Court indeed specified that "the Government … is not required to produce its work product." But the only work product protection applicable in this context is "opinion" work product – that is, "strategies, legal theories or impressions of

the evidence." *United States v. Kohring*, 637 F.3d 895, 907 (9th Cir. 2010); *see also United States v. Soltero*, No. CR 13-00007, 2015 WL 1346309, at *4 (N.D. Cal. Mar. 21, 2015) ("the prosecutor's own notes of witness interviews are not work product (except for impressions and the like)…"); 2 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 256 (4th ed. 2015) ("Because *Brady* is based on the Constitution, it overrides court-made rules of procedure. Thus, Rule 16(a)(2) prohibits discovery of work product but it does not alter the prosecutor's duty to disclose material that comes within *Brady*"). Even the United States Attorney's Office discovery manual acknowledges the limited work product protection afforded notes of witness interviews. *See* ECF No. 248-1 at 7, ¶ 4 ("a prosecutor's notes of a witness interview (as opposed to notes containing mental impressions, personal beliefs, trial strategy and legal conclusions) may have to be disclosed …").

Thus, the work product protection does not trump the government's obligation to produce exculpatory <u>factual</u> information pursuant to *Brady*. That protection applies only to opinion work product and provides no basis to withhold what is sought here. Indeed, the defense does ***not*** seek the government's notes of its opinions, strategies, legal theories or mental impressions. It just seeks the government's notes of what each witness said. If those notes contain references to the government's opinions, strategies, legal theories or mental impressions, those particular references may be redacted.

But the government has no basis to withhold the factual portions of the notes, as it has done here. The factual portions contain no strategy or opinions and merely reflect what witnesses said.[1] To withhold these factual portions of the notes would swallow the rule that interview notes containing exculpatory information must be produced. *See, e.g.*, *United States v.*

---

[1] Thus, the notes would reflect work product no more than the interview memoranda that the government already produced.

5

*Andrews*, 532 F.3d 900, 906 (D.C. Cir. 2008) ("[I]t seems too plain for argument that rough notes from any witness interview could prove to be *Brady* material."); *Monroe v. Angelone*, 323 F.3d 286, 312-15 (4th Cir. 2003); *United States v. Jordan*, 316 F.3d 1215, 1256 n.89 (11th Cir. 2003).

Third, there is no reason to believe that the government even reviewed its interview notes after the Court issued its order, to determine whether any of them contain information or wording not reflected in the interview memos. Nor is there any reason to believe that the government even reduced all of its interviews into formal memos. The government does not address these issues at all. It makes no representations whatsoever to give the defense and the Court comfort that it has conducted an appropriate review of all of its interview notes in the wake of the Court's order and that all of its witness interviews that revealed exculpatory information have been reduced to interview memoranda that have been provided to the defense. For this reason as well, production of the interview memos alone does not suffice.

Fourth, the government does not address – much less oppose – Mr. Blankenship's request in the alternative for an order compelling the government to lodge all of its interview notes with the Court, so that the Court may conduct an *in camera* review of them and so that the appellate record is complete. At a minimum, if the Court denies the request to compel immediate production of the notes to defense counsel, then this alternative request must be granted.

It is well-established that final interview memoranda are not substitutes for the underlying interview notes. *See Andrews,* 532 F.3d at 906 ("[T]he possible importance of the rough notes . . . is not diminished in cases where the notes form the basis of a final report that the prosecution turns over to the defense"); *United States v. Harrison*, 524 F.2d 421, 427-28 (D.C. Cir. 1975) ("there is clearly room for misunderstanding or outright error" when the agent

transfers information from his or her rough notes to the final memo; "the rough notes … might be more credible and more favorable to the defendant's position."). This Circuit has made clear that "[r]edundancy . . . does not excuse disclosure obligations" and that "the prosecution has a duty to disclose material even if it may seem redundant." *Monroe*, 323 F.3d at 301.

The Court entered an order to this effect, and the government ignored it. An order compelling production of the government's interview notes therefore is required. And because the government has made clear that it cannot be relied on to identify obviously exculpatory material, all of the notes – except for the portions setting out government opinions or theories, if any – must be produced. That is the only way to ensure the defense receives all of the exculpatory information to which it is constitutionally entitled.

### C. Notes of Attorney Proffers

Mr. Blankenship's motion seeks the government's notes of attorney proffers as well. The government's opposition does not address, much less object to, this request. Accordingly, Mr. Blankenship's request for this material – addressed in his opening brief – stands without opposition.

### D. MSHA Material

The government's argument about exculpatory MSHA documents defies description. In response to the Court's *Brady* Order, the government identified – by Bates number – approximately 150 documents that it says the "Defendant might claim are *Brady* material." ECF No. 283-1 at 2-3. Not a single one of the documents came from MSHA's files, even though it is plain that MSHA's files contain an abundance of exculpatory material. *See* ECF No. 283 at 5. Indeed, except for interview memoranda (bearing the Bates label "MOI"), all of the documents identified by the government were produced to the government by Performance Coal Company

7

(bearing the Bates label "PCC"). As the government's own list reveals, *see* ECF No. 283-1 at 4-10, none bear an MSHA Bates label. None came from the material provided by MSHA to the United States Attorney or from any of MSHA's other files.

The government attempts to hide this by asserting, in carefully-worded terms, that it identified "categories" of documents that include MSHA material. ECF No. 284 at 3. In more accurate terms, the government simply identified the phrase "sentinel of safety" as an electronic search query that the defense could try to run through the database. ECF No. 283-1 at 3. This search query references a discrete safety award that MSHA gave to Massey during the indictment period.

Thus, the government identified no MSHA documents and instead simply proposed a mere search query. This one proposed search query, pertaining to a discrete safety award given by MSHA, represents the entirety of the government's identification of exculpatory information from MSHA – notwithstanding the evidence cited in the motion establishing that MSHA's files contain substantial exculpatory information about the operation of the UBB mine during the indictment period. *See* ECF No. 283 at 5. The proposed search query would not have even identified any of this evidence.

The Court ordered the government to identify and produce actual exculpatory information in the government's possession – not search queries. The government plainly failed to comply.

### E. The Government's Designations

The government contends that it should not be compelled to supplement its identification of exculpatory documents, arguing that it already has identified for the defense all "known" *Brady* material. ECF No. 284 at 2. It does not address – much less dispute – the fact that it has

8

failed to identify *any* impeachment material. *See* ECF No. 283 at 6. Nor does it offer any excuse or explanation for why it did not designate obviously exculpatory items such as the following: a statement of a UBB miner that he "never witnessed nor was ever asked to do anything that he felt was a safety violation," an email from a UBB executive to UBB's general manager attaching a list of potential violations and ordering that "it is all to be corrected and the same ridiculousness is not to be found again," a memo from a Massey executive indicating that Mr. Blankenship ordered him "to review each violation … and try to put action items in place as to not receive the violation again;" a handwritten note from Mr. Blankenship to Massey's safety compliance officer advising him that "you won't make a difference until written warnings are placed into people's files and a couple of discharges occur," and statements from an MSHA inspector that "there isn't anything wrong" at UBB and that "the company is doing what they need."

The government plainly applied an incorrect and unduly narrow standard in determining what documents to designate as exculpatory. Its opposition reinforces this. In an attempt to narrow what is exculpatory in this case, it compares the charges against Mr. Blankenship to those of bank robbery. *See* ECF No. 284 at 4. It then argues that, just as an accused bank robber may not exculpate himself by pointing to other banks that he could have – but did not – rob, evidence that Mr. Blankenship promoted safety and that UBB largely complied with safety regulations is not exculpatory to Mr. Blankenship. *Id.*

This analogy could not be more flawed. Mr. Blankenship is not accused of a single safety violation. He is accused of agreeing to a broad conspiracy, over the course of 27 months, concerning the operation of a mine company. As part of this scheme, the indictment alleges that he agreed with unidentified others to willfully violate unspecified regulations at unspecified

times.[2] And Mr. Blankenship's role in this supposed conspiracy was not to commit one safety violation or another, but allegedly to set broad policies – or in the government's own words, to make "business decision[s]" – that "fostered … UBB's *practice* of *routine* safety violations." ECF No. 283-1 at 2; Superseding Indictment (ECF No. 169) ¶ 1 (emphasis added).

A charge of conspiracy is at its essence a charge of a specific state of mind: an agreement with others to commit one or more specific crimes. Indeed, the government acknowledged in defending Count One against a motion to dismiss that whatever the unusual contour of the allegations and evidence, it would have to prove Mr. Blankenship's specific intent to do just that. *See* ECF No. 129 at 6 ("the type of intent required for criminal conspiracy is willful involvement – that is, *willing or intentional or deliberate* involvement – in an understanding to commit a criminal offense") (emphasis in original). It is clear that the government intends to ask the jury to infer such an intent from a number of factors: his insistence on production, his close attention to the mine, and company decisions about staffing, as well as from other circumstances. Under these circumstances, evidence in any form that Donald Blankenship did not possess such intent, that he devoted resources to safety, that he was concerned about regulatory violations and implemented efforts to reduce them, or that there were other explanations for the conduct the government views as circumstantial evidence of evil intent, is exculpatory.

The government has pled its case broadly – charging a vague and undefined theory that imposes criminal liability on an executive for his company's budgeting decisions, for over eight hundred alleged violations over twenty-seven months, for conduct by miners and others for which Mr. Blankenship was not present or involved, against the background of a tragic loss of life. Under these circumstances, the scope of exculpatory evidence is broad. It is even more so in

---

[2] Pending before the Court is a motion for a bill particulars which seeks, among other things, the identities of the alleged co-conspirators and identification of the specific acts alleged to be in furtherance of conspiracy. *See* ECF Nos. 213 & 214.

light of the allegations in Counts Two and Three that the company's statements that "We do not condone any violation" and "We strive in to be in compliance" were knowingly false. In this case, any evidence that the company did not condone violations, tried to comply with them, or tried to reduce them is exculpatory.

The government's contention to the contrary explains why its designations are incomplete and why the Court must order the government to supplement its designations in accord with a fair and proper definition of what is exculpatory. It does not matter that the government states that it identified documents that "Defendant might claim are *Brady* material." There is obvious exculpatory material that is missing from the government's disclosures. *See* ECF No. 283 at 6.

As noted previously, and as the Court recognized in issuing its *Brady* order, this relief is necessary in light of the massive volume of material produced by the government in which exculpatory material is buried and the inability of the defense to locate many such documents – including handwritten ones – via electronic searches. That the defense has found some of these items is fortuitous. It does not relieve the government of its obligations to comply with the Court's order.

### F. Other Issues Raised by the Government

As noted above, the government's opposition raises a series of issues that are collateral to the issues raised by this motion. None have merit.

**Trial Continuance:** The government suggests that it should be excused from complying with the Court's *Brady* order and from the relief sought in this motion because, in light of the continuance, "Defendant … now has ample time to conduct his own review of the discovery for material he finds to be favorable." ECF No. 284 at 1; *see also id.* at 5-6. The fact of a trial

continuance, however, provides the government no excuse to violate a court order or to withhold exculpatory material and otherwise violate *Brady*. While this is always the case, it is especially so here given that the Court's *Brady* order was issued at the same time as the continuance and expressly recognized that a continuance was being granted. *See* ECF No. 279 at 12.

Moreover, the defense still has hundreds of thousands of documents from within the government's massive production to review. Notwithstanding the government's conjecture to the contrary, the defense will not be able to review of all of these remaining documents before trial. As set forth in detail in prior briefs, the task of getting through this material has been made all the more arduous by the flawed state of the government's production.

On this record, the notion that Mr. Blankenship's "rights under *Brady* now have been thoroughly protected" is specious. ECF No. 284 at 5. The relief granted in the Court's *Brady* order and sought here is necessary if Mr. Blankenship is to have a fair trial.

**Attorney Negotiations:** The government accuses the defense of wrongfully rejecting an offer by the government to produce its "hot documents" and of continuing to "rais[e] discovery disputes rather than simply getting what he claims he wants." ECF No. 284 at 7. Whether the defense accepted a proposed compromise offer from the government, however, has absolutely nothing to do with the issues raised by this motion. The government either has complied with *Brady*, or it has not. It either has complied with the Court's *Brady* order, or it has not. Defense counsel's response to its so-called "compromise offer" is immaterial.

Irrelevant as the issue is, it bears brief note that the government's characterizations of the parties' discussions are incomplete, unfair and materially inaccurate. The defense declined the government's proposal because it would have, among other things, required Mr. Blankenship to withdraw a critically important motion (his pending motion to compel production of MSHA

material under Rule 16 and *Brady*, ECF No. 261) and otherwise agree to limit his rights under *Brady* and the Court's order in important respects (including as to the interview notes). *See* ECF No. 284-1 ¶¶ 6, 8.

Moreover, defense counsel offered to continue the discussions, stating in writing to the United States Attorney himself that "[w]e are willing to discuss with your office an agreement regarding dates for each party's disclosure of trial exhibits and experts." That offer remains open.

**Reciprocal Discovery:** Lastly, the government incorporates in its opposition brief a separate motion for production of reciprocal discovery. This new motion is immaterial to whether the government has complied with *Brady* and thus is immaterial to the issues that are the subject of this reply brief. The defense therefore is responding to the government's new motion for reciprocal discovery in a separate opposition brief.

## CONCLUSION

For these reasons and those set forth in the motion, Mr. Blankenship respectfully requests that the Court grant the following relief:

(1) An opportunity for the defense to present to the Court, *ex parte* and *in camera*, confidential information from the defense investigation that demonstrates that the government has not produced, in any form, certain exculpatory information.

(2) An order compelling the government immediately to produce all notes of witness interviews and attorney proffers, without restriction (or in the alternative, to lodge with the Court all such notes for *in camera* review and/or for the appellate record).

(3) An order compelling the government immediately to produce all exculpatory material from MSHA's files. (This relief, as well as relief on MSHA documents under Rule 16, also is sought in a separate pending motion, ECF No. 261).

--and--

(4) An order compelling the government to supplement its list of exculpatory material from within its document production in accordance with the proper definition of *Brady* (rather than the unduly narrow one it applied previously).

Dated: July 21, 2015  Respectfully submitted,

 /s/ William W. Taylor, III
William W. Taylor, III
Blair G. Brown
Eric R. Delinsky
R. Miles Clark
Steven N. Herman
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
202-778-1800 (phone) / 202-822-8106 (fax)
wtaylor@zuckerman.com
bbrown@zuckerman.com
edelinsky@zuckerman.com
mclark@zuckerman.com
sherman@zuckerman.com

 /s/ James A. Walls
James A. Walls (WVSB #5175)
SPILMAN THOMAS & BATTLE, PLLC
48 Donley Street, Suite 800
Morgantown, WV 26501
304-291-7947 (phone) / 304-291-7979 (fax)
jwalls@spilmanlaw.com

*Counsel for Donald L. Blankenship*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been electronically filed and service has been made by virtue of such electronic filing this 21st day of July 2015 on:

R. Booth Goodwin, II
Steven R. Ruby
Gabriele Wohl
U.S. Attorney's Office
P.O. Box 1713
Charleston, WV 25326-1713

R. Gregory McVey
U.S. Attorney's Office
P.O. Box 1239
Huntington, WV 25714-1239

                                                    */s/ Eric R. Delinsky*
                                                    Eric R. Delinsky