**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

—————————————————————

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 5:14-cr-00244** |
| | ) | |
| **DONALD L. BLANKENSHIP** | ) | |
| | ) | |

—————————————————————

**MOTION FOR JURY INSTRUCTIONS REGARDING THE UBB MINE EXPLOSION
AND TO EXCLUDE EVIDENCE REGARDING THE EXPLOSION**

The government said it clearly: "Defendant is not charged with causing [the UBB] explosion."  ECF No. 160 at 13-14.  As both the Court and the government have recognized, however, the tragedy at the Upper Big Branch mine weighs heavily on this community and in this case.  Every member of the jury will be familiar with the events of April 5, 2010.  It is therefore a certainty that, without strong action by the Court, the jury will consider the explosion, the loss of life that resulted, and the victims and their families in determining whether to convict Mr. Blankenship.[1]

The cause of the UBB explosion is not relevant to any of the charges against Mr. Blankenship.  Responsibility for the UBB explosion is not relevant to any of the charges against Mr. Blankenship.  The circumstances and tragic consequences of the explosion are not relevant to any of the charges against Mr. Blankenship.  Whether MSHA safety standards are intended to prevent explosions and whether conditions at the UBB made it more likely that an explosion would occur are not relevant to any of the charges against Mr. Blankenship.  Moreover, evidence

---

[1] The defense maintains that voir dire of prospective jurors and the measures sought in this motion cannot overcome the prejudgment and bias against Mr. Blankenship in this district.  Mr. Blankenship cannot receive a fair trial in this district, and this case should be transferred for trial to the District of Maryland, Northern Division, or, alternatively, to the Northern District of West Virginia, Martinsburg Division.  See ECF No. 121.  This motion is filed without prejudice to Mr. Blankenship's motion to transfer.

regarding any of those subjects will result in extreme prejudice to Mr. Blankenship and that prejudice will be completely unwarranted. Even without any reference to the explosion at trial, there still will be a need for strong curative action by the Court due to jurors' extensive knowledge about the UBB explosion and the emotionally charged response to it.

The defense therefore requests that the Court:

(1)     exclude all evidence about the UBB explosion, the cause of the explosion, and responsibility for the explosion,

(2)     instruct the jury that this trial does not concern the UBB explosion, the cause of the UBB explosion or responsibility for the explosion,

(3)     limit any evidence of the UBB explosion to a stipulation that an explosion occurred at UBB on April 5, 2010, and give a limiting instruction to the jury that that stipulation is admitted only for the context of the statements at issue in Counts 2 and 3,

(4)     exclude all references to mine explosions, prevention of mine explosions, and conditions conducive to mine explosions, which invariably will be understood as references to the explosion at UBB, and

(5)     exclude all evidence relating to civil litigation against Mr. Blankenship arising from the UBB explosion, which the government has identified as potential Rule 404(b) evidence.

I.    **THE COURT SHOULD EXCLUDE ALL EVIDENCE ABOUT THE UBB EXPLOSION, THE CAUSE OF THE EXPLOSION, AND RESPONSIBILITY FOR THE EXPLOSION, AS WELL AS ALL REFERENCES TO THOSE SUBJECTS.**

**A.  The UBB Explosion Evidence Must Be Excluded as Irrelevant.**

As stated by the government:  "Defendant is not charged with causing th[e] explosion." ECF No. 160 at 13-14.  Rather, Count One of the superseding indictment charges that Mr. Blankenship "conspired to commit and cause routine violations of mandatory federal mine safety standards at Massey's Upper Big Branch-South mine" and "conspired to defraud the United States by impeding the federal Mine Safety and Health Administration in carrying out its duties at UBB."  Superseding Indictment (ECF No. 169) at ¶¶ 1-2.  Evidence about the UBB explosion, its cause, and responsibility for it is neither relevant nor necessary to the government's proof on Count One.

The gist of the false statement and security fraud charges in Counts Two and Three is that Mr. Blankenship made and caused to be made false statements, specifically: "[w]e [Massey] do not condone any violation of MSHA regulations" and "we [Massey] strive to be in compliance with all regulations at all times." *Id*. at ¶¶ 102, 104.  The indictment does assert that the alleged false statements were made in the days following the UBB explosion, but evidence beyond the bare contextual fact that an explosion occurred is neither relevant nor necessary to the government's proof on Count Two and Three

"Irrelevant evidence is inadmissible."  Fed. R. Evid. 402.  Because the circumstances and consequences of the explosion, its cause, and responsibility for it are not relevant to this case, evidence and references regarding those subjects, whether in testimony, documents, questions, or argument must be excluded.

## B.  The UBB Explosion Evidence also Must Be Excluded Under Rule 403.

Even if it were relevant, which it is not, evidence about the explosion, its cause, and responsibility for it must be excluded because "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, [and] undue delay." Fed. R. Evid. 403.

First, as stated above, evidence regarding the explosion would not be probative of the charged offenses and would mislead the jury into thinking that Mr. Blankenship is on trial for his role in the explosion and deaths, which he is not.

Second, there can be no doubt that evidence or argument regarding the explosion -- especially any suggestion, explicit or implicit, that Mr. Blankenship had a role in causing the explosion and deaths of the twenty-nine miners, no matter how untrue – would be unfairly and extremely prejudicial.  Evidence must be excluded under Rule 403 if there is "a genuine risk that the emotions of the jury will be excited to irrational behavior, and . . . this risk is disproportionate to the probative value of the offered evidence."  *United States v. Ham*, 998 F.2d 1247, 1252 (4th Cir. 1993) (internal quotation marks and citations omitted).  In *Ham*, the Court of Appeals vacated the defendant's convictions due to the prejudicial effect of evidence related to allegations of child molestation, homosexuality, and abuse of women.  If such allegations are too inflammatory to be cured by a jury instruction, then so too is any implication that Mr. Blankenship is responsible for the deaths of over two dozen people.  The tragic loss of twenty-nine miners is not something that jurors in this district can be expected to simply banish from their minds when it comes time to deliberate.

Third, evidence from the government regarding causation and responsibility for the UBB explosion would be met by strong evidence from Mr. Blankenship rebutting the government's

theories, leading to confusion about the actual issues and to undue delay – a satellite mini-trial about the cause of the UBB explosion and who is responsible for it.  If the cause of the explosion is at issue in the trial, the defense is ready to present substantial, compelling evidence that the incident was actually a natural disaster.  A year-long investigation by Massey Energy Company concluded, based on an intensive analysis of the scientific data, that "a massive inundation of natural gas caused the UBB explosion and coal dust did not contribute materially to the magnitude or severity of the blast."  *See* Massey Energy Company, *Preliminary Report of Investigation, Upper Big Branch Mine Explosion, April 5th 2010, available at* http://www.eenews.net/assets/2011/06/03/document_pm_01.pdf  ("Massey UBB Report") at 1. If pressed to litigate the cause of the UBB disaster, the defense will call experts and other witnesses to rebut any evidence by the government regarding the cause of the UBB explosion even though, as the government has recognized, the issue is not germane to this case.  For example, the defense could call a highly qualified expert witness who would testify:

1. An inundation of natural gas suddenly entered the Upper Big Branch mine.

2. The characteristics of the explosion are consistent with a gas fuel source, not a coal dust fuel source.

3. While the ignition source of the explosion has not been conclusively identified and may never be identified, strong evidence, including physical evidence underground and blast simulations demonstrate the explosion likely originated in the tailgate 21 entries.

4. The conclusion that the mine was not adequately rock dusted is not scientifically sound.

A "mini-trial" on the cause of the explosion will create precisely the kind of confusion and delay that Rule 403 is intended to prevent.  *See United States v. Hill*, 322 F.3d 301, 306 (4th Cir. 2003); *United States v. Custis*, 988 F.2d 1355, 1359 n.1 (4th Cir. 1993).  Evidence and argument related to that subject should therefore be excluded from trial.

II.   **THE JURY MUST BE INSTRUCTED THAT THIS TRIAL DOES NOT CONCERN THE UBB EXPLOSION, ITS CAUSE, OR RESPONSIBILITY FOR IT.**

Exclusion of evidence regarding the UBB explosion will be insufficient to blunt the force of the unwarranted prejudice to Mr. Blankenship of the UBB explosion and the twenty-nine deaths.   The explosion remains a vivid, painful event in the history of this community.   A survey of potential jurors in the Charleston Division revealed that 93% of them were familiar with the disaster and almost two thirds had a large amount of knowledge about it.   *See* ECF No. 166 at 3-4 & Exs. A & B.   That survey confirms what the Court has already observed:

> In the Southern District of West Virginia, we live in coal country. Many of our families depend on coal mining for their livelihood. Many families and communities within the Southern District of this state were impacted by the deaths of the miners in the Upper Big Branch mine explosion referenced in the indictment.  Interest in this case is, understandably, heightened by that loss of life.  In short, the environment matters.

ECF. No. 63 at 7.

Not only will every juror know about the UBB explosion, many jurors will bring to this trial the misimpression that this case is about Mr. Blankenship's responsibility for the UBB explosion.   That mistaken belief would have been formed and reinforced repeatedly by the media and interactions in the community.   From day one, the local press has covered these proceedings, erroneously, as intended to determine Mr. Blankenship's responsibility for the UBB tragedy. *See*, *e.g.*, Ken Ward Jr., *Upper Big Branch 5-Year Anniversary: Blankenship's trial is focus of families*, Charleston Gazette, Apr. 5, 2015; Gzedit, *UBB: 'Industrial homicide'*, Apr. 4, 2015; Wendy Woldren & Sarah Plummer, *Family member 'never thought he'd see the day' that Blankenship would face his role in UBB blast*, Beckley Register-Herald, Nov. 14, 2014; Kate White, *Upper Big Branch Mine Disaster: Blankenship indicted, Late miner's sister: 'Thank God, it has finally happened'*, Charleston Gazette, Nov. 14, 2014; Ashley B. Craig, *Miners' families*

*support Blankenship indictment*," Charleston Daily Mail, Nov. 14, 2014.  *See also* ECF No. 122

and accompanying exhibits of media coverage in support of motion to transfer.

      The defense venue surveys confirm that many jurors will bring their misimpression of the

charges to court, along with their level of prejudgment of Mr. Blankenship's guilt.  Of the 93%

of survey respondents in the Charleston Division with knowledge regarding the UBB disaster,

51% of them expressed the belief that Mr. Blankenship was guilty of at least one of the charged

crimes.  *See* ECF No. 166 at 3-4 & Exs. A & B.   Representative comments from survey

respondents include: "He should be in jail for causing miners to die."  ECF No. 166, Ex. B at 3.

"I remember when the accident happened and I think that Don Blankenship is to blame and

ought to pay for it."  *Id.* at 4.  "I know Blankenship was the reason it happened. . . . The

explosion, he was in it for the money."  *Id.*  "[T]he miners died due to a result of negligence due

to the company owned by Don Blankenship."  *Id.* at 5.  "He killed 29 miners and it's his fault."

*Id.*  "The head of the company micromanaged the operation, and is totally responsible for the

deaths of 29 people."  *Id.*

      In these circumstances, this Court must take strong steps to address the effects of the

explosion on jurors and to attempt to purge from this trial the extremely prejudicial impact that

the explosion, erroneous media coverage, and community misconceptions will have on a fair and

impartial assessment of the actual charges against Mr. Blankenship.  If the Court fails to do so,

Mr. Blankenship will not have a fair trial.  *See United States v. Wilson*, 135 F.3d 291, 302 (4th

Cir. 1998) (reversing conviction when court failed to give specific curative instruction after

prosecutor accused defendant of uncharged murder).

      The Court should therefore clearly and forcefully instruct the jury that Mr. Blankenship is

not on trial for causing the UBB explosion or responsibility for it and that they must not consider

or discuss the UBB explosion when weighing the evidence.  The defense proposes that the Court

include the following instruction in in its introductory and final jury instructions:

> The government has not charged Mr. Blankenship with causing the explosion that occurred at the Upper Big Branch mine on April 5, 2010, and Mr. Blankenship is not on trial for the explosion.  In fact, the cause of the explosion and responsibility for the explosion are not at issue in this case at all.  To the extent you have heard in the community or in news reports that this case concerns the explosion, that information is wrong.  The government does not accuse Mr. Blankenship of causing the explosion or claim he has any responsibility for the explosion.

> Accordingly, in considering the charges against Mr. Blankenship, you cannot be influenced by the explosion or by sympathy for the decedents or their families.  You also may not consider or reveal your personal feelings or ideas about what caused the explosion or whether any individual, government agency, or company bears responsibility for that event.  It would violate your duty as jurors and my instructions to you if you were to discuss or consider in your deliberations the cause of the explosion or to use your verdict in this case to address responsibility or blame for the explosion. Your duty is to consider only the matters at issue in this case and to decide only the charges that have been brought in this case.

*Cf. United States v. Runyon*, 707 F.3d 475, 496-97 (4th Cir. 2013); *United States v. Johnson*, 610

F.2d 194, 196 & n.1 (4th Cir. 1979).[2]

---

[2] In *Runyon*, the district court gave the following instruction limiting the jury's consideration of a videotaped interrogation of the defendant during the penalty stage of a capital case:

> During the government's rebuttal evidence, it played for you a videotape of an interrogation of the defendant, David Anthony Runyon. This evidence was offered for the limited purposes of demonstration of remorse in regard to the alleged nonstatutory aggravating factor to this effect, and for relevant culpability in regard to the alleged statutory mitigation factor to this effect.

> You are instructed that no statement made by the detectives during the interrogation is itself evidence in this case. You should disregard any statements of fact or opinion made by the interrogating officers, including any speculation about a future jury's possible sentencing decision or the punishment that the defendant might receive, or any characterization by the officers of the defendant's conduct or character.

**III.    IF EVIDENCE OF THE EXPLOSION IS ADMITTED, IT SHOULD BE LIMITED TO THE FACT THAT AN EXPLOSION OCCURRED AT UBB ON APRIL 5, 2010, AND IT MUST BE ACCOMPANIED BY A LIMITING INSTRUCTION.**

The fact that an explosion occurred at UBB on April 5, 2010, if admitted into evidence at all, would be relevant only for the purpose of showing the context of the statements at issue in Counts Two and Three.  The indictment claims that the allegedly false statements charged in those counts were issued several days after the explosion and were included within a longer statement that referred to the explosion.  *See* ECF No. 169 at ¶¶ 80-85.  If reference to the

---

> These portions of the video could not be removed without making the interrogation itself unintelligible, but they should not be considered by you in deciding on defendant's sentence.

*Runyon*, 707 F.3d at 496-97.

In *Johnson*, the district court gave the following instruction to the jury after a witness improperly put the defendant's character at issue:

> Mr. Foreman and members of the jury, I want you to listen to me very carefully because this is the most important thing that I have instructed you from a legal standpoint I am about to so do now. . . . [Y]ou will recall that Mr. Rion asked this young man who was with you in the commission of the bank robbery in Georgia.  Now that is a collateral matter to this case, and it was improper for him to name, as he did, his co-defendant.  What I am doing now is telling you that his response by naming his co-defendants as being with him at that alleged time is not legal evidence. You cannot consider that as any evidence against this defendant on trial that was named, because, it is not legal evidence.
>
> Therefore, under your oaths, which you took to try this case and base your verdict on the legal evidence that you are hearing here in this courtroom, legal evidence, this not being legal evidence, the Court emphatically instructs you are to wipe out the response of this witness to the defense cross examination of him as to who was with him on a bank job that is not involved in the trial of this case. It is not legal evidence, disregard, wipe out of your mind, in no way allow it to come into the trial of this case insofar as your having heard it. You are to completely disregard it and put no significance at all to the response given where he names who he says was with him, and that's all he did.

*Johnson*, 610 F.2d at 196 & n1.

explosion is allowed, the defense will stipulate that the explosion occurred. Therefore the government need not present additional evidence regarding it. Any information beyond the bare, historical fact that an explosion occurred at UBB on April 5, 2010 is irrelevant and, for the reasons already stated, extraordinarily prejudicial.

Moreover, if the fact of the explosion is admitted into evidence, the Court must immediately give a cautionary instruction so that the jury understands its limited relevance. The Fourth Circuit has endorsed the use of such instructions to prevent "misleading of the jury" when a party offers evidence that could be misunderstood in a prejudicial manner. *United States v. Collins*, 401 F.3d 212, 217 (4th Cir. 2005) (citing *United States v. Henderson*, 717 F.2d 135, 138 (4th Cir. 1983)). The defense proposes that the Court read the following instruction to the jury if the fact of the UBB explosion is admitted into evidence:

> The parties have stipulated that an explosion occurred at the Upper Big Branch mine on April 5, 2010. That stipulation has been admitted into evidence for a very limited purpose: as evidence regarding the time period and circumstances in which the statements at issue in Counts Two and Three were made. The fact that an explosion occurred is not admitted for any other purpose and you should not consider it for any other purpose. For example, the explosion has no relevance whatsoever to Count One, which charges conspiracy.
>
> [Read again the prior cautionary instruction regarding the explosion, discussed *supra*.]

Because mention of the UBB disaster risks a high degree of prejudice and jury confusion, this cautionary instruction is necessary to ensure the jury considers the fact that an explosion occurred at UBB on April 5, 2010, only for its limited relevance to Counts Two and Three.

## IV. ALL EVIDENCE AND REFERENCES RELATED TO THE SUBJECT OF MINE EXPLOSIONS MUST BE EXCLUDED FROM TRIAL.

Any evidence or reference related to the general subject of mine explosions will inevitably be understood by the jury as a reference to the events of April 5, 2010. In this district,

the two are forever intertwined.  If, for example, the government elicits testimony that certain mine-safety standards are intended to prevent explosions, or mentions MSHA's role in mitigating the dangers of combustible material in mines, or makes any suggestion that UBB was vulnerable to explosion, the jury will immediately understand it as a reference to the April 5th disaster.

Just like the cause of the UBB explosion, then, any reference to the general subject of mine explosions must be excluded from this trial.  Not only is it irrelevant to the charges against Mr. Blankenship, but also, given the pervasive local knowledge of what happened at UBB, it is highly prejudicial and confusing.  Therefore, in addition to excluding evidence and argument regarding the cause of the April 5, 2010, explosion at UBB, the Court should exclude from trial all evidence regarding the subject of mine explosions.  By way of example only, this prohibition would preclude:

•        Evidence that the purpose of certain mine-safety standards is to prevent or reduce the risk of mine explosions,

•        Evidence regarding MSHA's role in preventing mine explosions, and

•        Evidence regarding the dangers of combustible materials in mines, the risks of mine explosions, or UBB's vulnerability to an explosion.

All references to those subjects in question and likewise should be prohibited.

As explained below, any evidence or argument related to the subject of mine explosions, including but not limited to, the examples listed above, is not relevant to the charges in this case, and would be unfairly prejudicial and confusing even if it was relevant.

**A. Evidence Regarding Mine Explosions Is Not Relevant to the Charges Against Mr. Blankenship.**

For the conspiracy count, what matters is whether Mr. Blankenship agreed to commit willful violations of mine safety standards and impede MSHA at UBB, and whether a conspirator committed an overt act in furtherance of that agreement. That some safety standards may be intended to prevent explosions does not make any element of the conspiracy charge more or less probable. Testimony about MSHA's role in preventing explosions would not make it any more or less likely that Mr. Blankenship ever agreed to impede MSHA or commit willful violations of safety regulations.

The truth or falsity of the statements alleged in Counts 2 and 3 also do not depend in any degree on anything having to do with the subject of mine explosions. The indictment does not allege any relationship between the subject of mine explosions and the alleged falsity of these statements, their materiality, or Mr. Blankenship's role in issuing them. Evidence and argument related to mine explosions will not bear on the accuracy of the alleged false statements, their materiality, or Mr. Blankenship's responsibility for them.

**B. Even if it Was Relevant, the Probative Value of Evidence Related to the Subject of Mine Explosions Would be Substantially Outweighed by the Danger of Unfair Prejudice and Jury Confusion.**

Even if evidence is relevant, it still must be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. The Fourth Circuit has explained:

> An assessment of probative value under Rule 403 requires more than a determination that the evidence is 'relevant' to a material fact in the case. Rather, the trial court must assess the proponent's need for admission of the evidence in the full evidentiary context of the case. After evaluating the marginal probative value of the proposed evidence, the trial court then must balance the value of

> the evidence against the harmful consequences that may result
> from its admission.

*Carnell Constr. Corp. v. Danville Redevelopment & Hous. Auth.*, 745 F.3d 703, 719 (4th Cir. 2014) (citations omitted).  In this case, any probative value that might be attributed to evidence, testimony, or argument related to the subject of mine explosions is minimal, and would be vastly outweighed by the danger of unfair prejudice and jury confusion that would result.

### 1.        Unfair Prejudice

"The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (citation omitted).  If there were any probative value in evidence, testimony, or argument related to the subject of mine explosions – and, as explained above, there is not – it would be vastly outweighed by the risk that it could invite the jury to blame Mr. Blankenship for the UBB disaster.   For example, any probative value of testimony that certain safety standards are intended to prevent mine explosions would be dwarfed by the significant risk that the jury might infer that the alleged violations of those standards at UBB caused the April 5th explosion. Similarly, any benefit from evidence suggesting that MSHA inspections prevent the accumulation of combustible materials would pale in comparison to the substantial danger that the jury would conclude that the alleged impediment of MSHA at UBB contributed to the disaster at the mine.  *See Ham*, 998 F.2d at 1254.  *See also United States v. Fulmer,* 108 F.3d 1486, 1497-98 (1st Cir. 1997) (admission of references to Oklahoma City bombing to show "context" reversible error).  The tragic loss of twenty-nine miners is not something that jurors in this district can be expected to simply banish from their minds when it comes time to deliberate.

2.     **Jury Confusion**

Since Mr. Blankenship is not on trial for causing the UBB explosion, any evidence, testimony, or argument related to mine explosions in this case risks confusing the jury about the actual issues it must actually consider.  First, any reference to mine explosions – especially in the context of a trial concerned with UBB – will be heard as a reference to the April 5, 2010 explosion at the mine.  Yet, as explained above, that disaster has, at most, only limited relevance to charges in this case.  Evidence or argument related to mine explosions, then, may create the confusing impression that the government is suggesting that Mr. Blankenship is responsible for the UBB disaster, that Mr. Blankenship is on trial for causing the explosion, or that the cause of the disaster is relevant in this trial.  The government has affirmed that that is not the case.  A limiting instruction, in light of the sensitivity of the explosion in this community, is not enough.

**V.    EVIDENCE RELATING TO CIVIL LITGATION AGAINST MR. BLANKENSHIP ARISING FROM THE UBB EXPLOSION MUST BE EXCLUDED.**

The government disclosed to the defense by an April 6, 2015, letter that it may offer under Federal Rule of Evidence 404(b) "evidence relating to" certain subjects, including "civil litigation against Defendant arising from the UBB explosion."  Letter from Steven R. Ruby to William W. Taylor, III, Apr. 6, 2015, at 4-5.  The government provided no further information regarding that evidence.  In response, the defense promptly wrote to the government on April 20, 2015, with the following request: "Please identify the particular litigation to which your letter refers, as well as the particular items of evidence concerning such litigation the government intends to offer under Rule 404(b)."  Letter from R. Miles Clark to Steven R. Ruby, Apr. 20, 2015, at 2.  The government has failed to respond in any fashion.

The evidence related to the UBB civil litigation must be excluded because the government's notice is inadequate.  The Advisory Committee Note to Rule 404 states that

14

reasonable notice is a condition precedent to the admissibility of Rule 404(b) evidence. *See* Advisory Committee Note to Rule 404(b), 1991 Amendments; *see also United States v. Vega*, 188 F.3d 1150, 1154 (9th Cir. 1999) (trial court should have excluded "other acts evidence" of the defendant's prior illegal border crossings and bank deposits because the government failed to provide reasonable notice of its intent to introduce such evidence); *United States v. Williams*, 792 F. Supp. 1120, 1134 n.19 (S.D. Ind. 1992) ("If it is determined that the Government failed to comply with the notice requirements of Rule 404(b), a court would seemingly have the discretion to refuse to admit such evidence."). The purposes of Rule 404(b)'s notice requirement are to "reduce surprise and promote early resolution on the issue of admissibility." *See* Advisory Committee Note to Rule 404(b); *United States v. Perez-Tosta*, 36 F.3d 1552, 1561 (11th Cir. 1994). The government's vague statement that it may offer evidence "related to" civil litigation arising out of the UBB disaster, and its refusal to explain further, leaves the evidence cloaked in secrecy and makes it impossible to determine its admissibility. Because the government's notice of its intent to introduce such evidence is insufficient under Rule 404, the evidence must be excluded.

The defense is unable to address the relevance of the proposed evidence at this time because it does not know for what purpose or subject the government intends to offer it. If the evidence is not excluded for insufficient notice, the defense will address the government's theory of admissibility once it knows for what purpose and subject the government intends to offer the evidence.

Moreover, even if the evidence is offered for a purpose allowed by Rule 404(b), it still must be excluded. Evidence regarding the civil litigation against Mr. Blankenship arising from the UBB explosion presents the same problems that the other evidence of the UBB explosion

presents: its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, and undue delay.  Federal Rule of Evidence 403 allows the exclusion of evidence, whether under Rule 404(b) or otherwise, for those reasons.  *See Hill*, 322 F.3d at 306. For all of these reasons set forth in Sections I through IV above, the evidence relating to the civil litigation arising from the UBB explosion must be excluded.

## <u>CONCLUSION</u>

For the foregoing reasons, the defense respectfully requests that the Court grant this motion and (1) exclude all evidence regarding the UBB explosion, its cause, and responsibility for it, (2) instruct the jury that this trial does not concern the cause of the UBB explosion or responsibility for the explosion, (3) limit any evidence of the UBB explosion to a stipulation that an explosion occurred at UBB on April 5, 2010, and instruct the jury that that evidence is admitted only for the context of the statements at issue in Counts 2 and 3, (4) exclude all references to mine explosions, which invariably will be understood as references to the explosion at UBB, (5) exclude all evidence relating to civil litigation against Mr. Blankenship arising from the UBB explosion, which the government has identified as potential Rule 404(b) evidence, and grant other appropriate relief.

Dated: July 24, 2015                    Respectfully submitted,

                                         /s/ William W. Taylor, III
                                        William W. Taylor, III
                                        Blair G. Brown
                                        Eric R. Delinsky
                                        R. Miles Clark
                                        Steven N. Herman
                                        ZUCKERMAN SPAEDER LLP
                                        1800 M Street, NW, Suite 1000
                                        Washington, DC 20036
                                        202-778-1800 (phone) / 202-822-8106 (fax)
                                        wtaylor@zuckerman.com
                                        bbrown@zuckerman.com
                                        edelinsky@zuckerman.com
                                        mclark@zuckerman.com
                                        sherman@zuckerman.com

                                         /s/ James A. Walls
                                        James A. Walls (WVSB #5175)
                                        SPILMAN THOMAS & BATTLE, PLLC
                                        48 Donley Street, Suite 800
                                        Morgantown, WV 26501
                                        304-291-7947 (phone) / 304-291-7979 (fax)
                                        jwalls@spilmanlaw.com

                                        *Counsel for Donald L. Blankenship*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing has been electronically filed and service has been made

by virtue of such electronic filing this 24th day of July, 2015 on:

R. Booth Goodwin, II
Steven R. Ruby
Gabriele Wohl
U.S. Attorney's Office
P.O. Box 1713
Charleston, WV 25326-1713

R. Gregory McVey
U.S. Attorney's Office
P.O. Box 1239
Huntington, WV 25714-1239

*/s/ Steven N. Herman*
Steven N. Herman