**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY**

UNITED STATES OF AMERICA

v.  CRIMINAL NO. 5:14-00244

DONALD L. BLANKENSHIP

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR JURY
INSTRUCTIONS REGARDING THE UBB MINE EXPLOSION AND TO EXCLUDE
EVIDENCE REGARDING THE EXPLOSION**

The United States of America, by Assistant United States Attorney Steven R. Ruby, hereby responds to Defendant's Motion for Jury Instructions Regarding the UBB Mine Explosion and to Exclude Evidence Regarding the Explosion.

Defendant seeks to exclude all evidence relating to the April 5, 2010 explosion at the Upper Big Branch mine ("UBB"). The Court previously considered a similar motion in *United States v. Stover,* Mem. Op. & Order, Crim. No. 5:11-cr-00038 (S.D. W.Va. Oct. 18, 2011), in which Defendant Stover was charged with obstructing, and making false statements in, the investigation of the UBB explosion. There, the Court determined that evidence concerning the explosion was relevant to elements of the charges and to the narrative framework of the charges, and that if any unfair prejudice arose from that evidence, it was cured by a limiting instruction. *Id.* at 5.

The same reasoning applies here. Defendant is charged with making and causing to be made materially false and misleading statements in connection with securities, and materially false statements to the Securities and Exchange Commission ("SEC"). The statements in

question were made in a document that Massey Energy Company ("Massey") called a "Statement to Shareholders Regarding Upper Big Branch Explosion," and in a press release made shortly after the explosion, as post-explosion concerns among investors sent Massey's stock price plummeting. Just like the false statements in *Stover*, the false and misleading statements alleged here were made as a result of the explosion. And just as in *Stover*, evidence regarding the explosion is essential to elements of the charged offense: here, the materiality of the statements to the investing public and the SEC, as well as intent—Defendant's mental state and purpose in connection with the statements. As explained below, the Court's reasoning in *Stover* was without question legally correct, and a similar outcome should obtain here.

Defendant's motion goes further in one respect than the comparable defense motion in *Stover*, by seeking to bar reference to the purpose of mine safety standards that are intended to prevent explosions. This request is puzzling, since the standards—which are, of course, federal law—expressly state, in their own text, that they exist to prevent explosions. The law, for example, says that mines must have enough air to "dilute, render harmless, and carry away flammable, *explosive*, noxious, and harmful gases, dusts, smoke, and fumes." 30 C.F.R. § 321 (emphasis added). *See also* 30 C.F.R. §§ 75.330, .325, .371 (mine ventilation standards requiring air to carry away explosive gases and dust). Similarly, the law speaks often of "combustible" materials in coal mines. *See*, *e.g.*, 30 C.F.R. §§ 75.400 ("Coal dust, including float coal dust deposited on rock-dusted surfaces, loose coal, and other combustible materials, shall be cleaned up and not permitted to accumulate . . . ."); .400-2; 402 ("incombustible content"); 403 ("incombustible content). Statutes are full of words that prove inconvenient to those who violate them, but the law is the law. If the laws at issue concern explosive gases and dust, and combustible materials, it is hard to see how a trial can proceed without discussing those subjects.

And if the weaving of those topics into the law itself were not enough, the purpose of standards that exist to prevent explosions is highly relevant to other issues, including, to give just one example, Defendant's motive and intent in conspiring to impede the Mine Safety and Health Administration from discovering violations of those standards. The purpose of many key mine safety standards is also alleged in the Superseding Indictment itself, allegations that Defendant declined to challenge in pretrial motions.

As in *Stover*, the United States has no intention of introducing "unnecessary, graphic and irrelevant details of the UBB explosion." Nor does the United States intend to introduce evidence or argument concerning the cause of the explosion; as Defendant says, causing the explosion is not what he is charged with. But, as in *Stover*, completely excluding evidence of the explosion "would unfairly distort the case." *Stover,* Mem. Op. & Order at 5, Crim. No. 5:11-cr-00038 (S.D. W.Va. Oct. 18, 2011). Defendant's proposal to use a one-line stipulation that an explosion occurred at UBB is similarly deficient; a stipulation is an inadequate substitute for live evidence in situations such as these. *See Old Chief v. United States*, 519 U.S. 172, 189 (1997). If any unfair prejudice arises—and it is not at all clear that it will, since prejudicial evidence and unfairly prejudicial evidence are two very different things—it can be cured with a limiting instruction. The United States will include such an instruction with its proposed jury instructions, and the Court should give one at trial.

Defendant also proposes to exclude evidence of civil litigation arising from the UBB explosion, complaining of the United States' 404(b) notice on that subject and contending that such evidence is inadmissible in any event. The United States' 404(b) notice, however, is sufficient. And evidence of civil litigation arising from the UBB explosion is relevant and admissible for many purposes, including as evidence that statements regarding Massey's

3

compliance with safety standards were material to investors and that witnesses whom Defendant may call are biased because they have been named as defendants in that civil litigation.

In sum, the Court should deny Defendant's requests to exclude evidence and argument concerning the explosion, to limit reference to the explosion to a stipulation, to exclude the purpose of mine safety laws that are intended to prevent explosions, and to exclude references to civil litigation arising from the explosion. The Court, however, should grant Defendant's request to exclude evidence concerning the specific *cause* of the explosion. The Court should also, as Defendant requests, give a limiting instruction regarding the jury's consideration of evidence regarding the explosion; the specific language of that instruction should be proposed and determined in the ordinary process for proposing and finalizing jury instructions.

I.

The United States does not plan to introduce evidence of the cause of the April 5, 2010 UBB explosion or evidence of responsibility for the explosion. Therefore, the Court should grant this portion of Defendant's motion.

II.

The United States agrees with Defendant that the fact of the explosion is relevant to Counts Two and Three of the Superseding Indictment. The explosion is admissible, as Defendant acknowledges, to show the context of Defendant's false statements and omissions in those counts. In addition to the fact of the explosion, the United States must be permitted to introduce some evidence regarding the severity of the explosion and the media reports surrounding the explosion. *See* Superseding Indictment, ¶ 3 (Doc. 169) (referring to "a major, fatal explosion"). The fact and severity of the explosion, as well as the nature and degree of public information dispersed directly after the explosion, are essential to the element of materiality in those charges.

Materiality is based on whether "there is a substantial likelihood that a reasonable shareholder would consider it important in [making investment decisions]." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). The United States must be able to demonstrate that Defendant's statements were delivered to investors at a critical time in Massey's history—in the wake of a major and fatal mine explosion.

The United States will present evidence that at the time the statements were made investors were inundated with media reports of the seriousness of the explosion. The United States will not sensationalize the severity of the event or use headlines for emotional appeal, but limiting evidence to the historical fact of the explosion leaves out the evidence of Defendant's motive to lie and prevents the United States from presenting to the jury the "total mix" of information available to investors at the time the statements were made. *See Basic Inc. v. Levinson*, 485 U.S. 224, 232 (1988) (materiality of omitted facts depends on whether "total mix" of information was significantly altered). The UBB explosion was critical enough to provoke a significant drop in Massey's stock price. When Defendant made those false statements and omissions, numerous media reports on Massey's safety compliance record and possible causes of the explosion held the attention of investors, which is precisely why a statement disavowing Massey's illegal activity was material to investors. Defendant's statements were intended to get out in front of speculation that lawlessness caused the explosion, and the effect was to assure investors that there was no lawlessness at Massey a time when they were hearing otherwise.

Reasonable statements on severity are necessary to show why investors were paying particular attention to Defendant's statements about following the law directly after the explosion. This evidence adds the context to Defendant's statements to support a finding of materiality in Counts Three and Four. Just as in *Stover*, the UBB explosion is "clearly relevant to

5

the narrative framework of these charges." Mem. Op. & Order at 5, Crim. No. 5:11-cr-00038 (S.D. W.Va. Oct. 18, 2011). Precluding evidence beyond the historical fact of the explosion would leave a gap in the United States' presentation and "unfairly distort the case." *Id*; *see Old Chief v. United States*, 519 U.S. 172, 189 (1997) (stipulating away an event in the narrative of the prosecution's case, or "interrupt[ing] the flow of evidence," calls jurors' attention to the fact that they are missing an important detail). The Court should deny Defendant's motion insofar as it seeks to exclude reasonable evidence of the severity of the UBB explosion and evidence demonstrating the "total mix" of information available to investors.

### III.

Defendant moves the Court to preclude "any reference to the general subject of mine explosions" from trial. References would include any evidence that the purpose of certain mine-safety standards is to prevent or reduce the risk of explosions, and evidence regarding the dangers of combustible materials in mines. Defendant's request to exclude such a broad category of evidence that is unavoidably intertwined with the facts, narrative, and purpose of this prosecution is unrealistic and unsupported by law.

The United States must be permitted to present evidence that the laws that Defendant conspired to violate were intended to avoid serious safety hazards, such as mine explosions, for several reasons. First, this evidence is inseparable from the facts alleged in the indictment to support the charges. Second, mine explosions and combustible material are specifically discussed in the language of the safety laws that Defendant conspired to violate. Third, the purpose of the safety standards at the root of the charges is essential to the narrative of the case. Finally, the probative value of this evidence outweighs any prejudice resulting from its inclusion at trial.

A.

The Superseding Indictment is replete with references to the subject of mine explosions, and particularly mine safety standards that prevent or reduce the risk of mine explosions. Here are just a few examples:

> 21. *Ventilation plan violations regarding water sprays*: These water sprays suppressed coal dust and cooled the area where cutting occurred, the latter to diminish the possibility that frictional heat from cutting would ignite explosive substances in the mine air.
>
> 31. *Violations: Explosive coal dust and combustible loose coal and other materials*: [C]oal mining inherently produced large quantities of airborne coal dust. This coal dust eventually settled out of the mine air and collected on surfaces throughout the mine. After settling, however, coal dust still posed a risk of explosion.
>
> 36. Among the causes of UBB's routine violations of the laws on explosive and combustible materials and rock dusting were the employment of an inadequate number of coal miners to perform work necessary to comply with these laws, as well as the imposition and aggressive enforcement of coal-production quotas that did not allow sufficient time to perform such work.
>
> 42. The report also showed BLANKENSHIP that the mandatory federal mine safety standard violated most often at the UBB group of mines was the standard requiring that accumulations of explosive float coal dust, combustible loose coal, and other combustible materials be cleaned up and not permitted to accumulate.
>
> 59. Throughout the Indictment Period, however, UBB was required to comply with mandatory federal mine safety standards regarding ventilation, which were intended primarily to prevent mine explosions and fires and to prevent death and serious injury to miners if an explosion or fire occurs.

The Superseding Indictment's repeated references to federal mine safety standards designed to prevent explosions are significant because Defendant moved to strike what he claimed was "surplusage" from the Indictment on February 6, 2015 [Docket No. 107]. In that motion, Defendant invoked Rule 7(d) of the Federal Rules of Criminal Procedure in an attempt to strike the indictment's "many allegations that are irrelevant, highly prejudicial and

7

inflammatory." [1] Mem. Supp. Mot. to Strike at 1. These allegedly irrelevant allegations included statements that supposedly implicated the cause of the UBB explosion, allegations that Defendant monitored production and costs at UBB, allegations that Defendant could have done more to prevent the occurrence of violations of safety standards at UBB, allegations that Defendant broke the law in order to produce more coal and cut costs, and allegations regarding Defendant's compensation. Notably absent from this list of what Defendant considered irrelevant back in February are all references to mine explosions and combustible materials, the risks of explosions, and the safety standards that exist to prevent explosions.

The Court denied Defendant's motion to strike on April 8, 2015, for reasons that are equally applicable to Defendant's current request for exclusion. Considering the crimes charged and the facts alleged in support of the charges, the subject of mine explosions is "relevant and germane to the accusations that the defendant engaged in a conspiracy to willfully violate mandatory mine safety and health standards and a conspiracy to defraud the United States of its ability to monitor and enforce said standards." Mem. Op. and Order at 6 [Docket No. 221]. Barring the subject of mine explosions would prevent the United States from proving facts that are germane to the charges.

B.

An order excluding all mention of explosions from trial would be unworkable because the very standards Defendant is charged with conspiring to willfully violate specifically mention mine explosions and combustible material. Subpart D of 30 C.F.R § 75 sets forth the requirements for ventilation in a mine. Section 75.321, entitled "Air Quality," requires that the

---

[1] Defendant incorporated his arguments from his February 6, 2015 Motion to Strike into his April 7, 2015 Motion to Strike Surplusage from the Superseding Indictment [Docket No. 196], asserting that, "because [the objectionable paragraphs] of the superseding indictment are identical to the original indictment, the filing of the superseding indictment does not affect the issues raised in the original motion." Def. Mot. 17A Mot. to Strike Surplusage from the Superseding Indictment at 1.

air current in areas where people work or travel "shall be sufficient to dilute, render harmless, and carry away flammable, explosive, noxious, and harmful gases, dusts, smoke, and fumes." 30 C.F.R. § 75.321. That section goes on to limit the accumulation of certain gases "for the purpose of preventing explosions." The rock dusting standards, which are heavily featured in the charges against Defendant, impose rock dusting requirements on "[a]ll underground areas of a coal mine, except those areas in which the dust is too wet or too high in incombustible content to propagate an explosion." 30 C.F.R. § 75.402. Section 75.401-1 defines "excessive amounts of dust" as coal and float coal dust in the air in such amounts as to create the potential of an explosion hazard." 30 C.F.R. § 75.401-1. *See also* 30 C.F.R. § 75.330, § 75.325, § 75.371 (ventilation standards requiring air to carry away explosive gases and dust); 30 C.F.R. § 75.334, 75.400, 75.400-2, 75.402-1, 75.402-2, 75.403-1 (regulations mentioning combustible material or combustion).

Violations of federal mine safety standards are key to the Superseding Indictment. It would be impossible to present evidence of willful violations of these regulations without explaining what the regulations are, how they operate, or the conditions at UBB that gave rise to these violations. Eliminating the words "explosion" and "combustible" from these standards would result in the alteration of key language in the charges the United States must prove and present a distorted factual and legal background to the jury.

C.

The purpose and substance of the federal mine safety standards—which often discuss mine explosions—are necessary to "complete the story of the crime" for the jury. *See United States v. Wright*, 392 F.3d 1269, 1276 (11th Cir. 2004) (citations omitted). The United States does not intend to use the subject of mine explosions to connect specific violations to the UBB explosion, and, as explained below, any such notion can be cured through a limiting instruction.

9

However, the United States is entitled to prove its case by introducing probative evidence, and "evidence of its own choice." *Old Chief v. United States*, 519 U.S. 172, 186-87 (1997). Here, probative evidence will include the gravity of the violations at UBB, which necessarily embodies the potentiality for mine explosions. Just as evidence of the UBB explosion was "clearly relevant to the framework of [the] charges" in *Stover*, evidence regarding how mine explosions occur and how they are prevented is relevant here. Mem. Op. & Order at 5, Crim. No. 5:11-cr-00038 (S.D. W.Va. Oct. 18, 2011). This evidence is not only critical to the jury's understanding of the charges in the complaint, it is unavoidable in the presentation of the federal mine safety standards at issue.

D.

Defendant asserts that any discussion of mine explosions will inevitably allow the jury to infer that UBB's violations caused or contributed to the UBB explosion, and any use of the word "explosion" will be heard as a reference to the UBB explosion. He argues that this results in prejudice and jury confusion that outweighs any probative value of the evidence. First, Defendant is wrong that the probative value is outweighed by prejudice, and second, Defendant's solution to what he perceives as prejudicial references is so extreme and unwieldy that it is certain to result in confusion. Finally, the proper course to eliminate the possibility of prejudice and reduce potential jury confusion is through a limiting instruction.

Rule 403 of the Federal Rules of Evidence permits the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Fourth Circuit has emphasized, "Rule 403 only requires suppression of evidence that results in *unfair* prejudice—

prejudice that damages an opponent for reasons other than its probative value, for instance, an appeal to emotion, and only when that unfair prejudice *substantially* outweigh[s] the probative value of the evidence." *United States v. Mohr,* 318 F.3d 613, 619-20 (4th Cir. 2003) (internal quotation marks omitted).

    The above arguments establish the relevance of the subject of mine explosions to this case. The purpose, requirements, and nature of the safety standards violated at UBB are not only probative, but are necessary to explain the charges in the Superseding Indictment and the overarching narrative of this case. "Probative" is an understatement, given that the jury will be instructed on federal mine safety standards that specifically discuss mine explosions. The mere mention of the words "explosion" or "combustible" does not have the requisite unfair prejudicial effect to justify their exclusion. These are words and concepts—not arguments—that are integral to the laws Defendant violated. The jury's potential mental connection between these words and the UBB explosion does not "substantially outweigh" the probative value of these words to the elements of the charged offenses, and the inseparability of these words from the relevant standards.

    The complete elimination of what Defendant perceives to be trigger words in this trial will result in glaring conceptual and actual gaps in the evidentiary and legal background of the case, and would likely confuse the jury. This is why a limiting instruction is appropriate, and will resolve Defendant's concerns of prejudice without compromising probative evidence or presenting incomplete and inaccurate legal principles to the jury. *See Mohr*, 318 F.3d at 620 ("'cautionary or limiting instructions generally obviate' prejudice" (*quoting United States v. Powers*, 59 F.3d 1460, 1468 (4th Cir. 1995))); *Stover*, Mem. Op. & Order at 5, Crim. No. 5:11-cr-00038 (S.D. W.Va. Oct. 18, 2011) ("The Court can avoid any unfair prejudice through trial

11

supervision and with limiting instructions to the jury."). Therefore, the Court should deny Defendant's motion to the extent that it seeks exclusion of all references to the subject of mine explosions from trial.

### IV.

By letter dated April 6, 2015, the United States informed Defendant that it may offer under Federal Rule of Evidence 404(b) evidence relating to civil litigation against Defendant arising from the UBB explosion. Rule 404(b) permits otherwise inadmissible "other acts" evidence for a purpose other than to prove Defendant's character in order to show that on a particular occasion he acted in accordance therewith. Fed. R. Evid. 404(b)(1). Defendant contends that this evidence should be excluded because the United States has not complied with Rule 404(b)'s notice requirement, and because any probative value is outweighed by its prejudicial effect. As explained below, the United States has satisfied the notice requirement for use of 404(b) evidence, and there are permissible grounds for the use of this evidence that are not outweighed by prejudice to Defendant.

### A.

To use 404(b) evidence, the United States must "provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and . . . do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice." *Id*. The United States' notice of its intent to use 404(b) evidence satisfied this notice requirement because it identified the "general nature" of the evidence. "General nature" cannot be read to require the identification of "particular litigation," as Defendant suggests.

The single case Defendant cited to support his contention that the United States has failed to satisfy its notice requirement is *United States v. Vega*, 188 F.3d 1150, 1153 (9th Cir. 1999). In

that case, the government provided no notice of its intent to use 404(b) evidence, averred to the court at the motions in limine hearing that it did not know of any 404(b) evidence, and then proceeded to introduce 404(b) evidence at trial. This is an extreme example of failure to comply with 404(b)'s notice requirements, and it bears no similarity to the events in this case.

Recent district court opinions out of the Fourth Circuit have examined the government's duty to provide notice under 404(b). In *United States v. Renteria*, No. 7:12-CR-37-FA-10, 2014 WL 2616630, at *5 (E.D.N.C. June 12, 2014), the court explained that, "a defendant is not entitled to immediate production by the government of evidence of specific instances of conduct that it intends to introduce at trial, but is entitled to reasonable notice before trial of the government's intent to introduce 404(b) evidence and its general nature." *Id.* This "general nature" does not encompass the actual evidence the government intends to use. *See id.*; *United States v. Graham*, 468 F. Supp. 2d 800, 802 (E.D.N.C. 2006)) ("Nothing in Rule 404(b) requires the government to identity the witnesses who will testify about the Rule 404(b) evidence or the tangible evidence upon which the government may rely to introduce the Rule 404(b) evidence.");

The *Renteria* court emphasized that:

[T]he Rules of Evidence are not rules of discovery. The purpose of the Rule 404(b) notice provision, to prevent surprise during trial, does not support providing a defendant with materials which the Government possesses and plans to offer at trial. Instead, the Defendants need only receive sufficient notice "to apprise the defense of the general nature of the evidence of extrinsic acts." Fed. R. Evid. 404 (Notes of Senate Committee on the Judiciary on the 1991 Amendment). Nothing in the rule indicates that the defendant is entitled to receive documents or other evidence from which the Government derives the prior bad act evidence. The Government merely need provide the Defendants with information sufficient to indicate the general nature of the evidence.

*Renteria*, 2014 WL 2616630 at *5 (quoting *United States v. Williams*, 792 F.Supp. 1120, 1134 (S.D. Ind. 1992)).

Defendant's demand that the United States "identify the particular litigation . . . as well as the particular items of evidence concerning such litigation the government intends to offer under Rule 404(b)" is squarely at odds with the purpose of the notice requirement and an erroneous interpretation of the United States' obligations, with which it has complied.

B.

Defendant asserts that, regardless of the purpose for which it is offered, evidence relating to civil litigation against Defendant arising from the UBB explosion must be excluded because its probative value is outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, and undue delay. He reiterates his earlier arguments that any evidence mentioning the UBB explosion must be excluded due to its prejudicial effect. For reasons stated above, reasonable and limited evidence relating the explosion is necessary, its evidentiary value is not substantially outweighed by unfair prejudice to Defendant, and a limiting instruction will counteract the risk of prejudice.

With respect to civil litigation against Defendant arising from the UBB explosion, this evidence may be introduced for permissible purposes under Rule 404(b). For example, it may be probative to the issue of witness bias on cross examination. If Defendant's witnesses are involved in pending litigation arising from the UBB explosion, then they may have an incentive to testify in a manner that will minimize their knowledge of the allegations in the indictment as well as Defendant's culpability. If Defendant's witnesses were involved in resolved civil litigation arising from the UBB explosion, the resolution of such litigation may be probative on cross examination as well, to rebut a suggestion that the allegations of wrongdoing were baseless. Allegations that investors have made in civil complaints against Defendant are probative of materiality in Counts Two and Three of the Superseding Indictment. These

allegations are evidence that investors were concerned with the safety practices at Massey, and considered the status of Massey's legal compliance material. The United States has no intention of introducing this evidence to establish Defendant's liability for the underlying claims of the litigation, but there are other permissible purposes to introduce evidence relating to civil litigation against Defendant arising from the UBB explosion. Exclusion of civil litigation arising from the explosion is unwarranted.

V.

For the reasons outlined above, the Court should deny Defendant's Motion for Jury Instructions Regarding the UBB Mine Explosion and to Exclude Evidence Regarding the Explosion.

Respectfully submitted,

/s/ Steven R. Ruby
Steven R. Ruby
Assistant United States Attorney
WV Bar No. 10752
300 Virginia Street, East
Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
Email: gabriele.wohl@usdoj.gov

CERTIFICATE OF SERVICE

It is hereby certified that the foregoing "United States' Response to Defendant's Motion for Jury Instructions Regarding the UBB Mine Explosion and to Exclude Evidence Regarding the Explosion" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this 31st day of July, 2015 to:

> Steven Herman
> Miles Clark
> Eric Delinsky
> William Taylor, III
> Blair Brown
> Zuckerman Spaeder LLP
> Suite 1000
> 1800 M Street, NW
> Washington, DC 20036
>
> Alex Macia, Esq.
> Spilman Thomas & Battle PLLC
> P.O. Box 273
> Charleston, WV 25321
>
> James Walls, Esq.
> Spilman Thomas & Battle PLLC
> P.O. Box 615
> Morgantown, WV 26507

/s/ Gabriele Wohl
Gabriele Wohl
Assistant United States Attorney
WV Bar No. 11132
300 Virginia Street, East
Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
Email: gabriele.wohl@usdoj.gov