IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

UNITED STATES OF AMERICA

v.                                                           CRIMINAL NO. 5:14-00244

DONALD L. BLANKENSHIP

### UNITED STATES' RESPONSE TO DEFENSE MOTION TO EXCLUDE RULE 404(b) TESTIMONY OF DAVID HUGHART

Comes now the United States of America, by counsel, and files this response to the Defense Motion to Exclude Rule 404(b) Testimony of David Hughart. ECF No. 314. For reasons outlined below, the motion should be denied.

### Background

From approximately 2000 through March of 2010, David Hughart (Hughart) was President of Green Valley resource group, which was an organizational unit of Massey Energy Company (Massey) and oversaw Massey mines including White Buck #2 and Grassy Creek #1 (referred to hereinafter as the White Buck Mines). Those mines and their employees were subject to the Federal Mine Safety and Health Act of 1977, as amended, which was enforced by the federal Mine Safety and Health Administration (MSHA).

Between 2000 and March 2010, Hughart conspired with other Massey officers and employees to give advanced notice to underground workers concerning MSHA safety inspections. Specifically, Hughart had an agreement with Defendant, superintendents and mine foremen to provide advance notice of inspections. Hughart attended meetings of Massey officials where that practice of advance notice was discussed. The purpose of the advance notice

was to prevent MSHA from observing violations of federal mine health and safety regulations, thereby avoiding citations for those violations.

During the same time period, Hughart also conspired with Defendant and other Massey employees to violate mandatory federal mine health and safety standards, including standards that involved ventilation controls, accumulations of coal dust and loose coal, and rock dusting.

On February 28, 2013, Hughart pled guilty in this Court by way of information to both conspiracies outlined above.

Consistent with the facts supporting his guilty plea, Hughart is expected to testify about specific types of violations at his mines, to include failure to extend/hang curtains, inadequate rock dusting, excessive coal dust/gob, and scrubbers being used in violation of the ventilation plan. Hughart will testify that he was under pressure from Defendant and other Massey executives to run coal to the exclusion of safety. Hughart may testify that although these violations occurred on a regular basis, he never received memoranda or other communication from Defendant or other Massey supervisory personnel chastising him for failure to comply with health and safety standards in general, or those specifically related to rock dusting, coal dust control, roof control, or failure to follow the mine ventilation plan.

Hughart is also expected to testify that as president of the Green Valley Coal Group, he had discussions with Defendant about citations written by MSHA inspectors. On one occasion, Defendant inquired of Hughart how certain problems could have existed at the mine when Hughart knew that an inspector was going to be in the mine and which area of the mine he would be in, indicating Defendant's knowledge and advocacy of the practice of advance notice.

In support of Hughart's testimony, the United States may also introduce the following documents into evidence:[1]

1. Massey 2002, Safety Development Group meeting notes which state that Massey's upper management was focusing too much on production and not taking safety seriously (Exhibit 1);

2. February 18, 2004, memorandum from Defendant to the group presidents in which Defendant wants to know if their mines were meeting their planned footage per month and, if not, why not (Exhibit 2);

3. October 19, 2005 memorandum from Defendant to deep mine superintendents advising them to ignore requests to build overcasts, etc. (Exhibit 3);

4. February 20, 2008 memorandum from Defendant to Dave Hughart regarding tons per man hour (Exhibit 4);

5. February 25, 2008, Daily Production Report containing a handwritten note from Massey executive Chris Adkins telling Hughart he should run coal while waiting on roof bolter and complaining that he only ran 185 feet of coal (Exhibit 5);

6. September 16, 2008, report, with a handwritten note from Chris Adkins asking what is wrong with Hominy mine, with explanation from Hughart that they were short 8 people on the face (Exhibit 6);

7. February 20, 2009, memorandum from Defendant, indicating that he is reviewing production reports at home on a Friday evening (Exhibit 7);

8. February 9, 2009 memorandum from Defendant to all group presidents with Subject: ANOTHER REMINDER (Exhibit 8); and,

9. February 23, 2009 memorandum from Defendant to Dave Hughart regarding man hours at Grassy Creek mine (Exhibit 9).

The United States provided notice of all the above to Defendant, first by letter dated May 12, 2015, and supplemented by letter dated June 9, 2015. In those letters, as in this response, the United States does not concede that all of Hughart's anticipated testimony implicates Rule 404(b). At least some of the proposed testimony and evidence constitutes direct

---

[1] The United States does not contend that each document delineated herein is necessarily admissible through Hughart. Rather, Hughart will provide testimony relative to those documents, regardless of how they are admitted.

evidence of Defendant's crimes. Under one theory or the other, however, the testimony and evidence is admissible. Defendant's motion should be denied.

## Argument

### A. Hughart's Proposed Testimony and Evidence Constitutes Direct Evidence of Defendant's Crimes, and Does Not Implicate Rule 404(b).

Defendant relies on *United States v. McBride,* 676 F.3d 385 (4th Cir. 2012), to support his position that the above-described evidence should be excluded. However, the Court in *McBride* recognized that not all prior "bad act" evidence is encompassed by Rule 404(b). *Id*. at 396.

The Fourth Circuit confirmed this position in *United States v. Bajoghli*, 785 F.3d 957 (4th Cir. 2015) where it reversed the district court's decision to exclude evidence of uncharged conduct. *Id*. at 964 (admission of uncharged conduct is relevant to prove a defendant's criminal intent, comparing a criminal "scheme" to a conspiracy).

Evidence which concerns events outside the charged conduct, therefore, is admissible if it arises out of the same series of transactions as the charged offense, or "furnishes part of the context of the crime." *United States v. Kennedy*, 32 F.3d 876, 886 (4th Cir. 1994). For example, "when 'other crimes, wrongs, or acts' evidence is relevant to establishing an element of the offense, Rule 404(b) is not even implicated." *United States v. Grimmond*, 137 F.3d 823, 832 (4th Cir. 1998). This includes events that occurred outside of the timeframe of the conspiracy charged in the indictment. *Kennedy*, 32 F.2d at 885 (approving the introduction of uncharged conduct evidence which took place one year before the conduct charged in the indictment, without implication of Rule 404(b)) (citations omitted). *See also United States v. Loayza*, 107 F.3d 257, 264 (4th Cir. 1997) (evidence of similar conduct after last overt act in the indictment held to be "direct evidence of a scheme to defraud, not Rule 404(b) evidence"); *United States v.*

*Cooper*, 482 F.3d 658, 663-64 (4th Cir. 2007) (evidence of uncharged violations of State environmental regulations not subject Rule 404(b) when intrinsic to the crime charged); and *United States v. Mark*, 943 F.2d 444, 448 (4th Cir. 1991) (uncharged conduct is admissible to furnish "context of the crime").

1. **Hughart's Anticipated Testimony Consists of Direct Evidence of Defendant's Guilt on the Crimes Charged in Counts Two and Three of the Superseding Indictment and Does Not Implicate Rule 404(b).**

In his motion to exclude Hughart's testimony, Defendant only discusses its admissibility relative to the conspiracy charged in Count One. Defendant ignores the other two counts in the superseding indictment. Counts Two and Three involve false statements made by Defendant, both in a statement to shareholders and in an SEC filing, in which he stated that "[w]e [Massey] do not condone any violation of MSHA regulations" and "we [Massey] strive to be in compliance with *all regulations at all times."* These false statements were not limited to the Upper Big Branch (UBB) mine, were not limited to Defendant himself and were not limited in time.

Hughart's testimony, therefore, as outlined in the Stipulation of Facts attached to his plea agreement (Exhibit 10), his testimony at his plea hearing and, as outlined above and in the United States' notice to Defendant with regard to health and safety violations at White Buck, constitutes relevant, direct evidence that Massey *did* condone those violations *at least* from 2000 to March 2010, and did not strive to be in compliance with "*all regulations at all times*."

Likewise, several of the documents attached as exhibits and listed above contain direct evidence of Defendant's guilt relative to the charges contained in Counts Two and Three. Specifically, Exhibits 1, 2, 3, 7 and 8 demonstrate Defendant's and Massey's emphasis on production and their disregard of health and safety regulations. Those documents also are in

5

direct contradiction of Defendant's statements to shareholders and in the SEC filing. Hughart's testimony is admissible as to Counts Two and Three as direct evidence of Defendant's guilt.

### 2. Hughart's Proffered Testimony Contains Direct Evidence of Defendant's Guilt Relative to Count One and Does Not Implicate Rule 404(b).

Several areas on which Hughart's testimony will touch relate directly to the conspiracy charged in Count One. Consequently, they do not implicate Rule 404(b).

The October 19, 2005 memorandum from Defendant to all deep mine superintendents (Exhibit 3) is a clear example.[2] That memorandum states the following:

> If any of you have been asked by your group presidents, your supervisors, engineers or anyone else to do anything other than run coal (i.e. – build overcasts, do construction jobs, or whatever), you need to ignore them and run coal. This memo is necessary only because we seem not to understand that the coal pays the bills.

This memorandum clearly demonstrates Defendant believed his sole job, and the sole job of those in his employ, was to make money. Consequently, any task necessary to "run coal" in compliance with law was unimportant. Defendant's own words to this effect constitute direct, relevant evidence that he willfully violated mandatory federal health and safety regulations. The memorandum is relevant in that it tends to prove Defendant willfully violated mandatory health and safety regulations. As a result "Rule 404(b) is not even implicated." *Grimmond*, 137 F.3d at 832. The fact that the memorandum was circulated outside the timeframe of the charged conspiracy does not render it inadmissible. *See Kennedy*, 32 F.3d at 885.

Other documents about which Hughart is expected to testify also constitute direct evidence of Defendant's guilt on Count One. Those documents were created and distributed within the timeframe of the conspiracy. Among those documents is the February 20, 2009,

---

[2] Defendant has filed a separate motion *in limine* to exclude the October 19, 2005 memorandum. ECF No. 305. The United States' response to that motion will deal with the admissibility of that memorandum in greater detail.

memorandum from Defendant to Hughart, indicating that Defendant was reviewing, at his home on a Friday evening, production reports and use of man hours (Exhibit 7). This document contains direct evidence that Defendant was, at all times, unusually aware of the details of all Massey mining operations. It also contains a threat to reduce the number of employees coupled with an admonition to run more coal. While this memorandum is directed to Hughart and concerns the White Buck mines, it nonetheless demonstrates Defendant's state of mind as the CEO of Massey and demonstrates the level of control Defendant exercised over Massey mines. That level of micromanagement by a CEO of a corporation the size of Massey would also tend to prove Defendant had knowledge of the multitude of health and safety violations occurring at all Massey mines, including UBB.

The February 9, 2009 memorandum (Exhibit 8) contains a reminder from Defendant to all group presidents that their "core job is to make money." It also indicates that Defendant closely monitored their financial results. It contains a threat that if Defendant did not see improvement in the way the presidents performed their "core jobs," he would be "looking to make an example out of somebody" and he did not "mean embarrassment." In other words, the group presidents' jobs were at risk. The fact this memorandum applied to all group presidents makes it admissible without implication of Rule 404(b).

### B. Assuming the Proffered Hughart Testimony Implicates Rule 404(b), it is Nonetheless Admissible.

Federal Rule of Evidence 404(b) provides:

> (b) Crimes, Wrongs, or Other Acts.
>
> (1) *Prohibited Uses*. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) *Permitted Uses; Notice in a Criminal Case*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent,

> preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:
>
>> (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
>
>> (B) do so before trial — or during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b).

Assuming that the proffered Hughart testimony implicates the Rule, it is nonetheless admissible. It is important to remember that the Fourth Circuit has consistently construed Rule 404(b) "as an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition." *United States v. Powers*, 59 F.3d 1460, 1464 (4th Cir. 1995) (quoting *United States v. Percy*, 765 F.2d 1199, 1203 (4th Cir. 1985)) (emphasis in original). Stated differently, "[b]ecause the rule recognizes the admissibility of prior crimes, wrongs, or acts, *with only the one stated exception*, it is understood to be a rule of inclusion, authorizing evidence of prior acts for purposes other than character, such as 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *United States v. Queen*, 132 F.3d 991, 994 (4th Cir. 1997) (quoting Rule 404(b)) (emphasis added) (internal citations omitted).

Courts have routinely admitted as 404(b) evidence conduct which occurred years before the crime charged. *See United States v. Hornsby*, 666 F.3d 296 (4th Cir. 2012) (evidence of efforts to conceal evidence during criminal investigation four years prior to charge involving concealed evidence); *United States v. Siegel*, 536 F.3d 306 (4th Cir. 2008) (evidence that defendant had defrauded victim for a twenty-year period admitted to show motive for murder).

In *United States v. Fuertes*, No. 13-4755, __ F.3d __, 2015 WL 4910113 (4th Cir. Aug. 18, 2015), the most recent Fourth Circuit case considering a Rule 404(b) issue, the Court outlined the requirements for admission of evidence under the Rule. To be admissible, the

8

"evidence must be relevant to an issue other than character, necessary to prove an element of the crime charged, reliable, and its probative value must not be substantially outweighed by its prejudicial nature." Id. at 4 (quotations and citations omitted).

### 1. Hughart's Proffered Testimony is Relevant.

Defendant argues that the Hughart's evidence is not relevant because "all of the testimony from Hughart that the government seeks to admit concerns mines other than UBB." ECF No. 314 at 3. As one can see from the evidence is outlined above, Defendant is simply incorrect. Setting aside the obvious relevance of Hughart's testimony to Counts Two and Three (which Defendant completely ignores), the testimony is also relevant to Count One. Hughart's testimony that he conspired with Defendant and other Massey officials to give advance notice to underground workers of MSHA safety inspections – a charge to which he pled guilty and which occurred within the timeframe of the charge in Count One, clearly proves a scheme or plan common to that charged in Count One, and as contemplated in Rule 404(b).

Defendant argues that this testimony concerning a particular conversation he had with Hughart regarding advance notice should be excluded because a specific time was not provided for when this conversation took place. ECF No. 314 at 2. However, the conversation would have taken place during Hughart's tenure as president of the Green Valley resource group. Even if the conversation took place at the earliest possible time that does not render Hughart's testimony inadmissible.

Likewise, Hughart's testimony that he, within the same timeframe as that charged in Count One, conspired with Defendant and others to violate mandatory federal mine health and safety standards, including standards that involved ventilation controls, accumulations of coal dust and loose coal, and rock dusting, tends to prove intent, knowledge, a common scheme or

9

plan, and absence of mistake or accident on the part of Defendant relative to the conspiracy charged in Count One. Hughart's testimony is relevant.

### 2. Hughart's Proffered Testimony is Necessary.

Defendant argues that there were hundreds of "employees of Massey who worked in UBB or managed UBB" whom the government is free to call to testify at trial. ECF No. 314 at 4. There were not, however, hundreds of "Hugharts." Hughart's testimony goes directly to prove not only Defendant's knowledge of the hundreds of health and safety violations, but also Defendant's willfulness in committing those violations, and Hughart's participation in committing those violations. Hughart's evidence, therefore, is necessary.

### 3. Hughart's Proffered Testimony is Reliable.

Hughart's testimony concerns crimes to which he pled and was adjudicated guilty by this Court. It would be difficult to find a better indication of reliability.

### 4. Hughart's Proffered Testimony is Not Unfairly Prejudicial.

Defendant argues that the probative value of Hughart's proffered testimony is substantially outweighed by its prejudicial impact and the risk of confusion. While the evidence is certainly incriminating, it is not *unfairly* prejudicial. Defendant, relying on *Old Chief v. United States*, 519 U.S. 172 (1997), argues the admission of Hughart's evidence would place Defendant at risk of being convicted "on a ground different from proof specific to the offense charged." ECF No. 314 at 6. However, Hughart's testimony involves acts which are virtually *identical* to those charged in Count One.

The *Fuertes* case is instructive on this issue. In *Fuertes,* the defendants were charged and convicted in an interstate prostitution conspiracy. *Fuertes*, at 1. Part of the overt acts involved violence and threats of violence toward the prostitutes. *Id*. at 4. At trial, the prosecution, relying

on Rule 404(b), introduced evidence that the defendants had committed violent acts or threatened violent acts against other pimps – the defendant's competitors.  *Id.* at 1.  On appeal, the defendants argued that the Rule 404(b) evidence failed to meet the Rule 403 balancing test.  The Fourth Circuit disagreed, holding that "the evidence of threats and acts of violence was no more 'sensational or disturbing' than the sex trafficking crimes with which [the defendants] were charged."  *Id.* at 5.

Defendant, therefore, cannot successfully argue that he would be unfairly prejudiced by Hughart's testimony concerning acts which are no more serious than those charged in Count One.

Finally, Defendant's argument that the proffered evidence is confusing likewise fails.  Defendant argues that the jury will become confused and focus on events outside of those which occurred at UBB.  Under Defendant's definition of "confusing," Rule 404(b) evidence would never be admitted at any trial, because Rule 404(b) evidence always concerns uncharged acts.  The Court's limiting instruction to the jury, providing guidance as to how the evidence should be considered, would serve to eliminate any risk of confusion at trial.

## Conclusion

For the reasons cited above, Defendant's Motion to Exclude Rule 404(b) Testimony of David Hughart should be denied.

Respectfully submitted,

/s/ R. Gregory McVey
R. GREGORY McVEY, AUSA
WV Bar No. 2511
300 Virginia Street, East, Room 4000
Charleston, WV 25301
Telephone:  304-345-2200
Fax: 304-347-5104
Email:greg.mcvey@usdoj.gov

CERTIFICATE OF SERVICE

It is hereby certified that the foregoing "**UNITED STATES' RESPONSE TO DEFENSE MOTION TO EXCLUDE RULE 404(b) TESTIMONY OF DAVID HUGHART"** has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this 25th day of August, 2015 to:

> William W. Taylor, III
> Blair G. Brown
> Eric R. Delinsky
> R. Miles Clark
> Steven N. Herman
> Zuckerman Spaeder LLP
> 1800 M Street, NW, Suite 1000
> Washington, DC 20036
>
> James A. Walls
> Spilman Thomas & Battle, PLLC
> 48 Donley Street, Suite 800
> P.O. Box 615
> Morgantown, WV  26501
>
> Alexander Macia
> Spilman Thomas & Battle, PLLC
> P.O. Box 273
> Charleston, WV  25321

>                             /s/ R. Gregory McVey
>                             R. GREGORY McVEY, AUSA
>                             WV Bar No. 2511
>                             300 Virginia Street, East, Room 4000
>                             Charleston, WV 25301
>                             Telephone:  304-345-2200
>                             Fax: 304-347-5104
>                             Email:greg.mcvey@usdoj.gov