IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

UNITED STATES OF AMERICA

v.                                    CRIMINAL NO. 5:14-00244

DONALD L. BLANKENSHIP

**UNITED STATES RESPONSE TO DEFENSE MOTION TO EXCLUDE
PROPOSED OPINION TESTIMONY OF FRANK C. TORCHIO**

Comes now the United States of America, by counsel, and files this response to the Defense Motion to Exclude Proposed Opinion Testimony of Frank C. Torchio. ECF No. 319. For reasons discussed below, Defendant's motion should be denied.

## Background

The United States may offer testimony from Frank C. Torchio. Mr. Torchio is an expert in securities markets and economic and financial analysis. Since 1989, he has been the president of Forensic Economics, Inc., where he provides consulting services in financial valuations and financial and economic analysis. Since 1997, Mr. Torchio has been a member of the faculty at the University of Rochester's Simon School of Business, where he teaches courses on finance and economics. He has published scholarly papers in financial valuation and securities analysis in publications including *The Journal of Business Valuation and Economic Loss Analysis*, *The Journal of Corporation Law*, and *Law and Contemporary Problems*. Mr. Torchio has provided expert analysis or testimony in numerous securities-related legal disputes. From 1982 through 1989, Mr. Torchio worked as a financial analyst, economist, and subsidiary vice-president for Rochester Gas and Electric Corporation. He holds a Bachelor of Arts degree in mathematics

from Niagara University and a Master of Business Administration degree in economics and finance from the University of Rochester. He is a Certified Financial Analyst.

The bases of Mr. Torchio's opinions in connection with this case include records of prices for Massey Energy Company ("Massey") common stock, Massey's filings with the Securities and Exchange Commission ("SEC"), records concerning changes in various stock indexes, news reports concerning Massey, transcripts of Massey conference calls with investment analysts, and investment analyst reports concerning Massey.

Mr. Torchio's opinions in connection with this case include the following: the statement, made in Massey's April 8, 2010 statement to shareholders and an April 9, 2010 Massey press release, that Massey did not condone any violation of Mine Safety and Health Administration ("MSHA") regulations and strived to be in compliance with all regulations at all times, was material to investors. Assuming, moreover, that the allegations in the Superseding Indictment are true, then Massey, in making the April 8 and 9, 2010 statements, omitted facts about its violations of MSHA regulations, and related conduct, that would have been material to investors. For similar reasons, these statements were material to a matter within the jurisdiction of the SEC since, among other reasons, part of the SEC's jurisdiction includes enforcing prohibitions of false and misleading statements that would be material to a reasonable investor.

The reasons for these opinions include Mr. Torchio's knowledge that it ordinarily is material to investors whether a company or its senior officials have engaged in intentional law-breaking, especially when that law-breaking is connected to a significant negative event or could lead to significant liability or criminal prosecution. The reasons for these opinions also include Mr. Torchio's event-study analysis of market responses to Massey's statements and Massey-related news in the period following the explosion at the Upper Big Branch mine ("UBB"). Other

reasons for these opinions include Mr. Torchio's knowledge of the regulation of securities markets and the function of the SEC.

Mr. Torchio also may offer background information regarding securities markets, the regulation of securities markets, and norms and standards for companies traded in those markets.

Defendant seeks to exclude Mr. Torchio's proposed testimony on two grounds: (1) his proffered opinions constitute legal conclusions; and, (2) Mr. Torchio's methodology is neither reliable nor verifiable. For reasons discussed below, Defendant's motion should be denied.

## Argument

Federal Rule of Evidence 702 specifically governs the admissibility of expert testimony. Rule 702 permits expert testimony if that testimony "helps[s] the trier of fact to understand the evidence or to determine a fact in issue." One can be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. A district court "has broad discretion to determine whether to admit expert testimony," based upon whether it "will assist the trier of fact in issue." *United States v. Barsanti,* 943 F.2d 428, 432-33 (4th Cir. 1991). "The witness' qualifications to render an expert opinion are . . . liberally judged by Rule 702." *United States v. Fuertes*, No. 13-4755, __ F.3d __, 2015 WL 4910113, at *6 (4th Cir. Aug. 18, 2015), *quoting Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993).

Expert testimony assists the trier of fact if: (1) the testimony is relevant; (2) the testimony is not within the jurors' common knowledge and experience; and (3) the testimony will not usurp the jurors' role of evaluating a witness's credibility. United States v. Rodriguez-Felix, 450 F.3d 1117, 1123 (10th Cir. 2006). Expert testimony, regardless of its nature, must be both relevant and reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993).

In *United States v. Barile*, 286 F.3d 749 (4th Cir. 2002), a case relied upon by Defendant, the Fourth Circuit reviewed a district court's decision to exclude expert testimony concerning "the materiality of statements on a particular 510(k) submission" to the SEC. *Id.* at 759. The district court had excluded the testimony on two bases: (1) as a sanction for late disclosure under Federal Rule of Criminal Procedure 16; and, (2) the proffered testimony invaded the province of the jury and, as a result, would not be helpful to the jury.

As to the first basis, the Fourth Circuit affirmed the district court's decision to exclude the expert testimony. *Id.* The Fourth Circuit's view of the second basis on which the district court excluded the expert's testimony is a bit more nuanced than Defendant outlines in his motion.

The Fourth Circuit noted that the defense expert "was permitted to testify about the procedure, practice, and history of 510(k) submissions and to respond to hypotheticals." *Id*. The district court, however, did not permit the expert to testify concerning "the particular 510(k) submissions" and "whether the submissions were reasonable or correct or in compliance with the law." *Id*. In short, the expert was prepared to testify that the submissions were not materially misleading.

In considering this issue, the *Barile* court first noted that "Federal Rule of Evidence 704(a) provides that . . . testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. Rule 704(a) was designed specifically to abolish the 'ultimate issue' rule." *Id*. (internal quotations omitted). The court further held that "[t]he role of the district court is to distinguish opinion testimony that embraces an ultimate issue of fact from opinion testimony that states a legal conclusion." *Id*. at 760.

To solve the issue of the "problematic question," the *Barile* court noted that the use of more carefully phrased questions can "elicit similar information yet avoid a response that constitutes a mere legal conclusion." *Id*. In *Barile*, the defendant's attorney was prevented from asking the expert if the 510(k) submissions were "reasonable." *Id*. The Fourth Circuit held that questions of the expert along those lines "would not merely state a legal conclusion and therefore [were] not excludable on the ground that it invade[d] the province of the jury." *Id*. at 761. The court further noted that the expert's opinion that the submissions "did not contain 'materially misleading statements,' *arguably* constitutes a legal conclusion" and was "therefore within the district court's discretion to exclude such testimony." *Id*. (emphasis added). The court concluded that the district court's exclusion of all opinion testimony regarding the particular 510(k) submissions was too broad . . .." Interestingly, the court also noted the following:

> [I]n some circumstances, opinion testimony that arguably states a legal conclusion is helpful to the jury, and thus, admissible." Weinstein's Federal Evidence § 704.04[2][a] (2d ed. 2001) ("For example, the testimony may be helpful if the case involves a specialized industry such as insurance.") (citing *Peckham v. Continental Casualty Ins. Co.,* 895 F.2d 830, 837 (1st Cir.1990)).

*Barile*, 286 F.3d at 760 n.7.

While Defendant is correct that, as a general rule, experts are precluded from offering an opinion that merely states a legal conclusion, whether that general rule extends to an expert's opinion regarding materiality in a securities case is not quite as well-settled as Defendant portrays. Even in *Barile*, the court did not categorically state that an expert's opinion on materiality constituted a mere legal opinion – it merely stated the statement "arguably" did and that the district court did not abuse its discretion by excluding it. *Id*. at 761.

In other securities litigation cases, the Fourth Circuit has held that materiality is a "mixed question of law and fact." *Greenhouse v. MCG Capitol Corp*., 392 F.3d 650, 657 (4th Cir. 2004)

(citing *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 450 (1976)). Furthermore, there is no doubt that "[t]he securities markets have grown increasingly complex." Joseph W. Martini et al., The Need for Expert Testimony in Complex Securities Cases, Jurors Might Require Extra Help, 34 Conn. L. Trib. 20 (May 26, 2008). The intricacies of a public corporation's SEC filings, and the resulting effects on the market and on shareholders, is certainly as specialized an industry as the insurance industry. An expert opinion regarding materiality would certainly be helpful to the jury and would not constitute a mere legal opinion. Given the complexities of the securities market, Mr. Torchio's opinion that Defendant's statements and omissions were material to investors would not, as a matter of law, run afoul of *Barile*.

Should the court determine that Mr. Torchio's opinions constitute mere legal opinions, the United States is certainly prepared to modify its questions to avoid such testimony in a manner suggested by *Barile*.

As his second basis to exclude Mr. Torchio's expert testimony, Defendant argues that Mr. Torchio's methodology is somehow flawed. Once again, Defendant is incorrect and confuses the purpose of a pre-trial motion with that of a trial.

Mr. Torchio's opinion will not be based exclusively on his knowledge, as Defendant contends. Mr. Torchio conducted an event study analysis of Defendant's statements and omissions following the fatal UBB explosion. An event study is a statistical regression analysis that provides a means of examining the effect of an event, such as the disclosure of information on the market price of a particular security. Simply put, Mr. Torchio's event study showed two statistically significant events following the explosion as follows: (1) Defendant omissions and statements to shareholders and the SEC served to neutralize negative information concerning

6

Massey, thereby leveling-out the plummeting stock price; and, (2) news of the FBI criminal investigation once again caused those stocks to plummet.

Events studies are commonplace in securities litigation, widely accepted and even required by federal courts on the issue of materiality. As one scholarly article noted:

> Event studies are . . . employed to argue that (1) an alleged misrepresentation was or was not material; (2) the misrepresentation did or did not cause any loss to the plaintiff; and (3) if the misrepresentation caused a loss, a measureable part of the loss was due to the fraud, with the rest due to other factors that also affected the stock price.

William O. Fisher, Does the Efficient Market Theory Help Us Do Justice in A Time of Madness?, 54 Emory L.J. 843, 871 (2005).

Interestingly, Patrick Conroy, Defendant's own materiality expert, utilizes identical methodology. (See Attached Exhibit A: Expert Report of Patrick Conroy, Aug. 14, 2009, *In Re Herley Industries Inc*., No. 2:06-2596-JS (E.D. Pa. 2006)). It is difficult to understand how Defendant can find fault with Mr. Torchio's methodology when the same methodology is employed by Defendant's own expert.

Defendant's expert is expected to provide an opinion different than that of Mr. Torchio. Consequently, Defendant once again espouses a position that if he possesses evidence that, in his opinion, tends to rebut that of the United States, the United States' evidence should be excluded. Again, the presentation of both parties' evidence is the central purpose of a trial.

Defendant's position that Mr. Torchio's testimony would merely consist of his thoughts about what is in other persons' minds misconstrues the disclosure provided to him and further demonstrates a basic misunderstanding of the bases for Mr. Torchio's opinion. Mr. Torchio's methodology, coupled with his training, education, and experience provide a legal basis for his opinion that Defendant's statements and omissions were material to investors.

7

## Conclusion

For the reasons stated above, Defendant's motion should be denied.

Respectfully submitted,

/s/ R. Gregory McVey
R. GREGORY McVEY, AUSA
WV Bar No. 2511
300 Virginia Street, East, Room 4000
Charleston, WV 25301
Telephone:  304-345-2200
Fax: 304-347-5104
Email:greg.mcvey@usdoj.gov

CERTIFICATE OF SERVICE

It is hereby certified that the foregoing **"UNITED STATES RESPONSE TO DEFENSE MOTION TO EXCLUDE PROPOSED OPINION TESTIMONY OF FRANK C. TORCHIO"** has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this 25th day of August, 2015 to:

>William W. Taylor, III
>Blair G. Brown
>Eric R. Delinsky
>R. Miles Clark
>Steven N. Herman
>Zuckerman Spaeder LLP
>1800 M Street, NW, Suite 1000
>Washington, DC 20036
>
>James A. Walls
>Spilman Thomas & Battle, PLLC
>48 Donley Street, Suite 800
>P.O. Box 615
>Morgantown, WV  26501
>
>Alexander Macia
>Spilman Thomas & Battle, PLLC
>P.O. Box 273
>Charleston, WV  25321

>/s/ R. Gregory McVey
>R. GREGORY McVEY, AUSA
>WV Bar No. 2511
>300 Virginia Street, East, Room 4000
>Charleston, WV 25301
>Telephone:  304-345-2200
>Fax: 304-347-5104
>Email:greg.mcvey@usdoj.gov