IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

_____
                                              )
**UNITED STATES OF AMERICA**     )
                                              )
    **v.**                                )        **Criminal No. 5:14-cr-00244**
                                              )
**DONALD L. BLANKENSHIP**      )
_____  )

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO EXCLUDE
EVIDENCE, TESTIMONY, OR ARGUMENT RELATED TO
A 2005 MEMORANDUM ENTITLED "RUNNING COAL"**

In its response, the government contends that the 2005 memorandum entitled "Running Coal" (the "2005 Memorandum") is admissible as direct evidence of each count of the indictment. As explained below, the 2005 Memorandum fails the required evidentiary tests under Rules 402, 403 or 404(b), and it must therefore be excluded.

    **a.**    **The government's misrepresentation as to the 2005 Memorandum does not make it relevant.**

As the defense anticipated, the government wants to introduce the 2005 Memorandum in an attempt to prove that Mr. Blankenship condoned mine-safety violations. In fact, in its response, the government boldly claims that the 2005 Memorandum somehow proves that Mr. Blankenship "not only *condoned* violations at Massey, he ordered them." (ECF 330 at 11) (emphasis in original).

The government's argument rests on misrepresentation. The 2005 Memorandum does not refer to safety violations in any way, shape, or manner. It does not state that Mr. Blankenship "condoned" safety violations. Nor does it state that he "ordered" them. The government's theory of relevance is based a fanciful interpretation of the document that is simply not supported by its plain text.

1

This is underscored by the fact, that only days after sending the 2005 Memorandum, Mr. Blankenship sent a second memorandum stating that he <u>did</u> <u>not</u> mean what the government now, <u>ten</u> <u>years</u> <u>later</u>, wants to tell the jury <u>he</u> <u>did</u> mean. Specifically, that memorandum, sent on October 26, 2005, stated, "**[b]y now each of you should know that safety and S-1 is our first responsibility. Productivity and P-2 are second. . . . Last week I sent each of you a memo on running coal. Some of you may have interpreted that memo to imply that safety and S-1 are secondary. I would question the membership of anyone who thought that I consider safety to be a secondary responsibility**. . .." The government's theory of relevance thus disregards both the plain text of the 2005 Memorandum, as well as the plaint text of this follow-up memo. The government cannot make evidence relevant through distortion.

The government wants the jury to believe that Mr. Blankenship's 2005 Memorandum has some sinister meaning. The government should not be permitted to do so when the evidence, <u>on</u> <u>its</u> <u>face</u>, does not even reflect their position. There is no ambiguity here – this is an instance where the evidence clearly does not reflect the purpose for which the government wants to use it against Mr. Blankenship.[1] The 2005 Memorandum – and the second memorandum for that matter – do not constitute evidence of <u>any</u> wrongdoing, much less of guilt as to charges in the Indictment in this case.

---

[1] The defense submits that the evidence is clear, on its face. However, if context will assist the Court in making a ruling on this issue, the defense offers the following:

As the follow-up memorandum states, the 2005 Memorandum was sent to advise deep mine superintendents to refrain from utilizing certain personnel and equipment to do construction jobs. Massey specifically employed, educated and trained personnel to work in coal-producing roles at the mine site, which included running heavy-duty equipment, cutting and loading coal (aka, "running coal"). Massey also employed certain personnel to handle construction work at the mine site (which includes building overcasts, as referenced in the 2005 Memorandum). The two distinct groups of personnel have dramatically different skills and pay levels, the personnel in the coal-producing sections having significantly higher level of skill and pay level. At the time the 2005 Memorandum was sent, Mr. Blankenship had been advised that mine superintendents were utilizing coal-producing personnel and equipment for construction work, when there were other personnel available to do that type of work. The 2005 Memorandum was nothing more than Mr. Blankenship reminding the superintendents to effectively utilize the personnel that were trained to do specific tasks at the mine site.

2

The government cites one case to support its argument that the 2005 Memorandum is direct evidence of guilt: *United States v. Grimmond*, 137 F.3d 823 (4th Cir. 1998). The *Grimmond* case involved the introduction into evidence of the defendant's prior involvement in the shooting of two persons at his trial for being a felon in possession of a firearm. The shooting evidence was offered by the government solely in order to establish that the defendant had in fact possessed a weapon – an element of the charge of felon in possession. The defense fails to see any relevance whatsoever of the *Grimmond* case to this Court's determination of whether Mr. Blankenship's 2005 Memorandum is admissible here. Mr. Blankenship has not been charged with being a felon in possession of a firearm, nor has he been involved in shootings. Of course, there is no allegation to that effect in this case. To the extent the government cites *Grimmond* for their general argument that the 2005 Memorandum directly evidences that Mr. Blankenship "condoned" mine-safety violations, as explained above, that is factually inaccurate.

The law in the Fourth Circuit is clear in instances such as this when the government has taken liberty with interpretation of evidence. In *United States v. Wilson*, the Fourth Circuit stated, "[o]f course, a prosecutor may argue that the evidence gives rise to an inference, but the suggested inference must be reasonably drawn from the facts in evidence." *United States v. Wilson*, 135 F.3d 291, 298 (4th Cir. 1998). In light of the fact that the follow-up memorandum, <u>on its face</u>, contradicts the government's representation as to the 2005 Memorandum, *Wilson* prohibits the government from arguing that inference here. *See also United States v. Brainard,* 690 F.2d 1117, 1122 (4th Cir.1982)

Finally, the 2005 Memorandum was written more than two years before the start of the indictment period. The *Kennedy* case cited by the government in its response is not dispositive on this issue in this case. As provided in the defense's motion, courts have found that old

evidence such as the 2005 Memorandum are too attenuated to be relevant. The evidence is irrelevant to any of the charges on this additional ground as well, and the Court should exclude it.

      **b.    The evidence is not admissible as to Count I under Rule 404(b).**

The government argues that if the Court agrees with the defense that the 2005 Memorandum is not admissible as intrinsic evidence of guilt, then it should be admissible as 404(b) evidence as to Count I. The government is wrong.

The government makes no argument to support its contention that the evidence would be admissible under Rule 404(b) for any reason other or different than that which would allegedly make it admissible under Rule 402. Instead, the government simply repeats its allegation that the 2005 Memorandum somehow directly evidences Mr. Blankenship's intent to willfully violate mine-safety standards.

The fact that the evidence clearly shows Mr. Blankenship <u>did</u> <u>not</u> instruct anyone to disregard safety protocol makes the evidence irrelevant and inadmissible under Rule 404(b). Because the evidence does not contain any directive by Mr. Blankenship to violate mine-safety standards (or to ignore any safety protocol whatsoever), the evidence does not support the government's contention that it somehow demonstrates "motive, intent, knowledge, and absence of mistake or accident" under Rule 404(b). (*See* ECF 330 at 13). Without any such exception applicable to the evidence, it is inadmissible under Rule 404(b).

      **c.    The evidence is prejudicial and inadmissible under Rule 403, particularly in light of the fact that the government wants to tell the jury it means something it does not.**

The government claims that the 2005 Memorandum is "beyond any doubt, highly incriminating." (ECF 330 at 13). The defense disagrees; because the 2005 Memorandum does

4

not say what the government wants it to say.  However, the 2005 Memorandum <u>is highly prejudicial</u> in light of the fact that the government wants to introduce it for an inaccurate and unfair purpose.  As it makes clear in its response, the government seeks to introduce the 2005 Memorandum to make an entirely inaccurate implication that Mr. Blankenship ordered mine superintendents to disregard safety in favor of production.

As clearly evidenced by the follow-up memorandum sent six days later, that implication is just wrong.  Furthermore, as stated in Mr. Blankenship's Motion, it would be highly prejudicial as it would improperly focus the jury's attention on rhetoric from years before the indictment period, unconnected to any mine safety violations, without any context or contemporaneous evidence of what was occurring at the time and what prompted it.  The government's arguments raised in its response perfectly demonstrate the mini-trial that the defense raised concern over in its motion to exclude this evidence.  An argument as to what Mr. Blankenship meant in the 2005 Memorandum – when there is very clear evidence answering that question – is not only illogical and unnecessary, it would distract from the issues relevant to the charges in this case.  This is precisely why this evidence – even if it had any relevance at all, which it does not – is precluded by Rule 403.

In its response, the government says Mr. Blankenship is arguing that the 2005 Memorandum is "confusing."  (ECF 330 at 14).  This is wrong.  Mr. Blankenship does not argue that the 2005 Memorandum is confusing.  Quite to the contrary, the 2005 Memorandum, when read with the follow-up memorandum (which specifically identifies itself as such on its face), is very clear.  It is clear that Mr. Blankenship was <u>not</u> condoning mine-safety violations or instructing Massey employees to commit any such violations.

What the defense argues would be "confusing" in this case is to allow the government to outright misrepresent the 2005 Memorandum to the jury, which it has now stated it intends to do. The government claims that this situation is easily remedied by allowing the defense to introduce the exculpatory follow-up memorandum and then allowing the attorneys to argue about what Mr. Blankenship meant because "[t]hat is what trials are designed to do." (ECF 330 at 14). The defense wouldn't necessarily disagree with that general proposition if this were a situation where the evidence was somehow appropriately subject to argument. However, that is not the case with this evidence.

In this situation, there are two memoranda – one sent initially and the second sent to clarify the way some "may have interpreted" the first (as quoted from the follow up memorandum). The 2005 Memorandum simply does not say what the government claims. And the second memorandum, on its face, indicates that Mr. Blankenship meant precisely the opposite of what the government intends to tell the jury he meant. To allow the government to, nonetheless, introduce the evidence and make that misrepresentation would result in an unnecessary and distracting mini-trial in front of the jury, prejudicing Mr. Blankenship in the process.

## CONCLUSION

For the foregoing reasons, the defense respectfully requests that the Court exclude from trial all evidence, testimony, or argument related to the 2005 Memorandum entitled "Running Coal."

Dated:  September 1, 2015                           Respectfully submitted,

/s/ William W. Taylor, III_____
William W. Taylor, III
Blair G. Brown
Eric R. Delinsky

R. Miles Clark
Steven N. Herman
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Washington, DC 20036
202-778-1800 (phone)
202-841-8106 (fax)
wtaylor@zuckerman.com
bbrown@zuckerman.com
edelinsky@zuckerman.com
mclark@zuckerman.com
sherman@zuckerman.com

 /s/ James A. Walls_____
James A. Walls (WVSB #5175)
SPILMAN THOMAS & BATTLE, PLLC
48 Donley Street, Suite 800
P.O. Box 615
Morgantown, WV 26501
304-291-7947 (phone)
304-291-7979 (fax)
jwalls@spilmanlaw.com

*Counsel for Donald L. Blankenship*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

_____
                                    )
**UNITED STATES OF AMERICA**        )
                                    )
   v.                               )    Criminal No. 5:14-cr-00244
                                    )
**DONALD L. BLANKENSHIP**           )
_____ )

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been electronically filed and service has been made by virtue of such electronic filing this 1st day of September, 2015 on:

R. Booth Goodwin, II
Steven R. Ruby
Gabriele Wohl
U.S. Attorney's Office
P.O. Box 1713
Charleston, WV 25326-1713

R. Gregory McVey
U.S. Attorney's Office
P.O. Box 1239
Huntington, WV 25714-1239

                 /s/ James A. Walls_____
               James A. Walls (WVSB #5175)