**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**BECKLEY**

UNITED STATES OF AMERICA

v.                                                    CRIMINAL NO. 5:14-00244

DONALD L. BLANKENSHIP

**UNITED STATES' REPLY TO DEFENDANT'S OPPOSITION TO**
**UNITED STATES' MOTION IN LIMINE**

Defendant's response to the United States' motion in limine confirms that a great deal of the evidence he would like to use at trial in fact is inadmissible. He seeks to present evidence of his purported good acts and noncriminal conduct despite controlling Fourth Circuit precedent disallowing it. He plans to suggest that a scheme to give advance warning and conceal violations is lawful if the concealment is referred to as "correction," even though the Court has already ruled that the law is otherwise. And with the Court having rejected his argument that he is the target of a hidden political conspiracy, and the Fourth Circuit declining even to require an answer to his mandamus petition pressing that claim, he now aims to try it out on the jury, disregarding precedents that say it is not a jury issue. Defendant's positions on these and the other issues raised in the United States' motion in limine are unsupported and should be rejected. The United States, by counsel, thus respectfully submits this reply to Defendant's response to the United States' motion in limine, seeking the exclusion of the categories of evidence identified in the United States' original motion.

## A.        Evidence of good acts or non-criminal acts

Controlling Fourth Circuit precedent holds that "[e]vidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant." *United States v. Molovinsky*, 688 F.2d 243, 247 (4th Cir. 1982) (quoting *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978)). As far as the United States can determine, every other circuit that has addressed this issue is in accord. Yet Defendant asks the Court to abandon this well-settled rule and let him use precisely the type of evidence that the courts have roundly rejected over the years: evidence that he purportedly took safety measures that were alternatives to what the law required, and that at times he followed the law. Defendant gives no reason, though, for the Court to break new ground and ignore the mountain of precedent excluding that kind of proof. Nor does he cite a single decision that has allowed evidence of a defendant's supposed good or noncriminal acts.

Defendant's main argument has to do with intent. He says evidence of his purported good acts and noncriminal acts will show he did not intend to break the law (that is, that he did not act willfully). He seems unaware that the exact same argument was tried and rejected in all the United States' cited precedents. Indeed, it is invariably the element of intent that a defendant seeks to negate when he offers evidence of purported good acts. The hope is that evidence of times a defendant did something good or followed the law will convince the jury that he did not mean to break the law at other times. Defendant here makes no bones about it: this is his purpose in offering good-acts evidence. Unfortunately for him, disproving criminal intent is precisely the purpose for which that evidence is inadmissible.

Consider the precedents. In *Molovinsky*, the defendant sought to present evidence of his noncriminal conduct to show that he lacked the criminal *intent* to be guilty of a counterfeiting conspiracy. 688 F.2d at 244, 247. In *United States v. Grimm*, 568 F.2d 1136, 1137-38 (5th Cir. 1978), the defendant sought to present evidence of his noncriminal conduct to show that he lacked the criminal *intent* to be guilty of an auto-theft conspiracy. In *United States v. Winograd*, 656 F.2d 279, 281, 284 (7th Cir. 1981), the defendant sought to present evidence of his noncriminal conduct to show that he lacked the criminal *intent* to be guilty of a conspiracy to defraud the United States in violation of 18 U.S.C. § 371—one of the same charges at issue here. In *United States v. Russell*, 703 F.2d 1243, 1246, 1249 (11th Cir. 1983), the

defendant sought to present evidence of his noncriminal conduct to show that he lacked the criminal *intent* to be guilty of a drug conspiracy. In *United States v. Walker*, 191 F.3d 326, 330, 336 (2d Cir. 1999), the defendant sought to present evidence of his noncriminal conduct to show that he lacked the criminal *intent* to be guilty of conspiracy to make false statements to the Immigration and Naturalization Service and conspiracy to commit mail fraud. And in *United States v. Dimora*, 750 F.3d 619, 623, 630 (6th Cir. 2014), the defendant sought to introduce evidence of his noncriminal conduct to show that he lacked the criminal *intent* to be guilty of public corruption offenses, including conspiracy.

In each of these cases, the defendant sought to introduce evidence of other good acts and noncriminal conduct in order to negate evidence of criminal intent—the purpose for which Defendant proposes to offer it here. And in each of these cases, a court of appeals affirmed the exclusion of the proposed evidence. Throughout the country and over many decades, courts have consistently recognized the rule that such evidence is inadmissible. (Defendant says the United States' cited authorities are inapposite, but by way of explanation, he offers not analysis but merely a string citation listing them. As the Court will see, the decisions that the United States cites are on all fours with the facts here.)

Defendant contends this case is different because it involves the element of willfulness. He also argues it is different because it involves a conspiracy charge and therefore requires proof of an agreement rather than merely of discrete substantive offenses. But those claims ignore precedent. As the United States pointed out in its motion in limine, ECF 320 at 5-7, conspiracy was charged in each of the precedents that the United States cited. And willfulness—willful participation in an agreement or understanding to violate the law—is an element of every conspiracy. *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1404 (4th Cir. 1993). Every one of the circuit court decisions that the United States cites therefore involved elements of willful intent and of an agreement. Several of them also involved substantive offenses that included willfulness or specific intent as elements. *See, e.g.*, *Molovinsky*, 688 F.2d at 244, 247 (conspiracy to counterfeit in violation of 18 U.S.C. § 471, which requires specific intent to defraud); *Winograd*, 656 F.2d at 281, 284 (conspiracy to defraud the United States; substantive charge of violating 26 U.S.C. § 7206(2), which requires willful intent); *Walker*, 191

F.3d at 330, 336 (conspiracy to make false statements in matter within jurisdiction of federal agency in violation of 18 U.S.C. § 1001, which requires willful intent); *Dimora*, 750 F.3d at 623, 630 (charges including conspiracy and fraud). Yet all of them rejected evidence of the type that Defendant seeks to use.

Defendant also contends this case is different because the other good acts or noncriminal conduct he would offer occurred during the same time period and concerned the same general subject matter as the charges against him—that is, they had to do with mine safety or compliance with the mine safety laws. Again, however, the precedents rejecting such evidence are squarely on point. In *Grimm*, 568 F.2d at 1137-38, the defendant sought to present evidence of noncriminal automobile transactions made in the course of the same business in which he was alleged to have conspired to make fraudulent ones. The court said no. *Id.* In *Winograd*, 656 F.2d at 284, the defendant sought to present evidence of noncriminal commodities trades that he made in the course of the same business in which he was alleged to have conspired to make unlawful trades. The court said no. *Id.* In *Russell*, 703 F.2d at 1249, the defendant sought to present evidence of noncriminal acts performed in the same office he was alleged to have abused to advance a drug conspiracy. The court said no. In *Walker*, 191 F.3d at 336, the defendant sought to present evidence of honest asylum applications prepared in the course of the same practice in which he was alleged to have conspired to submit false ones. The court said no. *Id.* And in *Dimora*, 750 F.3d at 630, the defendant sought to present evidence of honest favors done for constituents in the course of executing the same public office in which he was alleged to have done dishonest ones. Again, the court said no. *Id.*

Defendant further suggests that this case is different because it charges a conspiracy to routinely commit safety violations at UBB, one involving many violations of safety laws. On this claim, the recent decision in *Dimora* is particularly instructive. There, the charges and evidence included "a host of corrupt bargains and arrangements," a "pattern" of bribery, and a tenure as county commissioner that was "rife with *quid pro quo* arrangements." 750 F.3d at 623-24. Despite these allegations of pervasive misconduct, the trial court rejected the defendant's proposal to use evidence of his good and noncriminal acts to negate criminal intent, and the Sixth Circuit affirmed. 750 F.3d at 630.

Defendant additionally asserts that the Court should deviate from the general rule because evidence of his good and noncriminal acts is relevant to Counts Two and Three. But the precedents speak to this argument as well. Counts Two and Three involve the willful intent to make false, fraudulent, and misleading statements and omissions. As already explained, the various courts of appeals that have addressed noncriminal-acts evidence have rejected it in cases that involved precisely that type of intent.

Defendant cites a number of cases for the broad proposition that evidence that tends to negate willfulness is relevant. The United States does not dispute that. Rather, the United States' point is a distinct and more specific one: evidence of a defendant's noncriminal conduct is not relevant to willfulness with respect to the criminal conduct that is charged. As the Court will see when it reviews them, not a single one of the cases Defendant cites provides an example of admitting evidence of noncriminal conduct or good acts to negate intent (or for any other purpose, for that matter). Given the great weight of authority disallowing the evidence that Defendant seeks to offer and the complete absence of cited authority pointing in the other direction, the Court should grant the United States' motion on this issue. [*]

### B. Claims that UBB or other Massey mines were "safe" regardless of law-breaking

Federal law prescribes mandatory mine safety and health standards that say what coal mine operators must do and may not do in the course of operating a coal mine. It is these standards that are the subject of the upcoming trial in this case. One might imagine a scenario in which a mine operator flouts those standards but claims that his mine is safe in spite of it, in the same way a drug dealer might claim his activity does no real harm to the community, or a drunk driver might claim he can drive safely even when intoxicated. This latter sort of claim—that the

---

[*] The example of purported alternative measures given in the United States' motion in limine is Defendant's claim that he was responsible for affixing reflective tape to miners' clothing. Other extra-legal inadmissible safety evidence may include improvements to work boots, seat belt policy, flapper pads on roof bolters, lights for belt line feeders, submarine safety package, continuous miner remote safety precautions, safety cameras, proximity devices, and fire-fighting car. *See* Senate Testimony of Don Blankenship, May 20, 2010.

Upper Big Branch mine ("UBB") was in some sense "safe" despite its routine safety-law violations—is inadmissible.

More generally, a mine operator's claim that he met the underlying objectives of federal mine safety standards even if he did not comply with them is not admissible. *Reich v. Trinity Indus., Inc.*, 16 F.3d 1149, 1153 (11th Cir. 1994). Defendant does not dispute this point of law, nor does he squarely respond to the United States' motion to exclude claims that UBB was safe despite the law-breaking there. Rather, his response on this issue seems to be an extension of his response on the admissibility of specific alternative safety measures, which is addressed in section A, above. The Court should exclude evidence that purports to excuse law-breaking at UBB by suggesting that UBB was safe in spite of it.

### C. Claims that federal mine safety standards were incorrect

In his response, Defendant "reserves the right" to present a disagreement-with-the-law defense if the United States presents evidence that mine safety standards were intended to promote mine safety. The United States will indeed present evidence that the purpose of mandatory mine safety standards is to keep mines safe. As stated in its response to Defendant's motion for jury instructions and to exclude evidence of the UBB explosion (ECF 290), the purpose and substance of federal mine safety standards are necessary to "complete the story of the crime" for the jury. *See United States v. Wright*, 392 F.3d 1269, 1276 (11th Cir. 2004) (citations omitted). There is no option to "reserve" a disagreement-with-the-law defense, because disagreement with the law is not a defense, even when the purpose of the law is revealed to the jury. *United States v. Schiff*, 801 F.2d 108, 113 (2d Cir. 1986) (noting that "disagreement with the law, no matter how passionately advocated, is not" a defense).

### D. The cause of the UBB explosion

Defendant agrees that the cause of the explosion is not relevant. The United States has explained in its response to Defendant's motion for jury instructions and to exclude evidence of the UBB explosion, ECF 290, why it is necessary to present reasonable evidence that the explosion was a major one and resulted in substantial negative media attention to which Massey responded in its statement to shareholders. Contrary to Defendant's assertion, the admission of this limited evidence is not an all-or-nothing proposal. The limited and controlled admission of this evidence in no way necessitates a full-blown trial on what Defendant calls "the true cause of the explosion."

### E. Purported political motivations

Defendant does not appear to oppose the exclusion of evidence or argument that his prosecution is politically motivated. The Court should grant that portion of the United States' motion in limine summarily.

### F. Economic issues

Defendant claims that the economics of Massey are directly at issue and he should be permitted to introduce evidence on Massey's financial resources, financial challenges, and management decisions. Issues relating to Massey's internal finances and management are not the type of evidence the United States seeks to exclude in this portion of its motion. Rather, the evidence that should be excluded relates to statewide and national economic issues, not Massey-specific finances. The evidence to be excluded relates to claimed effects by Defendant, Massey, or the coal industry more broadly on job creation and employment in West Virginia. It should be excluded because its only purpose is to incite passion or bias among the jury by suggesting that Defendant's prosecution has some link to the condition of the coal industry generally.

### G. Claims of vindictive or selective prosecution

"[A] claim of vindictive prosecution is not permissible argument to a jury. It is properly raised in a pretrial motion to dismiss the prosecution." *United States v. Dufresne*, 58 F. App'x 890, 895 (3d Cir. 2003). This Court has already weighed Defendant's evidence of vindictive or selective prosecution and found it wholly deficient. *See United States v. Blankenship*, 5:14-cr-00244, Mem. Op. & Or. (ECF 217) at 12, 16 (Apr. 8, 2015) ("The Court finds that the Defendant has failed to present any direct, objective evidence that the United States acted with genuine animus when it sought to indict the Defendant. . . . Even when the Court questions whether the Defendant has presented circumstantial evidence that would support a presumption of an improper vindictive motive, he falls short. . . . Succinctly, the Defendant has failed to offer evidence that he was similarly situated to any of the other co-conspirators or coal producers in the United States during the applicable period of time, and has failed to counter the legitimate prosecutorial factors that may justifiably influence the U.S. Attorney's decision making."). As the United States expected, however, Defendant's response indicates he will disregard the Court's conclusions and try to confuse the jury with his irrelevant theory of a shadowy political conspiracy against him.

The question for the jury is whether Defendant committed the crime with which he is charged. His notion that the case was improperly instituted is not a jury question—it is a pretrial matter for the Court, and one that has already been decided. *See* Fed. R. Crim. P. 12(b)(3).

The cases that Defendant cites underscore this legal proposition. In *United States v. Gilmore*, No. 1:00CR00104, 2004 WL 285941, at *3 (W.D. Va. Feb. 13, 2004), the trial court granted the United States' motion in limine to exclude the defendant's vindictive prosecution argument, concluding, "The government is correct that the question of prosecutorial misconduct

is one for the court to determine and not the jury." Defendant also cites *United States v. Yagman*,
CR 06-cr-00227, ECF No. 338 (C.D. Cal. May 16, 2007) in support of his assertion that he
should be permitted to introduce evidence and argument related to the integrity of his
prosecution. But *Yagman* emphatically supports the United States' position, not Defendant's.
The cited order in *Yagman* (attached as the exhibit hereto) grants in part and denies in part the
United States' motion in limine to exclude evidence or argument related to vindictive or selective
prosecution. The district court precluded the defendant from arguing or presenting any evidence
of vindictive prosecution at trial, in light of "clearly established authority" holding that a defense
based on vindictive or selective prosecution must be raised before the court and not the jury. *Id.*
at 8 (citing twenty-seven cases). With respect to the defendant's arguments that he had been
framed, the court ordered that evidence that a witness lied or argument that evidence was
falsified is admissible, but the defendant may not introduce any evidence concerning
vindictiveness and "cloak vindictive prosecution arguments under the guise of a defense that he
has been framed." *Id.* at 10. The court further held that the defendant is entitled to "question the
government's witnesses concerning their credibility, bias, and reliability," but that he may not
"introduce impermissible evidence of prosecutorial motive or belabor the details of the
investigation's chronological development." *Id.* at 13 (internal quotation marks omitted). In
conclusion, the court found that the defendant may "inquire about the quality of the investigation
so far as it bears on the credibility, validity, or probative weight of specific evidence produced by
the witness's investigation," but he may not use cross-examination to attack the motivation
behind the investigation and "introduce impermissible evidence of prosecutorial motive." *Id.* at
15-16; *accord United States v. Safavian*, No. CRIM 05-0370 PLF, 2008 WL 5255534, at *1
(D.D.C. Dec. 12, 2008) (holding that issues of vindictive or selective prosecution "are legal

matters for the Court, not theories of defense for the jury"). The other cases Defendant cites—

*United States v. Sager*, 227 F.3d 1138, 1145 (9th Cir. 2000), and *Kyles v. Whitley*, 514 U.S. 419

(1995)—have nothing to do with vindictive or selective prosecution.

**H. Claims that advance warning for the purpose of "correcting" violations was lawful**

As the United States expected, Defendant wants to tell the jury that it is legal to hurriedly

conceal violations of mine safety laws upon receiving warning that safety inspectors are

coming—as long as one is clever enough to say the violations are being not concealed but merely

"corrected" moments before the inspector arrives. The Court has already rejected this semantic

game-playing, ruling that:

> Simply put, mine operators cannot willfully violate mandatory federal mine safety
> and health standards and obstruct the lawful functions of MSHA as alleged here,
> and then avoid responsibility simply because providing advance warning allowed
> their employees to "correct" said violations with inspectors at the doorstep. Such
> a reality would strip applicable sections of the United States Code of any force or
> meaning, and render MSHA impotent.

ECF 267 at 5.

The Court, in other words, has already ruled that a scheme to generate warnings of

impending inspections and then cover up violations before they can be caught is unlawful,

regardless of whether that covering up is called concealment or "correction." Undeterred,

Defendant seeks to suggest the contrary to the jury: that labeling this conduct the "correction" of

violations magically renders it lawful. Given the Court's existing ruling to the contrary,

Defendant's proposed argument would do nothing but invite a verdict on a basis contrary to law.

The Court thus should exclude evidence and argument intended to show that such a warning-

and-concealment scheme is lawful, whatever the cover-up portion is called.

## I. Claims of reliance on federal mine safety officials

Defendant's response also confirms that despite the hundreds of citations federal safety officials issued at UBB during the indictment period, he will attempt to blame them for not doing enough to stop his and Massey's violations of the safety laws. Fortunately, the law is equipped to head off such a claim—that is, the suggestion that a defendant cannot be held responsible for his own law-breaking because someone else should have stopped him. A defendant may offer evidence or argument blaming his conduct on government officials only if those officials actually told him his conduct was permissible. *United States v. Aquino-Chacon*, 109 F.3d 936, 939 (4th Cir. 1997); *United States v. Hernandez*, No. 1:07-cr-00310-GBL (Mot. in Lim. by United States, ECF 23) (copy previously submitted in this case as ECF 320-2). Because the evidence that Defendant proposes to offer does not even approach that standard, it is inadmissible. *Hernandez*, No. 1:07-cr-00310-GBL (Mot. in Lim. by United States, ECF 23).

Defendant does not claim to have evidence that federal officials told him that violating mine safety standards was legal. Contrary to his assertion, evidence of federal officials' comments on Massey's proposed safety efforts or notations made on citations issued for law-breaking is not equal to "actually [telling] him that the proscribed conduct was permissible." These examples are not so much as "vague or even contradictory statements" about whether conduct was lawful, and even if they were, would not rise to the level of admissibility. *Aquino-Chacon*, 109 F.3d at 939. The entrapment by estoppel defense is narrow and rarely available. If it was not available to a defendant who thought he was in the country legally based on the issuance of a document by the INS authorizing him to work legally in the United States, *see Hernandez*, No. 1:07-cr-00310-GBL, ECF 23, it is not available to Defendant based on federal officials' encouragement of good safety practices.

The decisions that Defendant cites do not support his claim. In *United States v. Dixon*, No. 97-6088, 1999 WL 98578 (6th Cir. Jan. 27, 1999), the defendant, who was in the video poker machine business, was convicted of operating an illegal gambling business and money laundering. Prior to his prosecution, he asked a state district attorney and assistant district attorney if the machines he sold were legal. *Id.* at *1. These state officials affirmatively told the defendant that they thought there were no problems with the machines and that they were "okay to have." *Id.* The defendant could not assert the entrapment by estoppel defense in his federal prosecution because his reliance was on state, rather than federal, officials. The Sixth Circuit found that the district court erred in keeping out evidence of defendant's reliance, however, because it was relevant to his state of mind in the money laundering charges.

The relevant evidence in *Dixon* was evidence that law enforcement officials affirmatively told the defendant that his gambling machines were legal, when in fact they were not. Here, by contrast, Defendant does not claim to have evidence that federal mine safety officials told him that violating safety regulations was legal. The only evidence of reliance he can point to is that federal mine safety officials commented positively on general safety efforts undertaken separately from legal requirements (which efforts should be excluded anyway). He cannot dispute the fact that, during the indictment period, federal officials consistently reinforcing the illegality of Massey's conduct by issuing thousands of citations at Massey's mines, hundreds of those at UBB. Defendant's evidence of "reliance" on the words of federal officials is, at most, their encouragement of safety practices at Massey. This is far from affirmative assurances that failure to comply with safety standards was "okay," and should not be permitted at trial in the form of a good faith defense because it cannot negate the required intent in any of the charged offenses.

Defendant also cites a 1973 case, *United States v. Pennsylvania Industrial Chemical Corp.*, for support for his entrapment by estoppel defense. His single-sentence description of this case is misleading. In *Pennsylvania Industrial*, the defendant company was convicted of discharging waste into the Monongahela River in violation of the Rivers and Harbors Act of 1899. 411 U.S. 655 (1973). Prior to the defendant's prosecution, the U.S. Army Corps of Engineers, which administered the Act, consistently affirmed in regulations that the Act did not apply to the defendant's conduct. *Id.* at 659. The Court held that the defendant was entitled to present the argument that it "was affirmatively misled by the responsible administrative agency into believing that law did not apply to this situation." *Id.* at 674. Here, there is no conflict between the Mine Act and federal regulations upon which Defendant can base a similar reliance argument. Defendant does not assert that federal officials interpreted federal safety standards, even unofficially, not to apply to Massey's conduct. Instead, Defendant seeks to base an entrapment by estoppel defense on federal officials' vague encouragement of Massey's claimed efforts to increase safety. As the district court in *United States v. Aquino-Chacon*, 905 F. Supp. 351 (E.D. Va. 1995), noted in distinguishing *Pennsylvania Industrial* from the entrapment defense in an immigration case, "A misleading regulation can give rise to a due process violation because a regulation carries with it the force of law." *Id.* at 354. Evidence of federal mine safety officials' casual remarks on Massey's general safety efforts (and the other conduct Defendant cites) lack anything resembling the legal force of a misleading regulation.

### J. Hearsay statements in recorded telephone conversations

Defendant's response also confirms that he seeks to introduce his own self-serving, surreptitiously recorded telephone conversations. The United States submits those statements are

hearsay and should not be subject to the rule of completeness. Defendant's position is that the rule does apply to the phone calls that Defendant surreptitiously recorded.

As the United States noted in its motion, "the rule [of completeness] is limited to writings and recorded statements and does not apply to conversations." Advisory Committee Notes, Fed. R. Evid. 106.

Defendant cites *United States v. Sutton*, 801 F.2d 1346 (D.C. Cir. 1986) in support of his position. There, portions of recorded, law enforcement-controlled conversations between the defendant and a cooperating individual were admitted at trial by the prosecution. *Id*. at 327-28. The defendant sought to introduce omitted portions that he deemed favorable to him. The trial court excluded those portions as hearsay. *Id*. at 328. On appeal, the Court held that the statements should have been admitted under Rule 106, but affirmed the defendant's convictions, holding the exclusion of the omitted portions was harmless error. *Id*. at 332.

In so holding, however, the *Sutton* court specifically addressed the purpose of Rule 106, which is to allow "the contemporaneous admission of portions of writings or recorded statements *when the already introduced portions* might be misleading unless properly placed in context." *Id*. at 328 (emphasis added). The rule does not permit the unlimited admission of excludable hearsay by Defendant, which is what the United States seeks to avoid at trial. For example, the introduction by the United States of an inculpatory statement made by Defendant during a specific recorded phone call does not then permit Defendant to introduce portions of recordings not needed to avoid a misleading outcome, even if the defense claims they are exculpatory.

Defendant also relies on *United States v. Smith*, 43 F. App'x 529 (4th Cir. 2002), to argue that the exclusion "is a reference only to unrecorded oral statement[s]." ECF No. 329 at 19

(quotations omitted). The nature of Defendant's conversations, however, is different than that found in *Smith*, and likewise different than those found in other cases he cites.

In *Smith*, the statement in question was an oral statement made by Smith to an FBI agent. *Smith*, 43 F. App'x at 531. Portions of Smith's oral statement to an FBI agent were redacted to prevent reference to a co-defendant in compliance with *Bruton v. United States,* 391 U.S. 123, 126 (1968) (holding that a defendant's right of confrontation is violated when he is inculpated by an out-of-court statement by a non-testifying co-defendant that is admitted at their joint trial). *Smith*, 43 F. App'x at 533. On appeal, the Fourth Circuit, relying on *United States v. Wilkerson,* 84 F.3d 692, 696 (4th Cir.1996), affirmed, holding that "[b]ecause the rule of completeness as codified in *Fed.R.Evid. 106* applies only to writings or recorded statements and not to conversations, the rule of completeness is inapplicable to Smith's oral statement." *Smith*, 43 F. App'x at 531.

In *Smith*, the excluded portion involved information provided to an FBI agent. 43 F. App'x at 531. In *Wilkerson,* the excluded evidence likewise involved exculpatory statements made by Wilkerson to FBI agents. *Wilkerson*, 84 F.3d at 694.

Other cases cited by Defendant likewise address recorded conversations involving law enforcement. *See United States v. Webber*, 255 F.3d 523, 526 (8th Cir. 2001) (holding district court has discretion over *manner* in which recorded conversations between defendant and undercover officer are introduced at trial); *United States v. Phillips*, 596 F.3d 414, 416 (7th Cir. 2010) (holding district court need not review entire recording of conversations between defendant and undercover agent before admitting redacted version).

In the instant case, however, the recordings contain conversations surreptitiously recorded by Defendant himself. The conversations were controlled by him. Defendant had total

control over when his conversations were recorded—and when they were not. Any purportedly exculpatory statement made during those conversations would clearly lack the guarantee of trustworthiness inherent in evidence admitted pursuant to an exception to the hearsay rule or the rule of completeness. Those conversations would also lack the trustworthiness that would have been inherent in calls recorded by someone other than Defendant. As a result, the conversations should be viewed with great caution. As the United States noted in its motion in limine, the rule of completeness does not make inadmissible evidence admissible. *Wilkerson*, 84 F.3d at 696 (4th Cir. 1996). Defendant's own statements, if offered by Defendant, are inadmissible.

Defendant also argues that some conversations may be admissible by him to prove his state of mind. Rule 803(3) of the Federal Rules of Evidence permits the introduction of otherwise hearsay evidence as if it involves:

> [a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

The fact that Defendant was controlling the recording of the conversations is also important in considering whether any of the conversations are admissible under 803(3). In order for hearsay to be admitted under that rule, "[t]he declarant must not have had an opportunity to reflect and possibly fabricate or misrepresent [their] thoughts. A statement may be excluded when a declarant has time to reflect because the statement may reflect the declarant's then existing state of mind as to a past fact as opposed to a present existing fact." *United States v. Lentz*, 282 F. Supp. 2d 399, 411 (E.D. Va. 2002) *aff'd*, 58 F. App'x 961 (4th Cir. 2003) (citations omitted). In other words, the statement must "mirror a state of mind, which in light of all the circumstances, including proximity, is reasonably likely to have been in the same condition

existing at the material time." *Colasanto v. Life Ins. Co. of N. Am.,* 100 F.3d 203, 212 (1st Cir. 1996) (quoting 2 John W. Strong, McCormick on Evidence § 274 (4th Ed.1992)).

As noted above, the United States moved to exclude Defendant's self-serving hearsay recordings to avoid an unfettered attempt by Defendant to introduce exculpatory hearsay at trial. The manner in which Defendant's conversations were recorded in this case is starkly different than the conversations and statements—recorded or oral—that were at issue in the cases cited. Any exculpatory statement made by Defendant certainly lacks the indicia of trustworthiness that must accompany admissible hearsay. Because of that, any defense attempt to introduce them should be denied.

### K. Expert testimony of Professor Douglas Branson

Defendant also resists the exclusion of testimony by Professor Douglas M. Branson. The proposed opinion testimony as outlined by Defendant involves four areas of concern:  (1) a CEO's duty to maintain and increase profits; (2) a CEO's delegation of duties to subordinates; (3) corporate oversight by the Board of Directors: and (4) Massey's corporate structure.

At the outset, it should be noted that all four areas involve testimony which is either factual in nature, within the common knowledge of a juror, irrelevant, or unnecessary. Simply because Defendant cites examples in which corporate governance testimony was permitted in other cases does not require expert corporate governance testimony in this case.

This is not a complex corporate case as were cases cited by Defendant. As an example, *Cary Oil Co. v. MG Refining & Marketing, Inc.*, No. 99 Civ. 1725, 2003 WL 1878246 (S.D.N.Y. Apr. 11, 2003), involved "complex issues inherent in the petroleum marketing business. *Id.* at *7. The Plaintiffs there sought, and were allowed, to present corporate governance testimony that involved corporate veil-piercing. *Id.* at *5. Clearly the concept of corporate veil-piercing would

not be within the common knowledge of a juror. The corporate inner workings of Massey, however, unlike those of MG Refining, are not the central focus of this case. Expert corporate governance testimony, therefore, is unnecessary and would not be helpful to the jury.

**CEO's Duty to Maintain or Increase Profits**. A CEO's duty to maintain or increase profits would be a fact commonly known to any juror. Furthermore, evidence on that subject is irrelevant and presents substantial risks of confusing the issues and misleading the jury. The proposed testimony's apparent purpose is to suggest to the jury that because a CEO is supposed to make money, he (unlike the rest of us) is excused from following the law if it gets in the way of money-making.

**CEO's Delegation of Duties**. It is inconceivable that a juror would not know and be able to understand without "expert" testimony that a corporate CEO delegates responsibilities to subordinates. The delegation of responsibilities by Defendant does not require intimate knowledge of "the inner-workings of enormous, publicly traded corporations" as Defendant argues. ECF 329 at 22. Any person who ever held a job, or knew others who had, could easily understand the concept of delegation. Expert testimony is unnecessary on this point.

More important, expert testimony on whether CEOs at other companies delegate duties to subordinates is entirely irrelevant to this case. If Defendant intends to argue that he delegated some duty to a subordinate in a manner that negates an element of one of the charges, then he must present factual evidence to that effect, not expert opinion. Whether or how CEOs at Apple or Wal-Mart or Microsoft or other companies with which Branson may be familiar delegate matters to their subordinates cannot possibly be admissible as opinion evidence that this particular Defendant engaged in delegation of consequence to this case.

**Corporate Oversight by the Board of Directors**. Expert testimony is also not required or relevant to explain that Massey's board of directors had oversight responsibilities. As with the proposed testimony on delegation, if Defendant intends to claim in his defense that Massey's board of directors did or did not do something that tends to exculpate him, it would require factual evidence, not opinion testimony. General opinion testimony about what boards of companies typically do is irrelevant to whether the particular board at Defendant's particular company actually did something of consequence here.

**Massey's Corporate Structure**. Finally, expert testimony is not required to explain Massey's corporate structure. Defendant acknowledges this in his response, noting that the Court, at trial, can "determine . . . whether such background information may or may not be helpful to the jury's understanding." ECF 329 at 24. Intimate knowledge of the intricacies of Massey's corporate structure is unnecessary to a determination of whether Defendant willfully violated mandatory health and safety laws. To the extent such testimony is needed, it would need to be factual testimony about how Massey, in particular, operated, not opinion testimony about how companies operate in general.

Professor's Branson's proposed testimony is either within the jury's common understanding or relates to matters where only factual testimony could be relevant. The proposed Branson testimony should be excluded.

**L. Conclusion**

Defendant provides no colorable basis to admit any of the evidence that the United States seeks to exclude at trial. The United States' positions are firmly supported by precedents that Defendant fails to seriously analyze or rebut. The United States respectfully requests that the Court grant its motion in limine.

Respectfully submitted,

/s/ Steven R. Ruby
STEVEN R. RUBY, WV Bar No. 10752
R. GREGORY McVEY, WV Bar No. 2511
GABRIELE WOHL, WV Bar No. 11132
Assistant United States Attorneys
300 Virginia Street, East
Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
Email: steven.ruby@usdoj.gov
           greg.mcvey@usdoj.gov
           gabriele.wohl@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

It is hereby certified that the foregoing "UNITED STATES' REPLY TO

DEFENDANT'S OPPOSITION TO UNITED STATES' MOTION IN LIMINE" has been

electronically filed and service has been made on opposing counsel by virtue of such electronic

filing this 1st day of September, 2015 to:

Steven Herman, Esq.
Miles Clark, Esq.
Eric Delinsky, Esq.
William Taylor, III, Esq.
Blair Brown, Esq.
Zuckerman Spaeder LLP
Suite 1000
1800 M Street, NW
Washington, DC 20036

Alex Macia, Esq.
Spilman Thomas & Battle PLLC
P.O. Box 273
Charleston, WV 25321

James Walls, Esq.
Spilman Thomas & Battle PLLC
P.O. Box 615
Morgantown, WV 26507

/s/ Steven R. Ruby
Steven R. Ruby
Assistant United States Attorney
WV Bar No. 10752
300 Virginia Street, East
Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
Email: steven.ruby@usdoj.gov