IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 5:14-cr-00244 |
| DONALD L. BLANKENSHIP | ) ) ) | |

**EMERGENCY MOTION TO RESCHEDULE THE TRIAL DATE**

Mr. Blankenship, through counsel, hereby moves on an emergency basis to reschedule the October 1 trial date. After nine months of denying their existence and misrepresenting the status of documents in the possession of the Mine Health and Safety Administration, the government produced on Wednesday, September 9, a disc containing 72,700 pages of MSHA documents. It is impossible to review these documents, not to mention the additional documents that MSHA will produce in response to the subpoena ordered by the Court, and use them to prepare Mr. Blankenship's defense by the current trial date of October 1.

Worse, based on very preliminary electronic searches conducted immediately upon uploading the production, the defense has determined that key documents are missing from the production, including the emails of MSHA inspectors and correspondence from MSHA "applaud[ing]" Massey's hazard elimination program.

Blithely ignoring that Mr. Blankenship has been charged since November of last year and that his liberty has been curtailed at its insistence since then, the government produced 72,700 pages from the files of the agency responsible for regulating the UBB mine three weeks before trial. It is unfair and professionally irresponsible. It violates Mr. Blankenship's right to a fair

trial and the clear policies of the United States Department of Justice. The defense has been seeking production of MSHA documents from the government for nine months and, when the government refused to respond to its requests time and again, the defense filed two motions to compel the government to produce such material. In response to both motions, the government represented to the Court that it was in compliance with its discovery obligations, and the Court expressly relied on those representations in denying relief to the defense. There is no possible conclusion but that the government has played fast and loose with the truth.

This is not merely a matter of Rule 16 documents. In transmitting its new 72,700 page production, the government highlighted a report about the UBB mine from an MSHA inspector in the middle of the so-called conspiracy, stating, **"The condition of this mine is very good. Management is trying very hard to improve the condition of the mine, they are doing a good job."** The exculpatory nature of this document, given the allegations in the indictment, is nothing short of stunning. And the tens of thousands of additional pages produced by the government this week surely contain additional *Brady* information, as well as other Rule 16 information material to preparing the defense, that the government was required to disclose months ago. The government's representations that it disclosed all exculpatory information cannot be relied on.

Faced with the task of reviewing 72,700 pages of documents withheld by government until the eve of trial, and with critical documents still to be produced, the defense cannot be prepared to proceed by October 1. It would be fundamentally unfair to maintain this date.

For these reasons and the others set forth below, the defense respectfully requests that Court schedule the start of trial to no earlier than January 11, 2016.

## THE DEFENSE'S EFFORTS TO OBTAIN ADDITIONAL MSHA DISCOVERY AND THE GOVERNMENT'S MISRPESENTATIONS

MSHA documents are central to the case. MSHA not only issued the citations referenced in the indictment that appear to form the basis of the government's theories, and MSHA not only is the purported victim of the charged conspiracy to defraud, but MSHA was present in the mine on a weekly basis during the indictment period. Thus, MSHA inspectors were actual eyewitnesses to the operation of the mine, conditions of the mine, and conduct in the mine during the indictment period. The government therefore was obligated, in the first instance, to gather and produce two separate categories of MSHA documents: (1) those that are "material to preparing the defense" under Fed. R. Crim. P. 16(a)(1)(E)(i), and (2) those that are exculpatory under *Brady*.

Given the importance of MSHA documents, and concerned that the government would not comply with its obligations, the defense began pressing for additional MSHA documents at the very beginning of the case. The defense first requested such MSHA documents, among others, by letter dated December 12, 2014. *See* Ex. A at 3-4 ¶ 8 (seeking government review of "all notes, files, records, memoranda and documents of the individual MSHA inspectors who conducted inspections at UBB during the Indictment Period and of their supervisors and managers"); *see also id.* at 2-3 ¶ 6 (specifying "emails"). Although the defense followed up in writing on this letter three times, *see* Ex. B*,* the government did not respond for nearly two months. When it finally did so, it declared: "**The United States understands its discovery obligations and has not only complied with them but exceeded them….**" Ex. C.

Accordingly, on February 6, 2015, the defense filed its first motion seeking MSHA documents, as well as other materials. *See* ECF No. 112 at 13. In response to that motion, the government represented in writing to Court: "**all discoverable evidence, including all *Brady***

3

**material known to the United States, has been provided to defendant**." *See* ECF No. 133 at 2. The Court cited this statement by the government in denying the defense motion as premature on April 8, 2015. *See* ECF No. 222 at 5.

The defense again inquired of the government about MSHA material subject to Rule 16 and *Brady* by letter dated April 23, 2015. *See* Ex. D. The government did not respond. The defense followed up in writing on May 11, 2015. *See* Ex. E. The government still did not respond.

Thus on May 27, 2015, the defense was forced to file a second motion seeking MSHA material pursuant to the provision of Rule 16 requiring disclosure of documents "material to preparing the defense," as well as under *Brady*. *See* ECF No. 261. The motion specifically sought, among other MSHA documents, the very materials sought by the requested subpoena. *Id.* The government opposed the motion. *See* ECF No. 273. **It stated that it had "diligently reviewed" MSHA's files and had made "any disclosures of files and materials required by" *Brady*, as well as other "substantial disclosures" of MSHA documents.** *Id.* at 1. To further the false impression, it stated that it had reviewed the "files and materials" of both "the MSHA district office with oversight over the Upper Big Branch mine" and "MSHA headquarters," and it listed categories of MSHA material that it supposedly produced, including "voluminous MSHA correspondence concerning UBB." *Id*. at 1-2. Expressly relying on these representations by the government, the Court denied the motion. *See* ECF No. 294 at 5, 7. Indeed, in specific reliance on the government's representations, the Court stated:

> [T]he United States avers that it 'has diligently reviewed the files and materials of the Mine Safety and Health Administration,' and has disclosed voluminous records from MSHA as they pertain to this case. The United States further details its disclosures to the Defendant, including the release of 'voluminous MSHA correspondence concerning UBB.' It clearly appears that the United States has searched items within its and/or MSHA's 'possession, custody, or control,'

4

including documents related to the investigation of UBB through the lens of both *Brady* and Rule 16.

*Id.* at 7 (citations omitted).

## THE DEFENSE REQUEST FOR A SUPBOENA

Just three days later, the defense filed a third motion to try to obtain MSHA documents – this time, a motion for leave to serve a subpoena on MSHA. *See* ECF No. 300. In the motion, the defense explained by way of example that the government still had not produced emails from four key MSHA inspectors who were present in the mine during the indictment period. *Id.* at 2-3.

Faced with the possibility of a subpoena, the government suddenly struck a different tone. For the first time, it said, "The United States has no objection to voluntarily obtaining and providing Defendant the documents requested in his motion, and will do so by September 8, 2015." ECF No. 323. In its reply brief, the defense stated that a subpoena continued to be necessary, because "[t]he discovery sought is required by law and is not subject to government discretion or voluntariness." ECF No. 325 at 1.

Two days ago, on September 9, 2015, the defense received a disc containing 72,703 pages of documents along with a cover letter from the United States Attorney's Office stating that the documents were "responsive to your proposed trial subpoena to the Mine Safety and Health Administration." Of course, this material was responsive as well to Mr. Blankenship's prior requests and motions.

Later the same day, the Court granted the defense motion and issued the subpoena to MSHA. *See* ECF No. 358. In so doing, the Court found that the documents sought in the subpoena were relevant and material to the defense. MSHA's own production now is due on September 15, 2015. *See* ECF No. 359.

## THE GOVERNMENT'S SEPTEMBER 9 PRODUCTION

In addition to its inexcusable lateness, the government's belated production of MSHA material is marked by four features:

**First**, it is voluminous. The production contains 72,700 pages.

**Second**, it contains not only Rule 16 documents that are "material to preparing the defense," Fed. R. Crim. P. 16(a)(1)(E)(i), but it also contains exculpatory information that the government was obligated to disclose under *Brady*. As noted above, in making its belated production, the government singled out one such document – a notation about the UBB mine by MSHA itself stating that "[t]he condition of this mine is very good," that "Management is trying very hard to improve the condition of the mine," and that "they are doing a good job." More such documents likely are buried in the remaining 72,700 pages of the production.

**Third**, and perhaps most importantly, the production is incomplete. For instance, the subpoena, to which the government purported to respond, specifically requested **email**. *See* ECF No. 359 at 3 ¶ 1 ("The term 'document' means any record, writing, or other tangible form of expression of any type or description, ***including but not limited to email and electronically-stored information***...) (emphasis added). Indeed, Mr. Blankenship's motion for the subpoena specifically singled out email as the one of the major shortcomings in the government's prior productions. *See* ECF No. 300 at 2-3.

The government's new production, however, continues to be missing email. As noted above, the defense motion for the subpoena referenced, as examples of missing documents, four MSHA inspectors who worked at UBB during the indictment period but whose emails had not been produced. Yet notwithstanding that two of these inspectors were responsible for issuing hundreds of the citations referenced in the indictment, and notwithstanding that the other two

inspectors made findings that are strikingly exculpatory to Mr. Blankenship, the government's new production – based on electronic searches run yesterday – contains the sum total of two emails written by any of these four inspectors over the 27-month indictment period.

This morning, the defense searched the new production for emails from three other MSHA inspectors as well, each of whom also inspected UBB during the indictment period and is identified in the subpoena. Our searches revealed no emails from any of these three inspectors.

Moreover, based on other electronic searches run since receiving the production two days ago, it is apparent that the production is missing correspondence from MSHA "applaud[ing]" Massey's hazard elimination program, correspondence which the government appears never to have to produced.

The government either is withholding emails and documents, or it has not gathered them.

## ARGUMENT

In June, the government and the defense jointly moved to continue the former July 13 trial date to no earlier than October 13, 2015. *See* ECF 275. The Court then set trial for October 1.[1] In the joint filing, the parties represented that they did not intend to seek further continuances barring "unforeseen circumstances." *Id.* at 2 ¶ 7.

The defense could not foresee that the government would wait until the eve of trial to produce 72,700 pages of important discovery that the defense had been seeking continuously since December 2014 and that, regardless, the government had an independent obligation to gather and produce in the first instance. Nor did the defense have any reason to foresee that the government, in making this eleventh-hour document dump of 72,700 pages, would continue to

---

[1] The October 13 date not only reflected a carefully-crafted compromise between the parties, but also the earliest possible that the defense believed (in June) that it could be ready for trial. Given the more than four-million-page mass of discovery initially produced by the government, even the two weeks that the Court denied prejudices Mr. Blankenship.

withhold *en masse* critical materials such as email. To say these least, these circumstances were "unforeseen" on June 5 when the parties made their joint filing.

In light of these "unforeseen circumstances" caused by the government, a continuance is necessary. MSHA documents are as important as any in the case. MSHA not only issued the citations referenced in the indictment that appear to form the basis of the government's theories, and MSHA not only is the purported victim of the charged conspiracy to defraud, but MSHA was present in the mine on a weekly basis during the indictment period. MSHA inspectors were eyewitnesses to the operation of the mine, conditions of the mine, and conduct in the mine during the indictment period. Mr. Blankenship has clear Fifth and Sixth Amendment rights to the time needed to review these documents, collect and review all of the additional documents that the government still has not produced, and then to put them to use in investigation, interviews, examination preparation, and other trial preparation. The government cannot deny Mr. Blankenship these most basic rights through eleventh-hour document dumps, incomplete productions, and continuous misrepresentation. If these proceedings are to have any semblance of fairness, a continuance must be granted. The prejudice to Mr. Blankenship otherwise would be serious and constitutional in dimension. Indeed, if it is discovered that exculpatory MSHA material was not provided to the defense – or, if it was provided, that the defense did not have fair opportunity before trial to locate it – the integrity of these proceedings would not survive scrutiny.[2]

Exacerbating the situation is yet another "unforeseen circumstance" revealed by the government. In a brief filed on August 25, the government disclosed for the first time that it intends to pursue an entirely new theory of the charged conspiracy based on the alleged under-

---

[2] Other relief, in addition to a continuance, may be warranted as well for this government conduct. The defense will seek such other relief as appropriate.
.

reporting of accident statistics in 2007-2009. *See* ECF No. 330 at 21-24. This theory, which is not set forth in the indictment and which the government hid from the defense, concerns an entirely new array of documents and witnesses. The surprise nature of this theory – as well as its inadmissibility – is addressed in a reply brief filed by the defense, which the Court struck. For consideration in connection with this continuance request, this brief is attached at Exhibit F. As stated therein, if this new theory is not excluded (which it must be as a constitutional matter), then a continuance would be further necessary to permit the defense fair opportunity to investigate and prepare for it at trial, even though such relief still would not cure the constitutional defect.

The prejudice of the 72,700 pages of new MSHA documents, the MSHA documents that continue to be missing, and these other new circumstances is made more acute by government's initial Rule 16 production of more than four million pages. As the defense has advised the Court repeatedly, the defense still has not had time to review hundreds of thousands of documents in this separate production and will be continuing to search this material up to and through trial.[3] There simply is not the time to also address the new issues raised above before an October 1 trial.

### **CONCLUSION**

In light of the 72,700 page production of MSHA documents made by the government for the first time this week, its continued failure to produce other MSHA documents that still are required, and the other reasons set forth above, a continuance of trial until a date no earlier than

---

[3] The government could have remedied some of the prejudice caused by this initial document dump had it agreed to identify its case-in-chief documents – as its own discovery procedures recommend, as it is doing simultaneously in other cases, and as is required by Rule 16 in circumstances such as this. However, the government has refused to do so, and this Court denied a motion seeking to compel it to. *See* ECF No. 279.

January 11, 2016 is required. The defense further requests that the Court shorten the time for the government to respond to this motion.

Dated: September 11, 2015          Respectfully submitted,

    */s/ William W. Taylor, III*
William W. Taylor, III
Blair G. Brown
Eric R. Delinsky
R. Miles Clark
Steven N. Herman
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
202-778-1800 (phone) / 202-822-8106 (fax)
wtaylor@zuckerman.com
bbrown@zuckerman.com
edelinsky@zuckerman.com
mclark@zuckerman.com
sherman@zuckerman.com

 */s/ James A. Walls*
James A. Walls (WVSB #5175)
SPILMAN THOMAS & BATTLE, PLLC
48 Donley Street, Suite 800
Morgantown, WV 26501
304-291-7947 (phone) / 304-291-7979 (fax)
jwalls@spilmanlaw.com

*Counsel for Donald L. Blankenship*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been electronically filed and service has been made by virtue of such electronic filing this 11th day of September 2015 on:

R. Booth Goodwin, II
Steven R. Ruby
Gabriele Wohl
U.S. Attorney's Office
P.O. Box 1713
Charleston, WV 25326-1713

R. Gregory McVey
U.S. Attorney's Office
P.O. Box 1239
Huntington, WV 25714-1239

                                                   */s/ Eric R. Delinsky*
                                                   Eric R. Delinsky