**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY**

UNITED STATES OF AMERICA

v.                                              CRIMINAL NO. 5:14-00244

DONALD L. BLANKENSHIP

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S
EMERGENCY MOTION TO RESCHEDULE THE TRIAL DATE**

Defendant seeks to delay his trial yet again. He chose (perhaps hoping for delay) to subpoena, shortly before trial, a fairly large number of mainly irrelevant documents. Now he demands to further postpone the trial so he can review the largely irrelevant documents that he asked for. Any defendant, of course, could use this tactic to seek delay of any trial: Issue a Rule 17 trial subpoena for documents and then, when the documents come in, claim that they cannot possibly be reviewed in time. The Court should not indulge such a gambit.

On August 13, 2015, Defendant sought an early-return trial subpoena under Rule 17. He asked to subpoena practically every document contained in the files of the Mine Safety and Health Administration's (MSHA) office in southern West Virginia that mentioned the Upper Big Branch mine (UBB). UBB was one of the mines for which that MSHA office oversaw safety regulation, so it was certain that Defendant's request would capture many documents that mentioned the name of the mine in a purely administrative manner. Defendant asked for them nonetheless.

The complete set of documents mentioning UBB, whether relevant or not, amounted to a couple thousand electronic files. The United States received them and forwarded them to Defendant, who now proceeds to complain that he got what he requested.

Defendant's motion for continuance rests on three basic premises. First, he suggests that the subpoena return will require him to painstakingly review 72,000 pages of material. Second, he says that the United States was required to produce the subpoena return to him before now and improperly withheld it. Third, he indicates that the subpoena return is likely to be filled with *Brady* material that will take months to process. None of these premises is true.

Defendant's 72,700 total page-count is deceiving. Defendant claims to have conducted "very preliminary electronic searches" of the response to his subpoena, enough to assert that an email that he apparently already has is not included in the production. Since he has conducted a preliminary search, he has surely already learned that the 72,700-page production will not require him to review 72,700 pages. There are several examples of how the production is vastly greater in page number than in substance.

To begin, the largest file in the production is a record of violations at every Alpha Natural Resources mine over several years, prepared at Alpha's request. This document is thousands of pages long, searchable by text, and appears twice in the production—once on its own and again as an attachment to an email. In fact, many of the records in the production are duplicates, such as the 216-page PDF document detailing the "mine status history" of every mine in the district from 1992 to 2009. This document appears in the production at least three times, likely because it was found in multiple files. Other lengthy records are found in attachments to emails that were circulated multiple times. Pursuant to the contours of Defendant's requests, each new email with the same attachment was responsive, and therefore produced.

Thousands of pages of the production can be attributed to three records documenting times that a contractor was present at a District 4 mine. Two of these records appear in the production twice.

The production contains 786 Excel spreadsheets, many of which include three to five worksheets in a single document. These spreadsheets include a data field or combination of fields and many contain an entry for every mine in District 4 during the indictment period. There were over 400 mines in the district during this time, including UBB. Defendant would know based on the data fields identified at the top of a spreadsheet whether the document is of interest to him, without having to read every line of each spreadsheet. One spreadsheet contains the data fields "Mine ID," "Office Code," "Travel Area / Workgroup," "Operator Name," "Mine Name," "Mine Status Desc," "Mine Status Date," "Mine Type," and "Operator Start Date." There are 1536 entries in this spreadsheet. Each cell, other than the cells naming the mine and operator, contains either a number or a one- or two-word response to the data field. If Defendant desires to know the mine status of the surface mine Red Cedar Auger Mine on February 14, 2000 (line no. 1330), he need only search for that mine. Another spreadsheet is a record of fatalities at coal mines going back to the 1980s. There are 1296 entries in this spreadsheet. Line 1193, for example, shows that there was a fatality at the underground mine Bullion Hollow Mining Company Inc., Mine #1, on April 23, 1991. Again, this document is searchable by text and will not require Defendant to read every line to find information that is of interest to him. Many of the spreadsheets are records of citations issued to mines and related data, such as the type of citation issued, the percentage of citations vacated, and citations per inspection hour. If any of this information is pertinent to the defense, Defendant can find it by identifying the appropriate

field of data and cross-referencing the name of the mine, the operator, or the office issuing the citations, rather than reviewing every line of the spreadsheet.

Again, these documents were responsive to the subpoena that Defendant elected to obtain. So even though they are largely irrelevant, they nonetheless had to be produced. These examples are not meant to assist Defendant in sifting through the subpoenaed production. Rather, they are meant to fill the gaps left by Defendant's proclamation of outrage and demand for relief. Defendant is already aware of these examples since he has conducted "preliminary electronic searches," and his assertions to the contrary are disingenuous.

The examples of the lengthy administrative documents in the production illustrate the point that the United States was under no obligation to produce these records. By design, Defendant's motion reads as if the United States just handed him more than 72,000 pages of Rule 16 and *Brady* material that it has been purposely withholding, calculating the most prejudicial time to reveal them to Defendant. This position misunderstands the rules of procedure.

Until August 13, all discovery conversations in this case have revolved around the United States' obligations under Rule 16 and *Brady*. In his motion, Defendant cautiously avoids the fact that the recent production of 72,700 pages was a response to a subpoena that he crafted himself. A subpoena issued pursuant to Rule 17(c) is not subject to the boundaries of Rule 16 or *Brady*. Rule 17 is not a discovery device. *See United States v. Fowler*, 932 F.2d 306, 311 (4th Cir. 1991). Defendant mistakenly reads Rule 17 as a vehicle for gathering the documents he believes are missing from the United States' Rule 16 production. "Rule 17(c) clearly was not intended to displace the role of Rule 16 in circumscribing discovery to be allowed in criminal cases. The Supreme Court has emphasized that '[i]t was not intended by Rule 16 to give a limited right of

4

discovery, and then by Rule 17 to give a right of discovery in the broadest terms.'" *United States v. Beckford*, 964 F. Supp. 1010, 1022 (E.D. Va. 1997) (*citing Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)). In the simplest terms, not every document that Defendant considers evidentiary is reached by Rule 16. He is free to seek other documents through a Rule 17(c) subpoena, which he has done. Defendant expresses wonder that the United States "struck a different tone" when it offered to produce the records he requested in his subpoena. (ECF 369 at 5). A review of the record, however, reveals that the United States has not varied from its tone with regard to its discovery obligations. The United States' offer to accommodate and perhaps expedite Defendant's subpoena requests was not a response to any of Defendant's previous arguments to compel Rule 16 or *Brady* material.

In his motion for a subpoena pursuant to Rule 17, Defendant assured the Court that his requests were "strictly limited to specific subject matters" including "the single mine at issue in the indictment." (ECF 300 at 6). His "specific" request included "All documents regarding the UBB mine during the Indictment Period located in the files of the MSHA inspectors and officials who were present in the mine during the Indictment Period." (ECF 300-1 at 3). He also demanded for each document requested that the entire document along with all attachments, appendices, and exhibits be produced. *Id.*

And now he is shocked that he received what he asked for. His "specific" request yielded the return of every document within the files of every District 4 employee that contains the words "UBB," "Upper Big Branch," or "Performance." Defendant's "specific" request yielded 1,747 documents, including emails, PDF files, spreadsheets, and text documents. To the extent Defendant claims that this production is incomplete, everything that was identified as responsive to the subpoena and non-privileged was produced.

Defendant suggests in his motion that these 72,700 pages should have been produced to him pursuant to Rule 16 or *Brady*. As illustrated by the examples above, the material Defendant requested was not within the purview of Rule 16 or *Brady*. Of the material produced on September 8, the United States identified two items of material that Defendant might characterize as *Brady*. (See Exhibit A). This is in keeping with the government's ongoing *Brady* obligations—to continue to designate any putative potential *Brady* material as it becomes known to the United States. In short, the United States has complied with its duties in identifying potential *Brady* material. Defendant's offense at the designation of potentially exculpatory material is misplaced.

The third premise on which Defendant relies, that the subpoena return is likely to be filled with *Brady* material, is belied by the fact that the United States conducted a review for potential *Brady* material and made two designations. Defendant will no doubt scour the production and find something that he can strain to call exculpatory, but the United States has fulfilled its obligations by searching for, and promptly disclosing, possible *Brady* records. Defendant is free to try to use any of the materials in the production in his defense, but his ability to find some use of a particular document does not convert it into *Brady* material.

Defendant also suggests, without any support, that "a new theory" advanced by the United States and unveiled in its August 25 brief responding to Defendant's motions in limine is another "unforeseen circumstance" that would render the current trial date a "constitutional defect." (ECF 369 at 8-9). Every theory, argument, piece of evidence, or strategic detail about the prosecution that the United States has not yet revealed to Defendant is not grounds for continuance, much less a constitutional violation. The United States has provided Defendant with a detailed outline of the charges against him in the superseding indictment as well as expansive

discovery. The United States will prove the elements of the offenses charged, and if Defendant is concerned that some measure of the government's method of proving these elements is prohibited, he is free to make that argument to the Court at the proper time. Which is at trial. His "stop the presses" approach to one of the United States' arguments in a responsive brief is an overreaction.

    The Court should decline to take Defendant's misrepresentations at face value and deny his emergency motion to continue.

Respectfully submitted,

/s/ Gabriele Wohl
GABRIELE WOHL, WV Bar No. 11132
Assistant United States Attorney
300 Virginia Street, East
Room 4000
Charleston, WV 25301
Telephone:  304-345-2200
Fax: 304-347-5104
Email:  gabriele.wohl@usdoj.gov

CERTIFICATE OF SERVICE

      It is hereby certified that the foregoing "UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S EMERGENCY MOTION TO RESCHEDULE THE TRIAL DATE" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this 15th day of September, 2015 to:

>Steven Herman, Esq.
>Miles Clark, Esq.
>Eric Delinsky, Esq.
>William Taylor, III, Esq.
>Blair Brown, Esq.
>Zuckerman Spaeder LLP
>Suite 1000
>1800 M Street, NW
>Washington, DC 20036
>
>Alex Macia, Esq.
>Spilman Thomas & Battle PLLC
>P.O. Box 273
>Charleston, WV 25321
>
>James Walls, Esq.
>Spilman Thomas & Battle PLLC
>P.O. Box 615
>Morgantown, WV 26507

/s/ Gabriele Wohl
GABRIELE WOHL, WV Bar No. 11132
Assistant United States Attorney
300 Virginia Street, East
Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
Email: gabriele.wohl@usdoj.gov