**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) | |
| v. | ) ) | Criminal No. 5:14-cr-00244 |
| **DONALD L. BLANKENSHIP,** | ) ) ) | |

### RESPONSE TO MOTION TO COMPEL MSHA TO COMPLY WITH SUBPOENA DUCES TECUM

In response to the subpoena issued on September 9, 2015 in this matter, the Secretary of Labor ("Secretary") has extensively searched for all responsive documents and produced all documents located in the search to the Defendant, except for a group of privileged documents marked as such. For the 68 documents marked as privileged, the Secretary prepared an adequate privilege log. However, the Secretary has now amended the privilege log so as to address the Defendant's request for the names, rather than just job titles, of the recipients and senders of the privileged emails.

### BACKGROUND

The Subpoena requested the production of the following documents:

- All documents regarding the UBB mine during the indictment period located in the files of the MSHA inspectors and officials who were present in the mine during the indictment period and their supervisors;

- All documents regarding the violation reduction or hazard elimination initiative put in place at Massey during the Indictment Period located in the files of the MSHA officials who communicated, orally and/or through written communications, with any Massey officer or employee about the initiative during the Indictment Period; and

- All documents regarding the meeting between Joseph A. Main and Mr. Blankenship on or around February 1-8, 2010, and the telephone call between Mr. Main and Mr. Blankenship on February 25, 2010, and any preparation for the meeting and/or telephone call.

The instructions provided by the Defendant made clear that the subpoena "does not call for any document that has already been produced to the defendant by the United States Attorney's Office for the Southern District of West Virginia in *United States v. Blankenship*, 14-cr-244 (S.D. W. Va.). Any such document need not be produced."

The Defendant did not make its request for a subpoena with regards to these documents until August 13, 2015. The Secretary conducted a search for the three categories of documents and made a voluntary production to the Defendant via the United States Attorney's Office on September 8. The Court granted the subpoena on September 9 with a return date of September 15. The Secretary directly responded to the subpoena on September 14.

## ARGUMENT

### I. The Secretary's Search for Documents Was Adequate

The Defendant asserts that it is in possession of a few documents that were not produced by the Secretary and also observed that there are relatively few emails from inspectors discussing UBB. Defendant then speculates that the Secretary is either unlawfully withholding documents or conducted a poor search for documents. As is explained below, the Secretary did conduct a thorough search and produced all responsive, non-privileged documents it could locate in its possession, which numbered in the thousands of pages.

At the outset, the Secretary notes that the Defendant specifically did not ask for documents previously produced. Many thousands of pages of responsive documents collected by the Secretary of Labor have already been produced by the United States Attorney's Office to the Defendant, including violations issued at the mine and inspectors' notes related to those

violations, compiled on official MSHA "7000" forms and also on other forms depending on the subject matter of the notes, as well as correspondence between the MSHA district and the mine operator.

The Secretary's search made in response to Defendant's request for a subpoena was extensive. To respond, the Secretary reviewed documents that had been collected by MSHA following the mine explosion. In 2010, the Secretary put a litigation hold in place and collected MSHA violations, notes, and many thousands of pages of other documents, and still maintains them. It searched these documents for responsive documents that had not already been produced. The Secretary also ran electronic searches in emails collected from MSHA district and headquarters personnel with search terms designed to capture documents sought by Defendant, such as "UBB," "Upper Big Branch," and "hazard elimination program." Additionally, the Secretary searched the emails, calendars, notes, and other documents from headquarters personnel who may have met with Mr. Blankenship. The Secretary also sent a request to personnel in the field to send any documents such as notes that had not been turned over previously.

The production made included:

- over 400 responsive emails with over 1300 attachments;
- Supervisory Field Activity Review forms/Accompanied Activities Documentation
- Supervisor/Manager Field Visit forms
- Notes kept by supervisors detailing communications with Massey and others related to UBB
- Emails, calendars, a memorandum, and notes related to the meeting with Mr. Blankenship.

Defendant attempts to fault the Secretary because a) he speculates that there should be more emails from inspectors, and b) he is in possession of a few documents that the Secretary did not turn over in its production. Neither of these complaints is availing.

First, MSHA inspectors did not regularly communicate with colleagues over email about conditions at the mine. They were not encouraged to do so; to the contrary, MSHA policy directs inspectors to put their observations on the mine on official forms. For example, the Citation and Order Writing Handbook, Chapter 7, V states:

> For Coal inspectors**,** the forms provided to document inspectors' observations during enforcement activities are MSHA Form 7000 series. **Inspectors are not to take notes on other paper and copy them to these forms unless directed otherwise.**

See http://www.msha.gov/READROOM/HANDBOOK/PH13-I-1.pdf (emphasis added).[1] There are a plethora of other forms for inspectors to fill out should a violation be deemed particularly serious, or should the inspector have dealt with specialized issues (such as dust control) or should further action be required by the agency. These have been provided to the Defendant. The point is that there was a formalized system in place to manage the information collected by inspectors, and there were no directives for inspectors to generally send e-mails to their colleagues to share thoughts about a particular mine.

In fact, most of the responsive emails located in the course of the Secretary's search were from district personnel (as opposed to headquarters) who were not inspectors but rather district supervisors who either communicated directly with Massey officials about Upper Big Branch, or who emailed within the office spreadsheets which charted certain inspection and other data about the over 400 mines, including UBB, in the district. These emails were produced. Additionally, there were some emails between inspectors and attorneys for the Secretary who were litigating

---

[1] The citation is to the most recent version of this Handbook but previous versions had the same language.

violations issued by the inspectors. If these emails discussed litigation strategy, they were withheld on the grounds of privilege and marked as such on a privilege log given to Defendant (discussed further below). If they did not, they were produced. Finally, there were also some emails after the explosion, but still within the indictment period, to and from inspectors discussing the explosion; these were all produced.

Apart from these categories, there were relatively few emails from inspectors about the mine before the explosion. On the whole, emails from inspectors had from zero to, in one case, eight email "hits" on requested search terms, with the majority only having one or two "hits." The inspector use of email to discuss Upper Big Branch prior to the explosion tended to be the exception rather than the rule.

That the Defendant asserts that it has a smattering of documents that came into his possession over the years but that were not found in this search does not mean that the search was inadequate or that documents have been withheld. They were simply not uncovered by the Secretary after a reasonable and extensive search. As noted before, a litigation hold was put in place in 2010 after the accident, but documents prior to the explosion may not necessarily have been retained even by the time of the explosion. In any case, the Defendant has these documents. This does not call into question the Secretary's search; by way of analogy from the FOIA context, a government agency may conduct a reasonable search but fail to uncover relevant documents, and the requester then has a burden to meet to show that the search was made in bad faith; "mere speculation" does not meet such a burden. *See Carney v. United States Dep't of Justice,* 19 F.3d 807, 812 (2d Cir.1994). Given the adequacy of this search, we submit that producing an official in court, as requested by Defendant, is unnecessary and would serve no further purpose.

## II. The Secretary's Privilege Log Was Adequate But Has Since Been Revised

The Secretary claimed privilege over 68 documents, of which 67 were related to attorney communications for pending cases.[2] While not identifying the authors and recipients by name, the privilege log did identify them as attorneys, conference litigation representatives (MSHA personnel who handle cases under the direction of attorneys) or MSHA personnel; the general subject matter (pending litigation); the date and time; the type of document; and the document number.

The defense contends that the privilege log is inadequate because the sender and recipient names not given. The Secretary believed that the privilege log is adequate. It shows that the communications were between MSHA officials and their attorneys, and that those communications were legal advice related to "pending UBB litigation." This provides enough information for the court to conclude that the documents are privileged, which is what a privilege log must do, even if the names of attorneys were not in the recipient or author field. *See e.g. Feld v. Fireman's Fund Insurance Company*, 991 F. Supp. 2d 242, 248 (Dist. D.C. 2013). However, in an effort to address the Defendant's primary concern with the privilege log, the Secretary is submitting to the Defendant under separate cover today a revised log with the names of the senders and recipients, as well as their job titles.[3]

On page five of their Motion, the Defendant also questioned the description of "pending UBB litigation", noting that the documents predate the 2010 explosion. The emails all relate to litigation before the Federal Mine Safety and Health Review Commission (FMSHRC) involving

---

[2] In a 68th document, the Secretary asserted privilege to protect a government informant included in inspector notes, but now withdraws this claim of privilege as these notes which have already been produced to Defendant.

[3] The Secretary has expanded the log to include all recipients in the "to" field, although not "cc's". We note that some of these emails include a chain of related emails.

pre-explosion violations from UBB. In the emails, attorneys from the Office of the Solicitor's Arlington Sub-Regional Office and conference litigation representatives explored the litigation strategy to be taken in these cases with MSHA personnel from the district (inspectors and their supervisors, and in one case an official in MSHA headquarters). All of these emails involve discussions of litigation strategy such as how to defend violations should they go to a FMSHRC hearing, how to address contentions from the mine operator relating to the violations, and whether and how to settle them. The Secretary produced dozens of emails from attorneys to MSHA personnel that did not discuss litigation strategy.

This description of pending litigation properly identified "the document's general subject matter", as requested by the Defendant's instruction. See *Johnson v. Ford Motor Co.*, 2015 WL 5111332, at *3 (S.D.W. Va. Aug. 28, 2015). Similarly, the Secretary's claims of attorney-client privilege and work product privilege are properly invoked and survive even as the prior litigation ended. *See Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 291 (4th Cir. 2004) (quoting *In re Allen*, 106 F.3d 582, 600 (4th Cir.1997)); *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480, 483 (4th Cir.1973) ("[W]e find no indication that the Court intended to confine the protection of the work product to the litigation in which it was prepared or to make it freely discoverable in a subsequent law suit.")(footnote omitted).

## CONCLUSION

For the foregoing reasons, the Secretary respectfully requests that Defendant's motion to compel MSHA to comply with the subpoena be denied.


Respectfully submitted,

**M. PATRICIA SMITH**
**Solicitor of Labor**

**HEIDI W. STRASSLER**
**Associate Solicitor**

/s/ Jason S. Grover
Jason S. Grover
Counsel for Trial Litigation
U.S. Department of Labor
Office of the Solicitor
Mine Safety and Health Div.
201 12th Street South
Arlington, Virginia 22202-5450
Telephone:  (202) 693-9350

**R. BOOTH GOODWIN II**
**United States Attorney**

s/Fred B. Westfall, Jr.
WV State Bar No. 3992
Assistant United States Attorney
Attorney for United States
P.O. Box 1713
Charleston, WV  25326
Phone: 304-345-2200
Fax: 304-347-5443
E-mail: fred.westfall@usdoj.gov

**CERTIFICATE OF SERVICE**

It is hereby certified that service of the foregoing "RESPONSE TO MOTION TO COMPEL MSHA TO COMPLY WITH SUBPOENA DUCES TECUM" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing on this 24th day of September, 2015, to:

> William W. Taylor, III
> Blair G. Brown
> Eric R. Delinsky
> R. Miles Clark
> Steven N. Herman
> Zuckerman Spaeder LLP
> 1800 M Street, NW, Suite 1000
> Washington, DC 20036
>
> James A. Walls
> Spilman Thomas & Battle, PLLC
> 48 Donley Street, Suite 800
> P.O. Box 615
> Morgantown, WV  26501
>
> Alexander Macia
> Spilman Thomas & Battle, PLLC
> P.O. Box 273
> Charleston, WV  25321

> s/Fred B. Westfall, Jr.
> WV State Bar No. 3992
> Assistant United States Attorney
> Attorney for United States
> P.O. Box 1713
> Charleston, WV  25326
> Phone: 304-345-2200
> Fax: 304-347-5443
> E-mail: fred.westfall@usdoj.gov