IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

_____
                                    )
**UNITED STATES OF AMERICA**        )
                                    )
    **v.**             )    Criminal No. 5:14-cr-00244
                                    )
**DONALD L. BLANKENSHIP**           )
_____ )

### DEFENDANT DONALD L. BLANKENSHIP'S REPLY TO UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S FED. R. EVID. 803(8) & 704 AND CONFRONTATION CLAUSE <u>OBJECTIONS TO ADMISSION OF MSHA CITATIONS</u>

Defendant Donald L. Blankenship, by counsel, submits this reply to the government's opposition to Mr. Blankenship's objections to the admissibility of MSHA citations in this case.

**A. Limited Admissibility**

The government argues that MSHA citation forms will be offered and should be admitted for the limited purpose of proving notice, which notice the government contends is relevant to proving willfulness and other things. Thus, the government commits as follows:

> "[T]he citations . . . will not be offered to prove the truth of the matters asserted in the citations."
> . . .
> "The citations will not be offered for the purpose of stating the legal conclusion that Defendant [or presumably anyone] violated the law."
> . . .
> "The citations demonstrate . . . the repetitive nature of the violations" of law.
> . . .
> The citations will not be admitted to prove that the violative conditions giving rise to the citations actually existed at UBB. . . .

Opp'n at 1-2 & 4. The government does not, however, properly justify admission of the citation forms for the limited purpose of proving notice. Notice is the foundation for all other arguments about limited admissibility of the citations.

1. Notice

Despite making notice the linchpin of its limited admissibility argument, the government understandably does not explain how the citations establish any notice to Mr. Blankenship. The citation forms themselves do not record service on Mr. Blankenship. To the contrary, the citation forms in Section I, block 4, show "Served to" and then list Performance Coal Company employees such as "Charles Semenske, Foreman." The government has not offered any evidence to prove service of the citation forms on Mr. Blankenship. Tellingly, the government has not even bothered to venture an explanation as to how the citation forms reflect notice to Mr. Blankenship. There is, accordingly, no relevance analysis that can possibly support admission of the forms to prove notice to Mr. Blankenship.

2. Notice-Related Issues

The government argues that evidence of the limited fact of the issuance of the citation forms is relevant to prove willfulness, motive, materiality, state of mind, and Massey's relationship to MSHA. But none of these can justify admissibility unless the forms show notice to Mr. Blankenship, which is not the case. In any event, assuming that the citation forms notified Mr. Blankenship that they were issued, the government's kitchen-sink offering of relevance theories does not justify limited admissibility of the forms.

**Willfulness**. The government first asserts that the violation forms prove notice "of the repetitive nature of the violations." Opp'n at 2. The argument completely undermines the government's argument that admissibility would be limited. For the citations to prove "the violations," they would have to be offered for the truth of the matter asserted in the form – that there was a violation. That, however, is what the government says the forms will *not* be offered to prove. Indeed, the government has lurched to a conclusion that allegations in citations equal

proof of violations, the same conclusion that reasonable jurors would reach, no matter what a limiting instruction might say. In a trial on an indictment charging federal crimes based on the actual existence of mine safety violations (*e.g.*, ¶¶ 8, 11, 16, 23, 24, 26, 27, 28, 30, 31, 34 & 36 of the superseding indictment), proof of 835 MSHA citations will be taken as proof of mine safety violations. If the government cannot keep away from that understanding even as it argues for limited admissibility to show only notice of the citations, a jury cannot be expected to keep away from the same understanding.

As to willfulness, the government also argues that the citation forms "are probative of Defendant's willful intent." Like most of its opposition, that assertion is not joined with any explanation of how or why the forms are probative of willful intent. The forms are evidence of inspectors' allegations, and only allegations. The citations and citation forms concerning mine safety violations cannot be bootstrapped into relevant evidence of a conspiracy, a willful agreement between Mr. Blankenship and another, to commit willful mine safety violations. If the government is arguing that the citation forms prove Mr. Blankenship's knowledge of mine safety laws, even putting aside the fatal failure of the forms to show notice to Mr. Blankenship, that is purely a makeweight. There is no dispute about what the mine safety laws provide, and Mr. Blankenship has not offered any evidence to suggest that lack of knowledge of the mine safety laws is a defense.

Finally, the forms clearly do not charge a willful violation by anyone. On this most basic level, they cannot be relevant with respect to the willfulness issue.[1]

---

[1] The government cites *United States v. Cone*, 714 F.3d 197 (4th Cir. 2013), in which emails from customers complaining that goods were counterfeit were offered by the government to prove the defendants' notice regarding that the goods they sold were counterfeit. Although the Court of Appeals concluded that limited admissibility could have been proper, it actually held that admissibility was improper because the jury was permitted to use the complaints to establish that the goods were counterfeit. Further, there was a concrete connection between notice from customers that goods were

**Motive.** The government argues, with respect to MSHA fines, that "[o]ut-of-court statements contained in the citations may properly be offered for the non-hearsay purpose of showing Defendant's motivation to save money by deceiving MSHA inspectors." Opp'n at 3. But the citation forms do not refer to fines or show any fine. The forms cannot be seen as admissible to show a motive to avoid fines. As with the argument that the citation forms establish knowledge of the law (if there were notice), the argument that the forms establish knowledge of fines is a makeweight. There is no dispute in the case about knowledge that MSHA violations can involve fines. Further, note that the language quoted above from the government's opposition reveals that the government is forced to justify admissibility as to motive by referring to "statements contained in the citations." Admitting the forms to get their contents before the jury would not be limited admissibility. Such admission would be to show the truth of something in the citation forms. As to motive, exactly which contents of the forms the government would point to, however, also is never explained. Clearly the forms do not refer to or show fines anywhere.

**Materiality and state of mind.** The government argues that the MSHA forms "weigh on the materiality of misrepresentations and omissions in the statements charged in counts 2 and 3" and show Mr. Blankenship's "state of mind" when he made statements that Massey sought to

---

counterfeit and the defendants' awareness of the counterfeit nature of the goods. There is no concrete connection between MSHA's allegations as to violations and Mr. Blankenship's willful agreement to cause willful violations. Similarly, the other case cited by the government, *United States v. Hodge*, 295 F. App'x 597 (4th Cir. 2008) – an unpublished decision without precedential value – has no relevance here. In that case, a state agency ordered the defendant to stop selling a particular investment scheme. The defendant did not stop, but persisted, and was convicted on a charge that the scheme was fraudulent. Thus, the evidence of the agency's cease and desist order finding that defendant's sale of the particular investment was fraudulent was relevant to show the defendant's understanding that his specific conduct violated the law. The citation forms at issue here have nothing to do with Mr. Blankenship's conduct. Not a one of them alleges any kind of violation based on Mr. Blankenship's conduct. Not a one even alleges a willful violation by anyone, or that Mr. Blankenship had notice of the citation form, and so using the two cited cases cannot justify admission of the forms to prove willfulness.

4

be safe. Opp'n at 3-4. But counts 2 and 3 do not charge material omissions. Moreover, the government's vague "weigh on" analysis is joined to a peculiar statement that the truth about the MSHA citations would have altered the total mix of information in the statements at issue in counts 2 and 3. The indictment does not charge, however, an offense based on failure to mention the MSHA citations or to disclose information contained in the citations.[2]  Moreover, any argument that the citations should have been mentioned in the statements, or that Mr. Blankenship's knowledge of them (if there were proof of notice) would show his understanding that the statements about safety were false would depend upon accepting the truth of the contents of the citation forms which allege that there was a safety violation. That would not involve the limited admissibility that the government is willing to accept. Further, the government presumably will concede that many citations involve small or technical violations involving things like not cleaning up sandwich wrappers after lunch, that most citations were contested, that many citations were withdrawn, not sustained or modified, and that the citations and their disposition all concerned the negligence of particular mineworkers at particular locations in the mine, not violations that are materially adverse to a statement about Massey's efforts to be safe.[3] Thus, the government does not really offer the citation forms for the limited purpose of establishing materiality of the statements at issue in counts 2 and 3, and the forms are not relevant to materiality in any event.

---

[2] Indeed, because the number of citations issued at UBB was a matter of public record, the government previously has represented to the Court that the statements at issue in counts 2 and 3 "did not concern the fact that UBB had been the scene of many safety violations." ECF No. 129 at 37. It is difficult to discern how MSHA citations, as the government now maintains, possibly could bear on the materiality of statements that "did not concern" the violations alleged in those citations.

[3] These same features of many of the citations (technical, withdrawn, modified, etc.) also make the citation forms inadmissible for the other limited purposes offered by the government: notice, willfulness, motive, and the relationship between Massey and MSHA.

**Relationship between MSHA and Massey.** Because the citation forms do not establish any notice to Mr. Blankenship, the Government argues that the forms establish "the relationship between MSHA and Massey" and MSHA's repeated reports that there were safety violations at UBB. Opp'n at 4. Even if the forms did establish notice to "Massey" or "the relationship between MSHA and Massey," that would be irrelevant as to the single defendant charged in this case, Mr. Blankenship, not Massey. Indeed, the government's stretch to describe the relevance of the forms as to MSHA's relationship with Massey is an implicit admission that the forms do not establish MSHA's relationship with Mr. Blankenship, let alone notice to him of anything.[4]

### B. Undue Prejudice from Limited Admissibility (Rule 403)

If one of the government's kitchen-sink relevance justifications held water, the citation forms still should be excluded under Rule 403. The probable prejudice outweighs the limited admissibility that the government offers to accept.

It is unrealistic, indeed unreasonable, to envision a jury's limited use of the citations. Charges of willful mine safety violations and of intentionally false claims of a corporate effort to be safe are at the heart of this case. The citation forms allege 835 mine safety violations. There is no real world daylight that a juror will see, even upon instruction, between the large number of alleged safety allegations and the questions of willful conspiracy to willfully violate the mine safety laws and intentionally false claims of corporate mine safety efforts. In other words, a jury that hears 835 official allegations of mine safety allegations cannot avoid seeing the allegations as proof of a crime. It is incendiary and unfair to admit civil allegations of violations as evidence

---

[4] *Beasley v. Red Rock Fin. Servs., LLC*, 583 Fed. App'x 138 (4th Cir. 2014), has nothing to do with this case. It was a civil case in which dunning letters to a homeowners' association were admitted to show that the plaintiff had been locked in a long fight with the association and could not have been emotionally injured by allegedly wrongful proceedings as he claimed. The government's "see also" cite to *Snyder v. CIR*, 82 T.C.M. (CCH) 651 (T.C. 2001), is also without value. The case admitted a document for the limited purpose of establishing a court's jurisdiction in a tax matter, not to establish a criminal defendant's guilt.

of a crime. Whether there are few or a lot of allegations, they remain allegations, not evidence of crime. Especially where the prosecution theory is that the agreement underlying a charged criminal conspiracy is only implicit, the danger that MSHA violations will be bootstrapped into evidence of crime is treacherously unfair and improper.

  The intractable improper prejudice is just underscored by the government's opposition. The opposition denies that the MSHA citation forms will be used to prove the truth of the matters asserted therein or the truth of alleged violations of law. Then, however, the opposition suggests that the forms will show "the repetitive nature of the *violations*." Opp'n at 4 (emphasis added). Proof of the nature of the violations necessarily involves the truth of the allegations in the MSHA citations. Even the government cannot separate the fact of the issuance of the citations from the truth of their contents. Further, the government announces that it will also put on live witnesses to address "violative conditions" at the UBB mine. Opp'n at 4. Assuming for the sake of the argument that such live testimony is admissible, such testimony raises the obvious likelihood that any companion evidence to the MSHA citations will be understood as supportive and as establishing the dangerous mining conditions that the government will portray based on live witness testimony. Even the fictional Dr. Spock could not by force of will hold evidence that 835 MSHA citations were issued at UBB separate from an evaluation of testimony that the mine was, in fact, unsafe, or of charges of willful conspiracy to commit willful mining violations and intentionally false statements regarding corporate efforts regarding mine safety.

  It also is overly prejudicial, in relation to any possible relevance, to admit 835 MSHA citation forms en masse when it is clear that they include merely technical violations, withdrawn violations, compromised or reduced violations – and, in all instances, non-willful violations. Many of those violations cannot possibly have relevance, even if admitted for a limited purpose.

Further, admitting the citation forms en masse unfairly puts Mr. Blankenship in the position of having to accept the misleading picture formed by a mass of issued citations, foregoing challenges that certain citations were merely technical or were withdrawn or reduced by MSHA, for example, or else offering such evidence and then confronting the government's argument that a door has been opened for all of the contents of the citation forms to be admitted. Rule 403 does not permit the government's mass admission of 835 citation forms, containing mere allegations, each of which has a different story as to its ultimate disposition.

### C. Redaction

Despite its long argument for limited admissibility of just the fact that the MSHA citations were issued, the government seems to suggest that the entire form could be admitted, so long as there is a limiting instruction. That plainly is not accurate. If the form cannot be admitted to prove its contents, but only to prove the issuance of a citation for a violation, then the contents of the form – other than date, time, citation number, and event number – must be redacted. That the government wants to avoid redaction is evidence that its dominant goal is not limited admissibility, but backdoor admission of all the contents of the report.

### D. Rule 803(8)(A)(iii) Inadmissibility

The government's long, initial argument for limited inadmissibility telegraphs its understanding that Rule 803(8)(A) excludes the contents of the citation forms as hearsay. At page 5 of its opposition, the government finally reaches Rule 803 – but then tellingly declines to discuss Rule 803(8)(A)(iii), which excludes admission against a defendant in a civil case of "factual findings from a legally authorized investigation." The government simply notes that Rule 803(8)(A)(iii) provides that such findings can be admitted against the government in a

criminal case or against any party in a civil case but then bewilderingly concludes that the rule has no applicability regarding admission against a defendant in a criminal case.

The fact that Rule 803(8)(A)(iii) does not provide for admission against a defendant in a criminal case is exactly the reason that factual findings covered by the rule are inadmissible in that circumstance. It is clear from the structure of the rule that such findings are *only* admissible against the government in a criminal case or against a party in a civil case. When the rule states that such findings are admissible against the government in a criminal case, the negative implication is that they are not admissible against a defendant in such a case, not that they actually are admissible but the authors of the rule thought it unnecessary to say so. Every treatise discussing the rule says that the rule excludes such findings as evidence against a defendant in a criminal case. "Rule 803(8)(A)(iii) similarly excludes factual findings from a government investigation when offered against the criminal defendant." Graham, Federal Practice & Procedure, § 7049, at 234 n.22 & 267 (2011 ed.) (citing long line of criminal cases applying Rule 803(8)(A)(iii)).

In our moving papers we quoted the Advisory Committee Note to the rule.

[Findings under Rule 803(8)(A)(iii)] are admissible *only* in civil cases and against the government in criminal cases in view of the almost certain collision with confrontation rights which would result from their use against the accused in a criminal case.

Objection at 6. Instead of addressing this point, the government has simply put its head under the covers and has pretended not see any possible relevance of Rule 803(8)(A)(iii) as to defendants in criminal cases, despite the uniform view of courts and commentators that a central purpose of the rule is to *exclude* factual findings from a legally authorized investigation as evidence against a criminal defendant. Because the rule plainly is relevant for the purpose for which we have invoked it, and because the government *has not disputed* that, if applicable, the

9

rule requires exclusion of the MSHA citation forms, those forms must be excluded. *See* Objection at 2-6 (explaining in detail why the MSHA forms report factual findings of a legally authorized investigation, an explanation that the government has not disputed).

### E. Rule 803(8)(A)(ii) Inadmissibility

The government would avoid Rule 803(8)(A)(iii) by relying on Rule 803(8)(A)(ii) for admissibility. Opp'n at 5. That rule provides a hearsay exception for a record of a public office if its sets out a matter observed while under a legal duty to report, "but not including, in a criminal case, a matter observed by law-enforcement personnel."

The government cannot use Rule 803(8)(A)(ii) to evade the exclusion of evidence required by Rule 803(8)(A)(iii) for the factual findings of an investigation. "[P]rohibitions against the use of government-generated reports in criminal cases" – Rule 803(8)(A)(ii) – must be "coterminous with the analogous prohibitions" in Rule 803(8)(A)(iii) against the use of factual findings from a legally authorized investigation. *United States v. Oates*, 560 F.2d 45, 67-68 (2d Cir. 1977). We made the same point at pages 6-7 of our moving papers, and the government has not disputed it. Instead, it has just tried to focus on Rule 803(8)(A)(ii) in isolation from Rule 803(8)(A)(iii), which is impermissible. Such disregard of Rule 803(8)(A)(iii) is also something that would produce an absurd result. Most factual findings from a legally authorized investigation would be admissible as reports of a matter observed while under a legal duty to report, so long as they were not made by law enforcement personnel. There is simply no case law or other support for the idea that a court may invoke Rule 803(8)(A)(ii) to avoid Rule 803(8)(A)(iiii)'s requirement that particular evidence be excluded.

In any event, Rule 803(8)(A)(ii) does not authorize admission of the MSHA citation forms against Mr. Blankenship. The government's sole argument is that MSHA inspectors are

not law enforcement personnel. Opp'n at 5-10. But the government does not dispute any of the detail examined in our moving papers concerning MSHA's statutory scheme and governing regulations that all establish MSHA inspectors as law enforcement personnel. All the government does is dispute what particular cases mean, and rely on cases establishing such things as that building inspectors are not law enforcement personnel.[5] Building inspectors do not operate under a statutory and regulatory scheme that authorizes them to issue citations, charging documents, that by statute and regulation lead to adversary proceedings, including in some instances criminal cases, and to substantial fines or imprisonment. The government's suggestion that all regulatory inspectors are the same, and that none qualifies under the very general statutory rubric of "law-enforcement personnel," simply ignores the authority of MSHA inspectors and the nature and consequence of their issuance of mine safety citations.

As for the government's references to Congressional debate about the admissibility of police officer's reports under Rule 802(8)(A)(ii), the fact is that the rule is not limited to police officers, but extends to law enforcement personnel. As our moving papers show, the courts have given the term a broad meaning that extends far beyond police officers and criminal investigations. Indeed, although the government suggests that *Oates*' treatment of chemists as law enforcement personnel has been questioned, the Supreme Court recently provided chemists exactly the same treatment as law enforcement officers. In *Melendez-Diaz v. Mass.*, 556 U.S. 305, 321-22 (2009), the Court held that chemist's certificates could not be admitted consistently with Confrontation Clause safeguards, citing Rule 803(8) and quoting its exclusion in criminal cases of "matters observed by police officers and other law enforcement personnel." MSHA

---

[5]As to building inspectors, the government cites *United States v. Hansen*, 583 F.2d 325 (7th Cir. 1978), at page 7 of its opposition. In that case, the court was quite unclear as to its rationale, and the decision is not binding or persuasive. On the other hand, cases like *United States v. Pena-Gutierrez*, 222 F.3d 1080 (9th Cir. 2000) (an INS inspector), show that regulatory inspectors are not as a class disqualified as law enforcement personnel under Rule 803.

11

inspectors have far more characteristics of law enforcement officers than do laboratory chemists. Among many other things, they issue charging documents that address the factual nature and severity of alleged violations of law and begin an adversary process that potentially involves both civil and criminal sanctions.

As for the government's suggested limitation of the term law enforcement officers to those who are building a criminal case, there are two answers. One is that MSHA inspectors do that. Their inspection reports ultimately can lead to criminal enforcement of the mining laws, and that is just what the government is trying to do here. Two, government employees who report on violations of law for the purpose of commencing and supporting civil litigation are in the same position of creating an out-of-court narrative to support one side's litigation position. It is important to keep in mind that Rule 803(8)(A)(ii) is intended to avoid Confrontation Clause problems. In *Melendez-Diaz*, the Supreme Court did not hold that the testimonial character of out-of-court reports exists only if prepared for criminal cases. The Court identified testimonial character in all reports produced for adversary litigation, even civil litigation, as demonstrated by the Court's explicit reliance on *Palmer v. Hoffman*, a civil case, as excluding material "calculated for use essentially in the court." *Melendez-Diaz v. Mass.*, 557 U.S. at 321-22.

### F. Trustworthiness

The government argues that all Rule 803(8)(A)(ii) reports of a matter observed while under a legal duty to report are trustworthy, but that is very wrong. That simply reads out the conjunction "and" in Rule 803(8) – "and" "neither the source of information nor other circumstances indicate a lack of trustworthiness." Our moving papers showed that courts understand this trustworthiness caveat to exclude matters created for the purpose of adversary litigation, both civil and criminal. Objection at 13-14. *Melendez-Diaz* shows the same thing,

relying on a civil case, *Palmer v. Hoffman*, to show why material prepared for the purpose of litigation does not qualify for the business record exception to the hearsay rule contained in Rule 803(6), an exception that has the same trustworthiness caveat contained the public records exception in Rule 803(8). *Id*. Whether viewed under Rule 803(8)(A)(ii) or (iii), or under the Confrontation Clause, admitting MSHA citation forms for the truth of their contents involves material written to begin civil and possibly criminal prosecution of a claim of violation of law. Such one-sided documents are considered insufficiently trustworthy because the author is an enforcer and affiliated with a litigation opponent, here MSHA, not a neutral reporter.

### G. Confrontation Clause

The government does not dispute that admission of the MSHA citation forms would violate the Confrontation Clause if done for a purpose other than to prove the fact of issuance, which as we explained is irrelevant and in any event would require heavy redaction. Opp'n at 10-12. Regarding the government's suggestion that the MSHA citation forms are more broadly admissible under rule 803(8), we demonstrate above that that is not accurate.

The government's suggestion that there is no Confrontation Clause problem because Rule 803(8) permits admission of the MSHA forms is exactly backwards. The quoted authorities demonstrate that the Confrontation Clause problem is so significant that the rule excludes matters such as the MSHA forms that are created to report on and initiate adversary civil and criminal litigation. The government's additional argument that MSHA citation forms are purely regulatory and would not reasonably be expected to be used in a trial is contrary to the MSHA statutory and regulatory scheme that explicitly bases civil and criminal adversary proceedings on a process that begins with citations that are issued by MSHA inspectors. Civil adjudications in most cases, and criminal adjudications in some, begin with and are based on the citations. As

*Melendez-Diaz* makes clear, the testimonial nature of such documents, and the resulting hearsay problem if their authors do not testify, is grounded in the connection of such documents to adversary litigation. *Id*. *See* note 3 on page 13 of our moving papers (quoting the Advisory Committee's statement that Rule 803 is written "to repel any implication that other possible grounds for exclusion are eliminated from consideration").

### H. Rule 704 & *Hoffman*

The government concedes at page 12 of its opposition that MSHA citation forms cannot be used to establish a violation of law and that MSHA inspectors cannot testify that such violations occurred. The concession shows why even limited admissibility, if it were relevant and if admissibility could be limited, is improper. The fact of issuance of MSHA citations inherently involves expression of a judgment that a violation of law occurred.

### I. Conclusion

The MSHA citations must be excluded.[6]

---

[6]The government threatens that it may call MSHA inspectors and ask them to read the citation forms or may offer the forms as past recollection recorded. If that comes to pass, we will address appropriate objections. As we noted in footnote 1 at page 7 of our moving papers, that past recollection recorded cannot be used to avoid the exclusion of evidence required by Rule 803(8). *United States v. Pena-Gutierrez*, 222 F.3d 1080, 1086-87 (9th Cir. 2000). As for having the citation forms read aloud, the government offers no authority to support having inspectors read aloud the citation forms. That would really be just past recollection recorded, and could not substitute for the actual testimony from MSHA inspectors about what they saw, if even that testimony were relevant. The out-of-court statements of allegations in the citation forms cannot be used to bolster live testimony.

Dated: October 6, 2015          Respectfully submitted,

  /s/ William W. Taylor, III
William W. Taylor, III
Blair G. Brown
Eric R. Delinsky
R. Miles Clark
Steven N. Herman
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
202-778-1800 (phone)
202-822-8106 (fax)
wtaylor@zuckerman.com
bbrown@zuckerman.com
edelinsky@zuckerman.com
mclark@zuckerman.com
sherman@zuckerman.com

  /s/ James A. Walls
James A. Walls (WVSB #5175)
SPILMAN THOMAS & BATTLE, PLLC
48 Donley Street, Suite 800
P.O. Box 615
Morgantown, WV 26501
304-291-7947 (phone)
304-291-7979 (fax)
jwalls@spilmanlaw.com

  /s/ Alexander Macia
Alexander Macia
SPILMAN THOMAS & BATTLE, PLLC
P.O. Box 273
Charleston, WV 25321-0273
304-340-3800 (phone) / 304-340-3801 (fax)
amacia@spilmanlaw.com

*Counsel for Defendant Donald L. Blankenship*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been electronically filed and service has been made by virtue of such electronic filing this 6th day of October, 2015 on:

R. Booth Goodwin, II
Steven R. Ruby
Gabriele Wohl
U.S. Attorney's Office
P.O. Box 1713
Charleston, WV 25326-1713

R. Gregory McVey
U.S. Attorney's Office
P.O. Box 1239
Huntington, WV 25714-1239

*/s/ Eric R. Delinsky*
Eric R. Delinsky