# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# BECKLEY DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                           CRIMINAL ACTION NO. 5:14-cr-00244

DONALD L. BLANKENSHIP,

        Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the Defendant's *Renewed Motion to Transfer to Another District for Trial* (Document 384), filed on September 24, 2015. The Court has also reviewed *Defense Motion No. 3: Motion to Transfer to Another District for Trial* (Document 121), the *Memorandum in Support of Defense Motion No. 3: Transfer to Another District for Trial* (Document 122), the *United States' Response to Defendant's Motion for Transfer to Another District for Trial* (Document 160), the *Reply in Support of Defense Motion No. 3: Transfer to Another District for Trial* (Document 166-2), as well as all attached exhibits. Further, the Court has reviewed its June 12, 2015 *Order* (Document 280). For the reasons stated herein, the Court finds that the Defendant's motion should be denied.

In his most recent motion, the Defendant again claims that he cannot receive a fair trial in this district, and urges the Court to transfer this case, before *voir dire*, to either the District of Maryland, Northern Division, or to the Northern District of West Virginia, Martinsburg Division. (Document 384 at 1-4.) The Defendant rehashes several arguments to support his position that prejudice should be presumed, in particular, that media coverage in this district has been hostile to him, that the unique economic characteristics of this district make seating an impartial jury

"especially difficult," and that surveys conducted reveal "high rates of prejudgment and prejudice." (Document 384 at 4-6.) He also argues that since the filing of his earlier venue motion on February 20, 2014, media coverage of this case has been so "relentless, omnipresent and vicious" as to "render *voir dire* ineffective." (Document 384 at 6-8.) The Defendant claims that media coverage has created the false impression that he is on trial for causing the explosion at UBB; that media accounts from the families of miners who died at Upper Big Branch make it more likely that a jury will convict him; and that social media postings threatening the Defendant with violence show "deep-seated animosity" toward him in this district. (Document 384, at 8-17.)[1]

While the United States has not yet responded to the Defendant's latest motion, the United States' previous response to the Defendant's venue motion, filed in this Court on February 27, 2015, remains relevant.[2] The United States argued that the level of pretrial prejudice to the Defendant in this district was insufficient under Supreme Court precedent to mandate transfer of this case prior to *voir dire*. (Document 160 at 12-16.) It instead urged the Court to follow the "near-universal" rule that a change of venue is only required if *voir dire* proves "that an impartial jury cannot be empaneled." (Document 160 at 2) (citing *United States v. Bakker*, 925 F.2d 728, 732 (4th Cir. 1991)). The Defendant's reply to the first motion to transfer venue, filed on March 6, 2015, argued that the United States had misread Supreme Court precedent, and that the highly

---

[1] In making these arguments, the Defendant emphasizes statements from the Court's *Memorandum Opinion and Order Denying the Motion of the Wall Street Journal, the Associated Press, Charleston Gazette, National Public Radio, Inc., and the Friends of West Virginia Public Broadcasting, Inc., to Intervene for the Limited Purpose of Moving the Court to Reconsider and Vacate the November 14, 2014 Gag and Sealing Order* (Document 63) acknowledging that this district is "coal country," that the potential existed for prejudicial publicity to "prejudice the jury selection process and/or influence the outcome of a trial," and that there was a "substantial probability" of damage to the Defendant's right to a fair trial if the Court did not limit the docket. (Document 384 at 16) (citing Document 63 at 8-15). The Court discusses the "gag" order in more detail *infra*.

[2] The Court notes that the United States' response was filed prior to this Court's Order of June 12, 2015, transferring this case from the Beckley Division to the Charleston Division of the Southern District of West Virginia. However, the Court further notes that both parties consented to the transfer.

prejudicial media coverage of this case and the coal-focused economy of this district required transfer of this case to another district prior to *voir dire*.  (Document 166-2 at 7-14.)

"As a general premise, a change of venue is warranted when the court is satisfied that there exists in the district where the prosecution is pending 'so great a prejudice against the defendant' that 'the defendant cannot obtain a fair and impartial trial.'"  *United States v. Higgs*, 353 F.3d 281, 307 (4th Cir. 2003) (citing Fed.R.Crim.P. 21(a)).  This determination requires a "two-step process" where, first, the "district court must determine 'whether the publicity is so inherently prejudicial that trial proceedings must be presumed to be tainted,'" thus requiring change of venue before jury selection.  *Id.* (quoting *United States v. Bakker*, 925 F.2d 728, 732 (4th Cir. 1991)).  The Fourth Circuit has cautioned, however, that "only in extreme circumstances may prejudice to a defendant's right to a fair trial be presumed from the existence of pretrial publicity itself."  *Id.* (internal brackets omitted) (quoting *Wells v. Murray*, 831 F.2d 468, 472 (4th Cir. 1987)).  Likewise, presumed prejudice is a "rare case . . .."  *United States v. Jones*, 542 F.2d 186, 193 (4th Cir. 1976).

As an initial matter, the Court notes that the only issue before it at this juncture is the first prong, outlined *supra*, or whether prejudice should be presumed.  After careful review of the parties' pleadings, including the exhibits and reports attached in support, the Court finds the Defendant's arguments surrounding presumed prejudice to be unavailing.  While the Defendant has pointed to the large volume of media coverage across many outlets, this is not enough.  "Sheer volume of publicity alone does not deny a defendant a fair trial."  *Bakker*, 925 F.2d at 732.  Further, the Court finds that the articles referenced were not highly inflammatory nor factually inaccurate.

Indeed, as in *Bakker*, the Court has reviewed the materials submitted and finds "that much of the publicity is simply *not* inflammatory or prejudicial." *Id.* (emphasis in original.) The "vast majority of the evidence reflect[s] unemotional, factual reports of legal proceedings with no prejudicial impact" on the Defendant. *Id.* Importantly, although the Defendant points out that, due to comments associated with the articles found on the internet, some people believe he is on trial for the explosion at UBB and the resulting deaths, these views do not naturally flow from the articles referenced. In other words, the articles themselves do not state that the Defendant is on trial for murder or that he caused the explosion, but instead, social media comments by readers of the article suggest that is the case.

The articles are largely dispassionate even though certain commentary may not be. While it is true that this matter could be categorized as a "high profile" federal case, it has not received more publicity or inflammatory commentary than other high profile federal cases, such as the recent water crisis in Charleston, West Virginia, resulting bankruptcy, and surrounding criminal investigation(s). Additionally, this Court must "consider the source of that publicity" before presuming prejudice. *Bakker*, 925 F.2d at 733. The Defendant—in earlier motions—pointed the Court to his "documentary" as motivation of the United States for the instant charges. It is uncontested that this video, produced by the Defendant, "invited media attention," and combined with the indictment, created a media spotlight, particularly in light of the Defendant's declarations of innocence and perceived victimization.[3] *Id.* The Fourth Circuit has stated that "a defendant should not be allowed to manipulate the criminal justice system by generating publicity and then using that same publicity to support his claim that the media attention surrounding his case created

---

3   It is axiomatic that any defendant "has every right to protest his innocence," but here, the Defendant "must recognize that his pre-trial acts and statements invited media attention." *Bakker*, 925 F.2d at 733.

a presumption of prejudice." *Id.* Of course, the Defendant conveniently leaves out, or otherwise glosses over, any mention of the documentary in his instant briefing(s) or its effect on the media and potential jury pool.[4]

Finally, the Court has "determine[d] whether a jury substantially less subject to the publicity can be impaneled in another location," and finds that the coverage of this matter has extended nationwide. *Id.* at 734. For example, articles have appeared in dozens of print media, including the Los Angeles Times, the Wall Street Journal, and the New York Times. Further, the "rapid and widespread" nature of the Internet must be taken into account, including its ability to instantly transmit articles to a nationwide audience. *Id.* at 734. Although the Southern District of West Virginia is "coal country," it is not the only coal-producing region in the United States, and certainly not the only region where the trial of a former CEO of a public company would attract media attention. All of the above "weighs heavily against a change of venue based on a presumption of prejudice . . .." *Id.* at 733.

Throughout this litigation, the Court has remained "vigilant to ensure that jurors are not biased" so that any trial, if necessary, would not be "compromised by media attention surrounding [the] case." *Id.* at 734. This vigilance encompassed the earlier "gag" order, which the Fourth Circuit ultimately overturned. Far from presuming prejudice—as the Defendant now argues—that order reflected the Court's attempt, before *voir dire*, to ensure a jury could, if needed, be ultimately seated, and more importantly, was focused primarily at the parties in an attempt to prevent the potential jury pool from hearing evidence or argument outside of the well-regulated

---

4  The Defendant does note that he "has long been a subject of media coverage in this region . . ." (Document 384 at 28.)

structure of trial.[5] *See, e.g., Rideau v. State of La.*, 373 U.S. 723 (1963) (holding that under the Due Process clause of the 5th amendment, *voir dire* was insufficient to cure pre-trial prejudice where law enforcement conducted a pre-arraignment interview of the Defendant, the Defendant confessed to murder and other charges, and a film of the confession was repeatedly broadcast to potential jury pool by a local television station.)

In the end, "it is not required . . . that jurors be totally ignorant of the facts and issues involved . . . It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Bakker*, 925 F.3d at 734 (quoting *Irwin v. Dowd*, 366 U.S. 717, 722-23 (1961)). "Pretrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial." *Skilling v. United States*, 561 U.S. 358, 384 (2010) (internal reference omitted). The Defendant has failed to establish that prejudice should be presumed. Thus, *voir dire* should ensue.

## CONCLUSION

Wherefore, after careful consideration, the Court **ORDERS** that the Defendant's *Renewed Motion to Transfer to Another District for Trial* (Document 384) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.                              ENTER:        October 7, 2015

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

5   The Court appreciates that many filings in this case were written with an audience other than this Court in mind.