IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

_____
                                                )
**UNITED STATES OF AMERICA**      )
                                                )
      **v.**                                      )
                                                )     **Criminal No. 5:14-cr-00244**
**DONALD L. BLANKENSHIP**      )
_____)

**OPPOSITION TO GOVERNMENT'S MOTION TO EXCLUDE ARGUMENT
AND EVIDENCE RELATING TO MASSEY'S DISAGREEMENT
WITH THE REGULATION PROHIBITING USE OF BELT AIR**

Donald L. Blankenship, through counsel, hereby opposes the government's motion to exclude argument and evidence regarding difficulties that mine officials at UBB encountered while attempting to comply with Mine Safety and Health Administration ("MSHA") mandates regarding the use of belt air to ventilate the longwall face at UBB.[1] Mischaracterizing such difficulties as "no more than a disagreement with the requirements of a mandatory safety standard," the government contends that such evidence and argument falls within the Court's prior ruling that "argument or evidence that the mandatory mine health or safety standards were wrong, misguided, or imprudent" should be excluded. ECF No. 425 at 1. The defense, however, will introduce evidence and argue that MSHA insisted upon certain methods of ventilation that resulted in revisions to the UBB ventilation plan that were complex and difficult to comply with and that caused, among other things, difficulties in ventilating the working sections of the

---

[1] The relevant regulation is 30 C.F.R. § 75.350(b). It generally provides that "[t]he use of air from a belt air course to ventilate a working section … shall be permitted … when evaluated and approved by the district manager in the mine ventilation plan." *Id.*

mine—including, specifically, the longwall section.[2] Such evidence is both relevant and highly exculpatory.

Count One of the superseding indictment charges Mr. Blankenship with conspiracy to willfully violate mine safety and health regulations at UBB. ECF No. 169, ¶ 87(a). It further alleges that overt acts committed in furtherance of the conspiracy, *see id.* ¶ 100(j), included routine violations of regulations governing mine ventilation at UBB, *see id.* ¶¶ 16-26. And it further alleges that the cause of those ventilation-related violations was an insufficient number of coal miners at UBB and the aggressive enforcement of coal-production quotas. *Id.* ¶¶ 24, 26. At trial, the government has introduced evidence regarding the total number of various categories of ventilation-related citations and orders issued by MSHA to UBB during the indictment period. *See* Oct. 8, 2015 Tr. at 446-48; Gov't Ex. 57. And a government witness has testified about her observations regarding ventilation conditions at various places in the mine at unspecified dates. *See* Oct. 8, 2015 Tr. at 316, 321-22, 324-25, 327-28, 337-38.

Evidence will show that alleged violations of ventilation-related regulations at UBB were the result of circumstances <u>other than</u> any conspiracy charged in the superseding indictment. For example, in a memorandum dated June 7, 2010, Chris Blanchard, the former president of Performance Coal Company, which operated UBB throughout the indictment period, wrote that a substantial percentage of the ventilation-related "[o]rders" and "citations received at UBB in 2009 and 2010 <u>were caused directly from following the complex ventilation scheme mandated by MSHA</u>." Ex. A at 2 (emphasis added). More specifically, Mr. Blanchard wrote that "[t]he high percentage of orders and violations attributable to the ventilation scheme of MSHA is due

---

[2] Evidence will show, for example, that MSHA-mandated revisions to UBB's ventilation plan, which included requiring UBB to stop using belt air to ventilate the longwall face, reduced the air ventilating the longwall face by nearly 50%.

2

to the complexity of routing our returns, <u>our inability to use belt air in the face</u>, maintenance of stoppings inby the longwall and forced waste of intake air on the tailgate of the longwall." *Id.* (emphasis added).[3]

Evidence of difficulties and disagreements between MSHA and officials at UBB and Massey about the proper way to ventilate the mine in accordance with applicable regulations and of efforts by UBB and Massey officials to comply with MSHA's mandates bears directly on the causes of citations issued during the indictment period, whether involving alleged co-conspirators or not.[4] Such evidence also bears on the relationship between MSHA and Massey, which the government has argued is relevant to the charges it has brought in this case. And, in the face of testimony from a government witness describing poor ventilation conditions in the mine, such evidence will help the jury to understand the causes of such conditions.

The Court's prior ruling granting the government's motion *in limine* with respect to claims the defense has not made that mine safety regulations are misguided does not address, much less preclude, the evidence or argument described above, which the government understandably does not want the jury to hear. Because that ruling is the sole basis on which the government has moved to exclude evidence or argument regarding the use of belt air to ventilate the longwall face at UBB, the government's motion, respectfully, must be denied.

---

[3] For reasons of which the Court is aware, *see* ECF No. 421 (sealed); Oct. 9, 2015 Tr. at 417, the defense produced this memorandum to the government on October 8, 2015. Tellingly, the government filed its motion to exclude that same evening.

[4] The evidence will show that Mr. Blankenship was not party to a single communication between MSHA and officials at UBB and Massey regarding UBB's ventilation plan during the indictment period.

Dated: October 14, 2015                    Respectfully submitted,

  */s/ William W. Taylor, III*
William W. Taylor, III
Blair G. Brown
Eric R. Delinsky
R. Miles Clark
Steven N. Herman
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
202-778-1800 (phone) / 202-822-8106 (fax)
wtaylor@zuckerman.com
bbrown@zuckerman.com
edelinsky@zuckerman.com
mclark@zuckerman.com
sherman@zuckerman.com

  */s/ James A. Walls*
James A. Walls (WVSB #5175)
SPILMAN THOMAS & BATTLE, PLLC
48 Donley Street, Suite 800
Morgantown, WV 26501
304-291-7947 (phone) / 304-291-7979 (fax)
jwalls@spilmanlaw.com

  */s/ Alexander Macia*
Alexander Macia
SPILMAN THOMAS & BATTLE, PLLC
P.O. Box 273
Charleston, WV 25321-0273
304-340-3800 (phone) / 304-340-3801 (fax)
amacia@spilmanlaw.com

*Counsel for Donald L. Blankenship*

4

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been electronically filed and service has been made by virtue of such electronic filing this 14th day of October, 2015 on:

R. Booth Goodwin, II
Steven R. Ruby
Gabriele Wohl
U.S. Attorney's Office
P.O. Box 1713
Charleston, WV 25326-1713

R. Gregory McVey
U.S. Attorney's Office
P.O. Box 1239
Huntington, WV 25714-1239

                                                               */s/ R. Miles Clark*
                                                               R. Miles Clark