

WILLIAM TAYLOR, III
(202) 778-1810
wwtaylor@zuckerman.com

November 1, 2015

**VIA E-MAIL**

Ms. Karen Sword
Judicial Assistant
The Honorable Irene C. Berger
United States District Judge
Southern District of West Virginia
Karen_Sword@wvsd.uscourts.gov

    Re:    United States v. Blankenship

Dear Ms. Sword:

    We write regarding our request to conduct re-cross examination of Mr. Blanchard and, in particular, to your email of October 31 regarding the grand jury issues and Mr. Ruby's email of October 30 regarding the daily violation report issues.

## GRAND JURY ISSUES

    As to the grand jury, the government questions on Mr. Blanchard's grand jury testimony appear in the October 29, 2009 Trial Transcript at 3320:10-3326:2, 3365:1-18, 3366:10-3367:1 and in the October 30, 2009 Trial Transcript at 3621:15-3622:12, and 3639:15-23.

    This is the first time that the substance of Mr. Blanchard's grand jury testimony was raised in the trial. And the government used it to suggest that Mr. Blanchard lied on cross-examination when he testified that no conspiracy existed and to suggest that he testified to the contrary in the grand jury. It pointed to a number of questions put to him in the grand jury which it contends support its case but which have context that we should be entitled to examine about. On most if not all of the questions which were put to Mr. Blanchard in the grand jury, he had no opportunity to explain his answers. The questions were obviously carefully phrased and leading. It is clear to anyone reading the transcript that if Mr. Blanchard had been asked for anything more than "Yes" or "No" he would have provided much more illuminating explanations.

    In its redirect the government gave no such opportunity. Indeed, it prefaced its questions by raising the specter the perjury. Oct. 29, 2009 Trial Tr. at 3320:15-17. The fact is that Mr. Blanchard's evolution into a government witness occurred with lightening speed and his grand jury testimony was tightly controlled to produce the desired outcome.

    Because the first time that the specifics of Mr. Blanchard's grand jury testimony were raised was on re-direct, as impeachment, the defense has not had opportunity to question him

Ms. Karen Sword
November 1, 2015
Page 2

about it. Of course, if Mr. Blanchard had been asked about his grand jury testimony on cross examination, the proponent of his testimony would have the opportunity to have him explain or elaborate. The defense is in the same position here. The "impeachment" occurred in redirect for the first time. Therefore, the defense is entitled to question Mr. Blanchard on the nature of the questions asked in the grand jury, how limited they were, their leading nature, the lack of an opportunity to offer explanation in the grand jury due to the form of the questions, what Mr. Blanchard meant by his responses, the questions that Mr. Blanchard was not asked, the limited nature of the documents he was shown in the grand jury and, above all, the absence of an opportunity by Mr. Blankenship's counsel to ask questions in the grand jury, to be present, and to show him and refresh his recollection with the documents that contradict the government's theory. Indeed, lay jurors likely do not understand that the grand jury provided no opportunity for defense examination.

## NEW CITATIONS AND NATURE OF NOTICE RECEIVED BY MR. BLANKENSHIP ABOUT THE CITATIONS

On re-direct examination, Mr. Ruby introduced and used multiple new citation exhibits. *See, e.g.*, Government Exhibits 351-60, 362-63, 365-70, 376-78, 381-88, 390, 394. The government had not used these exhibits during its direct examination of Mr. Blanchard. Thus, Mr. Blankenship has the right to re-cross Mr. Blanchard about these exhibits and the testimony elicited about them, such as whether they were "preventable."

Additionally, with many of the new citation exhibits, Mr. Ruby asked Mr. Blanchard numerous questions which suggested that the daily violation report for that day would have provided Mr. Blankenship with detailed information about the citation, such as the full description of the condition, the likelihood of injury, and the type of injury that might result. *See, e.g.*, Oct. 30, 2015 Trial Tr. 3471:3-3473:10; *id.* at 3479:1-3481:25; *id.* at 3546:12-3548:20. It did not offer a single daily violation report to demonstrate the notice that Mr. Blankenship actually received. The government's assertion that Mr. Blankenship received detailed information about citations on a daily basis is new and false. The defense must be allowed re-cross examination of Mr. Blanchard to show the exact notice that Mr. Blanchard was asked about.

For example, with regard to Government Exhibit 354, an April 22, 2009 citation, Mr. Ruby had Mr. Blanchard read the "violation condition" cited, which discussed how a belt at the UBB mine had "accumulations of coal, float coal, and float coal dust . . . ." *Id.* at 3479:20-3480:20. He then suggested that such accumulations can "propagate an explosion," and had the witness explain what that phrase meant. *Id.* at 3480:112-3481:6. Mr. Ruby then had Mr. Blanchard read the inspector's determination of the likelihood of injury and degree of injury. *Id.*

Ms. Karen Sword
November 1, 2015
Page 3

at 3481:7-12. He did all this before asking Mr. Blanchard whether "this citation in April of 2009 was reflected in the daily reporting violations that went to defendant?" *Id.* at 3481:21-23. Mr. Ruby never introduced the actual daily violation report, which, of course, would have shown that none of the highly prejudicial information that he just had Mr. Blanchard recite from the citation was actually reflected on the daily violation report that Mr. Blankenship received.[1]

In fact, the April 23, 2009 daily violation report that reflected the violations from April 22, 2009, which was provided to the defense by the government as a certified record, begins with a cover e-mail that states that UBB had been unable to provide a report on its violations for April 22, 2009. Ex. A at 1; *see also* Ex. A at 7. It then goes on to state that, as a result, those violations would just be added into the monthly totals for UBB the next day. *Id.* Even if those violations had been reported, however, a cursory review of the daily violation report from April 23, 2009, which reported violations from April 22, 2009, illustrates that the report contains (1) no narrative information about violations, (2) no information about the likelihood of injury, (3) no information about the likely degree of injury, and (4) no information about the regulation cited at individual mines for individual violations. *Id.*

As to Mr. Ruby's suggestion in his email that his brief mention of the daily violation reports during direct examination of Mr. Blanchard obviates Mr. Blankenship's due process right to re-cross on the government's new evidence, that is also false. The government's direct examination discussion of the daily violation reports centered on two exhibits – Government Exhibit 212, which contains only page 7 of a daily violation report, and Government Exhibit 214, which contains only pages 1 and 7 of 8 pages of a daily violation report. The government never used those exhibits or the discussion around them to suggest that Mr. Blankenship received detailed information about each citation each day and certainly not about the citations it introduced on redirect; instead it used them to ask broad questions about the total number of violations at particular times. Oct. 23, 2009 Trial Tr. at 2499:13-2504:14, 2519:9-2521:24. Indeed, neither of those exhibits contains any information about individual citations, and they are missing pages that would allow the jury to properly evaluate them.[2] In short, Mr. Blankenship did not, as the government suggests, receive the narrative information about the citation condition that the government had Mr. Blanchard read. Nor did he receive much of the other information the government suggested he received on a daily basis, such as the likelihood of injury or type of injury, associated with each citation. Thus, the government's questions have not only misled the

---

[1] The introduction of the citation and the subsequent highly prejudicial testimony should never have been allowed in the first instance. As with much of the evidence, no evidence exists that this citation resulted from a conspiracy.

[2] Although the government only introduced part of the daily violation report from December 31, 2009 as Government Exhibit 212, even the full report that the government provided as a certified record does not contain any information about individual citations. Ex. B. The certified copy of Government Exhibit 214 does not even contain a cover e-mail that shows any portion of it went to Mr. Blankenship, and it certainly does not provide any information about individual citations. Ex. C.

jury, but its presentation of exhibits has deprived the jury the ability even to independently evaluate the veracity of the government's claims.

The argument that the defense could call Mr. Blanchard as its witness as a remedy for restricted cross examination would, of course, be true in every case. The sixth amendment right at issue here is not the right of a defendant to call witnesses but to confront the witness against him.

Thank you for your attention to these issues. If the Court requires additional information from the defense, we will be happy to respond.

                              Sincerely,

                              William W. Taylor, III

cc:    Booth Goodwin
       Steven Ruby