IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                   CRIMINAL ACTION NO. 5:14-cr-00244

DONALD L. BLANKENSHIP,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Defendant's *Motion to Compel Compliance with Subpoena, for Production of Brady, Rule 16, and Jencks Material, and for Evidentiary Hearing* (Document 481), filed in this Court on November 6, 2015, and all accompanying exhibits. The Court has also reviewed the *United States' Response to Defendant's Motion to Compel Compliance with Subpoena, for Production of Brady, Rule 16, and Jencks Material, and for Evidentiary Hearing* (Document 496) and all accompanying exhibits. For the reasons set forth herein, the Court finds that the Defendant's motion should be denied.

The Defendant moves for an order instructing the Mine Safety and Health Administration ("MSHA") to comply with a subpoena issued by this Court on September 9, 2015, and an order that the United States produce all evidence which falls under the scope of Fed.R.Crim.P. 16[1]

---

[1] Rule 16, "Discovery and Inspection," requires in relevant part that the United States in a criminal prosecution disclose, at the request of the defendant, any oral statements by the defendant made in response to an interrogation by a government agent and intended for use at trial. Fed.R.Crim.P. 16(a)(1)(A). Rule 16 also requires disclosure, upon the defendant's request, of any written or recorded statements or recorded grand jury testimony by the defendant in the government's custody or control. Fed.R.Crim.P. 16(a)(1)(B)(i)-B(ii). Finally, Rule 16 requires disclosure, upon the defendant's request, of any written record containing the substance of any "relevant oral statement" made by the defendant to a person the defendant knew was a government agent. Fed.R.Crim.P. 16(a)(1)(b)(ii).

("Rule 16"), 18 U.S.C. §3500[2] (the "Jencks Act"), and the holdings of the Supreme Court in *Jencks v. United States,* 353 U.S. 657, 672 (1957),[3] and *Brady v. Maryland*, 397 U.S. 742 (1970)[4].

The basis for the Defendant's motion consists of two declarations filed in an unrelated civil action (the "FOIA action") brought in the District Court for the District of Columbia by Performance Coal Company ("Performance"), which operated the Upper Big Branch ("UBB") mine under the corporate umbrella of Massey Energy. The former Chief Executive Officer of Massey Energy is the Defendant in this case. Performance brought suit under the Freedom of Information Act ("FOIA"), alleging that MSHA had failed to comply with FOIA requests for records relating to UBB. (Def. Mot. to Compel Compliance with Subpoena, at 1, citing *Performance Coal Co., et al. v. United States Dep't of Labor, et al.*, No. 10-cv-01698, ECF No. 1 (D.D.C. Oct 5, 2010.)) In that action, Performance sought discovery about MSHA's "efforts to frustrate" FOIA requests, and submitted two declarations in support: one by William "Bill" Ross ("Ross'), a former MSHA employee then working for Massey, and the other from Philip Ellis ("Ellis"), an employee of Massey subsidiary Independence Coal Co.  (*Id*. at 2.)

Ross states that during his employment at MSHA, he "regularly preserved important documents" beyond the time frame set forth by MSHA retention policies, and upon his departure

---

[2] The Jencks Act, in relevant part, requires a district court, upon the defendant's motion, to produce any statement of a witness called by the United States related to the matter on which the witness testified.  18 U.S.C. §3500.

[3] In *Jencks v. United States*, the Supreme Court held that a criminal action must be dismissed where the Government, under a claim of privilege or other legal argument, refuses to comply with an order by the trial court to produce for the defendant's inspection and admission into evidence any relevant statements or reports by a government witness, when such reports are in the possession of the government or a government witness, and relevant to the witness' testimony.

[4] In *Brady v. Maryland*, the Supreme Court held that the Fourteenth Amendment due process clause required state prosecutors to disclose evidence material to the defendant's guilt or innocence to the defendant. The Supreme Court subsequently applied the same requirement to the Fifth Amendment due process clause, and held that the disclosure obligation existed absent a motion by the defendant.  *See United States v. Bagley*, 473 U.S. 667, 675 (1985).

in 2008, left documents "related to Upper Big Branch" in MSHA's District 4 office in Mount Hope, West Virginia.  (Decl. of William Lowell "Bill" Ross, att'd as Ex. A to Def. Mot. to Compel Compliance with Subpoena, at 3.) (Document 481-1.)   The documents included "maps, ventilation plans, methane and dust control plans, internal MSHA documents and correspondence," as well as "documents related to … floor bursts" at UBB in 2003 and 2004.  (*Id*.)   In his declaration, Ross notes that he was replaced at MSHA by Joseph Mackowiak ("Mackowiak"), and that in "June and July" of 2010, Ross and Ellis went to the District 4 office to meet with Mackowiak and his secretary, Dixie Chambers.  (*Id*. at 4.)   Ross declared that he and Ellis spoke with Chambers, and Ross inquired about an "MSHA report from 2004 about a floor burst" at UBB.  (*Id*.)   Ross indicates Chambers stated that "…Mackowiak had destroyed a significant amount of documents within his control at MSHA," and that Chambers "specifically recalled Mr. Mackowiak walking out of the Mt. Hope facility carrying trash bags filled with documents." (*Id*.)   He then stated "…if what Mrs. Chambers said was true," then the "document removal and/or destruction was improper and highly suspicious." (*Id*.)   Ross essentially affirmed his declaration during an *in camera* hearing in this proceeding.

The Defendants also cite a declaration by Ellis in the FOIA action, confirming that Ross and Ellis spoke with Chambers, that "Mrs. Chambers worked for Mr. Ross" during Ross's tenure at MSHA, and that she also previously worked for Mackowiak. (Decl. of Phillip Ellis, att'd as Ex. B to Def. Mot. to Compel Compliance with Subpoena, at 2.) (Document 481-2.)   Ellis states that Chambers told Ellis and Ross "that Mr. Mackowiak had thrown away a number of important government documents in a suspicious manner," and also states that "Mrs. Chambers said that

3

there were documents pertaining to the Upper Big Branch mine among the documents that were destroyed." (*Id*.)

The District Court for the District of Columbia denied the discovery request. (Def. Mot. to Compel Compliance with Subpoena, at 5, citing *Performance Coal*, No. 10-cv-01698, at 18 n. 4.) Noting that "[n]o court has ever resolved whether Mr. Ross and Mr. Ellis's accounts were credible or whether [MSHA] did in fact illegally destroy documents," the Defendant argues that the declarations "raise serious concerns" that MSHA may have "destroyed, deleted or suppressed" evidence relevant to this case. (*Id*. at 6.) The Defendant emphasizes that MSHA has "produced few documents, especially emails" in response to the Defendant's subpoena in this case, issued by the Court on September 9, 2015. (*Id*. at 5, citing Documents 245, 283, and 387.) Similarly, the Defendant argues that "[t]he government … has produced few emails of MSHA employees," despite the constant use of email by MSHA inspectors and supervisors. (*Id*. at 5-6.) The Defendant notes that Mackowiak and Chambers submitted declarations denying the destruction, but argues that these "do little to allay the concern" that the Defendant has been "deprived" of evidence to which he has "a constitutional and statutory right". (*Id*. at 6.)

In opposing the motion, the United States asserts that MSHA has complied with all subpoenas in this case, and the United States has "complied and continues to comply with its discovery obligations." (Resp. to Def. Mot. to Compel Compliance with Subpoena, at 1.) The United States notes that the declarations cited by the Defendant are unsubstantiated hearsay, and that the information therein was directly rebutted by declarations in the same case by Chambers and Mackowiak. (*Id*. at 2.) In her declaration, Chambers states, in pertinent part, that she did not "tell [Ross or Ellis] that [Mackowiak] removed, destroyed, or transported 'trash bags filled

4

with documents'" or that Mackowiak "threw 'away a number of important government documents in a suspicious manner,'" nor did she "observe or have knowledge of" such acts. (Decl. of Doris Ann Chambers, att'd as Ex. A to United States' Response to Def. Mot. to Compel Compliance with Subpoena, at 3.) (Document 496-1.) Similarly, Mackowiak states that "I have never destroyed nor transported documents from the District 4 office in trash bags for disposal," and that "all files left by [Ross] … remain in the same file cabinets … where they were located upon his departure." (Decl. of Joseph C. Mackowiak, att'd as Ex. B to United States Response to Def. Mot. to Compel Compliance with Subpoena, at 2.) (Document 496-2.)

The Court has previously ordered the United States to produce all material required under *Brady* by June 22, 2015. (Document 279.) The Defendant's motion, and the declarations by Ross and Ellis, do not provide sufficient grounds to require the Court to issue a subsequent order, or to hold further evidentiary hearing. It is beyond dispute that the Ellis and Ross declarations are rife with hearsay, and thus, subject to the same credibility concerns as any other out-of-court statement by an unavailable declarant. In fact, the most relevant parts of the declarations – the recollection by Ross and Ellis of purported statements by Doris Chambers – are entirely hearsay. Nonetheless, the Defendant requests that the Court take these statements at face value, and suggests that, in combination with the Defendant's assertion that the Government and MSHA have produced "few documents" and "few emails," the statements should raise "serious concerns" for the Court about whether other documents may have been destroyed.

The Court will first address the content of the Ross and Ellis declarations. Even if the Court assumes the credibility of the declarations, neither Ross nor Ellis claim to have observed the destruction of documents by Mackowiak, or the transportation of documents from the MSHA

5

District 4 office. In fact, their declarations provide no specific details about any documents which may have been destroyed. Rather, they primarily focus on a recollection of a conversation with Chambers, where Chambers allegedly made vague allegations about improper document destruction. The declarations of Ross and Ellis provide no specifics about what documents may have been destroyed. Rather, Ross's declaration explicitly states that "… Chambers was not specific about to what she was referring in our conversation." (Decl. of William Lowell "Bill" Ross, at 5.) Even if accurate, the events at issue in the declarations allegedly occurred at least four years before the initiation of this case. The only potential link to this case, in fact, is that the allegedly destroyed documents may have related to a 2004 event at UBB, and that link is tenuous. Ross declared that his question about MSHA reports related to a 2004 event at UBB "prompted" the statements by Chambers, and Ellis declared that some of the allegedly destroyed documents related to UBB. (*Id*. at 4; Decl. of Phillip Ellis, at 2.) Such vague allegations of impropriety, without more, do not support an inference that the Government has violated its obligations in this case under Rule 16, the Jencks Act, *Jencks* or *Brady*, and thus, require no additional action by the Court.

The Defendant's suggestion that the Ross and Ellis declarations should cast doubt on the production of email records by MSHA and the United States in this case is even more misplaced. Nothing in the Ross or Ellis declarations suggest that Mackowiak destroyed email records. Rather, the Defendant seems to suggest that the narrow scope of these declarations requires the Court to apply a broad sword of skepticism to all the evidence produced by the Government and MSHA in this case, and presume violations of relevant federal law and Supreme Court precedent. Such an approach is plainly unsupported by the content of the Ross and Ellis declarations.

6

These conclusions are bolstered by the declarations of Chambers and Mackowiak, and by Ross's own testimony in this case. Chambers expressly disavowed making any statements to Ross or Ellis about Mackowiak's destruction or transportation of "trash bags of documents," and also denied informing Ross and Ellis that Mackowiak discarded "important government documents in a suspicious manner." (Decl. of Doris Chambers, at 3.) Meanwhile, on November 5, 2015, the Court examined Ross *in camera* about the content of the declaration. Ross testified that he did not see any destruction of documents, and that Chambers did not provide any details about the contents of the "trash bags of stuff" Mackowiak allegedly removed from the District 4 office. (Tr. at 4401:10-18.) Ross also testified that he was not permitted to check the office for documents he had preserved. Rather, he testified that he merely "asked" Chambers about whether documents were still there. (*Id*. at 4405:7-12.)

The Court does note Ross' testimony that Chambers informed him that documents related to events at UBB in 2003 and 2004 were "missing." (*Id*. at 4401:22.) Ross' sworn testimony is clearly more reliable than his declaration, and those of Ellis, Chambers and Mackowiak.[5] However, hearsay problems remain as to Ross' recollection of the conversation with Chambers, and Mackowiak's declaration directly rebuts Ross's testimony. Mackowiak declared that he never "destroyed nor transported documents" from the District 4 office, and that all files that Ross left at the District 4 office, "including those that could otherwise have been properly disposed of pursuant to MSHA's Records Schedule," remain in the same location. (Decl. of Joseph Mackowiak, at 4.) Mackowiak also declared that "[c]opies of any and all documents located in District 4" related to the "2003 and 2004 methane outbursts at the UBB mine" were "provided to

---

[5] The Court notes that all four declarations were made pursuant to 28 U.S.C. §1746, and thus, made under penalty of perjury. 28 U.S.C. §1746.

7

the MSHA FOIA staff for review" in response to Performance Coal's FOIA requests. (*Id.*) Absent additional testimony or evidence regarding alleged document destruction by MSHA or any MSHA employee, and any additional link between such acts and this case, the Court sees no legal basis or justification for granting the Defendant's motion.

Wherefore, following thorough review and careful consideration, the Court **ORDERS** that the *Motion to Compel Compliance with Subpoena, For Production of Brady, Rule 16, and Jencks Material, and for Evidentiary Hearing* (Document 481) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: December 9, 2015

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA