IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                          CRIMINAL ACTION NO. 5:14-cr-00244

DONALD L. BLANKENSHIP,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant's Motion to Dismiss Alpha's Restitution Claims, or, in the Alternative, for Discovery and an Evidentiary Hearing* (Document 563), the *Memorandum in Support* (Document 564), the *United States' Response to Defendant's Motion to Continue Sentencing Hearing, or, in the Alternative, to Bifurcate Sentencing Hearing* (Document 567), and the *Reply in Support of Defendant's Motion to Dismiss Alpha's Restitution Claims, or, in the Alternative, for Discovery and an Evidentiary Hearing* (Document 568). For the reasons set forth herein, the Court finds that the Defendant's motion should be granted and Alpha's claims for restitution be dismissed.[1]

---

[1] In its response, the United States argues that the Court should deny the Defendant's motion as "unripe," because, while the United States had indicated, at the time of its filing, that Alpha intended to seek restitution at the Defendant's sentencing hearing, the probation officer's presentence report in this case was "in draft form only," and thus, any opinion by this Court on the availability of restitution would be an advisory opinion barred by the jurisdictional requirements of Article III of the United States Constitution. (Resp., at 1.) Subsequently, the United States Probation Officer assigned to this case submitted to the Court and the parties a final presentence investigation report (PSR), setting forth in precise detail Alpha's request for $13,472,200.21 in restitution for expenses for participation in the investigation and prosecution of this case, $4,310,671.21 for indemnification of former Massey employees who cooperated as witnesses in this case, and $10,004,935 for the payment of certain violations at the Upper Big Branch-South mine. (PSR, at ¶107-111.) The Court finds that Alpha has set forth a claim for restitution which may be

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On April 5, 2010, an explosion took place at the Upper Big Branch-South mine (UBB), a facility operated by Massey Energy Company (Massey) in Montcoal, West Virginia. (*Id*. at ¶1-2.) The explosion killed twenty-nine Massey employees, and led to a comprehensive investigation into Massey's safety and compliance practices by multiple federal and state agencies, including the Mine Safety and Health Administration (MSHA), the United States Department of Justice, and the United States Attorney's Office for the Southern District of West Virginia. At the time of the explosion, the Defendant served as Chairman and Chief Executive Officer at Massey. The Defendant resigned from Massey effective December 31, 2010.

In June of 2011, Alpha acquired control of Massey's operations in a merger transaction. (PSR, at ¶100.) Around the same time, Alpha agreed to cooperate with the United States in the investigation of the UBB explosion and Massey's compliance and safety practices at UBB. In a proxy statement explaining the terms of the acquisition to its shareholders, Alpha acknowledged that the acquisition of Massey included the risk of certain regulatory, legal, and investigatory expenses. (Mem. in Supp. of Def.'s Mot. to Dismiss, at 16.) Specifically, Alpha indicated that:

> "[T]he U.S. Attorney's Office and the federal Mine Safety and Health Administration, in conjunction with the State of West Virginia, are currently investigating the UBB explosion. On February 28, 2011, Massey's head of security at the UBB mine was charged with obstruction of justice and making false statements in connection with the U.S. Attorney's investigation. On March 22, 2011, federal criminal charges were filed against a former Massey employee who worked at UBB until August 2009 in connection with falsifying his foreman's license and making false statements in connection with the U.S. Attorney's investigation.
>
> The outcomes of these pending and potential cases, claims and investigations are uncertain. Depending on the outcome, these actions could have adverse effects or

---

properly ruled upon by the Court prior to sentencing, without violating the "case and controversy" requirements of Article III.

cause reputational harm to Alpha. Alpha may not resolve these actions favorably or may not be successful in implementing remedial safety measures that may be imposed as a result of some of these actions and/or investigations. Also, under the merger agreement, Alpha has agreed to leave in place and not to modify those provisions granting rights to indemnification and exculpation from liabilities for acts or omissions occurring at or prior to the effective time of the merger and related rights to the advancement of expenses in favor of any current or former director, officer, employee or agent of Massey contained in the organizational documents of Massey and its subsidiaries and certain related indemnification agreements."

(*Id*. at 16-17) (citations omitted.)

Pursuant to the merger agreement, and its agreement to cooperate with the United States Attorney for the Southern District of West Virginia, Alpha and its counsel reviewed documents, interviewed former Massey employees, and responded to document requests from the United States. (PSR, at ¶100.) On December 6, 2011, Alpha executed a non-prosecution agreement with the United States, wherein Alpha agreed not to contest, and to pay in full, "any citation or order" issued to Massey Energy "as a result of conditions which existed or conduct which occurred prior to or on June 1, 2011, that has not been assessed as of December 6, 2011," for a total payment of $1,250,000. (Non-Prosecution Agreement, at 7(b), att'd as Ex. C to Def.'s Mot. to Dismiss.) Alpha further agreed not to contest "any citation or order issued by MSHA on December 6, 2011, in connection with the investigation of the UBB explosion ...," and to pay "$10,828,191 for all such citations…" (Id., at 7(c), att'd as ex. C to Def.'s Mot. to Dismiss.) Alpha further agreed to cooperate fully with the United States Attorney and other federal law enforcement and regulatory agencies, to "… secure the attendance and truthful statements or testimony of any officer, agent, or employee of Massey or Alpha at any meeting or interview or before the grand jury or at any judicial proceeding related to the conduct described in this Agreement," and to "provide the Government … all non-privileged information, documents, records, or other tangible evidence

3

about which the Government or any designated law enforcement agency inquires" in connection with any investigation related to the conduct described in the agreement. (*Id*. at ¶9, att'd as Ex. C to Def.'s Mot. to Dismiss.)

The Defendant was first charged in this case in a four-count Indictment on November 13, 2014. On March 10, 2015, the Charleston, West Virginia, Grand Jury returned the Superseding Indictment against the Defendant. Count One charged the Defendant with conspiracy to willfully violate mandatory mine safety and health standards and to defraud the Mine Health and Safety Administration ("MSHA"), an agency of the United States. Count Two charged the Defendant with knowingly and willfully making materially false, fictitious and fraudulent statements and representations to the Securities and Exchange Commission, and Count Three alleged that the Defendant made and caused to be made untrue statements of material fact and omitted and caused to be omitted material facts in connection with the sale and purchase of Massey Class A Common Stock. The Defendant was arraigned on the Superseding Indictment on March 24, 2015. Trial began on October 1, 2015.

At trial, the United States relied significantly on documents produced by Alpha. The United States also called as witnesses current and former Massey employees, who were provided counsel by Alpha. On December 3, 2015, the jury returned a verdict, finding the Defendant guilty of conspiracy to willfully violate mine safety and health standards, in violation of 18 U.S.C. §371 and 30 U.S.C. §820(d). The jury acquitted the Defendant on all other counts. Pursuant to this conviction, the United States has set forth its intent to support a claim by Alpha for restitution from the Defendant, based on the costs of cooperating with the investigation, the costs of providing counsel to former Massey employees and officers who participated in the investigation and/or

testified at trial, and the costs of fines paid by Alpha in accordance with the non-prosecution agreement.

After the Defendant's conviction, this Court ordered the United States Probation Office to prepare a presentence investigation report pursuant to 18 U.S.C. §3552. In its submissions to the United States Probation Officer assigned to this case, the United States represented that Alpha spent $13,472,200.21 to cooperate with the investigation of the UBB explosion and Massey's compliance and safety policies, and the prosecution of the Defendant in this case. (PSR at ¶108.) The United States further represented that Alpha spent $4,310,671.21 to represent seven former Massey employees or officers who participated in the investigation. (*Id*. at ¶109.) Finally, the United States represented that Alpha paid $10,004,938 in penalties for "certain mine-safety violations at UBB." (*Id*. at ¶110.) The United States indicated that "Alpha is a victim of [the Defendant's] offense of conviction and should receive restitution pursuant to the Victim and Witness Protection Act (VWPA)," 18 U.S.C. §3663. (Id. at ¶97.)

The United States Probation Officer prepared a draft PSR on February 29, 2016. Both the United States and the Defendant submitted timely objections to the report. On March 7, 2016, the Defendant filed the present motion. The United States filed its response on March 14, 2016, and the Defendant filed his reply on March 18, 2016. The United States Probation Officer filed the final PSR on March 21, 2016, which contained the United States' position in support of Alpha's claim for restitution. The Defendant's motion is ripe for review by this Court.

## APPLICABLE LAW

In sentencing a criminal defendant, federal courts have no inherent power to award restitution to victims of a crime. Federal courts may only do so where authorized by statute. *See,*

*e.g.*, *United States v. Hensley*, 91 F.3d 274 (1st Cir. 1996); *United States v. Hicks*, 997 F.2d 594 (9th Cir. 1993). The Victim and Witness Protection Act (VWPA), 18 U.S.C. §3663, and the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. §3663A, are the primary statutes under which federal courts may impose restitution for criminal defendants. However, these statutes only authorize restitution for certain enumerated federal offenses.[2] Under 18 U.S.C. §3556, "Order of Restitution," the Court, "in imposing a sentence on a defendant who has been found guilty of an offense shall order restitution in accordance with section 3663A, and *may order* restitution in accordance with section 3663." 18 U.S.C. §3556 (emphasis added). Thus, restitution under the VWPA is discretionary, while restitution under the MVRA is mandatory for the offenses enumerated by each statute.

The VWPA authorizes discretionary restitution for offenses "under [title 18 of the United States Code], section 401, 408(a), 409, 416, 420, or 422(a) of the Controlled Substances Act (21 U.S.C. 841, 848(a), 849, 856, 861, 863) … or section 5124, 46312, 46502, or 46504 of title 49 [of the United States Code] …" 18 U.S.C. §3663(a)(1)(A).[3] However, the VWPA limits restitution to "victims" of the offense, and defines a "victim" as a "person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered …" 18 U.S.C.

---

2   There are other restitution statutes within Title 18, such as 18 U.S.C. §2264, which govern restitution for the victims of domestic violence and stalking under federal law. However, these provisions are narrowly tailored to provide restitution for specific categories of offenses, and none address violations of either 18 U.S.C. §371 or 30 U.S.C. §820(d).

3   The parties have vigorously contested the questions of whether (1) restitution is legally permissible under any circumstances for the offense of conviction in this case, and (2) if so, whether restitution may only be imposed in lieu of the statutory penalties authorized by 18 U.S.C. §371 and 30 U.S.C. §820(d). These matters of statutory interpretation would require resolution if the Court were to determine that Alpha was a victim of the offense of conviction in this case, and further determine that discretionary restitution was appropriate in light of the Defendant's conduct and the injuries to Alpha which arose therefrom. However, because the Court, as explained *infra*, has determined that Alpha was not a victim, as that term is defined under the VWPA and the relevant Supreme Court and Fourth Circuit precedent, these questions are moot.

3663(a)(1)-(2). The Supreme Court has explained that the "language and structure of [Section 3663] make plain Congress' intent to authorize an award of restitution only for the loss *caused by the specific conduct that is the basis of the offense of conviction.*" *Hughley v. United States*, 495 U.S. 411, 413, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990) (emphasis added). Courts have further found that the "direct and proximate" language of the VWPA does not allow awards of restitution where a claimant suffers "a causally related or derivate loss as a result" of the offense of conviction. *United States v. Mintz*, 2010 WL 3075477 (E.D.N.C. Aug. 5, 2010) (Flanagan, C.J.) (citing *United States v. Shepherd*, 269 F.3d 884, 886-87 (7th Cir. 2001).) Thus, the Court may only order restitution under Section 3663 if the facts underlying the offense of conviction establish that the defendant's conduct was the direct and proximate cause of the injuries suffered by the alleged victims. *See, e.g.*, *United States v. Pass*, 610 Fed. Appx. 332-333 (4th Cir. 2015) (unpublished). If the specific conduct for which the Defendant was charged does not result in the alleged losses, restitution is inappropriate. *See, e.g.*, *United States v. Broughton-Jones*, 71 F.3d 1143, 1145 (4th Cir. 1995) (restitution inappropriate where defendant pled guilty to perjury, and sentencing court imposed restitution for facts giving rise to dismissed charge of wire fraud); *United States v. Blake*, 81 F.3d 498, 503 (4th Cir. 1996) (restitution inappropriate where defendant pled guilty to using stolen credit cards, and sentencing court imposed restitution for related stolen property); *United States v. Freeman*, 741 F.3d 426, 433-434 (4th Cir. 2014) ("[P]ersuaded by our sister circuits' reasoning, we join them in holding that awards of restitution ordered as a condition of supervised release must compensate "only for the loss caused by the specific conduct that is the basis of the offense of conviction.") As *Freeman* indicated, this rule has been upheld across other circuits. *See, e.g.*, *United States v. Batson*, 608 F.3d 630, 637 (9th Cir. 2010) ("[w]e now join our sister

circuits in holding that an award of restitution … can compensate 'only for the loss caused by the specific conduct that is the basis for the conviction,' so long as that offense does not involve an element of scheme, conspiracy, or pattern of conviction.")[4]

The Fourth Circuit's analysis in *Freeman* is particularly instructive on this point. In that case, the defendant pled guilty to one count of obstructing a bankruptcy proceeding, in violation of 18 U.S.C. §1512(c)(2), and the plea agreement indicated that the trial court was empowered to require restitution under Section 3663 and/or Section 3663A. *Id*. The statement of facts addendum to the plea agreement indicated that the defendant, a pastor, had used church funds for improper purposes, and persuaded church members to take out loans to finance his lavish lifestyle. As a result of these loans, several victims allegedly lost their homes. *Id*. The presentence investigation report did not recommend restitution, acknowledging that there "[were] no specific victims in this case." *Id*. at 430. However, at sentencing, the Government produced victim impact statements, and specific requests for restitution. *Id*. The Court ultimately ordered that the defendant make monthly payments of at least $750 in restitution as a condition of supervised release. *Id.* at 431. On appeal, the Fourth Circuit reversed, finding that restitution was only authorized for "the offense," and not for "relevant conduct," "a related offense," or "a factually relevant offense." *Id*., citing *Hughey*, 495 U.S. at 418 ("[H]ad Congress intended to permit a victim to recover for losses stemming from all conduct attributable to the defendant, including conduct unrelated to the offense, Congress would likely have chosen language other than 'the offense,' which refers without question to the offense of conviction.") With that limitation in

---

[4] While *Freeman* and *Batson* address restitution imposed as a condition of supervised release, pursuant to Section 3583(b), in both cases the courts relied on the Supreme Court's rationale in *Hughey*, requiring restitution to be linked to the specific conduct leading to the offense of conviction.

mind, the Court reasoned that the victim's losses were not caused by the conduct which formed the basis for the defendant's conviction for obstruction, and restitution was, therefore, inappropriate. *Id*. at 437.

In conspiracy convictions, however, "broader restitution orders encompassing losses that result from a criminal scheme or conspiracy, regardless of whether the defendant is convicted for each criminal act within that scheme," are permissible. *United States v. Ocasio*, 750 F.3d 399, 412 (4th Cir. 2014) (quoting *United States v. Henoud*, 81 F.3d 848, 488 (4th Cir. 1996). Even under this rule, however, "an award of restitution is only appropriate if the act that harms the purported victim 'is either conduct underlying an element of the offense of conviction, or an act taken in furtherance of a scheme, conspiracy, or pattern of criminal activity that is specifically included as an element of a conviction.'" *Id*. at 412-13, quoting *Blake*, 81 F.3d at 506.

## DISCUSSION

In seeking to dismiss Alpha's claims to restitution, the Defendant asserts that his conduct in this case was not the "direct and proximate" cause of the losses suffered by Alpha, for which the company now seeks restitution.[5] To that end, the Defendant argues that Alpha is not a victim, but rather "a volunteer and an opportunist" whose "knowing and voluntary act[ions]," including

---

[5] The Defendant also argues, *inter alia*, that Alpha, as successor-in-interest to Massey, was a co-conspirator in this case, and should be barred from collecting restitution. (Def. Mem. in Supp. of Mot. to Dismiss, at 21.) While noting that the United States did not name Massey as a co-conspirator at trial, the Defendant supports this point by referencing language from the Superseding Indictment and statements from the closing argument of the United States linking Massey to the Defendant's wrongful conduct, and implying that Massey benefitted from the Defendant's conspiracy. (*Id*. at 21-22.) Because the Court has found that Alpha was not a "victim" within the meaning of 18 U.S.C. §3663, the Court is not required to address the question of whether Alpha was a co-conspirator, and, if so, whether Alpha is, therefore, barred as a matter of law from discretionary restitution. Nevertheless, the Court notes that the Defendant's arguments on this point are persuasive, and without making a finding on the issue, notes that awarding restitution to the successor in interest of an entity which was one of the intended beneficiaries of the conduct resulting in the offense of conviction would be contrary to the statutory purpose of restitution.

the acquisition of Massey on favorable terms, were the "direct and proximate cause" of the losses for which it seeks restitution (Def. Mem. in Supp. of Mot. to Dismiss, at 16.) The Defendant notes that by acquiring Massey after the investigation into the UBB explosion had begun, Alpha was "fully aware" of the expenses it might incur as a result of the acquisition, and even disclosed this risk to investors in its proxy statement. (*Id*. at 17.) As a result, the Defendant claims that this "informed business decision" was an independent and intervening cause of the losses Alpha claims to have suffered, rather than the conduct giving rise to the Defendant's conviction in this case. The Defendant further argues that Alpha's entry into a non-prosecution agreement with the United States imposed certain obligations on the company which gave rise to expenses for which it now seeks restitution, in particular, for costs associated with the indemnification of Massey employees who cooperated with the United States, and the fines paid for citations issued at UBB. Thus, the Defendant argues that restitution cannot be imposed for expenses which Alpha voluntarily agreed to accept in order to receive the benefits of a cooperative relationship with the United States. (*Id*.) Finally, the Defendant argues that Alpha did not actually suffer an economic loss – because it factored in potential liabilities for the UBB explosion, the investigation thereof, and payment of citations to the United States into the share price it offered for Massey. (*Id*. at 19-20.)

The United States, in its response, did not set forth a position on whether Alpha was a victim, and instead requested a hearing on restitution. (United States' Resp., at 2.) However, in its submissions to the United States Probation Officer, the United States argued that the Defendant's conspiracy was the direct and proximate cause of Alpha's losses. (PSR, at ¶102.) The United States claims that the losses, including the costs of cooperating in the investigation and

of fines paid for violations at UBB, "flowed directly from the crime itself and were entirely foreseeable consequences of it." (*Id.* at 103.)

The Court finds that Alpha was not a victim of the Defendant's conduct, as that term is defined in the VWPA and relevant Supreme Court and Fourth Circuit precedent. For the Court to exercise its discretion and award restitution to Alpha, the Court would be required to find that the alleged harm, including expenses associated with Alpha's cooperation in the investigation that followed the explosion, fines paid for violations at UBB, and the representation of former Massey employees who cooperated with the investigation and/or testified at trial, were the direct and proximate result of the Defendant's conduct. Such a finding has no basis in law or fact. It is clear to the Court that Alpha (1) acquired Massey over one year after the UBB explosion or the end of the indictment period; (2) calculated a value for Massey which incorporated potential losses arising from the investigation; (3) voluntarily agreed to cooperate with the United States in order to reduce the potential for criminal and/or civil penalties arising from Massey's conduct; (4) entered into a non-prosecution agreement as a result of this cooperation, through which it undertook to pay certain sums for violations at UBB, as well as produce documents to the United States; and (5) adhered to this agreement by producing documents that were introduced by the United States in this case, and indemnifying the legal expenses of former Massey employees who testified for the United States in this case.

Each of these decisions resulted in significant financial costs. However, the Fourth Circuit has made clear that "… awards of restitution … must compensate only for the loss caused by the specific conduct that is the basis of the offense of conviction." *Freeman*, 741 F.3d at 434. Here, each of the decisions that resulted in Alpha's claimed losses were made after the conclusion of the

conspiracy for which the Defendant was convicted in this case, were made absent any influence by the Defendant, and represented an independent, intervening act severing any imaginable causal link to the Defendant's conduct. In basic terms, at the end of the indictment period, Alpha had incurred none of the expenses for which it claims restitution. The conspiracy for which the Defendant now stands convicted ended without "directly and proximately" injuring Alpha. Alpha incurred its now claimed financial "injury" at least a year later, and only after it voluntarily acquired Massey and voluntarily entered into the non-prosecution agreement with the Government. Thus, Alpha is not a victim as defined by the VWPA.[6]

## CONCLUSION

Wherefore, following thorough review and careful consideration, the Court **ORDERS** that the *Defendant's Motion to Dismiss Alpha's Restitution Claims, or, in the Alternative, for Discovery and an Evidentiary Hearing* (Document 563) be **GRANTED**, and that the restitution claims of Alpha Natural Resources be **DISMISSED**.

---

[6] The Court notes that even if it were to find that Alpha were a victim, it is questionable whether Alpha's losses are eligible for restitution under 18 U.S.C. §3663. Section 3663(b) sets forth in specific detail the types of losses which are compensable in restitution by the Court. Section 3663(b)(4) allows the Court to "in any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. §3664(b)(4). The United States argues that this provision allows for recovery in restitution of Alpha's investigation expenses. (PSR, at ¶105.) The Court regards this claim with a significant degree of skepticism based on the statutory language, and notes that the precedents cited by the United States in support of this theory, including *United States v. Skowron*, 839 F.Supp.2d 740, 747-49 (S.D.N.Y. 2012), and *United States v. Abdelbary*, 746 F.Supp. 3d 570, 574-75 (4th Cir. 2014) are readily distinguishable from the restitution claims in this case. The United States further asserts that Section 3663(b)(1)(B), which empowers the Court, in cases involving lost property, to award "the value of the property …," allows Alpha to recover fines paid for violations at UBB. (PSR, at ¶104, citing 18 U.S.C. §3663(b)(1)(B).) The Court also regards this claim with a significant degree of skepticism, and notes that the only precedent cited by the United States in support of its position, *United States v. Johnson*, 657 F.Supp. 358, 361 (D.Conn. 1987), is not binding precedent in the Fourth Circuit, and was not decided under 18 U.S.C. §3663, but rather under two now defunct restitution statutes, 18 U.S.C. §3579 and 18 U.S.C. §3580.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, and to the United States Probation Office.

ENTER: April 4, 2016

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA