UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Beckley Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff/Respondent, ) | |
| ) | |
| v. ) | Criminal No. 5:14-CR-00244 |
| ) | Civil No. 5:18-CV-00591 |
| ) | |
| DONALD L. BLANKENSHIP ) | |
| ) | |
| Defendant/Movant. ) | |

## MOTION FOR EVIDENTIARY HEARING

Donald L. Blankenship, by and through counsel, respectfully moves this Court to order an evidentiary hearing regarding the issues raised in Mr. Blankenship's Motion to Vacate and Set Aside Sentence and Conviction Pursuant to 18 U.S.C. § 2255 ("2255 Motion").

The existing record demonstrates that Mr. Blankenship is entitled to the relief requested in his 2255 Motion. Nonetheless, there are certainly important factual issues that remain unresolved and which would provide further support for the requested relief. Thus, if the Court is not inclined to grant Mr. Blankenship's 2255 Motion on the papers, an evidentiary hearing is needed to resolve these factual issues. While this motion highlights some of the key factual disputes that Mr. Blankenship would seek to resolve at the hearing, it is not an exhaustive list of what he would plan to establish.

### LEGAL STANDARD

Under Rule 8 of the Rules Governing Section 2255 Proceedings, the Court has an obligation to determine whether an evidentiary hearing is warranted. The decision to order an

1

evidentiary hearing is left to the "common sense and sound discretion" of the judge when deemed necessary "to fairly resolve the issues presented and provide an adequate record for appellate review." *United States v. Jones*, 600 Fed. Appx. 74, 80 (4th Cir. 2014). Evidentiary hearings are especially favored to "assess the credibility of witnesses" and to resolve "material factual issues." *Id.* (internal quotations omitted).

## I. AN EVIDENTIARY HEARING WOULD SERVE TO ASSESS CREDIBILITY AND RESOLVE CONFLICTING EVIDENCE.

In his 2255 Motion, Mr. Blankenship alleged that the prosecution team made misrepresentations to the Court and defense counsel (¶¶ 47-49) and committed prosecutorial misconduct by intentionally suppressing evidence (¶¶ 50-56). The record before the Court demonstrates that Mr. Blankenship is entitled to relief on these claims. But should the Court want more evidence before making this determination, an evidentiary hearing could further develop facts relevant to these claims and others raised in the 2255 Motion. In particular, the intentionality of the prosecutors' conduct and their mental state are important considerations in assessing their misconduct. During its investigation, the Office of Professional Responsibility ("OPR") collected a great deal of evidence relevant to those issues. The evidence on the record before OPR, however, is conflicting. Notably, U.S. Attorney ("USA") Goodwin declined to cooperate with OPR's investigation, except for providing two short statements. Additionally, AUSA Ruby declined to answer key questions. Nevertheless, the information USA Goodwin *did* provide directly conflicts with AUSA Ruby's testimony. That testimony is also contradicted at key points by the evidence provided by other members of the prosecution team.

Perhaps most importantly, in his testimony to OPR, AUSA Ruby stated that the former U.S. Attorney directed him not to follow the office's discovery policy and instead to disclose to the defense the bare minimum amount required to be disclosed by law. (OPR–000028-29). In

particular, AUSA Ruby claimed that USA Goodwin gave these instructions because he felt personally attacked by the defense team. (*Id.*) USA Goodwin declined to provide testimony to OPR. In his statements, however, USA Goodwin disputed AUSA Ruby's contention that he decided to disregard his office's discovery policy. (OPR–000328). Moreover, USA Goodwin claimed: "Any perception that I did or did not do something because of the personal attacks made on me and my family by the defense is absolutely false." (OPR–000345). ██████ ████████████████████████████████████████████████████████ It is remarkable that USA Goodwin could possibly make this claim, especially in light of the fact that the rest of the trial team – including AUSA Ruby – admitted that certain things should have been disclosed. (*See, e.g.,* OPR–000047-50).

AUSA Ruby's testimony is also at odds with other members of the trial team. For example, AUSA Ruby insists that – at USA Goodwin's direction – the trial team all agreed to make post-indictment disclosures by letter and that AUSA #1 reviewed and approved the inadequate disclosures AUSA Ruby made to the defense on September 21, 2015. (OPR–000031, 42). AUSA #1 told OPR that not only had he never seen the letter, but also that he did not agree that the team agreed to make disclosures by letter. He was, in fact, under the impression that all MOI were being disclosed. (OPR–000031-32, 42-43)

Similarly, when OPR analyzed the discoverable statements in the undisclosed MOI, often, AUSA Ruby disputed that a statement would have been helpful to the defense even though his own colleagues disagreed. (OPR–000047-50). This suggests that AUSA Ruby did not involve his colleagues in his disclosure decisions because he did not want them to know what was not being produced. Moreover, even though AUSA Ruby asserted in June 2015 that he

3

knew of no exculpatory evidence, he acknowledged – when placed under oath by OPR – that some of this evidence was, in fact, exculpatory.

In sum, to resolve the issues in Mr. Blankenship's 2255 Motion, including issues specifically left to this Court by OPR, this Court should conduct an evidentiary hearing to obtain testimony and evaluate the credibility of the key witnesses.

## II. NEW MATERIALS PROVE THAT DOL AND MSHA LOST, ALTERED, AND DESTROYED DOCUMENTS THAT LIKELY INCLUDED *BRADY* MATERIAL.

Again, while the existing record demonstrates that Mr. Blankenship is entitled to relief, there is evidence that more exculpatory material remains undisclosed – and even intentionally destroyed. Included in the materials recently disclosed by the government are documents that prove the Department of Labor ("DOL"), one of the agencies that participated in the investigation and prosecution of Mr. Blankenship, lost, altered, and destroyed discoverable documents. An evidentiary hearing is required to determine what documents have been destroyed and to assess their impact on Mr. Blankenship's underlying trial. Moreover, AUSA Ruby denied that the government had any knowledge of these allegations until the defense raised it near the end of Mr. Blankenship's trial. (OPR–000076). Recently produced documents, however, show that DOL had brought such allegations to AUSA Ruby's attention two years earlier. This conduct certainly implicates the allegations of misconduct raised in the 2255 Motion. Moreover, any undisclosed materials would provide even more support for the requested relief.

### A. Disciplinary Materials Lost by DOL

The government makes a stunning admission in these proceedings. In its Response to Mr. Blankenship's Motion for In Camera Review (ECF No. 693), the government attaches a letter from a DOL attorney reporting that:

4

> DOL discovered two memoranda, both dated July 23, 2012, signed by Patricia M. Silvey, Deputy Assistant Secretary for Operations, Mine Safety and Health Administration, identifying 28 DOL employees who may have been considered for potential discipline. The memoranda do not name the 28 employees, though they do reference attachments to each memorandum. Despite exhaustive efforts, MSHA has been unable to locate the attachments or otherwise identify the 28 employees referred to in the memoranda. Ms. Silvey remains with MSHA, and she reported that she has no memory of the identities of the 28 employees.

(ECF No. 963-1). In short, the government acknowledges that it has no record or memory regarding disciplinary action contemplated against dozens of MSHA employees in connection with the Upper Big Branch ("UBB") disaster. As a threshold matter, the lost records of MSHA discipline of inspectors for their performance at UBB are likely to contain exculpatory and impeaching material, since those records that have been disclosed contain such material. But just as significantly, DOL's failure to retain these documents undermines DOL and the Department of Justice's ("DOJ") credibility and the efficacy of their search and production process. Thus, this Court should have no confidence in assertions by DOL and DOJ regarding prior productions.

In particular, Mr. Blankenship has expressed concerns about the absence of MSHA inspector emails in the DOL's prior productions, an absence contradicted by the testimony and statements of inspectors themselves. DOL has explained this away by citing a policy that inspectors are discouraged from sending emails about mine conditions. (OPR–000021). In light of the DOL's acknowledged failures, however, nothing short of judicial intervention is likely to spur an accurate accounting by DOL.

### B. Likely *Brady* Material Altered and Destroyed by MSHA

During trial, Mr. Blankenship raised allegations that a high level MSHA official, Joe Mackowiak, destroyed a number of documents related to UBB. In light of the evidence available at that time, the Court denied Mr. Blankenship's motion for an evidentiary hearing. (Mot. at ¶45). However, as outlined in the 2255 Motion, the Court did not have all the evidence at that

5

time. In particular, the government disclosed an email in November 2017 in which one MSHA employee explicitly told another "We had a shredding party here in Beckley." (*Id.*). But, as recently discovered, that was just the tip of the iceberg.

The documents produced as a result of Mr. Blankenship's motion for *in camera* review are even more damning. Included in the materials is a May 10, 2012 letter from MSHA employee ▓▓▓▓▓▓▓▓ to Kevin Stricklin reporting that a different MSHA employee,[1] ▓▓▓▓▓▓▓▓, told him that after the UBB explosion, Joe Mackowiak destroyed documents, backdated ventilation plans, and forged someone else's initials onto those plans. Moreover, ▓ told ▓▓▓▓▓ that Mackowiak "got away with it (paraphrased)". (DLB001538-39) (attached as Exhibit 1). Flint also identified two other employees who would know about the destruction. (*Id.*).

▓▓▓▓▓s letter was referred to the Office of the Inspector General ("OIG"). (*Id.*). It appears that the OIG took no action except to refer the allegations to the U.S. Attorney's Office. (DBL-001541) (attached as Exhibit 2). According to the OIG, the "USAO was aware of this investigation from the time it was opened." The OIG entry specifically said that "Assistant United States Attorney Steve Ruby declined to prosecute this investigation because the allegations made against Joe Mackowiak were not substantiated." The report also notes that "No evidence was obtained." In short, no one ever investigated. (*Id.*)

What is more significant, however, is that the OIG notes make clear that it was AUSA Ruby's decision not to investigate. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[1] The allegations of document destruction the Court considered at trial came from two Massey employees who reported that MSHA employee Doris Chambers told them of the destruction. Chambers later denied making such a statement.

6

██████████████████████████████████████████████████████████

████████████████████████████████ As a result, OPR concluded that the government did not know about the allegations until Zuckerman raised it mid-trial. These materials contradict AUSA Ruby's assertions.

Together, these documents paint a clear picture. There were, in fact, multiple people with knowledge that Joe Mackowiak had destroyed and/or altered documents soon after the UBB explosion. The OIG referred the allegation to AUSA Ruby who declined to investigate and no one ever looked into it. When Zuckerman raised the issue – using different sources – AUSA Ruby already knew about it. Yet he told the Court and OPR that he did not. Significantly, the allegations relate primarily to the destruction and backdating of the UBB ventilation plans. Given the significance of the UBB ventilation plan at trial, some of these documents were almost certainly *Brady* material.

Moreover, Mackowiak had an important incentive to alter and destroy documents related to UBB's ventilation plan. Mackowiak had been the MSHA Ventilation Specialist who had insisted – over the vehement objections of Massey's experts – that UBB change its ventilation plan. (*See, e.g.,* Trial Tr. Vol. XXI at 4238-39). One of the key defense arguments at trial was that this change – and not any criminal conspiracy – led to reduced airflow in the mine thereby causing many of the citations UBB received. (*See, e.g.,* Trial Tr. Vol. XVI at 3298-99). In light of this, and the UBB explosion, it would make no sense for Mackowiak to perpetrate these acts unless they would have implicated MSHA or exonerated Massey.

It is clear that the government does not have a handle on all the information from this investigation. Nor can it be trusted to do so. In particular, there is reason to believe that emails among MSHA inspectors regarding UBB have still never been disclosed. An evidentiary hearing

is required to determine, among other things, what discoverable material remains undisclosed, what materials may have been altered, and what was destroyed.

## CONCLUSION

For the foregoing reasons this Court should order an evidentiary hearing and authorize subpoenas to secure the attendance of relevant witnesses.

Dated: September 5, 2018　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　/s/  Howard C. Vick
　　　　　　　　　　　　　　　　　　　　　　Howard C. Vick
　　　　　　　　　　　　　　　　　　　　　　Michael A. Baudinet
　　　　　　　　　　　　　　　　　　　　　　MCGUIREWOODS LLP
　　　　　　　　　　　　　　　　　　　　　　Gateway Plaza
　　　　　　　　　　　　　　　　　　　　　　800 E. Canal Street
　　　　　　　　　　　　　　　　　　　　　　Richmond, VA 23219-3916
　　　　　　　　　　　　　　　　　　　　　　Tel: (804) 775-1000
　　　　　　　　　　　　　　　　　　　　　　Fax: (804) 775-1061
　　　　　　　　　　　　　　　　　　　　　　tvick@mcguirewoods.com
　　　　　　　　　　　　　　　　　　　　　　mbaudinet@mcguirewoods.com

　　　　　　　　　　　　　　　　　　　　　　Benjamin L. Hatch
　　　　　　　　　　　　　　　　　　　　　　MGUIREWOODS LLP
　　　　　　　　　　　　　　　　　　　　　　World Trade Center
　　　　　　　　　　　　　　　　　　　　　　101 West Main Street
　　　　　　　　　　　　　　　　　　　　　　Suite 9000
　　　　　　　　　　　　　　　　　　　　　　Norfolk, VA 23510-1655
　　　　　　　　　　　　　　　　　　　　　　Tel: (757) 640-3700
　　　　　　　　　　　　　　　　　　　　　　Fax: (757) 640-3701
　　　　　　　　　　　　　　　　　　　　　　bhatch@mcguirewoods.com

　　　　　　　　　　　　　　　　　　　　　　/s/ W. Henry Jernigan, Jr.
　　　　　　　　　　　　　　　　　　　　　　W. Henry Jernigan, Jr. (WVSB No. 1884)
　　　　　　　　　　　　　　　　　　　　　　DINSMORE & SHOHL LLP
　　　　　　　　　　　　　　　　　　　　　　707 Virginia Street, East, Suite 1300
　　　　　　　　　　　　　　　　　　　　　　P.O. Box 11887
　　　　　　　　　　　　　　　　　　　　　　Charleston, West Virginia 25339-1887
　　　　　　　　　　　　　　　　　　　　　　Telephone: (304) 357-0900
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (304) 357-0919
　　　　　　　　　　　　　　　　　　　　　　henry.jernigan@dinsmore.com

　　　　　　　　　　　　　　　　　　　　　　*Counsel for Donald L. Blankenship*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**Beckley Division**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| Plaintiff/Respondent, | ) ) ) | |
| v. | ) ) ) | **Criminal No. 5:14-CR-00244**  **Civil No. 5:18-CV-00591** |
| **DONALD L. BLANKENSHIP** | ) ) ) | |
| Defendant/Movant. | ) | |

**CERTIFICATE OF SERVICE**

I, W. Henry Jernigan, do hereby certify that a foregoing **Motion for Evidentiary Hearing** was served through the Court's electronic filing system on this the 5th day of September, 2018 upon the following counsel of record:

Douglas W. Squires, Esquire
Assistant U.S. Attorney
U.S. Attorney's Office for the Southern District of Ohio
303 Marconi Blvd., Suite 200
Columbus, OH 43215

/s/ W. Henry Jernigan, Jr.
W. Henry Jernigan, Jr. (WVSB No. 1884)