# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

No. 20-6330

No. 5:18-cv-00590
No. 5:14-cr-00244-1

UNITED STATES OF AMERICA,

       Plaintiff- Appellee,

v.

DONALD L. BLANKENSHIP,

       Defendant-Appellant.

## APPELLANT'S PETITION FOR REHEARING EN BANC

Respectfully Submitted,

James M. Cagle (WV Bar No. 580)
1200 Boulevard Tower
1018 Kanawha Boulevard, East
Charleston, West Virginia  25301
Email: caglelaw@aol.com
Phone:  (304) 342-3174
Fax: (304) 342-0448
*Counsel for Appellant Donald L. Blankenship*

# I.

# **TABLE OF CONTENTS**

Introduction ...........................................................................................................................1

      I.     The Panel Decision Conflicts with Decisions in Both the Supreme Court and Other Courts of Appeal .......................................................................................2

      II.    The Panel Decision Conflicts with Decisions in this Court as Relates to Inferences in Civil Cases ..........................................................................................7

      III.   The Panel Decision Overlooks a Material Factual or Legal Matter Involving
Withheld MSHA Documents on the Subject of Advance Warning ........................9

      IV.   A Material Fact About Government Misconduct was Overlooked Which Raises a Question of Exceptional Importance .......................................................11

Certificate of Compliance ...................................................................................................14

Certificate of Service ..........................................................................................................15

II.

## **TABLE OF AUTHORITIES**

Amado v. Gonzalez, 758 F. 3d 1119 (9th Cir. 2014)..................................................................6

Banks v. Dretke, 540 U.S. 668 (2004)..............................................................................1,3,4,5,6

Barbee v. Warden, Maryland Penitentiary, 331 F. 2d 842, 846 (4th Cir. 1964)........................12,13

Brady v. Maryland, 373 U.S. 83 (1963) ......................................................1,2,3,4,5,6,7,8,10,12,13

Dash v. Mayweather, 731 F. 3d 303, 311 (4th Cir. 2013) ................................................................7

Dennis v. Pennsylvania Department of Corrections, 834 F. 3d 263, 290 (2nd Cir. 2016) ...............5

Floyd v. Vannoy, 894 F. 3d 143, 163 (5th Cir. 2018) ..................................................................5,6

Kyles v. Whitley, 514 U.S. 419 (1995)............................................................................................2

Nemet Chevrolet v. Consumer Affairs Com., Inc., 591 F. 3d 250, 255 (4th Cir. 2009) ..................7

U.S. v. Tavera, 719 F. 3d 705 (6th Cir. 2013) ..................................................................................6

U.S. v. Wilson, 901 F. 2d 378 (4th Cir. 1990)..............................................................1,2,3,4,5,6,11

Wahi v. C.A.M.C., Inc., 562 F. 3d 599, 615 (4th Cir. 2009)............................................................7

### **Statute**

Due Process Protections Act, Pub. Law 116-182 made effective October 21, 2020......................12

### **Other**

Black's Law Dict. (1968)..................................................................................................................7

1 Wigmore Evidence §41 (3d ed. 1940) ..........................................................................................7

Mueller and Kirkpatrick and Richter §3.14 Inferences in Criminal Cases (2018) ..........................7

The Types of Evidence: an Analysis, vol. 19 Vanderbilt L. Rev. 1 (1965).................................... 7

# **INTRODUCTION**

In counsel's judgment conflict exists between the Panel decision and the United States Supreme Court's decision in *Banks v. Dretke*, 540 U.S. 668 (2004). Other Circuit Courts of Appeal have relied on *Banks* when rejecting the argument adopted by the Panel. Reliance on U.S. v. Wilson and its "other source" and "due diligence" rationale created this conflict, *901 F. 2d 378 (4th Cir. 1990)*. The Panel decision fails to reconcile the conflict between *Wilson* and *Banks*.

The Panel decision also conflicts with decisions in the United States Supreme Court and the Fourth Circuit by pyramiding unreasonable inferences of fact to establish the factual basis for their decision to follow *Wilson* and to reject *Banks*.

The Panel decision overlooked a material fact or legal matter which the government relied upon as key evidence of the conspiracy for which Mr. Blankenship was convicted. Specifically, the government alleged that Mr. Blankenship and others encouraged miners to give what was purported to be illegal "advance notice" of MSHA inspections to conceal mine safety violations. Contrary to that theory, the MSHA documents that were intentionally suppressed show that inspectors themselves did not consider "advance notice" to be unlawful. In fact, MSHA and the entire coal industry considered what was actually "arrival notice" of MSHA inspectors as a necessary safety practice to prevent injury to MSHA inspectors.

The Panel decision also overlooks another pertinent factual and legal issue. Nothing is contained in the Panel decision which addresses the extreme misconduct of the prosecution and its potential impact on a fair trial. Prosecutorial misconduct and remedies for the same represent

matters of exceptional importance since *Brady* violations are all too common. Further, this problem has been the subject of federal legislation passed during the pendency of this appeal. The record on appeal fully demonstrates that the reason for suppression was that the prosecutors resented the aggressive defense counsel to whom they referred as being "connected" lawyers representing a "well-heeled" Defendant.

## I.
## The Panel Decision Conflicts with Decisions in Both the Supreme Court and Other Courts of Appeal.

Contrary to representations the prosecution made both to the Court and to defense counsel they failed to deliver favorable information to the defense as contained in memoranda of interviews of seven potential witnesses. The suppression of this information on issues central to the case was the result of a deliberate decision made by the prosecution, J.A. 3157, et seq. Petitioner argued that the failure to turn over these memoranda violated the due process requirements of *Brady v. Maryland, 373 U.S. 83 (1963)*. The Panel decision finds that this was not a *Brady* violation but rather an exception to *Brady*.

As regards two of the interviewees who testified at trial, Petitioner agreed that the suppressed favorable information in their memoranda of interviews was brought out at trial through vigorous cross-examination by trial counsel. Instead, the failure should be considered when assessing the "cumulative effect of the evidence," *Kyles v. Whitley, 514 U.S. 419 (1995)*. As to the withheld material of the aforementioned five interviewees who did not testify, Petitioner argued that their suppression constitutes a clear violation of *Brady* which "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict," *Kyles* at 434.

The Panel reasoned that the exculpatory information contained in the memoranda of the five *was not Brady material because it was available to the Defendant in a source where a reasonable Defendant would have looked*, U.S. v. Wilson, 901 F. 2d 378, 381 (4th Cir. 1990), Doc. 749-14. This "rule" which at times is referred to as "other source" or "due diligence" conflicts with *Brady* and its progeny. *Banks* interpreting *Brady* addresses the responsibilities of the prosecution necessary for a fair trial. *Wilson* on the other hand places duties upon the defense as a condition precedent to the benefits of *Brady* even when it is established that exculpatory material has been withheld. *Wilson* in effect justifies, if not encourages, prosecutorial misconduct by shifting responsibility to the Defendant or his counsel, see IV *infra*. The OPR findings in this case and conflicting statements of the prosecutors substantiate prosecutorial misconduct, J.A. 3157 et seq. *Wilson* provides an excuse for such misconduct.

In *Wilson* the Court considered a claim that favorable evidence obtained from potential witnesses had been withheld by the government. Rejecting that claim the Court held:

> "The *Brady* rule does not apply if the evidence in question is available to the Defendant from other sources. . . no *Brady* violations when Defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory evidence'. . . government has no burden when facts are available to a diligent attorney," *Wilson* at 380 (citation omitted).
>
> . . . .
>
> "In situations such as this, where the exculpatory information is not only available to the Defendant but also lies in a source where a reasonable Defendant would have looked, a Defendant is not entitled to the benefit of the *Brady* doctrine," p. 381.

In *Banks,* the State had withheld information about the relationships of the police with two witnesses who testified at trial. One was a paid police informant who also testified during the death penalty phase. The State argued that *Brady* should not apply because Banks failed to seek investigative assistance. Further, the State argued that it was Banks' duty to move for disclosure of an informant's identity. Analogous to the prosecution in Mr. Blankenship's case, the prosecution misrepresented to the trial court that they "had held nothing back," *Banks* at 698; see also Defense Motions, Order and U.S. Responses, J.A. 2707-2822.

In reversing the 5th Circuit, the United States Supreme Court found:

> "Our decisions lend no support to the notion that Defendants must scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed.
>
> . . . .
>
> The State here nevertheless argues, in effect, that the prosecution can lie and conceal and the prisoner still has the burden to . . . discover the evidence so long as the 'potential existence' of a prosecutorial misconduct claim might have been detected. A rule thus declaring '*prosecutor may hide, Defendant must seek*' is not tenable in a system constitutionally bound to accord Defendants due process. 'Ordinarily, we presume that public officials have properly discharged their official duties,' *Banks* at 695-696. (Emphasis added).

The Panel decision emphasizes as grounds for this opinion that the five non-testifying potential witnesses held executive or administrative positions at Massey Energy where they had regularly engaged with Petitioner Blankenship, Doc. 749-12 and 13. The Panel added that four of the five were on a list of possible witnesses filed by the defense with the Court, J.A. 3180 (Sealed). The Panel concluded:

> "To obtain access to the testimony of individuals who had been his own employees, Blankenship would not have to scavenge, guess, search or seek. He had the evidence before him and undoubtedly was aware of it, as he indicated his choice to use the very same employees as his own

> witnesses at trial. *The case instead falls squarely under the principle that the <u>Brady</u> doctrine is not available where the favorable information is available to the Defendant and lies in a source where a reasonable Defendant would have looked, <u>see</u> Wilson* 901 F. 2d at 381." (Emphasis Added).

The Panel continued:

> ". . . . common sense should not be ignored. Thus, when assessing the Defendant's role in preparing his defense, he should not be allowed to turn a willfully blind eye to available evidence and then set up a *Brady* claim for a new trial. In this manner, *we distinguish the burden of due diligence - which the Defendant need not carry in asserting a Brady claim - from the common sense notion of self-help imputable to a Defendant in preparing his case.* This is precisely the distinction between *Wilson* and *Banks*." Doc. 749-16. (Italics addded).

The Panel's opinion here rejects the Supreme Court authority in *Banks*, Doc. 479-11 through 16. The Panel would limit *Banks* to discrete narrow circumstances. The Panel imposes obligations on the Defendant which are said to be based upon a nebulous common-sense notion of self-help. The opinion also engages in inappropriate appellate fact finding, <u>see</u> <u>argument II</u> <u>infra</u>. This decision overlooks the fact that in Mr. Blankenship's case, the government did in fact make a conscious decision to hide and conceal the favorable information as the prosecution did in *Banks*. Adding to the foregoing misdeeds, direct denials were then made to the Court and defense about the very existence of this favorable information, motions and U.S. responses J.A. 2707 et seq; and see reference to government Policy Trial Prep. Interview J.A. 2799. The Panel rejects the contrary United States Supreme Court authority in *Banks* and adheres to *Wilson*, a 1990 decision which adopted this "due diligence" or "other source" rule not taken from any United States Supreme Court authority but rather from three decisions reached between the years 1982 and 1988 by the Eleventh, Second and First Circuits, *Wilson* at 380. The Second Circuit

has since followed *Banks*, rejecting the very reasoning now relied upon by this Panel in continuing an alleged exception to *Brady*:

> ".... the United States Supreme Court has never recognized an affirmative due diligence duty of defense counsel as part of *Brady* let alone an exception to the mandate of *Brady*," Dennis v. Pennsylvania Department of Corrections, 834 F. 3d 263, 290 (2nd Cir. 2016).

In *Dennis,* as in *Banks* and in Mr. Blankenship's case, the prosecution falsely represented that all requested and required material had been disclosed. Other Circuits also follow *Banks* by rejecting the argument that a defense failure to conduct a sufficient investigation or to discover the suppressed information presents a just reason not to find a violation of *Brady*, see *Floyd v. Vannoy*, 894 F. 3d 143, 163 (5th Cir. 2018) cert. den. Dkt. No. 18-380(11-19-18); *U.S. v. Tavera*, 719 F. 3d 705 (6th Cir. 2013), and *Amado v. Gonzalez, 758 F. 3d 1119 (9th Cir. 2014);* See also a pre-opinion *In re Sealed case*, 185 F. 3d 887 (D.C. Cir. 1999) in which the Court found the failure of pre-trial preparation by the defense did not justify the government's failure to disclose information as required.

The *Banks* decision confirms that *Brady* places no burden on the Defendant to discover evidence hidden by government. Although the Panel opinion gives a nod to that by acknowledging that principle in the language used in Doc. 749-15, the Panel decision does the opposite in reality by reaffirming *Wilson*. The Panel decision says one thing and requires another. The opinion in fact places a burden on the defense whether the Panel decision states it or not:

> ".... the *Brady* doctrine is not available where the favorable information is available to the Defendant in a source **where a reasonable Defendant would have looked**." (Emphasis added).

There is no affirmative duty on criminal defendants to do anything specifically other than to appear in court and to abide by the terms of his/her release if that applies. It is consistent with principles of due process, the burden of proof, and going forward with the evidence that *Banks,* not *Wilson,* should control here. Reaffirming the Panel's opinion places this Court at odds with due process as defined in *Brady, Banks,* and the opinions of other Circuits identified herein.

## II.

### The Panel Decision Conflicts with Decisions in this Court as Relates to Inferences in Civil Cases.

In supporting their decision concerning the five former employees whose interviews containing favorable defense information did not violate *Brady* the Panel relies on the following factual conclusions:

(**1**) **The five employees worked in high executive or administrative positions which brought them into close contact with Mr. Blankenship, Doc. 749-12**. The Panel disregards the fact that Blankenship retired from Massey Energy on December 31, 2010. The indictment was returned in 2014 and many of the suppressed interviews in question took place as late as 2015, J.A. 179-268. (11 were conducted pre-indictment, 50 of those withheld were post-indictment, J.A. 3164). The Panel also overlooks that the witnesses were employed by Alpha Natural Resources in 2015, which was cooperating with the prosecution.

(**2**) **Four of the potential witnesses were listed on Defendant's supplemental witness list, J.A. 3180 (Sealed), Doc. 749-13**.

There exist in principles of evidence a "rule" which prohibits an inference on an inference[1]. While this "rule" has been the subject of much discussion and some disagreement for decades it is firmly entrenched in decisions handed down by this Court particularly in the matter of circumstantial evidence. See discussions e.g. 1 Wigmore Evidence §41 (3d ed. 1940); The Types of Evidence: an Analysis, vol. 19 Vanderbilt L. Rev. 1 (1965) discussing general and particular inferences; Mueller and Kirkpatrick and Richter §3.14 Inferences in Criminal Cases (2018).

Decisions in the Fourth Circuit consistently hold that a party cannot support his case on a conclusory allegation, mere speculation, *or by building one inference upon another*, *Dash v. Mayweather*, 731 F. 3d 303, 311 (4th Cir. 2013). A party does not state a civil claim when the claim is based upon an "unwarranted inference," *Wahi v. C.A.M.C., Inc.*, 562 F. 3d 599, 615 (4th Cir. 2009), *Nemet Chevrolet v. Consumer Affairs Com., Inc.*, 591 F. 3d 250, 255 (4th Cir. 2009).

The stated factual basis offered in support of the decision reached by the Panel is predicated entirely upon speculation, conjecture, and unreasonable inferences. The Panel reasons by virtue of working with persons previously and by including these five(5) names among *133 named potential witnesses* contained on a single-spaced document covering more than four(4) pages[2], J.A. 3175-3179 (Sealed) that the Petitioner "had the [suppressed] evidence before him and ***undoubtedly was aware of it***," Doc. 749-15. The Panel also inferred that

---

[1] Inference as considered here refers to a truth or proposition drawn from another which is supposed or admitted to be true. Reasoning of a fact deduced as a logical consequence from other facts. Black's Law Dict. (1968).

[2] The list also includes any person listed by the government as a potential witness, anyone needed to authenticate a document and "representatives of Ernst & Young."

Blankenship had the "information in his own house where he **probably did look**, Doc. 749-14. The opinion goes on to suggest that Blankenship "should not be allowed to **turn a willfully blind eye to available evidence** and thus setup a *Brady* claim for a new trial," Doc. 749-16.

These factual conclusions are not reasonable inferences based on the known facts (and even conflict with known facts). Alpha Natural Resources not Massey from which Petitioner and r******* was certainly not Petitioner's "house." The fact that persons have worked together years before does not permit the definitive factual conclusion used as a foundation of a judicial decision that the defense spoke with these witnesses other than Ojeda, which was acknowledged. Moreover, there is no corroboration in the record that these witnesses would have been cooperative, truthful, and forthright with Petitioner's lawyers. Indeed, one party may interview the same witness and receive entirely different information, even false information.  Further, a witness may refuse to speak with a defense investigator (many do just that) as there is no defense investigative subpoena power unlike the government.  Some are simply fearful of talking to investigators.  Others "lawyer up."

The logic followed by the Panel conflicts with the pyramiding of inferences employed in Fourth Circuit precedent.  The result is that the Panel relies on information, the likes of which would not suffice to support a civil complaint filed in this Circuit.

### III.

### The Panel Decision Overlooks a Material Factual or Legal Matter Involving Withheld MSHA Documents on the Subject of Advance Warning.

In the single count of conviction, the Superseding Indictment alleges that Petitioner Blankenship conspired to willfully violate federal mine safety and health laws, see J.A. 126-127, 148-149.  The indictment, the trial evidence, and argument was very specific that **advance**

**warning** of mine inspections took place and were intended to hide regulatory violations. This was said to be a method employed in carrying out that conspiracy by, J.A. 325, 337. The indictment alleges that company officials "instructed and encouraged" this illegal practice, J.A. 127.

No evidence was submitted that the Upper Big Branch mine or other Massey operations for that matter were cited for violations for advance warnings. Evidence alleging this practice was offered by the government and admitted under Evidence Rule 404(b) for the limited purpose of showing "knowledge and intent" which are critical to finding *willfulness*. The District Court disallowed any argument by the defense at trial over the legality of the practice of giving "advance notice" which was a common coal industry practice condoned by MSHA, J.A. 31. In fact, it was a safety precaution to inform miners anytime that any visitor appears because underground workers operate dangerous equipment, blow things up, and use electricity. It exists as a safety precaution. When this ruling was made at trial the District Court did not have the benefit of the suppressed MSHA records on this very subject, nor did the defense of course. What was withheld from the defense in discovery (therefore also the District Court at trial) were multiple MSHA emails indicating that MSHA field supervisors themselves in Southern West Virginia either were unaware of "advance notice" at Massey Energy mines or did not deem advance warning to be a regulatory violation, see J.A. 278-287. Mr. Blankenship was therefore prosecuted for acts alleged to be criminal which those who were inspectors did not themselves believe to be a regulatory violation, much less a criminal act. In fact, MSHA had never cited any mine for "advance notice."

This *Brady* material, if it had been provided as required, could have changed the District Court's ruling on the evidentiary issue which is both relevant and material to the question of a

willful intent to violate the law, or the lack thereof. The Panel's failure to consider the suppression of this evidence in reaching the opinion here undermines the Panel's ultimate conclusion that there is nothing which undermines confidence in the jury's verdict. This is a verdict which took two weeks and two *Alford* charges to reach, Doc. 749-19. If the jury had known of this evidence a different result is certainly reasonable to conceive[3]. The Panel's failure to consider this matter in arriving at their conclusion constitutes prejudicial error deserving of further review.

## IV.

### A Material Fact About Government Misconduct was Overlooked Which Raises a Question of Exceptional Importance.

The Panel opinion overlooks the fact that the U.S. Attorney was found to have committed reckless professional conduct as relates to his decision not to provide this discoverable information, J.A. 3158 et seq. He chose to take the risk referred to herein, *supra* p. 2. As justification he explicitly argued the language in *Wilson*:

> . . . . no misconduct should be found because the undisclosed information. . . . was available to the defense from other sources . . . thus there was no prejudice, J.A. 3161.

The U.S. Attorney further argued that he should not be sanctioned by OPR as it would:

> ". . . reward overly aggressive, well-heeled Defendants and their connected lawyers who improperly claim 'prosecutional misconduct' . . . Id."

---

[3]During testimony by Mr. Ross, who was the last witness to testify, Juror No. 3 sent this note to the Court: "Good morning. Could you **remind me of the charges for Mr. Blankenship? Can't remember**. . . Sorry thanks," J.A. 2475-76. The trial was approximately one month in duration at that time.

The Assistant who handled most of the trial was also sanctioned, J.A. 3163 et seq. He confirmed that the withholding of evidence was deliberate - the 61 MOIs which were withheld occurred at the U.S. Attorney's direction, J.A. 3164. He too followed the *Wilson* risk/reward assessment of non-disclosure:

> "And I don't believe that there was anything in those memos that would have affected the outcome of the case," J.A. 3169.

As justification he testified that their view was that the defense by filing discovery motions were attempting "to trip us up somehow, to create a mistake. . . that they could use later," J.A. 3173.

The Panel opinion nowhere mentions that these acts and omissions were purposeful, vindictive, done in violation of due process to gain an advantage or because the defense counsel and Defendant were "well-heeled" or "connected" and counsel was aggressive. The Panel merely states that this case history is "not flattering to the government," Doc. 479-19. However, *Brady* and its progeny address circumstances where the prosecutorial misconduct is intentional, which is the distinguishing feature here.

Apropos to this case is Fourth Circuit authority which states:

> "We cannot condone the attempt to connect the Defendant with the crime by questionable inferences which might be refuted by undisclsosed and unproduced documents then in the hands of the police.
>
> . . . .
>
> [this] falls into the field of fundamental unfairness." *Barbee v. Warden, Maryland Penitentiary, 331 F. 2d 842, 846 (4th Cir. 1964).*

*Barbee* in fact recognizes a distinction which is made between the knowing use of false testimony and passive nondisclosure of exculpatory evidence:

> "In the first type of case the *sentence will be set aside without inquiring into whether the Defendant has been prejudiced*," Id. p. 847. (Emphasis added).

Petitioner's conviction should be voided on the same basis.

Subsequent to the filing of this appeal, the United States Congress passed the Due Process Protections Act, Pub. Law 116-182 made effective October 21, 2020.  The stated purpose of this Act was to remind federal prosecutors of *Brady* requirements due to the growing trend by federal prosecutors to ignore *Brady*.  The Act was passed following the prosecution of a U.S. Senator in which prosecutors purposely withheld *Brady* material leading to the dismissal of charges after conviction.  This statutory expression of the frustration felt by the public over the prosecutor's ability to knowingly violate the due process rights of the accused with seeming impunity represents an important question which this Court can and should address.  In the instant case this is a question the answer to which affects whether considering all that occurred in the context of Mr. Blankenship's case, whether confidence in the outcome has indeed been undermined.  The Panel decision finds or strongly implies that the Petitioner knew that the suppressed information existed, therefore he is not entitled to due process under *Brady*.  In contrast the decision merely casts as "unflattering" the serial violations of *Brady* and other garden variety requirements of discovery.  This Court is requested to address this matter in that these kind of acts and omissions affect not just the defendants who can afford to fight, but more commonly those with no resources whose counsel never try to uncover anything beyond what oftlinediscovery they have been handed.  As *Barbee* states, these situations should be judged harshly.

Based upon the foregoing Mr. Blankenship respectfully petitions this Court to grant a rehearing en banc.

/s/ James M. Cagle
James M. Cagle (WV Bar No. 580)
1200 Boulevard Tower
1018 Kanawha Boulevard, East
Charleston, West Virginia  25301
Email: caglelaw@aol.com
Phone:  (304) 342-3174
Fax: (304) 342-0448
*Counsel for Appellant Donald L. Blankenship*

CERTIFICATE OF COMPLIANCE
WITH TYPEFACE AND LENGTH LIMITATIONS

1. This brief complies with the type-volume limitation of F.R.A.P. 28.1(e)(2) or F.R.A.P.32(a)(7)(B) because this brief contains **3791** words, excluding the parts of the brief exempted by F.R.A.P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of F.R.A.P. 32(a)(5) and the type style requirements of F.R.A.P. 32(a)(6) because this brief has been prepared using WordPerfect 2010 in 12 point Times New Roman.

**Date: January 21, 2022**

/s/ James M. Cagle
James M. Cagle (WV Bar No. 580)
1200 Boulevard Tower
1018 Kanawha Boulevard, East
Charleston, West Virginia  25301
Email: caglelaw@aol.com
Phone:  (304) 342-3174
Fax: (304) 342-0448
*Counsel for Appellant Donald L. Blankenship*

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 20-6330

No. 5:18-cv-00590
No. 5:14-cr-00244-1

UNITED STATES OF AMERICA,

      Plaintiff- Appellee,

v.

DONALD L. BLANKENSHIP,

      Defendant-Appellant.

## CERTIFICATE OF SERVICE

      The undersigned, counsel for the Appellant Donald L. Blankenship, does hereby certify that a true and correct copy of the ***Appellant's Petition for Rehearing En Banc*** was served via electronic filing to Thomas E. Booth, Esq. Appellate Division, Nicholas L. McQuaid, Acting Assistant Attorney General, and, Robert A. Zink, Acting Deputy Assistant Attorney General on the on this the 21st day of January, 2022.

      <u>/s/ James M. Cagle</u>
      James M. Cagle (WV Bar No. 580)
      1200 Boulevard Tower
      1018 Kanawha Boulevard, East
      Charleston, West Virginia  25301
      Email: caglelaw@aol.com
      Phone:  (304) 342-3174
      Fax: (304) 342-0448
      *Counsel for Appellant Donald L. Blankenship*